No. 23-11753

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

*In re World Professional Association for Transgender Health,*
Petitioner

On Petition from the U.S. District Court for the Middle District of Alabama
No. 2:22-cv-00184
(Hon. Liles C. Burke)

---

## APPENDIX TO PETITION FOR WRIT OF MANDAMUS

---

Barry A. Ragsdale (ASB 2958A23B)
Robert S. Vance III (ASB 9916B11Q)
DOMINICK FELD HYDE, P.C.
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL 35205
Phone:  (205) 536-8888

D. Jean Veta (D.C. Bar No. 358980)*
Cortlin H. Lannin (CA Bar No. 266488)
William Isasi (D.C. Bar No. 470878)*
Michael J. Lanosa (CA Bar No. 301241)*
José Girón (MD Bar No. 2211280185)*
Emile J. Katz (D.C. Bar No. 90006190)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000

*Counsel for Petitioner*
**Pro Hac Vice* application forthcoming*

# INDEX

Docket Sheet for Civil Case No 2:22-cv-184-LCB ....................................1 (Tab 1)

Opinion & Order Denying Motion to Quash (Doc. 263)........................ 106 (Tab 2)

Opinion & Order Denying Motion for Certification (Doc. 281)............. 116 (Tab 3)

Transcript of Hearing Held on February 8, 2023.................................... 125 (Tab 4)

Transcript of Hearing Held on March 21, 2023...................................... 196 (Tab 5)

APPEAL

# U.S. District Court
# Alabama Middle District (Montgomery)
# CIVIL DOCKET FOR CASE #: 2:22-cv-00184-LCB-CWB

Boe et al v. Marshall et al                                    Date Filed: 04/19/2022
Assigned to: Honorable Judge Liles C. Burke          Jury Demand: None
Referred to: Magistrate Judge Chad W. Bryan          Nature of Suit: 950 Constitutional - State
Case in other court: 22-11707-JJ                            Statute
Cause: 42:1983 Civil Rights Act                            Jurisdiction: Federal Question

**Plaintiff**

**Paul A. Eknes-Tucker**                    represented by    **Abigail Hoverman Terry**
*Rev.*                                                        KING & SPALDING LLP
*TERMINATED: 09/19/2022*                                      110 North Wacker Drive, Suite 3800
                                                             Suite 3800
                                                             Chicago, IL 60606
                                                             312-764-6931
                                                             Email: aterry@kslaw.com
                                                             *TERMINATED: 09/19/2022*
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Adam Reinke**
                                                             King & Spalding
                                                             1180 Peachtree St
                                                             Atlanta, GA 30309
                                                             404-572-4600
                                                             Fax: 404-572-5100
                                                             Email: areinke@kslaw.com
                                                             *TERMINATED: 09/19/2022*
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Amie A. Vague**
                                                             Lightfoot Franklin & White LLC
                                                             400 20th Street North
                                                             Birmingham, AL 35203
                                                             205-581-0700
                                                             Fax: 205-581-0799
                                                             Email: avague@lightfootlaw.com
                                                             *TERMINATED: 09/19/2022*
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Asaf Orr**

**Pet. App'x  000001**

National Center for Lesbian Rights
870 Market St.
Suite 370
San Francisco, CA 94102
415-365-1326
Email: aorr@nclrights.org
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brent P. Ray**
KING & SPALDING LLP
110 North Wacker Drive, Suite 3800
Suite 3800
Chicago, IL 60606
312-764-6925
Fax: 312-995-6330
Email: bray@kslaw.com
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cynthia Cheng-Wun Weaver**
Human Rights Campaign Foundation
1640 Rhode Island Ave NW
Washington, DC 20036-3200
202-527-3669
Email: cynthia.weaver@hrc.org
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Diego Armando Soto**
Southern Poverty Law Center
LGBT Rights & Special Litigation
400 Washington Ave
Montgomery, AL 36104
334-956-8200
Fax: 334-956-8481
Email: diego.soto@splcenter.org
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gilbert Olusegun Benson-Oladeinbo**
Quinn Emanuel Urquhart & Sullivan, LLP
1200 Abernathy Rd NE
Ste #1500
Atlanta, GA 30328
657-246-9960

Email:
gilbertoladeinbo@quinnemanuel.com
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Andrew Pratt**
King & Spalding
1180 Peachtree St - Ste 1700
Atlanta, GA 30309
404-572-3576
Email: apratt@kslaw.com
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey P. Doss**
Lightfoot, Franklin & White LLC
The Clark Bldg - 400 20th St N
Birmingham, AL 35203
205-581-0773
Fax: 205-581-0799
Email: jdoss@lightfootlaw.com
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Levi**
GLBTQ Advocates & Defenders
19 Tremont Street, Suite 950
Boston, MA 02108
617-426-1350
Email: jlevi@glad.org
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Lynn Stone**
Southern Poverty Law Center
400 Washington Ave
Montgomery, AL 36104
404-807-0969
Email: jessica.stone@splcenter.org
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melody Hurdle Eagan**
Lightfoot Franklin & White LLC

400 20th Street North, The Clark Building
Birmingham, AL 35203
205-581-0700
Fax: 205-581-0799
Email: meagan@lightfootlaw.com
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael B. Shortnacy**
King & Spalding LLP
633 W 5th Street
Suite 1600
Los Angeles, CA 90071
213-443-4344
Email: mshortnacy@kslaw.com
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Misty L. Peterson**
KING & SPALDING LLP
1180 Peachtree Street Northeast, Suite 1600
Atlanta, GA 30309
404-572-4939
Email: mpeterson@kslaw.com
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Warbelow**
HUMAN RIGHTS CAMPAIGN
FOUNDATION
1640 Rhode Island Ave., NW
Washington, DC 20036
202-628-4160
Email: sarah.warbelow@hrc.org
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Daniel McCoy**
Southern Poverty Law Center
2 S. Biscayne Blvd.
Ste 3750
Miami, FL 33131
334-224-4309
Fax: 786-237-2949
Email: scott.mccoy@splcenter.org
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brianna Boe**
*individually and on behalf of her minor son,*
*Michael Boe*

represented by    **Abigail Hoverman Terry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adam Reinke**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amie A. Vague**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Asaf Orr**
(See above for address)
*TERMINATED: 01/27/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brent P. Ray**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cynthia Cheng-Wun Weaver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Diego Armando Soto**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gilbert Olusegun Benson-Oladeinbo**
(See above for address)
*TERMINATED: 12/21/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Andrew Pratt**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey P. Doss**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Levi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Lynn Stone**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melody Hurdle Eagan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael B. Shortnacy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Misty L. Peterson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rachel H. Berg**
National Center for Lesbian Rights
870 Market Street
Suite 370
San Francisco, CA 94102
415-343-7679
Fax: 415-392-8442
Email: rberg@nclrights.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Warbelow**
(See above for address)

**Pet. App'x  000006**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Daniel McCoy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Zoe**
*individually and on behalf of his minor son,*
*Zachary Zoe*
*TERMINATED: 09/19/2022*

represented by

**Abigail Hoverman Terry**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adam Reinke**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amie A. Vague**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Asaf Orr**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brent P. Ray**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cynthia Cheng-Wun Weaver**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Diego Armando Soto**
(See above for address)
*TERMINATED: 09/19/2022*

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gilbert Olusegun Benson-Oladeinbo**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Andrew Pratt**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey P. Doss**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Levi**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Lynn Stone**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melody Hurdle Eagan**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael B. Shortnacy**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Misty L. Peterson**

(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Warbelow**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Daniel McCoy**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Megan Poe**
*individually and on behalf of her minor daughter, Allison Poe*

represented by **Abigail Hoverman Terry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adam Reinke**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amie A. Vague**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Asaf Orr**
(See above for address)
*TERMINATED: 01/27/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brent P. Ray**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cynthia Cheng-Wun Weaver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Diego Armando Soto**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gilbert Olusegun Benson-Oladeinbo**
(See above for address)
*TERMINATED: 12/21/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Andrew Pratt**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey P. Doss**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Levi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Lynn Stone**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melody Hurdle Eagan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael B. Shortnacy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Misty L. Peterson**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rachel H. Berg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Warbelow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Daniel McCoy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Kathy Noe**
*individually and on behalf of her minor son,*
*Christopher Noe*

represented by    **Abigail Hoverman Terry**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adam Reinke**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amie A. Vague**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Asaf Orr**
(See above for address)
*TERMINATED: 01/27/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brent P. Ray**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cynthia Cheng-Wun Weaver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Diego Armando Soto**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gilbert Olusegun Benson-Oladeinbo**
(See above for address)
*TERMINATED: 12/21/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Andrew Pratt**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey P. Doss**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Levi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Lynn Stone**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melody Hurdle Eagan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael B. Shortnacy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Misty L. Peterson**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rachel H. Berg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Warbelow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Daniel McCoy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Jane Moe**                          represented by  **Abigail Hoverman Terry**
*Ph.D.*                                                (See above for address)
*TERMINATED: 09/19/2022*                               *TERMINATED: 09/19/2022*
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Adam Reinke**
                                                       (See above for address)
                                                       *TERMINATED: 09/19/2022*
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Amie A. Vague**
                                                       (See above for address)
                                                       *TERMINATED: 09/19/2022*
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Asaf Orr**
                                                       (See above for address)
                                                       *TERMINATED: 09/19/2022*
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Brent P. Ray**
                                                       (See above for address)
                                                       *TERMINATED: 09/19/2022*
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

**Cynthia Cheng-Wun Weaver**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Diego Armando Soto**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gilbert Olusegun Benson-Oladeinbo**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Andrew Pratt**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey P. Doss**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Levi**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Lynn Stone**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melody Hurdle Eagan**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Michael B. Shortnacy**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Misty L. Peterson**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Warbelow**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Daniel McCoy**
(See above for address)
*TERMINATED: 09/19/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rachel Koe**                      represented by   **Abigail Hoverman Terry**
*M.D.*                                               (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Adam Reinke**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Amie A. Vague**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Asaf Orr**
                                                     (See above for address)
                                                     *TERMINATED: 01/27/2023*
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

**Brent P. Ray**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cynthia Cheng-Wun Weaver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Diego Armando Soto**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gilbert Olusegun Benson-Oladeinbo**
(See above for address)
*TERMINATED: 12/21/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Andrew Pratt**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey P. Doss**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Levi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Lynn Stone**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melody Hurdle Eagan**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael B. Shortnacy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Misty L. Peterson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rachel H. Berg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Warbelow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Daniel McCoy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Rebecca Roe**                                    represented by    **Rachel H. Berg**
*individually and on behalf of her minor*                          (See above for address)
*daughter, MELISSA ROE*                                            *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Asaf Orr**
                                                                   (See above for address)
                                                                   *TERMINATED: 01/27/2023*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Melody Hurdle Eagan**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Robert Voe**                                     represented by    **Asaf Orr**
*TERMINATED: 09/19/2022*                                           (See above for address)
                                                                   *TERMINATED: 01/27/2023*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Melody Hurdle Eagan**
                                                                   (See above for address)
                                                                   *TERMINATED: 09/19/2022*
                                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Heather Austin**                          represented by    **Rachel H. Berg**
*Ph.D.*                                                      (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Asaf Orr**
                                                            (See above for address)
                                                            *TERMINATED: 01/27/2023*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Melody Hurdle Eagan**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Moe**                              represented by    **Abigail Hoverman Terry**
*individually and on behalf of his minor*                    (See above for address)
*daughter, APRIL MOE*                                        *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Adam Reinke**
                                                            King & Spalding
                                                            1180 Peachtree St
                                                            Atlanta
                                                            404-572-4600
                                                            Fax: 404-572-5100
                                                            Email: areinke@kslaw.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Amie A. Vague**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Asaf Orr**
                                                            (See above for address)
                                                            *TERMINATED: 01/27/2023*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Brent P. Ray**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Cynthia Cheng-Wun Weaver**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Diego Armando Soto**

*(See above for address)*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Andrew Pratt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey P. Doss**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer L. Levi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jessica Lynn Stone**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melody Hurdle Eagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael B. Shortnacy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Misty L. Peterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel H. Berg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Warbelow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Daniel McCoy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Plaintiff**

**United States of America**                    represented by    **Alyssa C. Lareau**
                                                                 DOJ-Crt
                                                                 Civil Rights Division
                                                                 Poc Dalton, Dennis
                                                                 1425 New York Ave
                                                                 Nya 5066
                                                                 Washington, DC 20005
                                                                 202-514-6360
                                                                 Email: alyssa.lareau@usdoj.gov
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Coty Rae Montag**
                                                                 DOJ-Crt
                                                                 Civil Rights Division
                                                                 150 M Street NE
                                                                 4con
                                                                 Washington, DC 20002
                                                                 202-598-1580
                                                                 Email: coty.montag@usdoj.gov
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Eliza Dermody**
                                                                 DOJ-Crt
                                                                 950 Pennsylvania Ave., NW
                                                                 Washington, DC 20530
                                                                 202-305-0463
                                                                 Email: eliza.dermody@usdoj.gov
                                                                 *TERMINATED: 12/21/2022*
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Elizabeth Prim Formby Escalona**
                                                                 DOJ-USAO
                                                                 Department of Justice
                                                                 1801 4th Avenue North
                                                                 Birmingham, AL 35203
                                                                 205-244-2015
                                                                 Email: Caseview.ecf@usdoj.gov
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Jason R. Cheek**
                                                                 U S Atty Office - NDAL
                                                                 1801 Fourth Ave N
                                                                 Birmingham, AL 35203
                                                                 205-244-2104
                                                                 Email: jason.cheek@usdoj.gov
                                                                 *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**John Michael Powers**
DOJ-Crt
Civil Rights Division
950 Pennsylvania Avenue
Washington, DC 20530
202-514-1055
Email: john.powers@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlin N Toyama**
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
202-353-5311
Email: kaitlin.toyama@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lane Hines Woodke**
DOJ-USAO
Ndal
United States Attorney's Office
1801 Fourth Ave., N
Birmingham, AL 35203-2101
205-244-2001
Email: lane.woodke@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret Lester Marshall**
DOJ-USAO
1801 Fourth Avenue North
Birmingham, AL 35203
205-244-2121
Email: margaret.marshall@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Renee Michelle Williams**
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
202-598-3210
Email: renee.williams3@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sandra Jean Stewart**
United States Attorney Office

131 Clayton Street
Montgomery, AL 36104
334-551-1705
Fax: 334-223-7135
Email: sandra.stewart@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen D Wadsworth**
US Attorney's Office for the Middle District
of Alabama
131 Clayton Street
Montgomery, AL 36104
334-223-7280
Fax: 334-223-7560
Email: stephen.wadsworth@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amie Murphy**
DOJ-Crt
950 Pennsylvania Avenue-- NW Building
Washington, DC 20530
202-353-1285
Email: amie.murphy2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Praveen S. Krishna**
DOJ-USAO
1801 4th Avenue North
Birmingham, AL 35203
205-244-2168
Email: praveen.krishna@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Robert C. Pickren**
DOJ-USAO
Northern District of Alabama
1801 4th Avenue North
Birmingham, AL 35203
205-244-2001
Email: cooper.pickren@usdoj.gov
*ATTORNEY TO BE NOTICED*

V.
**<u>Defendant</u>**

**Kay Ivey**
*in her official capacity as Governor of the
State of Alabama*
*TERMINATED: 05/05/2022*

represented by **Benjamin Matthew Seiss**
Alabama Attorney General's Office
501 Washington Avenue
Montgomery, AL 36104
334-353-8917
Email: ben.seiss@alabamaag.gov

*TERMINATED: 05/05/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ernest Mills**
Spero Law LLC
557 East Bay Street
Charleston, SC 29413
843-606-0640
Email: cmills@spero.law
*TERMINATED: 05/05/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Edmund Gerard LaCour , Jr.**
Office of the Attorney General
501 Washington Ave
Montgomery, AL 36130
334-353-2196
Fax: 334-242-4891
Email: edmund.lacour@alabamaag.gov
*TERMINATED: 05/05/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James William Davis**
State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
334-242-7300
Fax: 334-353-8400
Email: Jim.Davis@AlabamaAG.gov
*TERMINATED: 05/05/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Barrett Bowdre**
Office of the Alabama Attorney General
501 Washington Ave.
P.O. Box 300152
Montgomery, AL 36130
334-353-8892
Fax: 334-353-8400
Email: barrett.bowdre@alabamaag.gov
*TERMINATED: 05/05/2022*
*ATTORNEY TO BE NOTICED*

**Thomas Alexander Wilson**
Jones Day / Washington, DC
51 Louisiana Ave NW
Washington, DC 20001
202-879-3939

**Pet. App'x  000023**

Email: thomas.wilson@alabamaag.gov
*TERMINATED: 05/05/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steve Marshall**
*in his official capacity as Attorney General*
*of the State of Alabama*

represented by **Benjamin Matthew Seiss**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Wesley Barnes**
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
202-220-9600
Email: bbarnes@cooperkirk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Arthur McKay**
Office of The Attorney General - Alabama
Constitutional Defense
501 Washington Ave
Ste 313
Montgomery, AL 36130
334-353-9110
Email: charles.mckay@alabamaag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ernest Mills**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H. Thompson**
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
202-220-9600
Email: dthompson@cooperkirk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edmund Gerard LaCour , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Henry W. Frampton**
Alliance Defending Freedom
15100 N. 90th Street
85260

**Pet. App'x  000024**

Scottsdale, AZ 85260
480-444-0020
Email: hframpton@adflegal.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James William Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John D. Ramer**
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
20036
Washington, DC 20036
202-220-9621
Email: jramer@cooperkirk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter A. Patterson**
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
202-220-9600
Email: ppatterson@cooperkirk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roger Greenwood Brooks**
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480-444-0020
Email: rbrooks@adflegal.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alexander Barrett Bowdre**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bethany C. Lee**
Office of The Attorney General - Alabama
501 Washington Ave
Montgomery, AL 36130
334-242-7381
Email: bethany.lee@alabamaag.gov
*ATTORNEY TO BE NOTICED*

**Thomas Alexander Wilson**

(See above for address)
*TERMINATED: 03/22/2023*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Daryl D. Bailey**                          represented by    **Alexander Barrett Bowdre**
*in his official capacity as District Attorney*              (See above for address)
*for Montgomery County*                                      *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Benjamin Matthew Seiss**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Brian Wesley Barnes**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Charles Arthur McKay**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Christopher Ernest Mills**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **David H. Thompson**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Edmund Gerard LaCour , Jr.**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Henry W. Frampton**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **James William Davis**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **John D. Ramer**
                                                             (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roger Greenwood Brooks**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bethany C. Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Alexander Wilson**
(See above for address)
*TERMINATED: 03/22/2023*
*ATTORNEY TO BE NOTICED*

**Defendant**

**C. Wilson Baylock**
*in his official capacity as District Attorney for Cullman County*

represented by **Alexander Barrett Bowdre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Matthew Seiss**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Wesley Barnes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Arthur McKay**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ernest Mills**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H. Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pet. App'x  000027**

**Edmund Gerard LaCour , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Henry W. Frampton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James William Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John D. Ramer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roger Greenwood Brooks**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bethany C. Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Alexander Wilson**
(See above for address)
*TERMINATED: 03/22/2023*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jessica Ventiere**
*in her official capacity as District Attorney*
*for Lee County*

represented by **Alexander Barrett Bowdre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Matthew Seiss**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Wesley Barnes**

Pet. App'x  000028

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Arthur McKay**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ernest Mills**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H. Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edmund Gerard LaCour , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Henry W. Frampton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James William Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John D. Ramer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roger Greenwood Brooks**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bethany C. Lee**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Thomas Alexander Wilson**
(See above for address)
*TERMINATED: 03/22/2023*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tom Anderson**
*in his official capacity District Attorney for*
*the 12th Judicial Circuit*

represented by **Alexander Barrett Bowdre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Matthew Seiss**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Wesley Barnes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Arthur McKay**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ernest Mills**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H. Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edmund Gerard LaCour , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Henry W. Frampton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James William Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pet. App'x 000030**

**John D. Ramer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roger Greenwood Brooks**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bethany C. Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Alexander Wilson**
(See above for address)
*TERMINATED: 03/22/2023*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Danny Carr**
*in his official capacity as District Attorney for Jefferson County*

represented by **Alexander Barrett Bowdre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Matthew Seiss**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Wesley Barnes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Arthur McKay**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ernest Mills**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H. Thompson**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edmund Gerard LaCour , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Henry W. Frampton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James William Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John D. Ramer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roger Greenwood Brooks**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bethany C. Lee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas Alexander Wilson**
(See above for address)
*TERMINATED: 03/22/2023*
*ATTORNEY TO BE NOTICED*

**<u>Amicus</u>**

**State of Arkansas**      represented by  **Mark Douglas Wilkerson**
Wilkerson & Bryan, P.C.
P.O. Box 830
Montgomery, AL 36104
334-265-1500
Email: mark@wilkersonbryan.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Michael A. Cantrell
Office of the Arkansas Attorney General
Office of the Arkansas Attorney General
323 Center Street
Suite 200
Little Rock, AR 72201
501-682-2401
Email: michael.cantrell@arkansasag.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of West Virginia**                represented by    **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Indiana**                represented by    **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Nebraska**                represented by    **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Louisiana**                represented by    **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**State of Texas**                     represented by **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**State of Mississippi**               represented by **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**State of Georgia**                   represented by **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**State of South Carolina**            represented by **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Oklahoma**                    represented by **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Alaska**                    represented by **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Utah**                    represented by **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Montana**                    represented by **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Arizona**                                    represented by **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of Missouri**                                   represented by **Mark Douglas Wilkerson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Cantrell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Academy of Pediatrics**                     represented by **Barry Alan Ragsdale**
Dominick Feld Hyde, P.C.
Litigation
1130 22nd St S - Ste 4000
Birmingham, AL 35205
205-536-8888
Fax: 205-271-9696
Email: BRagsdale@dfhlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
415 Mission Street
Suite 5400
San Francisco, CA 94105
415-591-7078
Email: clannin@cov.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
850 Tenth Street, NW
Washington, DC 20001
202-662-5294

**Pet. App'x  000036**

Email: jveta@cov.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dylan M. Silva**
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
415-591-6000
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, DC 20001
202-662-6000
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
Covington & Burling LLP
1999 Avenue of the Stars
1999 Avenue of the Stars
Ste 35th Floor
Los Angeles, CA 90067
424-332-4780
Email: mlanosa@cov.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Shea Goldberg**
Covington & Burling
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
202-662-5179
Email: ngoldberg@cov.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
Dominick Feld Hyde
1130 22nd St S
Ste 4000
Birmingham, AL 35205
205-536-8888
Email: RVANCE@DFHLAW.COM
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, DC 20001
202-662-5102
Email: wisasi@cov.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yuval Mor**
Covington & Burling
One CityCenter
One CityCenter
850 Tenth St NW
Washington, DC 20001
202-662-5874
Email: ymor@cov.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Alabama Chapter of the American Academy of Pediatrics**                represented by **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**

*(See above for address)*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Academic Pediatric Association**                    represented by  **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Academy of Child and**                    represented by  **Barry Alan Ragsdale**
**Adolescent Psychiatry**                                             (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Academy of Family Physicians**    represented by **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Academy of Nursing**                    represented by **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Association of Physicians for**        represented by **Barry Alan Ragsdale**
**Human Rights, Inc.**                                             (See above for address)
*doing business as*                                               *LEAD ATTORNEY*
GLMA: Health Professionals Advancing              *ATTORNEY TO BE NOTICED*
LGBTQ Equality

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American College of Obstetricians and Gynecologists**                represented by **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American College of Osteopathic
Pediatricians**                          represented by  **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American College of Physicians**      represented by  **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Medical Association**          represented by    **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Psychiatric Association**     represented by    **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Association of American Medical Colleges**     represented by    **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Association of Medical School Pediatric Department Chairs**          represented by  **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**The Endocrine Society**                    represented by    **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dylan M. Silva**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Shea Goldberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yuval Mor**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**National Association of Pediatric Nurse Practitioners**          represented by          **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Pediatric Endocrine Society**          represented by          **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Society for Adolescent Health and Medicine**                    represented by **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Society for Pediatric Research**                    represented by  **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Society of Pediatric Nurses**                    represented by  **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Societies for Pediatric Urology**                     represented by **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **World Professional Association for Transgender Health** | represented by | **Barry Alan Ragsdale** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dylan M. Silva**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Shea Goldberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yuval Mor**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Pediatric Society**                    represented by   **Barry Alan Ragsdale**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Smith Vance , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Isasi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Free Speech Coalition et al**                   represented by   **Phillip Leo Jauregui**
Jauregui LLC
2700 Corporate Drive
Suite 200
Birmingham, AL 35242
205-314-4822
Email: plj@jaureguillc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William J. Olson**
William J. Olson, P.C.
370 Maple Avenue West
Ste 4

**Pet. App'x  000053**

Vienna, VA 22180
703-356-5070
Fax: 703-356-5085
Email: wjo@mindspring.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Advancing American Freedom, Inc.**          represented by  **Albert Linch Jordan**
Wallace Jordan Ratliff & Brandt LLC
800 Shades Creek Parkway; Suite 400
Birmingham, AL 35209
205-874-0305
Fax: 205-874-3250
Email: bjordan@wallacejordan.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
Boyden Gray & Associates
801 17th St NW
Washington, DC
Washington DC, DC 20006
202-955-0620
Email: info@boydengrayassociates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
Boyden Gray & Associates PLLC
801 17th Street, N.W.
Suite 350
Washington, DC 20006
202-706-5488
Email:
mccotter@boydengrayassociates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Alabama Center for Law and Liberty**          represented by  **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**America First Legal Foundation**          represented by   **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Family Association, Inc.**          represented by   **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Americans United for Life**          represented by   **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**The Buckeye Institute**          represented by   **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Cardinal Institute for West Virginia Policy**
*Board Member of Concerned Women for America*

represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Center for Arizona Policy**

represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Center for Family and Human Rights**

represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Citizens United**                    represented by  **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Citizens United Foundation**         represented by  **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**The Commonwealth Foundation for**   represented by  **Albert Linch Jordan**
**Public Policy Alternative**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Concerned Women for America**                    represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Faith & Freedom Coalition**                    represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**The Family Action Council of Tennessee,**                    represented by **Albert Linch Jordan**
**Inc.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**The Foundation for Government**                    represented by **Albert Linch Jordan**
**Accountability**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Foundation for Moral Law**                    represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Frontline Policy Council**                    represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Independent Women's Forum**                    represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**John Locke Foundation**                    represented by   **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Judicial Watch, Inc.**                    represented by   **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**The Liberty Justice Center**                    represented by   **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Louisiana Family Forum**                    represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Manhattan Institute**                    represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Michigan Family Forum**                    represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Mountain States Legal Foundation**                    represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**The National Right to Work Committee**       represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Oklahoma Council of Public Affairs**       represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Parental Rights Foundation**       represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Pennsylvania Family Council**                    represented by    **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Private Citizen**                    represented by    **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Protect Our Kids**                    represented by    **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Public Interest Legal Foundation**

represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**The Religious RoundTable, Inc.**

represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Susan B. Anthony Pro-Life America**

represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Tea Party Patriots Action, Inc.**

represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Tennessee Eagle Forum**                    represented by    **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Texas Public Policy Foundation**           represented by    **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Robert B. Aderholt**                       represented by    **Albert Linch Jordan**
*U.S. Congressman*                                             (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>
**Mo Brooks**                           represented by   **Albert Linch Jordan**
*U.S. Congressman*                                       (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **C. Boyden Gray**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **R. Trent McCotter**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

<u>Amicus</u>
**Jerry L. Carl**                       represented by   **Albert Linch Jordan**
*U.S. Congressman*                                       (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **C. Boyden Gray**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **R. Trent McCotter**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

<u>Amicus</u>
**Barry Moore**                         represented by   **Albert Linch Jordan**
*U.S. Congressman*                                       (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **C. Boyden Gray**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **R. Trent McCotter**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**Gary Palmer**                      represented by **Albert Linch Jordan**
*U.S. Congressman*                                   (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **C. Boyden Gray**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **R. Trent McCotter**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Amicus**

**Mike Rogers**                      represented by **Albert Linch Jordan**
*U.S. Congressman*                                   (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **C. Boyden Gray**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **R. Trent McCotter**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Amicus**

**T. Christopher Elliott**           represented by **Albert Linch Jordan**
*Alabama Sen.*                                       (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **C. Boyden Gray**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **R. Trent McCotter**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Amicus**

**J.T. Waggoner**                    represented by **Albert Linch Jordan**
*Alabama Sen.*                                       (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Pet. App'x  000067**

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Chip Brown**                    represented by    **Albert Linch Jordan**
*Alabama Rep.*                                      (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **C. Boyden Gray**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **R. Trent McCotter**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Arnold Mooney**                 represented by    **Albert Linch Jordan**
*Alabama Rep.*                                      (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **C. Boyden Gray**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **R. Trent McCotter**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Matt Simpson**                  represented by    **Albert Linch Jordan**
*Alabama Rep.*                                      (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **C. Boyden Gray**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**Tim R. Wadsworth**                    represented by **Albert Linch Jordan**
*Alabama Rep.*                          (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

                                        **C. Boyden Gray**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

                                        **R. Trent McCotter**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

Amicus

**Caroline M. Aderholt**                represented by **Albert Linch Jordan**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

                                        **C. Boyden Gray**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

                                        **R. Trent McCotter**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

Amicus

**Hans Von Spakovsky**                  represented by **Albert Linch Jordan**
*Hon., Former Counsel to the Assistant* (See above for address)
*Attorney General for Civil Rights at the U.S.* *LEAD ATTORNEY*
*Department of Justice (2002-2005) and* *ATTORNEY TO BE NOTICED*
*former Commissioner on the Federal*
*Election Commission (2006-2007),*      **C. Boyden Gray**
*currently Senior Legal Fellow at the*  (See above for address)
*Heritage Foundation*                   *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

                                        **R. Trent McCotter**
                                        (See above for address)
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

**Allen Mendenhall**
*Executive Director, Manuel H. Johnson*
*Center for Political Economy*

represented by **Albert Linch Jordan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Boyden Gray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Trent McCotter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**National Republican Redistricting Trust**

represented by **Wendy Ann Madden**
Balch & Bingham LLP
1901 Sixth Avenue North
Birmingham, AL 35203
205-226-3447
Fax: 205-488-5889
Email: wmadden@balch.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Tea Party Patriots Foundation, Inc.**

represented by **Algert Swanson Agricola , Jr.**
Agricola Law
127 South 8th Street
Opelika, AL 36801
334-759-7557
Fax: 334-759-7558
Email: al@agricolalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher J. Gardner**
The Hilbert Law Firm, LLC
205 Norcross Strett
Roswell, GA 30075
770-551-9310
Fax: 770-551-9311
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kurt R. Hilbert**
The Hilbert Law Firm, LLC
205 Norcross Street
Roswell, GA 30075
770-551-9310
Fax: 770-551-9311

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Movant**

**Eagle Forum of Alabama**                    represented by  **John Mark Graham**
                                                Phelps Dunbar LLP
                                                2001 Park Place North
                                                Suite 700
                                                Birmingham, AL 35203
                                                205-716-5200
                                                Email: john.graham@phelps.com
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Movant**

**Southeast Law Institute**                   represented by  **John Mark Graham**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/19/2022 | 1 | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF against Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere (Filing fee $ 402.00 receipt number 4602066590.), filed by Kathy Noe, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Megan Poe, James Zoe, Jane Moe. (Attachments: # 1 Civil Cover Sheet, # 2 Receipt) (wcl, ) (Entered: 04/20/2022) |
| 04/20/2022 | 2 | Summons Issued as to Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere and returned to counsel for personal service by process server. (wcl, ) (Entered: 04/20/2022) |
| 04/20/2022 | 3 | **ORDER: The Honorable Liles C. Burke, United States District Judge for the Northern District of Alabama, was previously assigned two cases substantially similar to the above-captioned case, both of which were voluntarily dismissed on April 15, 2022. By order of the Chief Judge of the United States Court of Appeals for the Eleventh Circuit, all United States District Judges in the State of Alabama may preside over cases in any of the State's three federal judicial districts. In accordance with that order, and by the authority of the Court to manage the district court docket, promote the orderly and expeditious disposition of cases, and reassign a case to a judge who presided over a prior-related case, this case is REASSIGNED to Judge Burke. Judge Burke shall sit by designation and preside over this case in the United States District Court for the Middle District of Alabama. Signed by Honorable Judge R. Austin Huffaker, Jr on 4/20/2022. (wcl, )** (Entered: 04/20/2022) |
| 04/20/2022 | 4 | Case Reassigned to Honorable Judge Liles C. Burke as presiding judge; Honorable Judge R. Austin Huffaker, Jr no longer assigned to the case. (wcl, ) (Entered: 04/20/2022) |
| 04/20/2022 | 5 | **ORDER setting Status Conference for Friday, 4/22/2022, at 10:00 AM CDT in Courtroom 2F before Honorable Judge Liles C. Burke; Local counsel for Plaintiffs shall electronically serve a copy of this order on all non-local counsel for Plaintiffs** |

| | | **and on all counsel for Defendants. Signed by Honorable Judge Liles C. Burke on 4/20/2022. (furn: calendar, dh) (wcl, )** (Entered: 04/20/2022) |
|---|---|---|
| 04/20/2022 | 6 | MOTION for Leave to File *(Motion for Leave to Proceed Pseudonymously)* by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) (Entered: 04/20/2022) |
| 04/21/2022 | 7 | MOTION for Preliminary Injunction , MOTION for Temporary Restraining Order by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Attachments: # 1 Text of Proposed Order - Temporary Restraining Order, # 2 Text of Proposed Order - Preliminary Injunction)(Eagan, Melody) (Entered: 04/21/2022) |
| 04/21/2022 | 8 | BRIEF/MEMORANDUM in Support re 7 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order filed by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Attachments: # 1 Exhibit 1 - Hawkins Declaration, # 2 Exhibit 2 - Ladinsky Declaration, # 3 Exhibit 3 - Rosenthal Declaration, # 4 Exhibit 4 - Eknes-Tucker Declaration, # 5 Exhibit 5 - Boe Declaration, # 6 Exhibit 6 - Zoe Declaration, # 7 Exhibit 7 - Poe Declaration, # 8 Exhibit 8 - Noe Declaration, # 9 Exhibit 9 - Moe Declaration, # 10 Exhibit 10 - Koe Declaration)(Eagan, Melody) (Entered: 04/21/2022) |
| 04/21/2022 | 9 | Alias Summons issued as to Daryl D. Bailey and returned to Counsel for service via Process Server. (cwl, ) (Entered: 04/21/2022) |
| 04/21/2022 | 10 | NOTICE of Appearance by Edmund Gerard LaCour, Jr on behalf of Kay Ivey, Steve Marshall (LaCour, Edmund) (Entered: 04/21/2022) |
| 04/21/2022 | 11 | NOTICE of Appearance by Thomas Alexander Wilson on behalf of Kay Ivey, Steve Marshall (Wilson, Thomas) (Entered: 04/21/2022) |
| 04/21/2022 | 12 | NOTICE of Appearance by Alexander Barrett Bowdre on behalf of Kay Ivey, Steve Marshall (Bowdre, Alexander) (Entered: 04/21/2022) |
| 04/21/2022 | 13 | SUMMONS Returned Executed by Kathy Noe, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Megan Poe, James Zoe, Jane Moe. Danny Carr served on 4/21/2022, answer due 5/12/2022. (Eagan, Melody) (Entered: 04/21/2022) |
| 04/21/2022 | 14 | NOTICE of Appearance by Benjamin Matthew Seiss on behalf of Kay Ivey, Steve Marshall (Seiss, Benjamin) (Main Document 14 replaced on 4/21/2022 to attach the correct main PDF document to correct the style of the case) (cwl, ). (Entered: 04/21/2022) |
| 04/21/2022 | 15 | NOTICE of Correction re 14 Notice of Appearance, to attach the correct main PDF document to correct the style of the case. (Attachments: # 1 Correct Main doc entry 14 ) (cwl, ) (Entered: 04/21/2022) |
| 04/21/2022 | 16 | Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement sent to Kathy Noe, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Megan Poe, James Zoe, Jane Moe. Corporate Disclosures due by 5/2/2022. (Attachments: # 1 Conflict Statement Standing Order & Sample Format)(cwl, ) (Entered: 04/21/2022) |
| 04/21/2022 | 17 | Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement sent to Steve Marshall & Kay Ivey. Corporate Disclosures due by 5/2/2022. (Attachments: # 1 Conflict Statement Standing Order & Sample Format)(cwl, ) (Entered: 04/21/2022) |
| 04/21/2022 | 18 | NOTICE of Appearance by James William Davis on behalf of All Defendants (Davis, James) (Entered: 04/21/2022) |

| 04/21/2022 | 19 | Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement sent to Danny Carr, Tom Anderson, Jessica Ventiere, C. Wilson Baylock & Daryl D. Bailey. Corporate Disclosures due by 5/2/2022. (Attachments: # 1 Conflict Statement Standing Order & Sample Format)(cwl, ) (Entered: 04/21/2022) |
|---|---|---|
| 04/21/2022 | 20 | ANSWER to 1 Complaint, by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere.(Davis, James) (Entered: 04/21/2022) |
| 04/21/2022 | 21 | Corporate/Conflict Disclosure Statement re 19 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Tom Anderson. (Davis, James) Modified on 4/22/2022 to add link to def notice (cwl, ). (Entered: 04/21/2022) |
| 04/21/2022 | 22 | Corporate/Conflict Disclosure Statement re 19 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Daryl D. Bailey. (Davis, James) Modified on 4/22/2022 to add link to def notice (cwl, ). (Entered: 04/21/2022) |
| 04/21/2022 | 23 | Corporate/Conflict Disclosure Statement re 19 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by C. Wilson Baylock. (Davis, James) Modified on 4/22/2022 to add link to def notice (cwl, ). (Entered: 04/21/2022) |
| 04/21/2022 | 24 | Corporate/Conflict Disclosure Statement re 19 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Danny Carr. (Davis, James) Modified on 4/22/2022 to add link to def notice (cwl, ). (Entered: 04/21/2022) |
| 04/21/2022 | 25 | Corporate/Conflict Disclosure Statement re 17 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Kay Ivey. (Davis, James) Modified on 4/22/2022 to add link to def notice (cwl, ). (Entered: 04/21/2022) |
| 04/21/2022 | 26 | Corporate/Conflict Disclosure Statement re 17 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Steve Marshall. (Davis, James) Modified on 4/22/2022 to add link to def notice (cwl, ). (Entered: 04/21/2022) |
| 04/21/2022 | 27 | Corporate/Conflict Disclosure Statement re 19 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Jessica Ventiere. (Davis, James) Modified on 4/22/2022 to add link to def notice (cwl, ). (Entered: 04/21/2022) |
| 04/21/2022 | 28 | SUMMONS Returned Executed by Kathy Noe, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Megan Poe, James Zoe, Jane Moe. Daryl D. Bailey served on 4/21/2022, answer due 5/12/2022. (Eagan, Melody) (Entered: 04/21/2022) |
| 04/21/2022 | 29 | SUMMONS Returned Executed by Kathy Noe, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Megan Poe, James Zoe, Jane Moe. Tom Anderson served on 4/21/2022, answer due 5/12/2022. (Eagan, Melody) (Entered: 04/21/2022) |
| 04/21/2022 | 30 | SUMMONS Returned Executed by Kathy Noe, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Megan Poe, James Zoe, Jane Moe. Jessica Ventiere served on 4/21/2022, answer due 5/12/2022. (Eagan, Melody) (Entered: 04/21/2022) |
| 04/21/2022 | 31 | SUMMONS Returned Executed by Kathy Noe, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Megan Poe, James Zoe, Jane Moe. Steve Marshall served on 4/21/2022, answer due 5/12/2022. (Eagan, Melody) (Entered: 04/21/2022) |
| 04/21/2022 | 32 | SUMMONS Returned Executed by Kathy Noe, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Megan Poe, James Zoe, Jane Moe. Kay Ivey served on 4/21/2022, answer due 5/12/2022. (Eagan, Melody) (Entered: 04/21/2022) |
| 04/21/2022 | | ***PURSUANT TO THE 20 ANSWER - Attorney Edmund Gerard LaCour, Jr, Alexander Barrett Bowdre, Benjamin Matthew Seiss for Tom Anderson, Daryl D. Bailey, |

| | | C. Wilson Baylock, Danny Carr, Jessica Ventiere added. (NO pdf attached to this entry) (cwl, ) (Entered: 04/22/2022) |
|---|---|---|
| 04/22/2022 | 33 | Minute Entry for proceedings held before Honorable Judge Liles C. Burke: Status Conference held on 4/22/2022 (PDF available for court use only). (Court Reporter Christina Decker w/ND AL.) (dh) (Entered: 04/22/2022) |
| 04/22/2022 | 34 | **ORDER Setting Hearing on Motion: Evidentiary Hearing on Plfs' 7 motion for a temporary restraining order and/or a preliminary injunction is set for Thursday, 5/5/2022, at 9:00 a.m. CDT in Courtroom 2F before Honorable Judge Liles C. Burke; The hearing is scheduled to last no longer than two days with the time allotted strictly as represented by the parties during today's status conference; Forty-eight hours before the hearing begins, the parties shall file their proposed exhibits and a list of expected witnesses; On or before 4/27/2022, Dfts shall file a response to Plfs' 6 motion to proceed pseudonymously; Plfs' reply is due thirty-six hours after Dfts file their response; On or before 5/2/2022, Dfts shall file a response to Plfs' 7 motion for a temporary restraining order and/or a preliminary injunction; Plfs' reply is due thirty-six hours after Dfts file their response. Signed by Honorable Judge Liles C. Burke on 4/22/2022. (furn: calendar, dh) (wcl, )** (Entered: 04/22/2022) |
| 04/25/2022 | 35 | Corporate/Conflict Disclosure Statement re 16 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Paul A. Eknes-Tucker. (Eagan, Melody) Modified on 4/26/2022 to add link (cwl, ). (Main Document 35 replaced on 4/26/2022 to lock down fillable PDF) (cwl, ). (Entered: 04/25/2022) |
| 04/25/2022 | 36 | Corporate/Conflict Disclosure Statement re 16 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Rachel Koe. (Eagan, Melody) Modified on 4/26/2022 to add link (cwl, ). (Main Document 36 replaced on 4/26/2022 to lock down fillable PDF) (cwl, ). (Entered: 04/25/2022) |
| 04/25/2022 | 37 | Corporate/Conflict Disclosure Statement re 16 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Jane Moe. (Eagan, Melody) Modified on 4/26/2022 to add link (cwl, ). (Main Document 37 replaced on 4/26/2022 to lock down fillable PDF) (cwl, ). (Entered: 04/25/2022) |
| 04/25/2022 | 38 | Corporate/Conflict Disclosure Statement re 16 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Kathy Noe. (Eagan, Melody) Modified on 4/26/2022 to add link (cwl, ). (Main Document 38 replaced on 4/26/2022 to lock down fillable PDF) (cwl, ). (Entered: 04/25/2022) |
| 04/25/2022 | 39 | Corporate/Conflict Disclosure Statement re 16 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Megan Poe. (Eagan, Melody) Modified on 4/26/2022 to add link (cwl, ). (Main Document 39 replaced on 4/26/2022 to lock down fillable PDF) (cwl, ). (Entered: 04/25/2022) |
| 04/25/2022 | 40 | Corporate/Conflict Disclosure Statement re 16 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by Brianna Boe. (Eagan, Melody) Modified on 4/26/2022 to add link (cwl, ). (Main Document 40 replaced on 4/26/2022 to lock down fillable PDF) (cwl, ). (Entered: 04/25/2022) |
| 04/25/2022 | 41 | Corporate/Conflict Disclosure Statement re 16 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement by James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add link (cwl, ). (Main Document 41 replaced on 4/26/2022 to lock down fillable PDF) (cwl, ). (Entered: 04/25/2022) |
| 04/26/2022 | 42 | Motion for Michael B. Shortnacy to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210502.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add |

| | | |
|---|---|---|
| | | attorney's name to text & clarify that exhibit A is contained within the main PDF document (cwl, ). (Entered: 04/26/2022) |
| 04/26/2022 | 43 | Motion for Brent P. Ray to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210505.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add attorney's name to text & clarify that exhibit A is contained within the main PDF (cwl, ). (Entered: 04/26/2022) |
| 04/26/2022 | 44 | Motion for Abigail Hoverman Terry to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210507.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add attorney's name to text & clarify that exhibit A is contained within the main PDF (cwl, ). (Entered: 04/26/2022) |
| 04/26/2022 | 45 | Motion for Misty L. Peterson to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210508.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add attorney's name to text & clarify exhibit A is contained within the main PDF (cwl, ). (Entered: 04/26/2022) |
| 04/26/2022 | 46 | Motion for Gilbert Olusegun Oladeinbo to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number CALMDC-3210509.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add attorney's name to text & clarify exhibit A is contained within the main PDF (cwl, ). (Entered: 04/26/2022) |
| 04/26/2022 | 47 | Motion for Adam Reinke to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210527.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add attorney's name to text & clarify that exhibit A is contain within the main PDF (cwl, ). (Entered: 04/26/2022) |
| 04/26/2022 | 48 | Motion for Asaf Orr to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210529.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add attorney's name to text & clarify that exhibit A is contained within the main PDF (cwl, ). (Entered: 04/26/2022) |
| 04/26/2022 | 49 | Motion for Jessica Lynn Stone to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210531.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add attorney's name to text & clarify that exhibit A is contained within the main PDF (cwl, ). (Entered: 04/26/2022) |
| 04/26/2022 | 50 | Motion for Jennifer L. Levi to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210536.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add attorney's name to text & clarify that exhibit A is contained within the main PDF (cwl, ). (Entered: 04/26/2022) |
| 04/26/2022 | 51 | Motion for Cynthia Cheng-Wun Weaver to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210537.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add attorney's name to text & clarify that exhibit A is contained within the main PDF(cwl, ). (Entered: 04/26/2022) |

| | | |
|---|---|---|
| 04/26/2022 | 52 | Motion for Scott D. McCoy to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210538.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/26/2022 to add attorney's name to text & clarify exhibit A is contained within the main PDF (cwl, ). (Entered: 04/26/2022) |
| 04/26/2022 | 53 | Motion for Sarah Warbelow to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3210892.) by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 4/27/2022 to add attorney's name to text & to clarify exhibit A is contained within the main PDF (cwl, ). (Entered: 04/26/2022) |
| 04/27/2022 | 54 | RESPONSE *in Partial Opposition* to Motion re 6 MOTION for Leave to File *(Motion for Leave to Proceed Pseudonymously)* filed by Kay Ivey, Steve Marshall, Danny Carr, Tom Anderson, Jessica Ventiere, C. Wilson Baylock, Daryl D. Bailey, . (LaCour, Edmund) Modified on 4/27/2022 to clarify text (cwl, ). Modified on 4/27/2022 to add additional defs as filers (cwl, ). (Entered: 04/27/2022) |
| 04/27/2022 | 55 | NOTICE of Appearance by Thomas Alexander Wilson on behalf of Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Jessica Ventiere (Wilson, Thomas) (Entered: 04/27/2022) |
| 04/28/2022 | 56 | Motion for Christopher E. Mills to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3212297.) by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit Certificate of Good Standing)(LaCour, Edmund) Modified on 4/28/2022 to add attorney's name to text (cwl, ). (Entered: 04/28/2022) |
| 04/28/2022 | | ***PURSUANT TO THE 56 MOTION - Attorney Christopher Ernest Mills for Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere added. (NO pdf attached to this entry) (cwl, ) (Entered: 04/28/2022) |
| 04/28/2022 | 57 | REPLY to Response to Motion re 6 MOTION for Leave to File *(Motion for Leave to Proceed Pseudonymously)* filed by Brianna Boe, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe, Paul A. Eknes-Tucker. (Attachments: # 1 Exhibit A - Supplemental Declaration of Rachel Koe, MD)(Eagan, Melody) Modified on 4/29/2022 to add additional PLF as filer (cwl, ). (Entered: 04/28/2022) |
| 04/29/2022 | 58 | MOTION to Intervene by United States of America. (Attachments: # 1 Memorandum of Law, # 2 Exhibit Attorney Generals Certification, # 3 Exhibit Complaint in Intervention) (Cheek, Jason) (Entered: 04/29/2022) |
| 04/29/2022 | 59 | Corporate/Conflict Disclosure Statement by United States of America. (Cheek, Jason) (Entered: 04/29/2022) |
| 04/29/2022 | 60 | MOTION for Leave to File Excess Pages *(for Forthcoming Motion for a Temporary Restraining Order and a Preliminary Injunction)* by United States of America. (Cheek, Jason) (Entered: 04/29/2022) |
| 04/29/2022 | 61 | **TEXT ORDER: If any party has opposition to either the Government's 58 motion to intervene or 60 motion for leave to file excess pages, they shall file a response no later than 5/2/2022, at 12:00 p.m. CDT. Signed by Honorable Judge Liles C. Burke on 4/29/2022. (No pdf attached to this entry) (wcl, )** (Entered: 04/29/2022) |
| 04/29/2022 | 62 | MOTION for Preliminary Injunction , MOTION for Temporary Restraining Order by United States of America. (Attachments: # 1 Memorandum of Law, # 2 Antommaria Declaration)(Cheek, Jason) (Entered: 04/29/2022) |

| 04/29/2022 | | MEMORANDUM in Support re 62 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order filed by United States of America. (No pdf attached to this entry - see doc 62 for pdf) (cwl, ) (Entered: 05/02/2022) |
| 04/29/2022 | | ***PURSUANT TO THE 58 MOTION - Attorney Sandra Jean Stewart, Lane H. Woodke, Stephen D Wadsworth, Alyssa C. Lareau, Renee Williams, Kaitlin Toyama for United States of America added. (No pdf attached to this entry) (cwl, ) (Entered: 05/02/2022) |
| 04/29/2022 | | ***PURSUANT TO THE 58 MOTION - Attorney Elizabeth Prim Formby Escalona, John Michael Powers, Coty Rae Montag for United States of America added. (No pdf attached to this entry) (cwl, ) (Entered: 05/02/2022) |
| 05/02/2022 | 63 | RESPONSE *in Partial Opposition* to Motion re 60 MOTION for Leave to File Excess Pages *(for Forthcoming Motion for a Temporary Restraining Order and a Preliminary Injunction)*, 58 MOTION to Intervene filed by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit Harris Declaration)(LaCour, Edmund) Modified on 5/2/2022 to clarify text (cwl, ). (Entered: 05/02/2022) |
| 05/02/2022 | 64 | RESPONSE to Motion re 58 MOTION to Intervene *(PLAINTIFFS' RESPONSE TO THE UNITED STATES MOTION TO INTERVENE AND DEFENDANTS' RESPONSE* filed by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) (Entered: 05/02/2022) |
| 05/02/2022 | 65 | REPLY to Response to Motion re 60 MOTION for Leave to File Excess Pages *(for Forthcoming Motion for a Temporary Restraining Order and a Preliminary Injunction)*, 58 MOTION to Intervene filed by United States of America. (Cheek, Jason) (Entered: 05/02/2022) |
| 05/02/2022 | 66 | NOTICE of Appearance by Lane Hines Woodke on behalf of United States of America (Woodke, Lane) (Entered: 05/02/2022) |
| 05/02/2022 | 67 | NOTICE of Appearance by Coty Rae Montag on behalf of United States of America (Montag, Coty) (Entered: 05/02/2022) |
| 05/02/2022 | 68 | NOTICE of Appearance by John Michael Powers on behalf of United States of America (Powers, John) (Entered: 05/02/2022) |
| 05/02/2022 | 69 | NOTICE *of Filing of Evidence in Opposition to Plaintiffs' Motion for Preliminary Injunction* by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40)(Davis, James) Modified on 5/3/2022 to clarify text (cwl, ). (Entered: 05/02/2022) |
| 05/02/2022 | 70 | Motion for Michael A. Cantrell to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3214501.) by State of Arkansas, State of Alaska, State of Arizona, State of Georgia, State of Indiana, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, State of Oklahoma, State of South Carolina, State of Texas, State of Utah, State of West Virginia . (Wilkerson, Mark) Modified on 5/3/2022 to add attorney's name to text & clarify exhibit A is contained |

| | | within the main PDF (cwl, ). Modified on 5/3/2022 to add additional filers (cwl, ). (Entered: 05/02/2022) |
|---|---|---|
| 05/02/2022 | 71 | First MOTION for Leave to File *Amici Brief* by State of Arkansas, State of Alaska, State of Arizona, State of Georgia, State of Indiana, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, State of Oklahoma, State of South Carolina, State of Texas, State of Utah and State of West Virginia . (Wilkerson, Mark) Modified on 5/3/2022 to add additional filers (cwl, ). (Entered: 05/02/2022) |
| 05/02/2022 | 72 | BRIEF/MEMORANDUM in Support re 71 First MOTION for Leave to File *Amici Brief* filed by State of Arkansas, State of Alaska, State of Arizona, State of Georgia, State of Indiana, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, State of Oklahoma, State of South Carolina, State of Texas, State of Utah and State of West Virginia . (Wilkerson, Mark) Modified on 5/3/2022 to add additional filers (cwl, ). (Entered: 05/02/2022) |
| 05/02/2022 | 73 | Corporate/Conflict Disclosure Statement by State of Arkansas, State of Alaska, State of Arizona, State of Georgia, State of Indiana, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Nebraska, State of Oklahoma, State of South Carolina, State of Texas, State of Utah and State of West Virginia . (Wilkerson, Mark) Modified on 5/3/2022 to remove erroneous link (cwl, ). Modified on 5/3/2022 to add additional filers (cwl, ). (Entered: 05/02/2022) |
| 05/02/2022 | 74 | RESPONSE in Opposition re 7 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order filed by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere. (LaCour, Edmund) (Entered: 05/02/2022) |
| 05/02/2022 | 75 | **ORDER: A hearing on the United States's 58 motion to intervene is set for Wednesday, 5/4/2022, at 1:15 p.m. CDT; The hearing will occur in Courtroom 2F of the Frank M. Johnson, Jr., United States Courthouse Complex; Since the State of Alabama has no opposition to the United States's 60 motion to file excess pages, the Court will grant that motion should the Court grant the United States's motion to intervene. Signed by Honorable Judge Liles C. Burke on 5/2/2022. (Furnished: Calendar & All CRDs)(amf, )** (Entered: 05/02/2022) |
| 05/02/2022 | 76 | **ORDER: the Court ORDERS as follows: 1. Court guests, including the press and non-participants, are prohibited from possessing and using any electronic devices in Courtroom 2F during the upcoming hearings in this case; The attorneys and members of their respective staffs may possess and use electronic or photographic technology in Courtroom 2F for the sole purpose of presenting evidence; 2. Members of the press and media shall be allowed to possess cellular phones, laptop computers, and/or tablets in Courtroom 2E and the media lounge provided that these electronic devices shall be allowed: (1) for the purposes of taking notes, personal communication unrelated to the proceedings, and accessing information only; and (2) on the condition that no photographs, audio or video recording, or live broadcasting, including digitally sharing, posting, or microblogging via a social or other media site, be conducted in the courthouse; All devices shall be registered with court security upon entry into the building; All are reminded of the prohibitions regarding photographing, recording, and/or broadcasting court proceedings, as further set out in order. Signed by Honorable Judge Liles C. Burke on 5/2/2022. (amf, )** (Entered: 05/02/2022) |
| 05/02/2022 | | Exhibit List by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere. (No pdf attached to this entry - see doc 69 for pdf) (cwl, ) (Entered: 05/03/2022) |

| | | |
|---|---|---|
| 05/02/2022 | 102 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of STATUS CONFERENCE (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 4/22/2022, before Judge Liles C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number 256-506-0085. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 5/23/2022. Redacted Transcript Deadline set for 6/2/2022. Release of Transcript Restriction set for 8/1/2022. (cwl, ) (Entered: 05/12/2022) |
| 05/03/2022 | 77 | Witness List by Kay Ivey, Steve Marshall, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Tom Anderson, Jessica Ventiere. (Davis, James) Modified on 5/3/2022 to add additional filers left off by e-filer (cwl, ). (Entered: 05/03/2022) |
| 05/03/2022 | 78 | Exhibit List by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe.. (Attachments: # 1 Exhibit 1 Boe, Brianna, # 2 Exhibit 2. Eknes-Ticker, Paul, # 3 Exhibit 3. Hawkins, Linda, # 4 Exhibit 4. Koe, Rachel, # 5 Exhibit 5. Koe, Rachel Supp, # 6 Exhibit 6. Ladinsky, Morissa, # 7 Exhibit 7. Ladinsky CV 11 1 21, # 8 Exhibit 8. Moe, Jane, # 9 Exhibit 9. Noe, Kathy, # 10 Exhibit 10. Poe, Megan, # 11 Exhibit 11. Rosenthal, Stephen, # 12 Exhibit 12. Zoe, James, # 13 Exhibit 13. A. Declaration, # 14 Exhibit 14. E. Guidelines, # 15 Exhibit 15. AACAP Statement, # 16 Exhibit 16. E. Society 2020 Statement, # 17 Exhibit 17. WPATH, # 18 Exhibit 18. USPATH, # 19 Exhibit 19. Yale Report, # 20 Exhibit 20. ACP, # 21 Exhibit 21. AMA, # 22 Exhibit 22. Amer Academy Peds, # 23 Exhibit 23. APA Position Statement, # 24 Exhibit 24. Endocrine Ped Statement, # 25 Exhibit 25. Trans Youth Fact Sheet, # 26 Exhibit 26. WPATH Joint Statement, # 27 Exhibit 27. Joint Statement, # 28 Exhibit 28. Statement re AL Law, # 29 Exhibit 29. TURBAN, # 30 Exhibit 30. Am Academy Peds, # 31 Exhibit 31. Ala Psych, # 32 Exhibit 32. Am Academy Peds, # 33 Exhibit 33. De VRIES, # 34 Exhibit 34. COSTA Support, # 35 Exhibit 35. DELARA, # 36 Exhibit 36. TURBAN, # 37 Exhibit 37. TURBAN, # 38 Exhibit 38. Judgment, # 39 Exhibit 39. AB v CV, # 40 Exhibit 40. Photos Under Seal, # 41 Exhibit 41. UAB Consent Form, # 42 Exhibit 42. ACHILLE, # 43 Exhibit 43. TORDOFF, # 44 Exhibit 44. Allen)(Eagan, Melody) (Attachment 40 replaced on 5/16/2022 TO ADD SEALED EXHIBIT TO THE DOCKET) (cwl, ). (Entered: 05/03/2022) |
| 05/03/2022 | 79 | Witness List by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) (Entered: 05/03/2022) |
| 05/03/2022 | 80 | Exhibit List *and Witness List* by United States of America.. (Attachments: # 1 Exhibit Diagnostic & Statistical Manual of Mental Disorders, # 2 Exhibit American Academy of Pediatrics 2018 Policy Statement, # 3 Exhibit Endocrine Society Clinical Practice Guideline, # 4 Exhibit WPATH Standards of Care, # 5 Exhibit Alabama Psychological Association Statement, # 6 Exhibit American Academy of Pediatrics 2022 Statement, # 7 Exhibit Antommaria Decl., # 8 Exhibit Antommaria Bibliography, # 9 Exhibit Antommaria Curriculum Vitae, # 10 Exhibit FDA Article, # 11 Exhibit Article: Biased Science, # 12 Exhibit ABC News Article)(Cheek, Jason) (Entered: 05/03/2022) |
| 05/03/2022 | 81 | *Supplemental* Exhibit List by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit D41)(Davis, James) Modified on 5/3/2022 to clean up text (cwl, ). (Additional attachment(s) added on 5/3/2022: # 2 Corrected Certificate of Service) (cwl, ). (Entered: 05/03/2022) |
| 05/03/2022 | | Witness List by United States of America. (NO pdf attached to this entry - see doc 80 for pdf)(cwl, ) (Entered: 05/03/2022) |

| 05/03/2022 | 82 | **TEXT ORDER: granting** 42 **Motion for Michael B. Shortnacy to Appear Pro Hac Vice; granting** 43 **Motion for Brent P. Ray to Appear Pro Hac Vice; granting** 44 **Motion for Abigail Hoverman Terry to Appear Pro Hac Vice; granting** 45 **Motion for Misty L. Peterson to Appear Pro Hac Vice; granting** 46 **Motion for Gilbert Olusegun Oladeinbo to Appear Pro Hac Vice; granting** 47 **Motion for Adam Reinke to Appear Pro Hac Vice; granting** 48 **Motion for Asaf Orr to Appear Pro Hac Vice; granting** 49 **Motion for Jessica Lynn Stone to Appear Pro Hac Vice; granting** 50 **Motion for Jennifer L. Levi to Appear Pro Hac Vice; granting** 51 **Motion for Cynthia Cheng-Wun Weaver to Appear Pro Hac Vice; granting** 52 **Motion for Scott D. McCoy to Appear Pro Hac Vice; granting** 53 **Motion for Sarah Warbelow to Appear Pro Hac Vice; granting** 56 **Motion for Christopher E. Mills to Appear Pro Hac Vice; granting** 70 **Motion for Michael A. Cantrell to Appear Pro Hac Vice. Signed by Honorable Judge Liles C. Burke on 5/3/2022. (NO pdf attached to this entry) (cwl, )** (Entered: 05/03/2022) |
| 05/03/2022 | 83 | **ORDER: the Plaintiffs' Motion for Leave to Proceed Pseudonymously (Doc.** 6 **) is GRANTED. The Plaintiffs identified as Brianna Boe, Michael Boe, James Zoe, Zachary Zoe, Megan Poe, Allison Poe, Kathy Noe, Christopher Noe, and Rachel Koe, M.D. may proceed under pseudonyms. Signed by Honorable Judge Liles C. Burke on 5/3/2022. (cwl, )** (Entered: 05/03/2022) |
| 05/03/2022 | 84 | Unopposed MOTION for Leave to File Exhibit Under Seal re 78 Exhibit List by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Eagan, Melody) Modified on 5/3/2022 to add link & clean up text (cwl, ). (Entered: 05/03/2022) |
| 05/03/2022 | 85 | Joint MOTION to Dismiss *Defendant Kay Ivey* by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe, Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere. (Eagan, Melody) Modified on 5/3/2022 to add defs as filers (cwl, ). (Entered: 05/03/2022) |
| 05/03/2022 | 86 | NOTICE of Appearance by Alyssa C. Lareau on behalf of United States of America (Lareau, Alyssa) (Entered: 05/03/2022) |
| 05/03/2022 | 87 | NOTICE *of Filing Correct Defense Exhibit 41* re 81 Supplemental Exhibit List by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere (Attachments: # 1 Exhibit)(Davis, James) Modified on 5/4/2022 to clean up text & to add link (cwl, ). (Entered: 05/03/2022) |
| 05/03/2022 | 88 | **TEXT ORDER: At the end of tomorrow's proceedings, the parties should be prepared to give their opening statements on Plaintiffs' motion for preliminary injunction. The parties' arguments shall not exceed 25 minutes each. Signed by Honorable Judge Liles C. Burke on 5/3/2022. (NO pdf attached to this entry) (cwl, )** (Entered: 05/03/2022) |
| 05/04/2022 | 89 | REPLY BRIEF *IN SUPPORT OF PLAINTIFFS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION* re 7 MOTION for Preliminary Injunction , MOTION for Temporary Restraining Order filed by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Eagan, Melody) Modified on 5/4/2022 to clarify text & add link (cwl, ). (Entered: 05/04/2022) |
| 05/04/2022 | 90 | UNOPPOSED MOTION to Seal *PORTIONS OF PRELIMINARY INJUNCTION HEARING* by Rachel Koe, Megan Poe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Eagan, Melody) Modified on 5/4/2022 to remove Brianna Boe, Paul A. |

| | | Eknes-Tucker, Jane Moe, Kathy Noe, James Zoe as filers & clean up text (cwl, ). |
|---|---|---|
| 05/04/2022 | 91 | MOTION for Leave to File Brief of Amici Curiae by American Academy of Pediatrics, Alabama Chapter of the American Academy of Pediatrics, Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Association of Physicians for Human Rights, Inc. d/b/a GLMA: Health Professionals Advancing LGBTQ Equality, American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Psychiatric Association, Association of American Medical Colleges, Association of Medical School Pediatric Department Chairs, The Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, Societies for Pediatric Urology, World Professional Association for Transgender Health, American Pediatric Society. (Attachments: # 1 Exhibit Proposed Amicus Brief)(Ragsdale, Barry) Modified on 5/5/2022 to add as also filed on behalf of American Pediatric Society. (amf, ). (Entered: 05/04/2022) |
| 05/04/2022 | 92 | Amended Intervenor COMPLAINT , filed by United States of America. (Attachments: # 1 Certificate of the Attorney General)(Cheek, Jason) (Additional attachment(s) added on 5/5/2022: # 2 Certificate of Service) (amf, ). (Entered: 05/04/2022) |
| 05/04/2022 | | ***PURSUANT TO THE 91 MOTION - Attorneys Cortlin H. Lannin, D. Jean Veta, William Isasi, Elizabeth Baia, Michael Lanosa, & Robert S. Vance, III for Academic Pediatric Association, Alabama Chapter of the American Academy of Pediatrics, American Academy of Child and Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing,Cortlin H. Lannin,D. Jean Veta,William Isasi,Elizabeth Baia,Michael Lanosa,Robert S. Vance, III for American Academy of Pediatrics, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, American Psychiatric Association, Association of American Medical Colleges, Association of Medical School Pediatric Department Chairs, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Societies for Pediatric Urology, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, The Endocrine Society & World Professional Association for Transgender Health added. (No PDF attached to this entry) (amf, ) (Entered: 05/05/2022) |
| 05/04/2022 | 93 | Minute Entry for proceedings held before Honorable Judge Liles C. Burke: Motion Hearing held on 5/4/2022 re 58 MOTION to Intervene filed by United States of America (PDF available for court use only). (Court Reporter Christine Decker.) (kcf, ) (Entered: 05/05/2022) |
| 05/05/2022 | | **ORAL ORDER granting 85 Joint Motion to Dismiss Defendant Kay Ivey. Entered by Honorable Judge Liles C. Burke on 5/5/22. (dh)** (Entered: 05/05/2022) |
| 05/05/2022 | | Minute Entry for proceedings held before Honorable Judge Liles C. Burke: Evidentiary Hearing began on 5/5/2022 (NO PDF available; see final minute entry) (Court Reporter Christina Decker w/ND AL.) (dh) (Entered: 05/05/2022) |
| 05/06/2022 | 96 | Minute Entry for proceedings held before Honorable Judge Liles C. Burke: Evidentiary Hearing held on 5/6/2022 (PDF available for court use only). (Court Reporter Christina Decker w/ND AL.) (Attachments: # 1 Witness List, # 2 Pl. Exhibit List, # 3 PX1, # 4 PX2, # 5 PX3, # 6 PX4, # 7 PX5, # 8 PX6, # 9 PX7, # 10 PX8, # 11 PX9, # 12 PX10, # 13 PX11, # 14 PX12, # 15 PX13, # 16 PX14, # 17 PX15, # 18 PX16, # 19 PX17, # 20 |

PX48, # 23 PX19, # 24 PX20, # 25 PX21, # 26 PX22, # 27 PX23, # 28 PX24, # 29 PX25, # 30 PX26, # 31 PX27, # 32 PX28, # 33 PX29, # 34 PX30, # 35 PX31, # 36 PX32, # 37 PX33, # 38 PX34, # 39 PX35, # 40 PX36, # 41 PX37, # 42 PX38, # 43 PX39, # 44 PX40, # 45 PX41, # 46 PX42, # 47 PX43, # 48 PX44, # 49 PX45, # 50 Intervenor (USA) Exhibit List, # 51 USA X1, # 52 USA X2, # 53 USA X3, # 54 USA X4, # 55 USA X5, # 56 USA X6, # 57 USA X7, # 58 USA X8, # 59 USA X9, # 60 USA X10, # 61 USA X11, # 62 USA X12, # 63 Def. Exhibit List, # 64 DX1, # 65 DX2, # 66 DX3, # 67 DX4, # 68 DX5, # 69 DX6, # 70 DX7, # 71 DX8, # 72 DX9, # 73 DX10, # 74 DX11, # 75 DX12, # 76 DX13, # 77 DX14, # 78 DX15, # 79 DX16, # 80 DX17, # 81 DX18, # 82 DX19, # 83 DX20, # 84 DX21, # 85 DX22, # 86 DX23, # 87 DX24, # 88 DX25, # 89 DX26, # 90 DX27, # 91 DX28, # 92 DX29, # 93 DX30, # 94 DX31, # 95 DX32, # 96 DX33, # 97 DX34, # 98 DX35, # 99 DX36, # 100 DX37, # 101 DX38, # 102 DX39, # 103 DX40, # 104 DX41, # 105 DX42 - DVD Conventionally Filed) (dh) Modified on 6/8/2022 to reflect exhibits returned to counsel at conclusion of hearing. USB DRIVES (3) with all admitted exhibits to remain in court record. USB Drives and DVD placed in accordion folder with file in Clerk's office. (dmn, ) (Entered: 05/10/2022)

| 05/08/2022 | 94 | **PROCEDURAL ORDERS & STATUS OF FORTHCOMING OPINION: the United States's 58 motion to intervene is GRANTED; the 71 & 91 motions for leave to proceed as amici curiae are GRANTED; The Court will consider the briefs in ruling on the motions for a preliminary injunction; the 84 & 90 motions to seal are GRANTED; The Court has made very substantial progress toward crafting an opinion in this matter and expects to file the opinion by the end of this week, if not sooner. Signed by Honorable Judge Liles C. Burke on 5/8/2022. (amf, )** (Entered: 05/08/2022) |
| 05/08/2022 | 104 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of PRELIMINARY INJUNCTION HEARING VOLUME I (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 5/5/2022, before Judge Liles C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number 256-506-0085. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 5/31/2022. Redacted Transcript Deadline set for 6/8/2022. Release of Transcript Restriction set for 8/8/2022. (cwl, ) (Entered: 05/12/2022) |
| 05/08/2022 | 105 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of PRELIMINARY INJUNCTION HEARING VOLUME II (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 5/6/2022, before Judge Liles C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number 256-506-0085. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 5/31/2022. Redacted Transcript Deadline set for 6/8/2022. Release of Transcript Restriction set for 8/8/2022. (cwl, ) (Entered: 05/12/2022) |
| 05/08/2022 | 106 | (SEALED TRANSCRIPT) NOTICE OF FILING OF OFFICIAL TRANSCRIPT of PRELIMINARY INJUNCTION HEARING VOLUME I held on 5/5/2022, before Judge Liles C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number 256-506-0085. (cwl, ) (Entered: 05/12/2022) |
| 05/09/2022 | 95 | BRIEF/MEMORANDUM in Opposition re 7 MOTION for Preliminary Injunction MOTION for Temporary Restraining Order *BRIEF OF 15 STATES AS AMICI CURIAE* filed by State of Alaska, State of Arizona, State of Arkansas, State of Georgia, State of Indiana, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, |

| | | State of Nebraska, State of Oklahoma, State of South Carolina, State of Texas, State of Utah, State of West Virginia. (Cantrell, Michael) (Entered: 05/09/2022) |
|---|---|---|
| 05/11/2022 | 97 | Motion for Robert S. Vance III to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3219952.) by Academic Pediatric Association, Alabama Chapter of the American Academy of Pediatrics, American Academy of Child and Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, American Psychiatric Association, Association of American Medical Colleges, Association of Medical School Pediatric Department Chairs, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Societies for Pediatric Urology, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, The Endocrine Society, World Professional Association for Transgender Health. (Ragsdale, Barry) Modified on 5/12/2022 to add attorney's name to text & clarify that Exhibit A is contained within the main PDF (cwl, ). (Entered: 05/11/2022) |
| 05/11/2022 | 98 | Motion for D. Jean Veta to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3219954.) by Academic Pediatric Association, Alabama Chapter of the American Academy of Pediatrics, American Academy of Child and Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, American Psychiatric Association, Association of American Medical Colleges, Association of Medical School Pediatric Department Chairs, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Societies for Pediatric Urology, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, The Endocrine Society, World Professional Association for Transgender Health. (Ragsdale, Barry) Modified on 5/12/2022 to add attorney's name to text & clarify exhibit A is contained within the main PDF (cwl, ). (Entered: 05/11/2022) |
| 05/11/2022 | 99 | Motion for Cortlin H. Lannin to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3219955.) by Academic Pediatric Association, Alabama Chapter of the American Academy of Pediatrics, American Academy of Child and Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, American Psychiatric Association, Association of American Medical Colleges, Association of Medical School Pediatric Department Chairs, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Societies for Pediatric Urology, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, The Endocrine Society, World Professional Association for Transgender Health. (Ragsdale, Barry) Modified on 5/12/2022 to add attorney's name to text & clarify exhibit A is contained within the main PDF (cwl, ). (Entered: 05/11/2022) |
| 05/11/2022 | 100 | Motion for William Isasi to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3219959.) by Academic Pediatric Association, Alabama Chapter of the American Academy of Pediatrics, American Academy of Child and Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, American Association of Physicians for Human Rights, |

| | | Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, American Psychiatric Association, Association of American Medical Colleges, Association of Medical School Pediatric Department Chairs, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Societies for Pediatric Urology, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, The Endocrine Society, World Professional Association for Transgender Health. (Ragsdale, Barry) Modified on 5/12/2022 to add attorney's name to text & clarify exhibit A is contained within the main PDF (cwl, ). (Entered: 05/11/2022) |
|---|---|---|
| 05/11/2022 | 101 | Motion for Michael Lanosa to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3219970.) by Academic Pediatric Association, Alabama Chapter of the American Academy of Pediatrics, American Academy of Child and Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American Academy of Pediatrics, American Association of Physicians for Human Rights, Inc., American College of Obstetricians and Gynecologists, American College of Osteopathic Pediatricians, American College of Physicians, American Medical Association, American Pediatric Society, American Psychiatric Association, Association of American Medical Colleges, Association of Medical School Pediatric Department Chairs, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Societies for Pediatric Urology, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, The Endocrine Society, World Professional Association for Transgender Health. (Ragsdale, Barry) Modified on 5/12/2022 to add attorney's name to text & clarify exhibit A is contained within the main PDF (cwl, ). (Entered: 05/11/2022) |
| 05/11/2022 | 103 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of HEARING (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 5/4/2022, before Judge Liles C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number 256-506-0085. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 6/1/2022. Redacted Transcript Deadline set for 6/13/2022. Release of Transcript Restriction set for 8/9/2022. (cwl, ) (Entered: 05/12/2022) |
| 05/13/2022 | 107 | **OPINION AND ORDER: the Court GRANTS in part Plfs' 7 motion for preliminary injunction and ENJOINS Dfts from enforcing Section 4(a)(1)-(3) of the Act pending trial. The Court GRANTS in part the United States's 62 motion for preliminary injunction to the same degree and effect. All other provisions of the Act remain enforceable. Signed by Honorable Judge Liles C. Burke on 5/13/2022. (wcl, )** (Main Document 107 replaced on 5/17/2022 to correct a case number referenced in the PDF) (cwl, ). (Main Document 107 replaced on 5/19/2022 to correct syntax) (cwl, ). (Entered: 05/13/2022) |
| 05/16/2022 | 108 | NOTICE OF APPEAL by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere of Order Granting Preliminary Injunction (Doc. 107 ) entered on 5/13/2022. ( Filing fee $ 505.00 receipt number AALMDC-3221733.) (LaCour, Edmund) Modified on 5/17/2022 to create link. (dmn, ) (Entered: 05/16/2022) |
| 05/17/2022 | 109 | Appeal Instructions re 108 Notice of Appeal sent to Edmund LaCour, counsel for Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere. A copy of the Transcript Information Form must be mailed to each court |

| | | |
|---|---|---|
| | | reporter from whom you are requesting a transcript. (Attachments: # 1 Transcript Information Form)(dmn, ) (Entered: 05/17/2022) |
| 05/17/2022 | 110 | NOTICE of Correction re 107 OPINION AND ORDER, to attach the correct main PDF document to correct a case number referenced in the PDF. (Attachments: # 1 Correct Main doc entry 107 )(cwl, ) (Entered: 05/17/2022) |
| 05/18/2022 | 111 | Transmission of 108 Notice of Appeal, 107 Order, and Docket Sheet to US Court of Appeals. (Attachments: # 1 Docket Sheet and Appeal Record)(dmn, ) (Entered: 05/18/2022) |
| 05/19/2022 | 112 | NOTICE of Correction re 107 OPINION AND ORDER, to attach the correct main PDF document to correct syntax. (Attachments: # 1 Correct Main doc entry 107 )(cwl, ) (Entered: 05/19/2022) |
| 05/20/2022 | 113 | Joint MOTION to Dismiss *Governor Kay Ivey* by United States of America, Jessica Ventiere, Steve Marshall, Danny Carr, C. Wilson Baylock, Daryl D. Bailey, Tom Anderson. (Cheek, Jason) Modified on 5/23/2022 to add DFTs as filers (bes, ). (Entered: 05/20/2022) |
| 05/23/2022 | 114 | USCA Case Number 22-11707-JJ for 108 Notice of Appeal, filed by Appellants Jessica Ventiere, Kay Ivey, C. Wilson Baylock, Tom Anderson, Daryl D. Bailey, Steve Marshall, Danny Carr. Fee Status: Fee Paid. No hearings to be transcribed. The appellant's brief is due on or before 6/27/2022. The appendix is due no later than 7 days from the filing of the appellant's brief. Awaiting Appellant's Certificate of Interested Persons due on or before 6/6/2022 as to Appellant Attorney General, State of Alabama. Awaiting Appellee's Certificate of Interested Persons due on or before 6/21/2022 as to Appellee Paul A. Eknes-Tucker. (dmn, ) (Entered: 05/23/2022) |
| 05/23/2022 | 115 | TRANSCRIPT INFORMATION FORM re 108 Notice of Appeal by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere with the following notation, "All necessary transcript(s) on file." (LaCour, Edmund) Modified on 5/24/2022 to include additional text. (dmn, ) (Entered: 05/23/2022) |
| 05/25/2022 | 116 | ANSWER to 92 Intervenor Complaint, by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere.(Seiss, Benjamin) (Entered: 05/25/2022) |
| 05/31/2022 | 117 | **TEXT ORDER granting 113 Joint Motion to Dismiss Governor Kay Ivey. Signed by Honorable Judge Liles C. Burke on 5/31/2022. (No PDF attached to this entry) (bes, )** (Entered: 05/31/2022) |
| 06/06/2022 | 118 | ORDER of USCA addressed to Jennifer Levi as to 108 Notice of Appeal, filed by Jessica Ventiere, Kay Ivey, C. Wilson Baylock, Tom Anderson, Daryl D. Bailey, Steve Marshall, Danny Carr, 11th Circuit Appeal No. 22-11707-JJ: Jennifer Levi is permitted to appear pro hac vice in this appeal, representing the Appellees, contingent upon her payment of the $50.00 pro hac vice fee within 14 days of the date of this order. (dmn, ) (Entered: 06/06/2022) |
| 06/07/2022 | 120 | ORDER of USCA as to 108 Notice of Appeal, filed by Jessica Ventiere, Kay Ivey, C. Wilson Baylock, Tom Anderson, Daryl D. Bailey, Steve Marshall, Danny Carr, 11th Circuit Appeal No. 22-11707-JJ: Appellants' "Unopposed Motion for Expedited Briefing and Appellate Review" is GRANTED. The Court DIRECTS the Clerk's Office to expedite the appeal for merits disposition purposes and place this appeal on the next available oral argument calendar. Briefing in this appeal shall proceed as follows: Appellants' initial brief is due by 6/27/2022, with the appendix due 7 days from the filing of the initial brief. Appellees' response briefs are due by 8/10/2022. Appellants' reply brief, if any, is due by 8/31/2022. (dmn, ) (no pdf) (Entered: 06/08/2022) |

| 06/08/2022 | 119 | **TEXT ORDER: On or before 6/22/2022, the parties shall file their Rule 26(f) report or the court will set the schedule for them on 6/23/2022. Signed by Honorable Judge Liles C. Burke on 6/8/2022. (No PDF attached to this entry) (bes, )** (Entered: 06/08/2022) |
|---|---|---|
| 06/08/2022 | | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Middle District of Alabama certifies that the record is complete for purposes of this appeal re: 108 Notice of Appeal, Appeal No. 22-11707-JJ. The entire record on appeal is available electronically with the exception of: Doc. 96 , Exhibit DX42 CD, VIDEO. (dmn, ) (Entered: 06/08/2022) |
| 06/09/2022 | 121 | NOTICE of Appearance by Eliza Dermody on behalf of United States of America (Dermody, Eliza) (Entered: 06/09/2022) |
| 06/16/2022 | 122 | NOTICE of Appearance by Kaitlin N Toyama on behalf of United States of America (Toyama, Kaitlin) (Entered: 06/16/2022) |
| 06/16/2022 | 123 | NOTICE of Appearance by Renee Michelle Williams on behalf of United States of America (Williams, Renee) (Entered: 06/16/2022) |
| 06/21/2022 | 124 | Consent MOTION to unseal Dr. Koe's testimony from the preliminary injunction hearing re 106 Transcript by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Text of Proposed Order)(Bowdre, Alexander) (Entered: 06/21/2022) |
| 06/22/2022 | 125 | REPORT of Rule 26(f) Planning Meeting. (Eagan, Melody) (Entered: 06/22/2022) |
| 06/24/2022 | 126 | MOTION to Withdraw as Attorney *for Attorney Gilbert Olusegun Oladeinbo* by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, James Zoe. (Attachments: # 1 Text of Proposed Order)(Oladeinbo, Gilbert) Modified on 6/25/2022 to clarify the docket text (bes, ). (Entered: 06/24/2022) |
| 06/29/2022 | 127 | Transmitted Record on Appeal to US Court of Appeals re 108 Notice of Appeal, Appeal No. 22-11707-JJ as to Appellants Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Kay Ivey, Steve Marshall, Jessica Ventiere: (1) Folder containing: (1) DVD, Doc. 96 , Exhibit DX42 VIDEO. Mailed USPS Priority mail. (dmn, ) (Entered: 06/29/2022) |
| 06/29/2022 | 128 | **ORDER granting 124 Motion to unseal Dr. Koe's testimony from the preliminary injunction hearing; The Clerk is DIRECTED to unseal the portions of the preliminary injunction transcript containing Dr. Koe's testimony: pages 170:22 through 195:8 of the transcript. Signed by Honorable Judge Liles C. Burke on 6/29/2022. (bes, )** (Entered: 06/29/2022) |
| 06/29/2022 | 129 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Preliminary Injunction Hearing Vol I (TESTIMONY OF RACHEL KOE, MD) Proceedings (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 5/5/2022, before Judge Lilies C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number (256) 506-0085. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 7/20/2022. Redacted Transcript Deadline set for 8/1/2022. Release of Transcript Restriction set for 9/27/2022. (bes, ) (Entered: 06/29/2022) |
| 07/01/2022 | 130 | **TEXT ORDER: Setting an in-person Rule 26(f) conference for July 12, 2022, at 9:30 a.m. CDT. Signed by Honorable Judge Liles C. Burke on 7/1/2022. (No pdf attached to this entry) (furn: calendar, dh)(cwl, )** (Entered: 07/01/2022) |

| | | |
|---|---|---|
| 07/01/2022 | 131 | Joint MOTION for Entry of (1) Protective Order and (2) HIPAA Qualified Protective Order and Order to Disclose Protected Health Information by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere, Paul A. Eknes-Tucker, Brianna Boe, James Zoe, Megan Poe, Kathy Noe, Jane Moe, Rachel Koe, United States of America. (Attachments: # 1 Exhibit 1 - Stipulated Protective Order, # 2 Exhibit 2 - [Proposed] HIPAA Qualified Protective Order and Order to Disclose Protected Health Information)(Davis, James) Modified on 7/5/2022 to clarify the docket text and to add PLFs as filers (bes, ). (Entered: 07/01/2022) |
| 07/06/2022 | | Record on Appeal filed by USCA re 11th Circuit Appeal No. 22-11707-JJ. Exhibit Envelope, (1) Folder containing: (1) DVD, Doc. 96 , Exhibit DX42 VIDEO 11th Circuit Appeal No. 22-11707-JJ. (dmn, ) (no pdf) (Entered: 07/06/2022) |
| 07/11/2022 | 132 | NOTICE of Appearance by Margaret Lester Marshall on behalf of United States of America (Marshall, Margaret) (Entered: 07/11/2022) |
| 07/12/2022 | 133 | Minute Entry for proceedings held before Honorable Judge Liles C. Burke: Scheduling Conference held on 7/12/2022 (PDF available for court use only). (Court Reporter Christina Decker.) (war, ) (Entered: 07/12/2022) |
| 07/12/2022 | 136 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Hearing (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 7/12/2022, before Judge Liles C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number 256-506-0085. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 8/2/2022. Redacted Transcript Deadline set for 8/12/2022. Release of Transcript Restriction set for 10/11/2022. (cwl, ) (Entered: 07/18/2022) |
| 07/14/2022 | 134 | AMENDED Report of the Parties' Planning Meeting by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. Amendment to 125 Report of Rule 26(f) Planning Meeting . (Davis, James) Modified on 7/14/2022 to clarify the docket text and to add joint filers (bes, ). (Entered: 07/14/2022) |
| 07/15/2022 | 135 | **SCHEDULING ORDER:** Amended Pleadings due by 8/5/2022; Discovery due by 4/10/2023; Dispositive Motions due by 5/15/2023, as further set out in order; Telephone Status Conference set for 2/13/2023 at 10:30 AM before Honorable Judge Liles C. Burke; Dial-in instructions will be emailed to counsel prior to the telephone conference, as further set out in order. Signed by Honorable Judge Liles C. Burke on 7/15/2022. (Furn: Calendar, all CRDs) (bes, ) (Entered: 07/15/2022) |
| 07/15/2022 | | Case reassigned to Honorable Judge Chad W. Bryan as referral judge; Honorable Judge Susan Russ Walker no longer assigned to the case. (No PDF attached to this entry) (bes, ) (Entered: 07/15/2022) |
| 07/19/2022 | 137 | **STIPULATED PROTECTIVE ORDER granting 131 Joint Motion for Entry of a Protective Order, as further set out in order. Signed by Honorable Judge Liles C. Burke on 7/19/2022. (Attachments: # 1 Exhibit A) (bes, )** (Entered: 07/19/2022) |
| 07/19/2022 | 138 | **STIPULATED HIPPA QUALIFIED PROTECTIVE ORDER: the Court GRANTS the parties' 131 joint motion for entry of a HIPPA qualified protective order, as further set out in order. Signed by Honorable Judge Liles C. Burke on 7/19/2022. (bes, )** (Entered: 07/19/2022) |
| 07/27/2022 | 139 | Motion for Brian W. Barnes to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3262682.) by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny |

| | | Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit)(Bowdre, Alexander) Modified on 7/27/2022 to add attorney's name to text (cwl, ). (Entered: 07/27/2022) |
|---|---|---|
| 07/27/2022 | 140 | Motion for Peter A. Patterson to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3262706.) by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit Certificate of Good Standing)(Bowdre, Alexander) Modified on 7/27/2022 to add atty's name to text (cwl, ). (Entered: 07/27/2022) |
| 07/27/2022 | 141 | Motion for John D. Ramer to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3262711.) by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit Certificate of Good Standing)(Bowdre, Alexander) Modified on 7/27/2022 to add atty's name to text (cwl, ). (Entered: 07/27/2022) |
| 07/27/2022 | 142 | Motion for David H. Thompson to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number AALMDC-3262717.) by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit Certificate of Good Standing)(Bowdre, Alexander) Modified on 7/27/2022 to add atty's name to text (cwl, ). (Entered: 07/27/2022) |
| 07/27/2022 | | ***PURSUANT TO THE 139 & 140 MOTIONS - Attorney Brian W. Barnes, Peter A. Patterson for Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere added. (No pdf attached to this entry) (cwl, ) (Entered: 07/27/2022) |
| 07/27/2022 | | ***PURSUANT TO THE 141 & 142 MOTIONS - Attorney John D. Ramer, David H. Thompson for Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere added. (No pdf attached to this entry) (cwl, ) (Entered: 07/28/2022) |
| 08/05/2022 | 143 | MOTION for Leave to File *Amended Complaint* by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe. (Attachments: # 1 Exhibit A)(Eagan, Melody) (Entered: 08/05/2022) |
| 08/05/2022 | 144 | MOTION for Leave to File *Amended Complaint* by Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe. (Attachments: # 1 Exhibit A)(Eagan, Melody) (Entered: 08/05/2022) |
| 08/08/2022 | 145 | **TEXT ORDER granting the 144 Corrected Motion for Leave to Amend Complaint and to Proceed Pseudonymously and denying as moot the 143 Motion for Leave to Amend Complaint and to Proceed Pseudonymously. Signed by Honorable Judge Liles C. Burke on 8/8/2022. (No PDF attached to this entry)** (bes, ) (Entered: 08/08/2022) |
| 08/09/2022 | 146 | AMENDED COMPLAINT against All Defendants, filed by Brianna Boe, Paul A. Eknes-Tucker, Kathy Noe, Rachel Koe, Megan Poe, Rebecca Roe, Robert Voe, Heather Austin. (Eagan, Melody) Modified on 9/20/2022 to correct PLF Austin's name (bes, ). (Entered: 08/09/2022) |
| 08/09/2022 | 147 | MOTION to Withdraw as Attorney by United States of America. (Dermody, Eliza) (Entered: 08/09/2022) |
| 08/10/2022 | 148 | **TEXT ORDER granting the 139 , 140 , 141 , & 142 Motions for Leave to Appear Pro Hac Vice for Attorneys Brian W. Barnes, Peter A. Patterson, John D. Ramer, & David H. Thompson. Signed by Honorable Judge Liles C. Burke on 8/10/2022. (No PDF attached to this entry) (bes, )** (Entered: 08/10/2022) |

| | | |
|---|---|---|
| 08/17/2022 | | ORDER of USCA as to 108 Notice of Appeal, 11th Circuit Appeal No. 22-11707-JJ: Motion to correct or amend brief filed by Appellees Paul A. Eknes-Tucker, Brianna Boe, James Zoe, Megan Poe, Kathy Noe, Jane Moe, and Rachel Koe is GRANTED by clerk. (dmn, ) (no pdf) (Entered: 08/18/2022) |
| 08/22/2022 | 149 | USCA Notice of Court Action re 108 Notice of Appeal, 11th Circuit Appeal No. 22-11707-JJ: Motion to Appear Pro Hac Vice filed by Jean Veta is GRANTED by clerk. (dmn, ) (Entered: 08/23/2022) |
| 08/23/2022 | 150 | MOTION to Dismiss *Amended Complaint (Doc. 146 ) in Part* by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Text of Proposed Order)(LaCour, Edmund) Modified on 8/24/2022 to add brackets to create link (cwl, ). (Entered: 08/23/2022) |
| 09/07/2022 | 151 | *NON-PARTY EAGLE FORUM OF ALABAMA'S OBJECTION* and MOTION to Quash Document Subpoena, or in the Alternative MOTION to Modify Subpoena by Eagle Forum of Alabama. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Graham, John). Added Alternative MOTION to Modify on 9/7/2022 (cwl, ). (Entered: 09/07/2022) |
| 09/07/2022 | 152 | *NON-PARTY SOUTHEAST LAW'S OBJECTION* and MOTION to Quash Document Subpoena, or in the Alternative MOTION to Modify Subpoena by Southeast Law Institute. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Graham, John). Added Alternative MOTION to Modify on 9/7/2022 (cwl, ). (Entered: 09/07/2022) |
| 09/12/2022 | 153 | Consent MOTION for Leave to File *Second Amended Complaint* by Heather Austin, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Megan Poe, Rebecca Roe, Robert Voe, James Zoe. (Attachments: # 1 Exhibit A - Proposed Second Amended Complaint)(Eagan, Melody) Modified on 9/20/2022 to correct the spelling of PLF Austin's Name (bes, ). (Entered: 09/12/2022) |
| 09/13/2022 | 154 | RESPONSE to Motion re 150 MOTION to Dismiss *Amended Complaint (Doc. 146) in Part* filed by Heather Austin, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Kathy Noe, Megan Poe, Rebecca Roe, Robert Voe. (Eagan, Melody) Modified on 9/20/2022 to correct the spelling of PLF Austin's name (bes, ). (Entered: 09/13/2022) |
| 09/16/2022 | 155 | **TEXT ORDER: For good cause shown under Federal Rule of Civil Procedure 15(a) (2), the Court GRANTS Plaintiffs' 153 motion for leave to amend. Plaintiffs shall file their second amended complaint by 9/23/2022. Signed by Honorable Judge Liles C. Burke on 9/16/2022. (No PDF attached to this entry) (bes, )** (Entered: 09/16/2022) |
| 09/16/2022 | 156 | **TEXT ORDER: Any opposition to the pending 151 & 152 motions to quash shall be filed by 9/21/2022. Any reply shall be filed by 9/28/2022. Signed by Honorable Judge Liles C. Burke on 9/16/2022. (No PDF attached to this entry) (bes, )** (Entered: 09/16/2022) |
| 09/19/2022 | 157 | MOTION for Partial Judgment on the United States' 92 Pleadings by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Text of Proposed Order Proposed Order)(LaCour, Edmund) Modified on 9/19/2022 to clarify the docket text (bes, ). (Entered: 09/19/2022) |
| 09/19/2022 | 158 | Consent MOTION for Leave to File *Brief in Support of Motions to Quash Filed By Eagle Forum of Ala. and Southeast Legal Institute (Docs. 151 & 152)* by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit Defs' Br. ISO Motions to Quash (Docs. 151 & 152))(LaCour, Edmund) (Entered: 09/19/2022) |

| 09/19/2022 | 159 | Second AMENDED COMPLAINT *for Declaratory and Injunctive Relief* against Steve Marshall, Daryl D. Bailey, C. Wilson Blaylock, Jessica Ventiere, Tom Anderson, Danny Carr, filed by Brianna Boe, Megan Poe, Kathy Noe, Rebecca Roe, Robert Moe, Heather Austin, Rachel Koe.(Eagan, Melody) Modified on 9/20/2022 to list DFTs and PLFs (bes, ). (Entered: 09/19/2022) |
|---|---|---|
| 09/20/2022 | 160 | **TEXT ORDER granting 158 Consent MOTION for Leave to File Brief in Support. Signed by Honorable Judge Liles C. Burke on 9/20/2022. (No PDF attached to this entry) (bes, )** (Entered: 09/20/2022) |
| 09/20/2022 | 161 | MOTION for Leave to File *FILE RESPONSE TO DEFENDANTS BRIEF IN SUPPORT OF THIRD PARTIES' MOTIONS TO QUASH AND MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANTS MOTION FOR PARTIAL JUDGMENT* by United States of America. (Cheek, Jason) (Entered: 09/20/2022) |
| 09/20/2022 | 162 | **TEXT ORDER: Because Plaintiffs have filed a second amended complaint, Defendants' 150 motion to dismiss and 157 motion for judgment on the pleadings are DENIED as moot with leave to refile. Signed by Honorable Judge Liles C. Burke on 9/20/2022. (No PDF attached to this entry) (bes, )** (Entered: 09/20/2022) |
| 09/20/2022 | 163 | **TEXT ORDER setting a Hearing on the 151 & 152 Motions to Quash for 10/14/2022 at 10:00 AM in Courtroom 2F before Honorable Judge Liles C. Burke. Signed by Honorable Judge Liles C. Burke on 09/20/2022. (Furn: Calendar, all CRDs) (No PDF attached to this entry) (bes, )** (Entered: 09/20/2022) |
| 09/20/2022 | 164 | MOTION for Leave to File *brief amicus curiae* by Free Speech Coalition et al. (Attachments: # 1 Exhibit Free Speech Coalition et al Amicus Brief)(Jauregui, Phillip) (Entered: 09/20/2022) |
| 09/20/2022 | 165 | MOTION for Leave to File *BRIEF OF 53 ORGANIZATIONS, FEDERAL AND STATE LEGISLATORS, AND INDIVIDUAL CITIZENS AS AMICI CURIAE IN SUPPORT OF NON- PARTY EAGLE FORUM OF ALABAMAS OBJECTION TO AND MOTION TO QUASH DOCUMENT SUBPOENA* by Advancing American Freedom, Inc., Alabama Center for Law and Liberty, America First Legal Foundation, American Family Association, Inc., Americans United for Life, The Buckeye Institute, Cardinal Institute for West Virginia Policy, Center for Arizona Policy, Center for Family and Human Rights, Citizens United, Citizens United Foundation, The Commonwealth Foundation for Public Policy Alternative, Concerned Women for America, Faith & Freedom Coalition, The Family Action Council of Tennessee, Inc., The Foundation for Government Accountability, Foundation for Moral Law, Frontline Policy Council, Independent Womens Forum, John Locke Foundation, Judicial Watch, Inc., The Liberty Justice Center, Louisiana Family Forum, Manhattan Institute, Michigan Family Forum, Mountain States Legal Foundation, The National Right to Work Committee, Oklahoma Council of Public Affairs, Parental Rights Foundation, Pennsylvania Family Council, Private Citizen, Protect Our Kids, Public Interest Legal Foundation, The Religious RoundTable, Inc., Susan B. Anthony Pro-Life America, Tea Party Patriots Action, Inc., Tennessee Eagle Forum, Texas Public Policy Foundation, Robert B Aderholt, Mo Brooks, Jerry Carl, Barry Moore, Gary Palmer, Mike Rogers, T. Christopher Elliott, J.T. Waggoner, Chip Brown, Arnold Mooney, Matt Simpson, Tim R. Wadsworth, Caroline M. Aderholt, Hans Von Spakovsky, Allen Mendenhall. (Attachments: # 1 Exhibit Brief of 53 Organizations, Federal and State Legislators, and Individual Citizens as Amici Curiae in Support of Non Party Eagle Forum of Alabama's Objection to and Motion to Quash Document Subpoena)(Jordan, Albert) (Entered: 09/20/2022) |
| 09/20/2022 | 166 | Corporate/Conflict Disclosure Statement by Caroline M. Aderholt, Robert B Aderholt, Advancing American Freedom, Inc., Alabama Center for Law and Liberty, America First |

| | | |
|---|---|---|
| | | Legal Foundation, American Family Association, Inc., Americans United for Life, Mo Brooks, Chip Brown, Cardinal Institute for West Virginia Policy, Jerry Carl, Center for Arizona Policy, Center for Family and Human Rights, Citizens United, Citizens United Foundation, Concerned Women for America, T. Christopher Elliott, Faith & Freedom Coalition, Foundation for Moral Law, Frontline Policy Council, Independent Womens Forum, John Locke Foundation, Judicial Watch, Inc., Louisiana Family Forum, Manhattan Institute, Allen Mendenhall, Michigan Family Forum, Arnold Mooney, Barry Moore, Mountain States Legal Foundation, Oklahoma Council of Public Affairs, Gary Palmer, Parental Rights Foundation, Pennsylvania Family Council, Private Citizen, Protect Our Kids, Public Interest Legal Foundation, Mike Rogers, Matt Simpson, Susan B. Anthony Pro-Life America, Tea Party Patriots Action, Inc., Tennessee Eagle Forum, Texas Public Policy Foundation, The Buckeye Institute, The Commonwealth Foundation for Public Policy Alternative, The Family Action Council of Tennessee, Inc., The Foundation for Government Accountability, The Liberty Justice Center, The National Right to Work Committee, The Religious RoundTable, Inc., Hans Von Spakovsky, Tim R. Wadsworth, J.T. Waggoner. (Jordan, Albert) (Entered: 09/20/2022) |
| 09/20/2022 | 167 | Motion for R. Trent McCotter to Appear Pro Hac Vice ( Filing fee $ 75 receipt number AALMDC-3291448.) by Caroline M. Aderholt, Robert B Aderholt, Advancing American Freedom, Inc., Alabama Center for Law and Liberty, America First Legal Foundation, American Family Association, Inc., Americans United for Life, Mo Brooks, Chip Brown, Cardinal Institute for West Virginia Policy, Jerry Carl, Center for Arizona Policy, Center for Family and Human Rights, Citizens United, Citizens United Foundation, Concerned Women for America, T. Christopher Elliott, Faith & Freedom Coalition, Foundation for Moral Law, Frontline Policy Council, Independent Womens Forum, John Locke Foundation, Judicial Watch, Inc., Louisiana Family Forum, Manhattan Institute, Allen Mendenhall, Michigan Family Forum, Arnold Mooney, Barry Moore, Mountain States Legal Foundation, Oklahoma Council of Public Affairs, Gary Palmer, Parental Rights Foundation, Pennsylvania Family Council, Private Citizen, Protect Our Kids, Public Interest Legal Foundation, Mike Rogers, Matt Simpson, Susan B. Anthony Pro-Life America, Tea Party Patriots Action, Inc., Tennessee Eagle Forum, Texas Public Policy Foundation, The Buckeye Institute, The Commonwealth Foundation for Public Policy Alternative, The Family Action Council of Tennessee, Inc., The Foundation for Government Accountability, The Liberty Justice Center, The National Right to Work Committee, The Religious RoundTable, Inc., Hans Von Spakovsky, Tim R. Wadsworth, J.T. Waggoner. (Attachments: # 1 Exhibit A - Certificate of Good Standing)(Jordan, Albert) Modified on 9/21/2022 to add atty's name to text (cwl, ). (Entered: 09/20/2022) |
| 09/20/2022 | | ***PURSUANT TO THE 164 MOTION - Attorney William J. Olson for Free Speech Coalition et al added. (No pdf attached to this entry) (cwl, ) (Entered: 09/21/2022) |
| 09/20/2022 | | ***PURSUANT TO THE 165 MOTION - Attorney R. Trent McCotter,C. Boyden Gray for Caroline M. Aderholt,R. Trent McCotter,C. Boyden Gray for Robert B. Aderholt,R. Trent McCotter,C. Boyden Gray for Advancing American Freedom, Inc.,R. Trent McCotter,C. Boyden Gray for Alabama Center for Law and Liberty,R. Trent McCotter,C. Boyden Gray for America First Legal Foundation,R. Trent McCotter,C. Boyden Gray for American Family Association, Inc.,R. Trent McCotter,C. Boyden Gray for Americans United for Life,R. Trent McCotter,C. Boyden Gray for Mo Brooks,R. Trent McCotter,C. Boyden Gray for Chip Brown,R. Trent McCotter,C. Boyden Gray for Cardinal Institute for West Virginia Policy,R. Trent McCotter,C. Boyden Gray for Jerry Carl,R. Trent McCotter,C. Boyden Gray for Center for Arizona Policy,R. Trent McCotter,C. Boyden Gray for Center for Family and Human Rights,R. Trent McCotter,C. Boyden Gray for Citizens United,R. Trent McCotter,C. Boyden Gray for Citizens United Foundation,R. Trent McCotter,C. Boyden Gray for Concerned Women for America,R. Trent McCotter,C. Boyden Gray for T. Christopher Elliott,R. Trent McCotter,C. Boyden Gray |

for Faith & Freedom Coalition,R. Trent McCotter,C. Boyden Gray for Foundation for Moral Law,R. Trent McCotter,C. Boyden Gray for Frontline Policy Council,R. Trent McCotter,C. Boyden Gray for Independent Women's Forum,R. Trent McCotter,C. Boyden Gray for John Locke Foundation,R. Trent McCotter,C. Boyden Gray for Judicial Watch, Inc.,R. Trent McCotter,C. Boyden Gray for Louisiana Family Forum,R. Trent McCotter,C. Boyden Gray for Manhattan Institute,R. Trent McCotter,C. Boyden Gray for Allen Mendenhall,R. Trent McCotter,C. Boyden Gray for Michigan Family Forum,R. Trent McCotter,C. Boyden Gray for Arnold Mooney,R. Trent McCotter,C. Boyden Gray for Barry Moore,R. Trent McCotter,C. Boyden Gray for Mountain States Legal Foundation,R. Trent McCotter,C. Boyden Gray for Oklahoma Council of Public Affairs,R. Trent McCotter,C. Boyden Gray for Gary Palmer,R. Trent McCotter,C. Boyden Gray for Parental Rights Foundation,R. Trent McCotter,C. Boyden Gray for Pennsylvania Family Council,R. Trent McCotter,C. Boyden Gray for Private Citizen,R. Trent McCotter,C. Boyden Gray for Protect Our Kids,R. Trent McCotter,C. Boyden Gray for Public Interest Legal Foundation,R. Trent McCotter,C. Boyden Gray for Mike Rogers,R. Trent McCotter,C. Boyden Gray for Matt Simpson,R. Trent McCotter,C. Boyden Gray for Susan B. Anthony Pro-Life America,R. Trent McCotter,C. Boyden Gray for Tea Party Patriots Action, Inc.,R. Trent McCotter,C. Boyden Gray for Tennessee Eagle Forum,R. Trent McCotter,C. Boyden Gray for Texas Public Policy Foundation,R. Trent McCotter,C. Boyden Gray for The Buckeye Institute,R. Trent McCotter,C. Boyden Gray for The Commonwealth Foundation for Public Policy Alternative,R. Trent McCotter,C. Boyden Gray for The Family Action Council of Tennessee, Inc.,R. Trent McCotter,C. Boyden Gray for The Foundation for Government Accountability,R. Trent McCotter,C. Boyden Gray for The Liberty Justice Center,R. Trent McCotter,C. Boyden Gray for The National Right to Work Committee,R. Trent McCotter,C. Boyden Gray for The Religious RoundTable, Inc.,R. Trent McCotter,C. Boyden Gray for Hans Von Spakovsky,R. Trent McCotter,C. Boyden Gray for Tim R. Wadsworth,R. Trent McCotter,C. Boyden Gray for J.T. Waggoner added. (No pdf attached to this entry) (cwl, ) (Entered: 09/21/2022)

| | | |
|---|---|---|
| 09/21/2022 | 168 | RESPONSE in Opposition re 152 MOTION to Quash *NON-PARTY SOUTHEAST LAW'S OBJECTION TO AND MOTION TO QUASH DOCUMENT SUBPOENA, OR IN THE ALTERNATIVE MOTION TO MODIFY SUBPOENA* MOTION to Modify, 151 MOTION to Quash *NON-PARTY EAGLE FORUM OF ALABAMA'S OBJECTION TO AND MOTION TO QUASH DOCUMENT SUBPOENA, OR IN THE ALTERNATIVE MOTION TO MODIFY SUBPOENA* MOTION to Modify filed by United States of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Toyama, Kaitlin) (Entered: 09/21/2022) |
| 09/22/2022 | 169 | NOTICE of Appearance by Robert C. Pickren on behalf of United States of America (Pickren, Robert) (Entered: 09/22/2022) |
| 09/23/2022 | 170 | Motion to Appear Pro Hac Vice for Attorney C. Boyden Gray ( Filing fee $ 75 receipt number AALMDC-3293428.) by Caroline M. Aderholt, Robert B. Aderholt, Advancing American Freedom, Inc., Alabama Center for Law and Liberty, America First Legal Foundation, American Family Association, Inc., Americans United for Life, Mo Brooks, Chip Brown, Cardinal Institute for West Virginia Policy, Jerry L. Carl, Center for Arizona Policy, Center for Family and Human Rights, Citizens United, Citizens United Foundation, Concerned Women for America, T. Christopher Elliott, Faith & Freedom Coalition, Foundation for Moral Law, Frontline Policy Council, Independent Women's Forum, John Locke Foundation, Judicial Watch, Inc., Louisiana Family Forum, Manhattan Institute, Allen Mendenhall, Michigan Family Forum, Arnold Mooney, Barry Moore, Mountain States Legal Foundation, Oklahoma Council of Public Affairs, Gary Palmer, Parental Rights Foundation, Pennsylvania Family Council, Private Citizen, Protect Our Kids, Public Interest Legal Foundation, Mike Rogers, Matt Simpson, Susan B. Anthony Pro-Life America, Tea Party Patriots Action, Inc., Tennessee Eagle Forum, |

| | | |
|---|---|---|
| | | Texas Public Policy Foundation, The Buckeye Institute, The Commonwealth Foundation for Public Policy Alternative, The Family Action Council of Tennessee, Inc., The Foundation for Government Accountability, The Liberty Justice Center, The National Right to Work Committee, The Religious RoundTable, Inc., Hans Von Spakovsky, Tim R. Wadsworth, J.T. Waggoner. (Attachments: # 1 Exhibit A - Certificate of Good Standing) (Jordan, Albert) Modified on 9/26/2022 to reflect requesting Atty (bes, ). (Entered: 09/23/2022) |
| 09/23/2022 | 171 | MOTION for Judgment on the Pleadings *of United States (Doc. 92)* by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Text of Proposed Order Proposed Order)(LaCour, Edmund) (Entered: 09/23/2022) |
| 09/26/2022 | 172 | **TEXT ORDER granting 167 & 170 Motions for Leave to Appear Pro Hac Vice for Attorneys R. Trent McCotter and C. Boyden Gray. Signed by Honorable Judge Liles C. Burke on 9/26/2022. (No PDF attached to this entry) (bes, )** (Entered: 09/26/2022) |
| 09/26/2022 | 173 | Amended MOTION for Leave to File *Response to Defendants' Brief In Support of Third Parties' Motions to Quash And Motion for Extension of Time to Respond to Defendants' Motion for Partial Judgment* by United States of America. (Marshall, Margaret) (Entered: 09/26/2022) |
| 09/27/2022 | 174 | **TEXT ORDER: For good cause shown under Federal Rule of Civil Procedure 6(b)(1)(A), the Government's 173 amended motion is GRANTED. The Government may file an opposition to the pending motions to quash by 9/28/2022. The Government may file an opposition to Defendants' motion for partial judgment on the pleadings by 10/28/2022. Finally, the Government's 161 initial motion is DENIED as moot. Signed by Honorable Judge Liles C. Burke on 9/27/2022. (No PDF attached to this entry) (bes, )** (Entered: 09/27/2022) |
| 09/27/2022 | 175 | **TEXT ORDER granting the 164 MOTION for Leave to File amicus curiae brief and the 165 Motion for Leave to File Brief. Signed by Honorable Judge Liles C. Burke on 9/27/2022. (No PDF attached to this entry) (bes, )** (Entered: 09/27/2022) |
| 09/28/2022 | 176 | REPLY to Response to Motion re 152 MOTION to Quash *NON-PARTY SOUTHEAST LAW'S OBJECTION TO AND MOTION TO QUASH DOCUMENT SUBPOENA, OR IN THE ALTERNATIVE MOTION TO MODIFY SUBPOENA* MOTION to Modify, 151 MOTION to Quash *NON-PARTY EAGLE FORUM OF ALABAMA'S OBJECTION TO AND MOTION TO QUASH DOCUMENT SUBPOENA, OR IN THE ALTERNATIVE MOTION TO MODIFY SUBPOENA* MOTION to Modify filed by Eagle Forum of Alabama, Southeast Law Institute. (Graham, John) (Entered: 09/28/2022) |
| 09/28/2022 | 177 | BRIEF/MEMORANDUM in Support re 151 MOTION to Quash *NON-PARTY EAGLE FORUM OF ALABAMA'S OBJECTION TO AND MOTION TO QUASH DOCUMENT SUBPOENA, OR IN THE ALTERNATIVE MOTION TO MODIFY SUBPOENA* MOTION to Modify *(Amici Curiae Brief, etc.)* filed by Caroline M. Aderholt, Robert B. Aderholt, Advancing American Freedom, Inc., Alabama Center for Law and Liberty, America First Legal Foundation, American Family Association, Inc., Americans United for Life, Mo Brooks, Chip Brown, Cardinal Institute for West Virginia Policy, Jerry L. Carl, Center for Arizona Policy, Center for Family and Human Rights, Citizens United, Citizens United Foundation, Concerned Women for America, T. Christopher Elliott, Faith & Freedom Coalition, Foundation for Moral Law, Frontline Policy Council, Independent Women's Forum, John Locke Foundation, Judicial Watch, Inc., Louisiana Family Forum, Manhattan Institute, Allen Mendenhall, Michigan Family Forum, Arnold Mooney, Barry Moore, Mountain States Legal Foundation, Oklahoma Council of Public Affairs, Gary Palmer, Parental Rights Foundation, Pennsylvania Family Council, Private Citizen, Protect Our Kids, Public Interest Legal Foundation, Mike Rogers, Matt Simpson, Susan |

| | | B. Anthony Pro-Life America, Tea Party Patriots Action, Inc., Tennessee Eagle Forum, Texas Public Policy Foundation, The Buckeye Institute, The Commonwealth Foundation for Public Policy Alternative, The Family Action Council of Tennessee, Inc., The Foundation for Government Accountability, The Liberty Justice Center, The National Right to Work Committee, The Religious RoundTable, Inc., Hans Von Spakovsky, Tim R. Wadsworth, J.T. Waggoner. (Jordan, Albert) (Entered: 09/28/2022) |
|---|---|---|
| 09/28/2022 | [178](#) | MOTION for Leave to File *Amicus Curiae Brief in Support of Non-Party Eagle Forum of Alabamas Motion to Quash Document Subpoena* by National Republican Redistricting Trust. (Attachments: # [1](#) Exhibit Brief of National Republican Redistricting Trust as Amicus Curiae in Support of Non-Party Eagle Forum of Alabamas Motion to Quash Document Subpoena)(Madden, Wendy) (Entered: 09/28/2022) |
| 09/28/2022 | [179](#) | Corporate/Conflict Disclosure Statement by National Republican Redistricting Trust. (Madden, Wendy) (Entered: 09/28/2022) |
| 09/28/2022 | [180](#) | Motion to Appear Pro Hac Vice for Attorney Jason B. Torchinsky ( Filing fee $ 75 receipt number AALMDC-3296049.) by National Republican Redistricting Trust. (Madden, Wendy) Modified on 9/29/2022 to reflect requesting Atty (bes, ). (Additional attachment(s) added on 10/6/2022: # [1](#) Certificate of Good Standing from USDC Eastern District of Virginia, # [2](#) Certificate of Good Standing for the USDC District of Columbia) (bes, ). (Entered: 09/28/2022) |
| 09/28/2022 | [181](#) | BRIEF/MEMORANDUM in Opposition re [158](#) Consent MOTION for Leave to File *Brief in Support of Motions to Quash Filed By Eagle Forum of Ala. and Southeast Legal Institute (Docs. 151 & 152)* filed by United States of America. (Cheek, Jason) (Entered: 09/28/2022) |
| 10/03/2022 | [182](#) | *Defendants'* ANSWER to [159](#) Amended Complaint, by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere.(Bowdre, Alexander) (Entered: 10/03/2022) |
| 10/04/2022 | [183](#) | Motion to Appear Pro Hac Vice for Attorney William J. Olson ( Filing fee $ 75 receipt number AALMDC-3299409.) by Free Speech Coalition et al. (Jauregui, Phillip) Modified on 10/5/2022 to reflect requesting Atty and to reflect that Exhibit A is contained within the main PDF (bes, ). (Entered: 10/04/2022) |
| 10/07/2022 | [184](#) | NOTICE by United States of America *Regarding Subpoenas to Third Parties Eagle Forum of Alabama and Southeast Law Institute* (Powers, John) (Entered: 10/07/2022) |
| 10/11/2022 | 185 | **TEXT ORDER granting [178](#) MOTION for Leave to File Amicus Curiae Brief in Support of Non-Party Eagle Forum of Alabama's Motion to Quash Document Subpoena. Signed by Honorable Judge Liles C. Burke on 10/11/2022. (No PDF attached to this entry) (bes, )** (Entered: 10/11/2022) |
| 10/12/2022 | [186](#) | Supplemental MOTION to Quash Non-Party Document Subpoenas by Eagle Forum of Alabama, Southeast Law Institute. (Attachments: # [1](#) Exhibit A -- Email Exchange, # [2](#) Exhibit B -- Second Declaration of Margaret Clarke, # [3](#) Exhibit C -- Second Declaration of Eric Johnston, # [4](#) Exhibit D -- Appellants Appendix Index)(Graham, John) Modified on 10/12/2022 to clarify the docket text (bes, ). (Entered: 10/12/2022) |
| 10/12/2022 | 187 | **TEXT ORDER granting the [97](#) , [98](#) , [99](#) , [100](#) , [101](#) , [180](#) , & [183](#) Motions for Leave to Appear Pro Hac Vice. Signed by Honorable Judge Liles C. Burke on 10/12/2022. (No PDF attached to this entry) (bes, )** (Entered: 10/12/2022) |
| 10/13/2022 | [188](#) | MOTION for Leave to Appear Amicus Curiae by Tea Party Patriots Foundation, Inc.. (Attachments: # [1](#) Brief of Amicus)(Agricola, Algert) (Entered: 10/13/2022) |

| | | |
|---|---|---|
| 10/13/2022 | | ***PURSUANT TO THE 188 MOTION - Attorney Kurt R. Hilbert, Christopher J. Gardner for Tea Party Patriots Foundation, Inc. added. (No pdf attached to this entry) (cwl, ) (Entered: 10/17/2022) |
| 10/14/2022 | 189 | Minute Entry for proceedings held before Honorable Judge Liles C. Burke: Motion Hearing held on 10/14/2022 re 152 MOTION to Quash and 151 MOTION to Quash (PDF available for court use only). (Court Reporter Christina Decker.) (kcf, ) (Entered: 10/14/2022) |
| 10/18/2022 | 190 | **TEXT ORDER granting 188 Motion for Leave to Appear Amicus Curiae. Signed by Honorable Judge Liles C. Burke on 10/18/2022. (No pdf attached to this entry) (cwl, )** (Entered: 10/18/2022) |
| 10/21/2022 | 191 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Hearing (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 10/14/2022, before Judge Lilies C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number (256) 506-0085. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 11/14/2022. Redacted Transcript Deadline set for 11/21/2022. Release of Transcript Restriction set for 1/19/2023. (bes, ) (Entered: 10/21/2022) |
| 10/24/2022 | 192 | **OPINION AND ORDER: The Court therefore grants the nonparties' 151 , 152 & 186 motions and quashes the Government's nonparty subpoenas in accordance with FRCP 26 and 45; Nothing in this order prohibits the Government from issuing a new subpoena that is far more narrowly tailored, as the Court orally suggested at the hearing, as further set out in order. Signed by Honorable Judge Liles C. Burke on 10/24/2022. (es, )** (Entered: 10/24/2022) |
| 10/25/2022 | 193 | Motion to Appear Pro Hac Vice for Attorney Kurt Robert Hilbert ( Filing fee $ 75 receipt number AALMDC-3310035.) by Tea Party Patriots Foundation, Inc.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Agricola, Algert) Modified on 10/25/2022 to reflect requesting Atty (bes, ). (Entered: 10/25/2022) |
| 10/25/2022 | 194 | Motion to Appear Pro Hac Vice for Attorney Christopher James Gardner ( Filing fee $ 75 receipt number AALMDC-3310036.) by Tea Party Patriots Foundation, Inc.. (Attachments: # 1 Exhibit Gardner Certificate of Good Standing)(Agricola, Algert) Modified on 10/25/2022 to reflect requesting Atty (bes, ). (Entered: 10/25/2022) |
| 10/25/2022 | 195 | **TEXT ORDER granting 193 & 194 Motions for Leave to Appear Pro Hac Vice. Signed by Honorable Judge Liles C. Burke on 10/25/2022. (No PDF attached to this entry) (bes, )** (Entered: 10/25/2022) |
| 10/28/2022 | 196 | RESPONSE in Opposition re 171 MOTION for Judgment on the Pleadings *of United States (Doc. 92)* filed by United States of America. (Williams, Renee) (Entered: 10/28/2022) |
| 11/03/2022 | 197 | MOTION for Amendment to 135 Scheduling Order by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Text of Proposed Order [Proposed] Amended Scheduling Order)(Davis, James) Modified on 11/3/2022 to clarify the docket text (bes, ). (Entered: 11/03/2022) |
| 11/03/2022 | 198 | MOTION for Sanctions by Eagle Forum of Alabama, Southeast Law Institute. (Attachments: # 1 Exhibit A - Third Declaration of Margaret S. Clarke, # 2 Exhibit B - Second Declaration of Rebecca Gerritson, # 3 Exhibit C - Declaration of Eunie Smith, # 4 |

| | | |
|---|---|---|
| | | Exhibit D - Third Declaration of A. Eric Johnston, # 31 Exhibit E - Declaration of John M. Graham)(Graham, John) (Entered: 11/03/2022) |
| 11/08/2022 | 199 | **FIRST AMENDED SCHEDULING ORDER: The Court GRANTS the parties' 197 joint motion for extension of time and AMENDS the 135 scheduling order as follows: Discovery due by 6/9/2023, Dispositive & Daubert Motions due by 7/14/2023; The parties shall be ready for trial by October 2023; All other requirements of the initial Scheduling Order remain in effect, as further set out in order. Signed by Honorable Judge Liles C. Burke on 11/8/2022. (bes, )** (Entered: 11/08/2022) |
| 11/14/2022 | 200 | REPLY BRIEF re 157 MOTION for Judgment on the Pleadings *of the United States (Doc. 92)* filed by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (LaCour, Edmund) (Entered: 11/14/2022) |
| 11/23/2022 | 201 | RESPONSE in Opposition re 198 MOTION for Sanctions filed by United States of America. (Montag, Coty) (Entered: 11/23/2022) |
| 12/02/2022 | 202 | NOTICE of Appearance by Amie Murphy on behalf of United States of America (Murphy, Amie) (Entered: 12/02/2022) |
| 12/05/2022 | 203 | REPLY to Response to Motion re 198 MOTION for Sanctions filed by Eagle Forum of Alabama, Southeast Law Institute. (Graham, John) (Entered: 12/05/2022) |
| 12/12/2022 | 204 | Motion to Appear Pro Hac Vice for Attorney Roger G.Brooks ( Filing fee $ 75 receipt number AALMDC-3333950.) by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit Certificate of Good Standing)(Bowdre, Alexander) Modified on 12/12/2022 to reflect requesting attorney (bes, ). (Entered: 12/12/2022) |
| 12/12/2022 | | ***PURSUANT TO THE 204 MOTION - Attorney Roger G. Brooks for Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere added. (No PDF attached to this entry) (bes, ) (Entered: 12/12/2022) |
| 12/13/2022 | 205 | **TEXT ORDER Setting a Hearing on the 198 MOTION for Sanctions; Motion Hearing set for 2/8/2023 at 09:00 AM in Courtroom 2F before Honorable Judge Liles C. Burke. Signed by Honorable Judge Liles C. Burke on 12/13/2022. (No PDF attached to this entry) (Furn: Calendar, all CRDs)(bes, )** (Entered: 12/13/2022) |
| 12/21/2022 | 206 | **ORDER granting 126 Motion to Withdraw for Attorney Gilbert Oladeinbo; ORDER granting 147 Motion to Withdraw for Attorney Eliza Dermody; The Court recognizes that there is an ongoing ethics inquiry with respect to all of plfs' attorneys; The Court therefore RETAINS jurisdiction over Mr. Oladeinbo and Ms. Dermody for those purposes. Signed by Honorable Judge Liles C. Burke on 12/21/2022. (bes, )** (Entered: 12/21/2022) |
| 12/21/2022 | | ***PURSUANT TO THE 206 ORDER - Attorney Eliza Dermody and Gilbert Olusegun Oladeinbo terminated as counsel. (No PDF attached to this entry) (bes, ) (Entered: 12/21/2022) |
| 12/27/2022 | 207 | MOTION to Seal *Portions of Declarations* by American Academy of Pediatrics, The Endocrine Society, World Professional Association for Transgender Health. (Ragsdale, Barry) Modified on 12/28/2022 to change party name from Pediatric Endocrine Society to The Endocrine Society (bes, ). (Entered: 12/27/2022) |
| 12/27/2022 | 208 | MOTION to Quash *Rule 45 Subpoenas* by American Academy of Pediatrics, The Endocrine Society, World Professional Association for Transgender Health. (Attachments: # 1 Exhibit, # 2 Affidavit, # 3 Affidavit, # 4 Affidavit, # 5 Affidavit |

| | | Ragsdale, Barry) Modified on 12/28/2022 to correct filer from Pediatric Endocrine Society to The Endocrine Society (bes, ). (Entered: 12/27/2022) |
|---|---|---|
| 12/27/2022 | | ***PURSUANT TO THE 207 MOTION - Attorney Yuval Mor, Dylan M. Silva for American Academy of Pediatrics, The Endocrine Society, World Professional Association for Transgender Health added. (no pdf attached) (cwl, ) (Entered: 12/27/2022) |
| 12/28/2022 | 209 | Motion to Appear Pro Hac Vice for Attorney Noah S. Goldberg ( Filing fee $ 75 receipt number AALMDC-3341363.) by American Academy of Pediatrics, The Endocrine Society, World Professional Association for Transgender Health. (Ragsdale, Barry) Modified on 12/28/2022 to reflect requesting Atty (bes, ). Modified on 12/28/2022 to reflect that Exhibit A - Certificate of Good Standing is contained within the main PDF(bes, ). (Entered: 12/28/2022) |
| 12/28/2022 | 210 | Motion to Appear Pro Hac Vice for Attorney Dylan M. Silva ( Filing fee $ 75 receipt number AALMDC-3341389.) by American Academy of Pediatrics, The Endocrine Society, World Professional Association for Transgender Health. (Ragsdale, Barry) Modified on 12/28/2022 to reflect requesting Atty (bes, ). Modified on 12/28/2022 to reflect that Exhibit A - Certificate of Good Standing is contained within the main PDF(bes, ). (Entered: 12/28/2022) |
| 12/28/2022 | | ***PURSUANT TO THE 209 MOTION TO APPEAR PHV - Attorney Noah Shea Goldberg for American Academy of Pediatrics, The Endocrine Society, & World Professional Association for Transgender Health added. (No PDF attached to this entry) (bes, ) (Entered: 12/28/2022) |
| 01/03/2023 | 211 | **TEXT ORDER granting 204 Motion for Roger G. Brooks to Appear Pro Hac Vice, 209 Motion for Noah S. Goldberg to Appear Pro Hac Vice, & 210 Motion for Dylan M. Silva to to Appear Pro Hac Vice. Signed by Honorable Judge Liles C. Burke on 1/3/2023. (No PDF attached to this entry) (amf, )** (Entered: 01/03/2023) |
| 01/03/2023 | 212 | **TEXT ORDER: A hearing on the motion to quash (Doc. 208 ) is SET for February 8, 2023; The hearing shall occur in Courtroom 2F immediately after the hearing on the motion for sanctions. Signed by Honorable Judge Liles C. Burke on 1/3/2023. (No PDF attached to this entry) (Furnished: Calendar & All CRDs)(amf, )** (Entered: 01/03/2023) |
| 01/03/2023 | 213 | **TEXT ORDER: A telephone status conference is SET for tomorrow, January 4, 2023, at 11:15 a.m. CST; A member of the Court's staff will send the parties the dial-in information before the conference begins. Signed by Honorable Judge Liles C. Burke on 1/3/2023. (No PDF attached to this entry) (Furnished: Calendar & All CRDs)(amf, )** (Entered: 01/03/2023) |
| 01/04/2023 | 214 | Minute Entry for proceedings held before Honorable Judge Liles C. Burke: Status Conference held by telephone on 1/4/2023 (PDF available for court use only). (Court Reporter N/A) (dh) (Entered: 01/04/2023) |
| 01/05/2023 | 215 | MOTION to Compel *Production of Plaintiffs' Medical Records* by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(Bowdre, Alexander) (Entered: 01/05/2023) |
| 01/06/2023 | 216 | **SECOND UNIFORM SCHEDULING ORDER: the Court AMENDS the 199 first amended scheduling order as follows: Discovery due by 6/9/2023; Dispositive & Daubert Motions due by 7/14/2023; Non-Jury Trial set for 8/21/2023 at 09:00 AM in Montgomery, AL before Honorable Judge Liles C. Burke, as further set out in order. Signed by Honorable Judge Liles C. Burke on 1/6/2023. (Furn: Calendar, all CRDs) (bes, )** (Entered: 01/06/2023) |

| | | |
|---|---|---|
| 01/09/2023 | 217 | **TEXT ORDER: A hearing on 215 Defendants' motion to compel is SET for 2/8/2023. The hearing shall occur in Courtroom 2F immediately after the hearing on Amici's motion to quash. Signed by Honorable Judge Liles C. Burke on 1/9/2023. (Furn: Calendar, all CRDs) (No PDF attached to this entry) (bes, )** (Entered: 01/09/2023) |
| 01/09/2023 | 218 | **TEXT ORDER re-setting the Hearing on the 198 Motion for Sanctions; Motion Hearing is re-set for 2/8/2023 at 10:00 AM in Courtroom 2F before Honorable Judge Liles C. Burke. Signed by Honorable Judge Liles C. Burke on 1/9/2023. (Furn: Calendar, all CRDs) (No PDF attached to this entry) (bes, )** (Entered: 01/09/2023) |
| 01/17/2023 | 219 | RESPONSE to Motion re 208 MOTION to Quash *Rule 45 Subpoenas* filed by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Affidavit Declaration of Bowdre)(LaCour, Edmund) (Entered: 01/17/2023) |
| 01/17/2023 | 220 | MOTION in Limine by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (LaCour, Edmund) (Entered: 01/17/2023) |
| 01/19/2023 | 221 | Joint MOTION to Extend Rule 26 Expert Disclosure Deadline by Heather Austin, Brianna Boe, Rachel Koe, Robert Moe, Kathy Noe, Megan Poe, Rebecca Roe, Steve Marshall, United States of America, Daryl D. Bailey, C. Wilson Baylock, Jessica Ventiere, Tom Anderson, Danny Carr. (Eagan, Melody) Modified on 1/19/2023 to clarify the docket text and to add intervenor-PLF & Listed DFTs as filers (bes, ). (Entered: 01/19/2023) |
| 01/20/2023 | 222 | Joint MOTION for Leave to File *Excess Pages for Reply Brief* by American Academy of Pediatrics, The Endocrine Society, World Professional Association for Transgender Health. (Ragsdale, Barry) (Entered: 01/20/2023) |
| 01/23/2023 | 223 | **TEXT ORDER: For good cause shown, the 222 motion for leave to file excess pages is GRANTED. Amici may file a reply brief not exceeding 20 pages. Signed by Honorable Judge Liles C. Burke on 1/23/2023. (No PDF attached to this entry) (bes, )** (Entered: 01/23/2023) |
| 01/23/2023 | 224 | **TEXT ORDER: The Court will hear oral argument on Defendants' 220 motion in limine at the upcoming discovery hearing on 2/8/2023. Signed by Honorable Judge Liles C. Burke on 1/23/2023. (Furn: Calendar, all CRDs) (No PDF attached to this entry) (bes, )** (Entered: 01/23/2023) |
| 01/23/2023 | 225 | **THIRD AMENDED SCHEDULING ORDER: the Court GRANTS the parties' 221 joint motion and AMENDS the 216 second amended scheduling order as follows: Discovery due by 6/9/2023; Dispositive & Daubert Motions due by 7/14/2023; Non-Jury Trial set for 8/21/2023 at 09:00 AM in Montgomery, AL before Honorable Judge Liles C. Burke, as further set out in order. Signed by Honorable Judge Liles C. Burke on 1/23/2023. (Furn: Calendar, all CRDs) (bes, )** (Entered: 01/23/2023) |
| 01/23/2023 | 226 | Motion to Appear Pro Hac Vice for Attorney Rachel H. Berg ( Filing fee $ 75 receipt number AALMDC-3355098.) by Heather Austin, Brianna Boe, Paul A. Eknes-Tucker, Kathy Noe, Megan Poe, Rebecca Roe, Robert Voe, James Zoe. (Attachments: # 1 Exhibit A)(Eagan, Melody) Modified on 1/23/2023 to reflect requesting Atty (bes, ). (Entered: 01/23/2023) |
| 01/23/2023 | | ***PURSUANT TO THE 226 MOTION TO APPEAR PHV - Attorney Rachel H. Berg for Heather Austin, Brianna Boe, Rachel Koe, Robert Moe, Kathy Noe, Megan Poe, Rebecca Roe added. (No PDF attached to this entry) (bes, ) (Entered: 01/23/2023) |

| 01/24/2023 | 227 | MOTION to Compel *Production of PLF-Intervenor's Records* by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Affidavit Bowdre Declaration, # 2 Text of Proposed Order Proposed Order)(LaCour, Edmund) Modified on 1/24/2023 to clarify the docket text (bes, ). (Entered: 01/24/2023) |
|---|---|---|
| 01/24/2023 | 228 | MOTION for Hearing re 227 MOTION to Compel by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Text of Proposed Order Proposed Order)(LaCour, Edmund) (Entered: 01/24/2023) |
| 01/24/2023 | 229 | RESPONSE in Opposition re 228 MOTION for Hearing re 227 MOTION to Compel filed by United States of America. (Williams, Renee) (Entered: 01/24/2023) |
| 01/25/2023 | 230 | MOTION to Withdraw as Attorney *for Plaintiffs* by Heather Austin, Brianna Boe, Paul A. Eknes-Tucker, Rachel Koe, Jane Moe, Kathy Noe, Megan Poe, Rebecca Roe, Robert Voe, James Zoe. (Attachments: # 1 Text of Proposed Order)(Orr, Asaf) (Entered: 01/25/2023) |
| 01/26/2023 | 231 | **TEXT ORDER: The Government shall respond to Defendants' most-recent 227 motion to compel on or before 2/13/2023. Defendants may file a reply on or before 2/27/2023. Oral argument on the motion to compel is set for 3/8/2023, at 10:00 a.m. CST. The hearing shall occur in Courtroom 2F of the Frank M. Johnson Jr. United States Courthouse Complex. Finally, the Court denies Defendants' 228 motion to the extent Defendants seek to present oral argument on the motion to compel at the 2/8/2023 hearing. Signed by Honorable Judge Liles C. Burke on 1/26/2023. (Furn: Calendar, all CRDs) (No PDF attached to this entry) (bes, ) (Entered: 01/26/2023)** |
| 01/26/2023 | 232 | RESPONSE to Motion re 215 MOTION to Compel *Production of Plaintiffs' Medical Records* filed by Heather Austin, Brianna Boe, Rachel Koe, Robert Moe, Kathy Noe, Megan Poe, Rebecca Roe. (Eagan, Melody) (Entered: 01/26/2023) |
| 01/26/2023 | 233 | **TEXT ORDER granting 207 Motion to Seal Portions of Declarations filed with the 208 Motion to Quash Rule 45 Subpoenas. Signed by Honorable Judge Liles C. Burke on 1/26/2023. (No PDF attached to this entry) (bes, )** (Entered: 01/26/2023) |
| 01/27/2023 | 234 | **TEXT ORDER granting 226 Motion for Leave to Appear Pro Hac Vice for Attorney Rachel H. Berg. Signed by Honorable Judge Liles C. Burke on 1/27/2023. (No PDF attached to this entry) (bes, )** (Entered: 01/27/2023) |
| 01/27/2023 | 235 | **ORDER granting 230 Motion to Withdraw as Attorney for Attorney Asaf Orr; The Court recognizes that there is an ongoing ethics inquiry with respect to all of plfs' attorneys; The Court therefore RETAINS jurisdiction over Mr. Orr for those purposes. Signed by Honorable Judge Liles C. Burke on 1/27/2023. (bes, )** (Entered: 01/27/2023) |
| 01/27/2023 | | ***PURSUANT TO THE 235 ORDER - Attorney Asaf Orr terminated as counsel for PLFs. (No PDF attached to this entry) (bes, ) (Entered: 01/27/2023) |
| 01/31/2023 | 236 | REPLY to Response to Motion re 208 MOTION to Quash *Rule 45 Subpoenas* filed by American Academy of Pediatrics, The Endocrine Society, World Professional Association for Transgender Health. (Attachments: # 1 Affidavit Declaration of Cortlin H. Lannin, # 2 Exhibit Defendants' Proposed Findings of Fact in Brandt v. Griffin, # 3 Exhibit Plaintiffs' Proposed Findings of Fact in Brandt v. Griffin, # 4 Exhibit Order on Motion to Quash in In re Subpoenas Served on American Academy of Pediatrics, et al.)(Ragsdale, Barry) (Entered: 01/31/2023) |
| 02/01/2023 | 237 | NOTICE of Appearance by Praveen S. Krishna on behalf of United States of America (Krishna, Praveen) (Entered: 02/01/2023) |

| | | |
|---|---|---|
| 02/01/2023 | 238 | Joint Motion for Entry of Stipulated ESI Production Protocol by Heather Austin, Brianna Boe, Rachel Koe, Robert Moe, Kathy Noe, Megan Poe, Rebecca Roe, United States of America, Steve Marshall, Daryl D. Bailey, C. Wilson Baylock, Jessica Ventiere, Tom Anderson, Danny Carr. (Attachments: # 1 Exhibit Exhibit A - Stipulated ESI Protocol) (Eagan, Melody) Modified on 2/1/2023 to clarify the docket text and to add USA and DFTs as joint filers (bes, ). (Entered: 02/01/2023) |
| 02/03/2023 | 239 | RESPONSE in Support re 215 MOTION to Compel *Production of Plaintiffs' Medical Records* filed by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (LaCour, Edmund) (Entered: 02/03/2023) |
| 02/07/2023 | 240 | Joint NOTICE re 208 MOTION to Quash *Rule 45 Subpoenas* by American Academy of Pediatrics, The Endocrine Society, World Professional Association for Transgender Health, Steve Marshall, Daryl D. Bailey, C. Wilson Baylock, Jessica Ventiere, Tom Anderson, Danny Carr (Ragsdale, Barry) Modified on 2/7/2023 to add joint filers and clarify text (cwl, ). (Entered: 02/07/2023) |
| 02/07/2023 | 241 | Joint RESPONSE in Opposition re 220 MOTION in Limine *(on behalf of the Private Plaintiffs and Plaintiff-Intervenor)* filed by Heather Austin, Brianna Boe, Rachel Koe, Robert Moe, Kathy Noe, Megan Poe, Rebecca Roe, United States of America. (Eagan, Melody) Modified on 2/7/2023 to add joint filer (cwl, ). (Entered: 02/07/2023) |
| 02/08/2023 | 242 | Minute Entry for proceedings held before Honorable Judge Liles C. Burke: Motion Hearing held on 2/8/2023 re 198 MOTION for Sanctions filed by Southeast Law Institute, Eagle Forum of Alabama, 208 MOTION to Quash *Rule 45 Subpoenas* filed by The Endocrine Society, World Professional Association for Transgender Health, American Academy of Pediatrics, 215 MOTION to Compel *Production of Plaintiffs' Medical Records* filed by Jessica Ventiere, C. Wilson Baylock, Tom Anderson, Daryl D. Bailey, Steve Marshall, 220 MOTION in Limine filed by Jessica Ventiere, C. Wilson Baylock, Tom Anderson, Daryl D. Bailey, Steve Marshall, Danny Carr (PDF available for court use only). (Court Reporter Christina Decker.) (kr, ) (Entered: 02/08/2023) |
| 02/09/2023 | 243 | **TEXT ORDER cancelling the Telephone Status Conference that was previously set for 2/13/2023. Signed by Honorable Judge Liles C. Burke on 2/9/2023. (Furn: Calendar, all CRDs) (Term: Status Conference set for 02/13/2023) (No PDF attached to this entry) (bes, )** (Entered: 02/09/2023) |
| 02/10/2023 | 244 | **TEXT ORDER: The Court RESETS the upcoming hearing, currently set for 3/8/2023, to 3/21/2023. The time and location of the hearing remain the same. As a reminder, the parties should be prepared to argue Defendants' 171 motion for judgment on the pleadings, Defendants' 227 motion to compel, and, if necessary, Defendants' 220 motion in limine. Signed by Honorable Judge Liles C. Burke on 2/10/2023. (Furn: Calendar, all CRDs) (Term: Oral Argument set for 03/08/2023) (No PDF attached to this entry) (bes, )** (Entered: 02/10/2023) |
| 02/10/2023 | 245 | **ORDER granting 238 Joint Motion for Entry of Stipulated ESI Production Protocol, as further set out in order. Signed by Honorable Judge Liles C. Burke on 2/10/2023. (bes, )** (Entered: 02/10/2023) |
| 02/10/2023 | 246 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing: (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 02/08/2023, before Judge Liles C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number 256-506-0085. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 3/3/2023. |

| | | Redacted Transcript Deadline set for 3/13/2023. Release of Transcript Restriction set for 5/11/2023. (tha, ) (Entered: 02/13/2023) |
|---|---|---|
| 02/13/2023 | 247 | RESPONSE in Opposition re 227 MOTION to Compel *Production of Plaintiff-Intervenor's Records* filed by United States of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Murphy, Amie) (Entered: 02/13/2023) |
| 02/13/2023 | 248 | Motion to Appear Pro Hac Vice for Attorney Yuval Mor ( Filing fee $ 75 receipt number BALMDC-3369006.) by American Academy of Pediatrics, The Endocrine Society, World Professional Association for Transgender Health. (Ragsdale, Barry) Modified on 2/13/2023 to reflect requesting Atty (bes, ). (Entered: 02/13/2023) |
| 02/14/2023 | 249 | **TEXT ORDER granting 248 Motion for Leave to Appear Pro Hac Vice for Attorney Yuval Mor. Signed by Honorable Judge Liles C. Burke on 2/14/2023. (No PDF attached to this entry) (bes, )** (Entered: 02/14/2023) |
| 02/20/2023 | 250 | MOTION to Compel *Plaintiff-Intervenor to Answer Interrogatories* by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Affidavit)(Bowdre, Alexander) (Entered: 02/20/2023) |
| 02/27/2023 | 251 | **TEXT ORDER: The Court shall hear oral argument on Defendants' 250 motion to compel at the hearing set for 3/21/2023. Signed by Honorable Judge Liles C. Burke on 2/27/2023. (No PDF attached to this entry) (bes, )** (Entered: 02/27/2023) |
| 02/27/2023 | 252 | RESPONSE in Support re 227 MOTION to Compel filed by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (LaCour, Edmund) (Entered: 02/27/2023) |
| 03/13/2023 | 253 | MOTION to Withdraw as Attorney *for Attorney Thomas A. Wilson* by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Wilson, Thomas) Modified on 3/13/2023 to reflect requesting atty (bes, ). (Entered: 03/13/2023) |
| 03/13/2023 | 254 | RESPONSE in Opposition re 250 MOTION to Compel *Plaintiff-Intervenor to Answer Interrogatories* filed by United States of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Williams, Renee) (Entered: 03/13/2023) |
| 03/15/2023 | 255 | NOTICE by World Professional Association for Transgender Health re 208 MOTION to Quash *Rule 45 Subpoenas* (Attachments: # 1 Exhibit Declaration of Cortlin H. Lannin, # 2 Exhibit Exhibit 1 to Declaration of Cortlin H. Lannin, # 3 Exhibit Exhibit 2 to Declaration of Cortlin H. Lannin)(Ragsdale, Barry) (Entered: 03/15/2023) |
| 03/16/2023 | 256 | RESPONSE in Support re 250 MOTION to Compel *Plaintiff-Intervenor to Answer Interrogatories* filed by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (LaCour, Edmund) (Entered: 03/16/2023) |
| 03/17/2023 | 257 | (DISREGARD, INCORRECT CIVIL EVENT SELECTED DURING E-FILING) NOTICE by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere re 255 Notice (Other), *of Defendants' Response to WPATH's Notice Regarding WPATH's Motion to Quash* (LaCour, Edmund) Modified on 3/17/2023 (bes, ). (Entered: 03/17/2023) |
| 03/17/2023 | | RESPONSE to 255 Notice regarding the Motion to Quash by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (No PDF attached to this entry - see doc 257 for PDF - incorrect civil event selected during e-filing) (bes, ) (Entered: 03/17/2023) |

| 03/17/2023 | 258 | **TEXT ORDER: The Court ORDERS WPATH to appear at the hearing set for 3/21/2023. Signed by Honorable Judge Liles C. Burke on 3/17/2023. (No PDF attached to this entry) (bes, )** (Entered: 03/17/2023) |
|---|---|---|
| 03/21/2023 | 265 | Minute Entry for Oral Argument held before Honorable Judge Liles C. Burke on 3/21/2023 (PDF available for court use only). (Court Reporter Christine Decker.) (cb, ) (Entered: 03/27/2023) |
| 03/22/2023 | 259 | **TEXT ORDER: For good cause shown, Defendants' 253 motion to withdraw is GRANTED. The Clerk of Court is DIRECTED to terminate Mr. Thomas A. Wilson as counsel of record in this case. Signed by Honorable Judge Liles C. Burke on 3/22/2023. (No PDF attached to this entry) (bes, )** (Entered: 03/22/2023) |
| 03/22/2023 | | ***PURSUANT TO THE 259 TEXT ORDER - Attorney Thomas Alexander Wilson terminated. (No PDF attached to this entry) (bes, ) (Entered: 03/22/2023) |
| 03/27/2023 | 260 | **ORDER: the Defendants' Motion to Compel Production of Plaintiffs' Medical Records (Doc. 215 ) is GRANTED IN PART AND DENIED IN PART. The motion is denied insofar as it seeks production of records of individuals who are not parties to this litigation. In all other respects, the motion is granted, as further set out in order. Signed by Honorable Judge Liles C. Burke on 3/27/2023. (cwl, )** (Entered: 03/27/2023) |
| 03/27/2023 | 261 | **ORDER: Defendants' motion to compel (Doc. 227 ) is DENIED with respect to RFP 6 and GRANTED in all other respects. Signed by Honorable Judge Liles C. Burke on 3/27/2023. (cwl, )** (Entered: 03/27/2023) |
| 03/27/2023 | 262 | **ORDER: Defendants' motion to compel (Doc. 250 ) is DENIED with respect to Interrogatory 14 and GRANTED in all other respects. Signed by Honorable Judge Liles C. Burke on 3/27/2023. (cwl, )** (Entered: 03/27/2023) |
| 03/27/2023 | 263 | **OPINION & ORDER: WPATH's motion to quash (Doc. 208 ) is accordingly DENIED on its merits, and Defendants' motion in limine (Doc. 220 ) is DENIED as moot. Signed by Honorable Judge Liles C. Burke on 3/27/2023. (cwl, )** (Entered: 03/27/2023) |
| 03/27/2023 | 264 | **ORDER: The nonparties now move for sanctions against the Government under Federal Rule of Civil Procedure 45(d)(1). Upon consideration of the record as a whole and the arguments made in open court on February 8, 2023, the Court postpones ruling on the motion for sanctions pending trial, while continuing to monitor the behavior of the parties. Signed by Honorable Judge Liles C. Burke on 3/27/2023. (cwl, )** (Entered: 03/27/2023) |
| 03/28/2023 | 266 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Oral Argument on the Motions Hearings (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 03/21/2023, before Judge Lilies C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number (256) 506-0085. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 4/18/2023. Redacted Transcript Deadline set for 4/28/2023. Release of Transcript Restriction set for 6/26/2023. (bes, ) (Entered: 03/28/2023) |
| 03/31/2023 | 267 | **TEXT ORDER: pursuant to the court's 94 PROCEDURAL ORDERS & STATUS OF FORTHCOMING OPINION, the 60 MOTION for Leave to File Excess Pages is GRANTED. Signed by Honorable Judge Liles C. Burke on 3/31/2023. (No PDF attached to this entry) (bes, )** (Entered: 03/31/2023) |

| 04/05/2023 | 268 | Joint MOTION to Modify 225 *Third Amended Scheduling Order* by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Steve Marshall, Jessica Ventiere, Brianna Boe, Rachel Koe, Robert Moe, Kathy Noe, Megan Poe, Rebecca Roe, Heather Austin, Danny Carr. (Attachments: # 1 Text of Proposed Order)(Bowdre, Alexander) Modified on 4/5/2023 to clarify the docket text and add remaining joint filers (bes, ). (Entered: 04/05/2023) |
|---|---|---|
| 04/05/2023 | 269 | Motion to Appear Pro Hac Vice for Attorney Henry W. Frampton, IV ( Filing fee $ 75 receipt number AALMDC-3409382.) by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit Certificate of Good Standing)(Bowdre, Alexander) Modified on 4/5/2023 to reflect requesting Atty (bes, ). (Entered: 04/05/2023) |
| 04/05/2023 | | ***PURSUANT TO THE 269 MOTION TO APPEAR PHV - Attorney Henry W. Frampton for all DFTs added. (No PDF attached to this entry) (bes, ) (Entered: 04/05/2023) |
| 04/06/2023 | 270 | **FOURTH AMENDED SCHEDULING ORDER: For good cause shown under FRCP 16(b)(4), the Court GRANTS the parties' 268 joint motion and AMENDS the 255 third amended scheduling order as follows: Discovery due by 6/30/2023; Dispositive Motions due by 7/14/2023; Trial is scheduled to begin on 8/21/2023, at 9:00 AM CDT; The trial shall occur at the Frank M. Johnson Jr. United States Courthouse in Montgomery, AL; All other requirements of the initial Scheduling Order remain in effect. Signed by Honorable Judge Liles C. Burke on 4/6/2023. (furn: Calendar, all CRDs) (bes, )** (Entered: 04/06/2023) |
| 04/07/2023 | 271 | MOTION to Certify 263 Opinion and Order for Interlocutory Appeal by World Professional Association for Transgender Health. (Attachments: # 1 Affidavit Lannin Declaration, # 2 Text of Proposed Order)(Goldberg, Noah) Modified on 4/10/2023 to reflect actual title and create link. (dmn, ) (Entered: 04/07/2023) |
| 04/07/2023 | 272 | MOTION for Limited Stay of Discovery Order Pending Appeal re 271 MOTION to Certify 263 Opinion and Order for Interlocutory Appeal by World Professional Association for Transgender Health. (Attachments: # 1 Text of Proposed Order) (Goldberg, Noah) Modified on 4/10/2023 to clean up text and create link. (dmn, ) (Entered: 04/07/2023) |
| 04/10/2023 | 273 | **TEXT ORDER requiring Defendants to respond to Docs. 271 Motion and 272 Motion by no later than tomorrow. Signed by Honorable Judge Liles C. Burke on 4/10/2023. Furnished Appeals Clerk. (dmn, ) (no pdf)** (Entered: 04/10/2023) |
| 04/10/2023 | 274 | **TEXT ORDER granting 269 Motion for Attorney Henry W. Frampton, IV to Appear Pro Hac Vice. Signed by Honorable Judge Liles C. Burke on 4/10/2023. (dmn, ) (no pdf)** (Entered: 04/10/2023) |
| 04/11/2023 | 275 | NOTICE of Appearance by Charles Arthur McKay on behalf of All Defendants (McKay, Charles) (Entered: 04/11/2023) |
| 04/11/2023 | 276 | BRIEF/MEMORANDUM in Opposition re 271 MOTION to Certify 263 Opinion and Order for Interlocutory Appeal , 272 MOTION for Limited Stay of Discovery Order Pending Appeal re 271 MOTION to Certify 263 Opinion and Oder for Interlocutory Appeal filed by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (LaCour, Edmund) (Entered: 04/11/2023) |
| 04/17/2023 | 277 | NOTICE of Appearance by Bethany C. Lee on behalf of Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere (Lee, Bethany) (Entered: 04/17/2023) |

| 04/17/2023 | 278 | **ORDER denying** 171 **Motion for Partial Judgment on the Pleadings. Signed by Honorable Judge Liles C. Burke on 4/17/2023. (bes, )** (Entered: 04/17/2023) |
| 05/10/2023 | 279 | MOTION to Amend 270 Amended Scheduling Order by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Text of Proposed Order Proposed Fifth Amended Scheduling Order)(LaCour, Edmund) Modified on 5/11/2023 to clarify the docket text (bes, ). (Entered: 05/10/2023) |
| 05/12/2023 | 280 | RESPONSE to Motion re 279 MOTION to Modify re 270 Terminate Motions,,, Terminate Deadlines and Hearings,,, Scheduling Order,, filed by World Professional Association for Transgender Health. (Ragsdale, Barry) (Entered: 05/12/2023) |
| 05/15/2023 | 281 | **OPINION & ORDER: the Court DENIES WPATH's motion to certify (Doc.** 271 **) on the merits and DENIES WPATH's motion to stay (Doc.** 272 **) as moot. Signed by Honorable Judge Liles C. Burke on 5/15/2023. (furn: Appeals Clerk)(cwl, )** (Entered: 05/15/2023) |
| 05/16/2023 | 282 | **TEXT ORDER Setting Hearing on** 279 **MOTION to Amend; In-Person Motion Hearing set for 5/22/2023 at 10:00 AM in Courtroom 2F before Honorable Judge Liles C. Burke; Counsel for all parties and counsel for WPATH shall be present at the hearing. Signed by Honorable Judge Liles C. Burke on 5/16/2023. (Furn: Calendar, all CRDs) (No PDF attached to this entry) (bes, )** (Entered: 05/16/2023) |
| 05/16/2023 | 283 | RESPONSE to Motion re 279 MOTION to Amend the 270 Amended Scheduling Order filed by Heather Austin, Brianna Boe, Rachel Koe, Robert Moe, Kathy Noe, Megan Poe, Rebecca Roe. (Eagan, Melody) Modified on 5/16/2023 to clarify the docket text (bes, ). (Entered: 05/16/2023) |
| 05/19/2023 | 284 | Memorandum of Law in RESPONSE to 279 MOTION to Amend 270 Amended Scheduling Order filed by United States of America. (Montag, Coty) Modified on 5/22/2023 to clarify the docket text (bes, ). (Entered: 05/19/2023) |
| 05/21/2023 | 285 | REPLY BRIEF in Support of 279 MOTION to Amend 270 Amended Scheduling Order filed by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere. (Attachments: # 1 Exhibit Email Correspondence re: HHS Search Terms)(Bowdre, Alexander) Modified on 5/22/2023 to clarify the docket text (bes, ). (Entered: 05/21/2023) |
| 05/22/2023 | 286 | Minute Entry for proceedings held before Honorable Judge Liles C. Burke: Motion Hearing held on 5/22/2023 re 279 MOTION to Modify Scheduling Order (PDF available for court use only, Court Reporter Christina Decker, (256) 551-2537, Christina_Decker@alnd.uscourts.gov ). (war, ) (Entered: 05/22/2023) |
| 05/25/2023 | 287 | **TEXT ORDER: For good cause shown in accordance with Federal Rule of Civil Procedure 16(b)(4), Defendants'** 279 **motion to amend the scheduling order is GRANTED. On or before 5/29/2023, the parties shall submit a joint proposed fifth amended scheduling order. Finally, an in-person status conference is set for 6/26/2023, at 10:00 a.m. CDT. The hearing shall occur in Courtroom 2F of the Frank M. Johnson Jr. United States Courthouse complex. Signed by Honorable Judge Liles C. Burke on 5/25/2023. (Furn: Calendar, all CRDs) (No PDF attached to this entry) (bes, )** (Entered: 05/25/2023) |
| 05/26/2023 | 288 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 05/22/2023, before Judge Lilies C. Burke. Court Reporter/Transcriber Christina K. Decker, Telephone number (256) 506-0085. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST |

| | | REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 6/16/2023. Redacted Transcript Deadline set for 6/26/2023. Release of Transcript Restriction set for 8/24/2023. (bes, ) (Entered: 05/26/2023) |
|---|---|---|
| 05/26/2023 | 289 | NOTICE Regarding Mandamus Petition by World Professional Association for Transgender Health. (Attachments: # 1 Petition for Writ of Mandamus, # 2 Exhibit A - RFP List)(Lannin, Cortlin) Modified on 5/30/2023 to clarify text (bes, ). (Entered: 05/26/2023) |
| 05/29/2023 | 290 | Joint MOTION to Amend 270 Scheduling Order by Tom Anderson, Daryl D. Bailey, C. Wilson Baylock, Danny Carr, Steve Marshall, Jessica Ventiere, Brianna Boe, Megan Poe, Kathy Noe, Rachel Koe, Rebecca Roe, Heather Austin, Robert Moe, United States of America. (Attachments: # 1 Text of Proposed Order Joint Proposed Fifth Amended Scheduling Order)(Bowdre, Alexander) Modified on 5/30/2023 to clarify text and add PLFs as filers (bes, ). (Entered: 05/29/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/30/2023 14:04:58 | | | |
| **PACER Login:** | cb091600 | **Client Code:** | 990999.13404.14394 |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-00184-LCB-CWB |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **BRIANNA BOE,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:22-cv-184-LCB** |
| | ) | |
| **STEVE MARSHALL,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION & ORDER</u>

Before the Court is WPATH's[1] motion (Doc. 208) to quash Defendants' Rule 45 subpoena. Also before the Court is Defendants' motion *in limine* (Doc. 220), through which Defendants seek exclusion of all WPATH-related evidence in the event the Court were to grant WPATH's motion to quash.

For the forthcoming reasons, WPATH's motion to quash is due to be denied on its merits, and Defendants' motion *in limine* is accordingly due to be denied as moot.

## I. BACKGROUND

In November 2022, Defendants issued a subpoena to WPATH in search of various documents related to WPATH's guidelines for treating gender-dysphoric

---

[1] WPATH (World Professional Association for Transgender Health), filed the motion jointly with fellow nonparty *amici curiae* American Academy of Pediatrics (AAP) and Endocrine Society. The dispute was resolved with respect to requests aimed at AAP and Endocrine Society. (Doc. 240.)

minors. (*See* Doc. 208-2 at 56–70.) WPATH and Defendants met and conferred regarding the subpoena, and when WPATH expressed concerns that the requests were unduly burdensome, Defendants withdrew several of those requests. (*Compare id.*, *with* Doc. 219 at 26; *see also* Doc. 219 at 11, 25; Doc. 208 at 9–10.) The following requests remain outstanding:

- The process WPATH "used to create, review, and adopt their position statements, treatment guidelines, and standards of care regarding transitioning treatments";

- WPATH's "consideration, if any, of the UK's NICE literature reviews, the Swedish and French statements regarding transitioning care for minors, and certain other literature related to transitioning minors";

- WPATH's "reaction to members' concerns about pediatric transitioning care in America";

- WPATH's "involvement, if any, in the creation of standards of care or diagnostic standards for other organizations related to pediatric transitioning";

- WPATH's "cancellation of Dr. Zucker's talk";

- WPATH's "review of the literature related to transitioning treatments for minors"; and

- WPATH's "knowledge of pediatric transitioning treatments in Alabama."

(Doc. 219 at 26; *see also* Doc. 208-2 at 55–70.) WPATH moved to quash the subpoena, arguing that the information sought lacks requisite relevance, is unduly burdensome to produce, and raises First Amendment concerns. (Doc. 208 at 3.)

2

After the issue was briefed in full (*See* Docs. 208, 219, 236), the Court held a hearing on February 8, 2023, during which it fielded oral argument on several then-pending motions, including WPATH's motion to quash. (*Minute Entry*, Doc. 242; *Feb. 8 Hr'g Tr.*, Doc. 246.) During that hearing, the Court offered WPATH and Defendants an opportunity to reach a compromise regarding Defendants' subpoena without the Court's intervention. (*Feb. 8 Hr'g Tr.*, Doc. 246 at 67.)

By mid-March, however, no such compromise had been reached; to the contrary, WPATH filed "notice" (Doc. 255) regarding post-hearing developments that WPATH deemed relevant to its motion to quash. Defendants responded (Doc. 257), and the Court heard further argument on the motion at an already scheduled hearing on March 21. The issue is now ripe for review.[2]

---

[2] Despite argument presented by WPATH, those so-called developments had no material bearing on the merits of its motion. More specifically, WPATH pointed to federal court proceedings in Washington, D.C., to further support its position. *See In re Subpoenas Served on American Academy of Pediatrics et al.*, No. 1:23-mc-00004-CJN (D.D.C. filed Jan. 13, 2023), *appeal docketed*, 23-7025 (D.C. Cir. Mar. 6, 2023). There, WPATH moved the district court to quash a subpoena in underlying litigation, *Dekker v. Weida*, No. 4:22-cv-325-RH-MAF (N.D. Fla. filed Sept. 7, 2022), regarding a Florida regulation that bars Medicaid coverage for certain treatments, including gender-dysphoria treatments. (*WPATH's Notice*, Doc. 255 at 1–2.) The district court denied WPATH's motion, WPATH filed an emergency appeal, and the court of appeals temporarily stayed the district court's order. (*Id.* at 2–3.) As articulated more thoroughly in Defendants' response (Doc. 257), the Florida-law litigation in no way turns upon WPATH's guidelines—in fact, WPATH argued as much in obtaining emergency relief from the D.C. Circuit. *See WPATH's App. Br.*, Doc. 988853 at 20–21, *In re Subpoenas Served on American Academy of Pediatrics et al.*, No. 23-7025 (D.C. Cir. Mar. 6, 2023) (quoting *Black Panther Party v. Smith*, 661 F.3d 1243, 1268 (D.C. Cir. 1981)).

Pet. App'x  000108

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 sets forth the general scope of discovery. Rule 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The relevance requirement is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978).

Rule 26's relevance requirement also applies to the scope of discovery permissible under Rule 45, which provides for the subpoenaing of information from nonparties. *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). In addition, the party issuing a Rule 45 subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and a district court must quash or modify a subpoena that imposes an "undue burden" or demands privileged information. FED. R. CIV. P. 45(d)(1), (d)(3)(iii)–(iv). The district court "has wide discretion" in determining whether information is

Pet. App'x  000109

discoverable. *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (citing *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)).

Finally, the opponent of production "bears the burden of establishing lack of relevancy or undue burden in supplying the requested information." *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 680 (N.D. Ala. 2015). Because the Rules "strongly favor full discovery whenever possible," *Moore*, 927 F.2d at 1197, that burden is "heavy," *Goodman-Gable-Gould Co. v. Tiara Condominium Ass'n*, 2007 WL 9701863, at *3 (S.D. Fla. Mar. 30, 2007) (citing *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995)).

## III.   DISCUSSION

WPATH has failed to meet its burden of opposing Defendants' Rule 45 subpoena; the information Defendants seek is unquestionably relevant, the requests impose upon WPATH no undue burden, and WPATH's First Amendment rights are uninfringed by production here.

### A.   The subpoenaed information is unquestionably relevant.

As the Court has explained on several occasions, WPATH's standards for treating gender dysphoria in minors go to "the very heart" of this case. (Doc. 246 at 64; *accord* Doc. 112-1 at 3–4 (relying on WPATH's guidelines in preliminarily enjoining the Act).) Neither WPATH nor the private plaintiffs dispute that contention; nor could they, as doing so would belie the positions they each have

5

taken from the beginning of this dispute. (*See, e.g.*, *Brief of Amici Curiae,* Doc. 91-1 at 12 (stating that "[t]he Court should consider *amici's* brief because it provides important expertise . . . about the treatment of transgender adolescents").)

For example, the private plaintiffs describe WPATH as the initial developer of the "[t]he standards of care for treatment of transgender people, including transgender youth" and, in light of WPATH's standards, allege that the Act unconstitutionally denies transgender youths access to "well-established medically necessary care." (*Pls.' Second Am. Compl.*, Doc. 159 at 10 ¶ 29, 13 ¶ 38, 29 ¶ 105.) WPATH, for its part, leans into that characterization: In the *amicus* brief to which WPATH is a signatory, WPATH's standards are referred to as "widely accepted" and "established, evidence-based clinical guidelines," which were "[d]eveloped [t]hrough a [r]obust and [t]ransparent [p]rocess, [e]mploying the [s]ame [s]cientific [r]igor [t]hat [u]nderpins [o]ther [m]edical [g]uidelines." (Doc. 91-1 at 16–17, 22; *see also id.* at 16 ("The widely accepted view of the professional medical community is that gender-affirming care is the appropriate treatment for gender dysphoria and that, for some adolescents, gender-affirming medical interventions are necessary").) To that end, *amici curiae* cite WPATH's standards as authority no less than fifteen times. (Doc. 91-1 at 17–20, 23–24.)

Pet. App'x  000111

In sum, WPATH's guidelines are part and parcel of Plaintiffs' proposed constitutional standard in this case.[3] The Court therefore finds that Defendants' subpoena is directed at the discovery of relevant information.[4]

### B.    The burden of production is not disproportionate to the needs of this case.

WPATH has presented no argument sufficient to convince this Court that the burden of production is disproportionate to the case's needs, particularly in light of the requested information's crucial import in this litigation. *See* FED. R. CIV. P. 26(b)(1) (balancing, *inter alia*, the burden of production with the information's likely benefit); *see also* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 (3d ed.) (noting that "a subpoena need not necessarily be quashed because the documents themselves are voluminous and cumbersome and significant difficulty and expense will be involved in producing them" because "[s]ubpoenas of this kind are inevitable in the type of highly complex cases that are now common in the federal courts."). In addition, by withdrawing several requests after meeting and conferring with WPATH's counsel,[5] Defendants

---

[3] To be clear, the requested information's relevance is not dependent upon WPATH having signed the brief of amici curiae (Doc. 91-1). Its relevance is spawned from Plaintiffs' theory of the case.

[4] For one illustrative example, Defendants request documents related to the process WPATH "used to create, review, and adopt their position statements, treatment guidelines, and standards of care regarding transitioning treatments" (Doc. 219 at 26)—a process that WPATH says was "[d]eveloped [t]hrough a [r]obust and [t]ransparent [p]rocess, [e]mploying the [s]ame [s]cientific [r]igor [t]hat [u]nderpins [o]ther [m]edical [g]uidelines" (Doc. 91-1 at 22).

[5] *Compare* Doc. 208-2 at 56–70, *with* Doc. 219 at 26; *see also* Doc. 208 at 9–10; Doc. 219 at 11.

Pet. App'x   000112

have taken reasonable measures to further ensure that its subpoena imposes upon WPATH no *undue* burden—that is, no burden disproportionate to the needs of the case. *See* FED. R. CIV. P. 45(d)(1), 26(b)(1).

The "importance of the issues at stake in [this] action" cannot be overstated. FED. R. CIV. P. 26(b)(1). And at the risk of repetitiveness, the information WPATH seeks to withhold will likely have an immensely important effect on resolution of those central issues, whichever side ultimately profits from this discovery notwithstanding. The Court therefore concludes that the requested information falls within the scope of permissible discovery under Rule 26.

### C.    The First Amendment does not justify quashing the subpoena.

To successfully oppose discovery on First Amendment grounds, the movant must make a *prima facie* showing that compliance would infringe a First Amendment right. *Fla. Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021). More specifically, the movant must set forth a "reasonable probability" that disclosure will result in "threats, harassment, or reprisals from either Government officials or private parties." *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)). WPATH has failed to do so and, thus, is unable to support its motion to quash on First Amendment grounds.

The associational privilege protects against compelled disclosure discovery that would adversely affect an organization by "induc[ing] members to withdraw . . .

Pet. App'x  000113

and dissuading others from joining because of fear of exposure." *Id.* (quoting *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 463 (1958)). WPATH argues as much, stating that compliance with Defendants' subpoena "would discourage members from joining or participating in the organization[], and chill the robust and uninhibited internal exchange of ideas that these organizations" necessary to its work. (Doc. 208 at 17.)

However, Defendants' subpoena does "not seek to reveal the identities of any [WPATH] members or donors"; thus, the information WPATH seeks to withhold is not of the sort "typically covered by the associational privilege." *Id.* (noting, in addition, that concerns about specific documents could be quelled by way of a protective order); *see also United States v. Duke Energy Corp.*, 218 F.R.D. 468, 473 (M.D.N.C. 2003) ("[T]he First Amendment does not prohibit discovery into legitimate, relevant matters, even when such discovery may produce a chilling effect on a party's First Amendment rights.").

In sum, WPATH has failed to make a *prima facie* showing that compliance with Defendants' subpoena infringes its First Amendment rights.

Pet. App'x  000114

## IV.   CONCLUSION

Proscription of the discovery Defendants seek would, in essence, amount to acceptance of WPATH's standards as "established, evidence-based clinical guidelines"[6] on WPATH's word alone, and without further inquiry.

WPATH's motion to quash (Doc. 208) is accordingly **DENIED** on its merits, and Defendants' motion *in limine* (Doc. 220) is **DENIED** as moot.

WPATH may redact[7] any personal, identifying information in compliance with Defendants' subpoena—subject, of course, to a future showing of good cause to the contrary from Defendants. Additionally, if any documents produced concern the same person, WPATH shall provide an alias for that person, so that it is clear when documents reference the same person. Finally, the parties are reminded that discovery in this case is subject to a protective order.

**DONE** and **ORDERED** March 27, 2023.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

---

[6] (Doc. 91-1 at 17.)

[7] At the March 21 Hearing, WPATH indicated that "redact[ing] the names of any individuals that appeared on internal documents" would "go[] some way to . . . mitigating some First Amendment issues." (*Mar. 21 Hr'g Tr.*, at 10:21–23) (discussing in context of Florida-law litigation, *see supra* note [2]).

Pet. App'x  000115

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| **BRIANNA BOE,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:22-cv-184-LCB** |
| | ) | |
| **STEVE MARSHALL,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION & ORDER</u>

This case raises a constitutional challenge to the Alabama Vulnerable Child Compassion and Protection Act. During discovery, Defendants[1] issued a nonparty subpoena to the World Professional Association for Transgender Health. (Doc. 208-2 at 56–70). WPATH[2] moved to quash the subpoena—which generally sought information pertaining to WPATH's recommended standards for treating gender dysphoria in minors—on the grounds that production of the requested documents would exceed the permissible scope of discovery and violate the First Amendment. (Doc. 208 at 1, 10). After extensive briefing and two oral arguments,

---

[1] Defendants are Alabama Attorney General Steve Marshall, Montgomery County District Attorney Daryl Bailey, Cullman County District Attorney C. Wilson Baylock, Lee County District Attorney Jessica Ventiere, Jefferson County District Attorney Danny Carr, and District Attorney for the 12th Judicial Circuit Tom Anderson. (Doc. 159 at 6–7).

[2] WPATH is proceeding as *amicus curiae* on behalf of Plaintiffs and the United States Government. (Doc. 94 at 2).

the Court rejected WPATH's position and denied its motion to quash. (Doc. 263 at 1–3, 10).

WPATH now moves to certify that decision for interlocutory appeal and to stay discovery pending appeal. (Doc. 271 at 1); (Doc. 272 at 1). As explained below, WPATH fails to demonstrate that the Court's previous decision is subject to interlocutory appeal. The Court therefore denies WPATH's motion to certify on the merits and denies WPATH's motion to stay as moot.

## I.  BACKGROUND

Plaintiffs[3] and the United States Government challenge the constitutionality of Section 4(a)(1)–(3) of the Alabama Vulnerable Child Compassion and Protection Act. (Doc. 159 at 2–5). Put simply, Section 4(a)(1)–(3) makes it a crime to administer or prescribe puberty blockers and hormone therapies to a minor for purposes of transitioning the minor's gender. S.B. 184, ALA. 2022 REG. SESS. § 4(a)(1)–(3) (Ala. 2022). The Act defines "minor" as anyone under the age of nineteen. *Id.* § 3(1); ALA. CODE § 43-8-1(18).

In May 2022, the Court enjoined Defendants from enforcing Section 4(a)(1)–(3) of the Act pending trial. (Doc. 107 at 32). The Court found in part that Parent Plaintiffs were substantially likely to prove that the Act violates their

---

[3] Plaintiffs are five transgender minors (Minor Plaintiffs), their parents (Parent Plaintiffs), a clinical child psychologist, and a pediatrician. (Doc. 159 at 3–5).

Pet. App'x  000117

constitutional right to direct the upbringing of their children and that Minor Plaintiffs were substantially likely to prove that the Act unconstitutionally discriminates against them based on their sex. *Id.* at 14–24. Defendants appealed the decision to the United States Court of Appeals for the Eleventh Circuit, and the parties began discovery. (Doc. 108 at 1); (Doc. 134 at 4).

During discovery, Defendants issued a nonparty subpoena to WPATH. (Doc. 208-2 at 56–70). The subpoena required WPATH to produce, among other things, six categories of documents pertaining to WPATH's guidelines for treating gender dysphoria in minors. (Doc. 219 at 26). In response, WPATH moved to quash the subpoena, arguing that the requested documents were outside the scope of discovery and protected by First Amendment privilege. (Doc. 208 at 1, 10).

In March 2023, the Court denied WPATH's motion to quash. (Doc. 263 at 10). In doing so, the Court found that the requested documents fell within the permissible scope of discovery under Federal Rule of Civil Procedure 26. *Id.* at 5–8. The Court also found that WPATH failed to make a *prima facie* showing of First Amendment infringement, given the Court's protective order and WPATH's ability to redact identifying information from the requested documents. *Id.* at 8–10. This dispute followed.

Pet. App'x  000118

## II.   LEGAL STANDARD

Title 28, Section 1292(b) of the United States Code governs appeals of interlocutory orders. *Microsoft Corp. v. Baker*, 582 U.S. 23, 29 (2017). Under the statute, a district court must certify an order for interlocutory appeal if it presents a pure, "controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Nice v. L-3 Commc'ns Vertex Aerospace LLC*, 885 F.3d 1308, 1312 (11th Cir. 2018) (per curiam) (explaining that a controlling legal question must be one of pure law to satisfy § 1292(b)). The statute "sets a high threshold for certification," which most interlocutory orders do not meet. *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008). Indeed, "[c]ertification of an issue for interlocutory appeal is reserved for truly exceptional cases." *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 2019 WL 13172407, at *4 (N.D. Ala. Mar. 18, 2019).

## III.   DISCUSSION

WPATH moves to certify the Court's previous decision that production of the requested documents will not infringe a First Amendment right. (Doc. 271 at 7). WPATH's motion contains at least two fatal flaws. First, the Court's decision does not present a pure question of law. Second, interlocutory appeal of that decision

Pet. App'x  000119

would not materially advance this litigation. The Court expounds on each flaw below.

### A.      The First Flaw

WPATH fails to show that the Court's previous decision presents a pure question of law. For purposes of § 1292(b), a "pure question of law" is "an abstract legal issue" that a reviewing court "can resolve 'without having to delve beyond the surface of the record in order to determine the facts,' as opposed to a case-specific question of 'whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case.'" *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016) (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258–59 (11th Cir. 2004) (deeming improper for interlocutory appeal "any question [that] requires rooting through the record in search of the facts or of genuine issues of fact")).

Whether WPATH made a *prima facie* showing of First Amendment infringement is a question that necessarily requires application of law to fact. In its previous order, the Court answered that question in the negative based on two primary considerations: (1) any concerns of "chill" on the willingness of WPATH's members to engage in frank internal deliberations, and of any "chill" on willingness to otherwise associate with WPATH, were quelled by way of a protective order and pre-production redaction of identifying information; and (2) WPATH's evidence

Pet. App'x  000120

regarding any other sort of chill—namely, of threats, harassment, or reprisals—was insufficient to support a *prima facie* privilege assertion. Against this backdrop, the Court has no trouble concluding that the issue presented—whether WPATH made a *prima facie* showing of First Amendment infringement—is not a pure question of law.

WPATH makes no meaningful argument to the contrary. Instead, it falsely attempts to characterize the issue as "the Court's holding that discovery cannot infringe First Amendment rights unless the compelled disclosure would result in 'threats, harassment, or reprisals.'" (Doc. 271 at 7) (quoting (Doc. 263 at 9)). The problem for WPATH is that the Court reached no such "holding." The Court did not decide, as a matter of law, that First Amendment infringement results only from threats, harassment, or reprisals. Again, the Court simply found that WPATH presented insufficient evidence of threats, harassment, reprisals, or any other sort of chill. (Doc. 263 at 8–9). WPATH clearly mischaracterizes the Court's previous decision.

WPATH separately argues that the Court's decision presents a controlling "legal" question because: (1) WPATH "will face significant burdens if it is required to comply with the subpoena"; and (2) "resolution of the disputed question has the potential to substantially accelerate disposition of the litigation and reduce the

Pet. App'x  000121

expenses of all the parties to the litigation." (Doc. 271 at 8–9).[4] These assertions have no bearing whatsoever on whether the Court's previous decision presents a pure legal question. In sum, WPATH fails to identify a pure question of law subject to interlocutory appeal under § 1292(b).

**B.    The Second Flaw**

Even assuming, *arguendo*, that the *prima facie* determination is one of pure law, WPATH fails to show that interlocutory appeal therefrom might materially advance this litigation. Section 1292(b) condones interlocutory appeal only on an issue that, if immediately resolved, would move the proceedings along in some material way. To ascertain the existence of such circumstances, courts ask whether the issue's resolution "would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259. Another way to think about the material-advancement determination involves asking whether "resolution of the question may reduce the amount of litigation necessary on remand." *Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1336 (11th Cir. 2018).

---

[4] WPATH's assertion that the requested documents may well impact the outcome of this litigation represents a remarkable departure from the assertion to which WPATH so fervently clung in support of its motion to quash. *Compare* (Doc. 208 at 10) ("The Court should quash the subpoenas . . . because they seek discovery irrelevant to the sole issue in dispute."), *and* (Doc. 236 at 6) ("The State Fails To Show That The Subpoenas Seek Any Relevant Discovery."); *with* (Doc. 271 at 9) (characterizing the requested discovery's "role . . . in determining the outcome of litigation" as "critical").

Pet. App'x  000122

Here, the answer is clear. However an appeals court might resolve the *prima facie* issue, WPATH's motion to quash would be denied once again on remand. Defendants have unquestionably proffered a compelling governmental interest, and that interest is substantially related to the requested documents. Accordingly, Defendants are entitled to the documents—even assuming WPATH made a *prima facie* showing of First Amendment infringement. *See, e.g.*, *Gibson v. Fla. Legis. Investigation Comm.*, 372 U.S. 539, 546 (1963) (holding that the First Amendment right of organizational privilege must give way when "the State convincingly show[s] a substantial relation between the information sought and a subject of overriding and compelling state interest"); *In re Grand Jury Proceeding*, 842 F.2d 1229, 1236–37 (11th Cir. 1988) (same). Thus, interlocutory appeal of the Court's decision could not materially advance this litigation.

## IV.   CONCLUSION

WPATH fails to show that the Court's previous decision is subject to interlocutory appeal under 28 U.S.C. § 1292(b). Accordingly, the Court **DENIES** WPATH's motion to certify (Doc. 271) on the merits and **DENIES** WPATH's motion to stay (Doc. 272) as moot.

Pet. App'x  000123

**DONE** and **ORDERED** May 15, 2023.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

```
1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF ALABAMA
2                          NORTHERN DIVISION

3

4      REV. PAUL A. EKNES-TUCKER,   *
       et al.,                      *
5                                   *
                Plaintiffs,         *   2:22-cv-00184-LCB
6                                   *   February 8, 2023
       vs.                          *   Montgomery, Alabama
7                                   *   10:00 a.m.
       KAY IVEY, in her official    *
8      capacity as Governor of the  *
       State of Alabama, et al.,    *
9           Defendant.             *
       ******************************

10

11

12                 TRANSCRIPT OF MOTION HEARING
             BEFORE THE HONORABLE LILES C. BURKE
13                UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22
       Proceedings recorded by OFFICIAL COURT REPORTER, Qualified
23     pursuant to 28 U.S.C. 753(a) & Guide to Judiciary Policies
          and Procedures Vol. VI, Chapter III, D.2.  Transcript
24               produced by computerized stenotype.

25
```

*CHRISTINA K. DECKER, RMR, CRR*
Federal Official Court Reporter
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000125**

1                          <u>APPEARANCES</u>

2
         <u>FOR THE PLAINTIFFS</u>:
3        Melody Eagan, Esq.
         LIGHTFOOT, FRANKLIN & WHITE, LLC
4        The Clark Building
         400 20th Street North
5        Birmingham, Alabama 35203

6
         Adam Reinke, Esq.
7        KING & SPALDING, LLP
         Atlanta, Georgia
8

9        Barry A. Ragsdale, Esq.
         Robert S. Vance, Esq.
10       DOMINICK FELD HYDE, P.C. LITIGATION
         Birmingham, Alabama
11

12       Cortlin Hall Lannin, Esq.
         COVINGTON & BURLING LLP
13       San Francisco, California

14
         Kaitlin Toyama, Esq.
15       U.S. DOJ
         Civil Rights Division
16       Washington, DC

17
         Jason R. Cheek, Esq.
18       Praveen Krishna, Esq.
         Margaret L. Marshall, Esq.
19       Lane Woodke, Esq.
         U.S. Attorney's Office
20       Birmingham, Alabama

21
         Stephen D. Wadsworth, Esq.
22       U.S. Attorney's Office
         Montgomery, Alabama
23

24

25

                    *CHRISTINA K. DECKER, RMR, CRR*
                    Federal Official Court Reporter
                        101 Holmes Avenue, NE
                        Huntsville, AL 35801        **Pet. App'x 000126**
                256-506-0085/ChristinaDecker.rmr.crr@aol.com

```
 1           FOR THE DEFENDANTS:
 2
             James W. Davis, Esq.
 3           Edmund LaCour, Esq.
             A. Barrett Bowdre, Esq.
 4           Benjamin Seiss, Esq.
             OFFICE OF THE ATTORNEY GENERAL
 5           501 Washington Avenue
             P.O. Box 300152
 6           Montgomery, Alabama 36130-0152
             (334) 242-7300
 7
 8
             FOR MOVANT EAGLE FORUM OF ALABAMA AND SOUTHEAST LAW
 9           INSTITUTE:
10           John Graham, Esq.
             PHELPS DUNBAR LLP
11           Birmingham, Alabama
12
13
14           COURTROOM DEPUTY:  Kimberly Ruffin
15
16           COURT REPORTER:  Christina K. Decker, RMR, CRR
17
18
19
20
21
22
23
24
25
```

*CHRISTINA K. DECKER, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, AL 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000127**

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | (In open court.) |
| 3 | THE COURT:  Good morning. |
| 4 | All right.  Before we get started, one quick question.  Is |
| 5 | the defendants' motion for judgment on the pleadings moot based |
| 6 | upon previous rulings of the Court, or is that still something |
| 7 | that's at issue? |
| 8 | MR. BOWDRE:  Your Honor, we do not think it's moot. |
| 9 | We believe it's still a live issue at this point. |
| 10 | THE COURT:  All right.  Fair enough. |
| 11 | Well, let's pick up the motion for sanctions first, and |
| 12 | then we will go to the judgment on the pleadings, and then |
| 13 | we'll get through some of these other issues. |
| 14 | All right.  On sanctions, who is going to speak for the |
| 15 | movant? |
| 16 | MR. GRAHAM:  John Graham, Your Honor. |
| 17 | THE COURT:  Okay.  And I don't envision this to be a |
| 18 | very long argument, but I certainly will give everybody the |
| 19 | time that they need. |
| 20 | MR. GRAHAM:  Okay.  Right.  I don't think I need very |
| 21 | long.  Thank you. |
| 22 | THE COURT:  All right. |
| 23 | MR. GRAHAM:  I know Your Honor's familiar with the |
| 24 | context of this.  We were here back in October on our motion to |
| 25 | quash the subpoenas that came from the federal government.  And |

1    Your Honor quashed all of those in their entirety.

2        Just a reminder, there were 11 very broad categories of

3    documents going for -- asking for documents from these two

4    non-parties, these two volunteer grassroots organizations going

5    back to 2017.  And asking for everything from draft

6    legislation, polling data, internal policy goals,

7    communications with other non-parties, and the political

8    groups, as well as legislation given to the -- proposed to the

9    state legislature.  And Your Honor recognized, we believe

10   properly, that those were just way outside the scope of proper

11   discovery.

12       You did not reach, and it wasn't necessary for you to

13   reach the First Amendment privilege issues also associated with

14   that.  And I think that that's -- the political speech context

15   of this, I think, is particularly important for the motion for

16   sanctions.

17       We are not just talking about a run-of-the-mill document

18   subpoena.  We are talking about a document subpoena -- a very

19   broad, extremely overly broad subpoena, I'd say completely

20   irrelevant, but to grassroots organizations for political

21   speech.  I mean, what the First Amendment is all about.

22       We -- the language of the federal rule, I believe, covers

23   this issue very clearly.  It's mandatory on the lawyers and the

24   party and -- the DOJ in this case.  They were required to take

25   reasonable steps on the front end before they issued the

1  subpoena to avoid putting any undue burden or expense on a

2  non-party who received the subpoena.

3      And then the Court, charged with enforcing that duty,

4  certainly entered discretion about the type of sanctions.  But

5  I believe it says that the appropriate sanctions include, not

6  limited to reasonable attorneys' fees, and the like.

7      So I believe punitive and compensatory damages are

8  certainly authorized by the rule.  In fact, the word sanctions

9  certainly implies punitive nature to begin with.

10     I think what's been telling in this case is just sort of

11 the evolving rationale that we have heard from the federal

12 government for all of this.  And basically it's been, well, we

13 just needed to know who wrote the statute.  That's what we

14 heard.  That's what was in the original cover letter from

15 Mr. Cheek as the purpose for this 11-category multi-year

16 subpoena.

17     And I just think that just doesn't hold water.  I think

18 Your Honor's previously order recognizes that.

19     Even if they wanted to argue one or two of the categories

20 could be potentially relevant to those.  And I disagree that

21 they are.  I mean, they have no argument, have not even tried

22 to make an argument for the overwhelming majority of this.

23     In fact, as you recall about the Friday evening before the

24 last hearing, they suddenly went from the 11 categories down to

25 about 1 percent and tried to -- and changed what they were

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000130**

1  after.

2          THE COURT:  Well, and I was going to ask you about

3  that, too.

4          MR. GRAHAM:  Yes, sir.

5          THE COURT:  So in the weighing and balancing of this

6  test for sanctions, does the government get credit, and if they

7  do, how much credit do they get for essentially acknowledging

8  pre hearing that most of what they sought they were not

9  entitled to?

10          MR. GRAHAM:  Well, I would suggest -- certainly it's

11  in your discretion -- but I would suggest they don't get much

12  credit.

13      At that point, we had gotten subpoenas that they had to

14  have known from the outset were just ridiculously overbroad.  I

15  mean, they knew what this was about.  They knew that these --

16  and, again, even tried to argue for the relevance in most of

17  them.  We filed our objection, our motion to quash.  They, at

18  that point, have no particular compromise in mind.

19      They come back a few days later.  They come back with

20  about half of the categories they still say they want.  You

21  know, that's -- and they're still way over-the-top overbroad.

22  We didn't agree with that.

23      And they take the position in their opposition to our

24  motion to quash that the subpoenas are narrowly tailored, which

25  they're not.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000131**

1     And so we go along.  We have to file a reply brief.  We

2  have to have a hearing.

3     And so, yeah, after two months of fighting about this,

4  incurring a lot of costs on our behalf, and a lot of effort,

5  last minute they, I guess, finally read some cases, or read the

6  writing on the wall, or what have you.  I don't know.  I can't

7  speak for their thought process.  But I would suggest under

8  these circumstances they should not get much credit for that.

9     The -- again, the rule -- language of the rule is

10  mandatory.  The Eleventh Circuit case we've cited on this, the

11  Progressive Emu case, I think, is very much on point.  And in a

12  lot of ways.  I'd say here the conduct is probably more

13  egregious.

14     They made a point in that case that one of the problems

15  with that subpoena was it was untimely.  And certainly that's

16  not the issue here.

17     On the other hand, that was a commercial case and a -- not

18  the government, but a law firm on the heat of trial preparation

19  who probably went overboard on the subpoena.  And the party

20  resisting it did not have to comply.  The judge quashed the

21  subpoena and entered sanctions.

22     One of their as arguments being, well, you don't get

23  sanctions unless you had to actually comply with the subpoena.

24  Well, I think that's just wrong.  The Eleventh Circuit

25  Progressive Emu case shows it's wrong.  I think the language of

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000132**

1  the rule shows it's wrong.

2       In fact, there's, you know, the rules have actually --

3  what they're talking about is a cost-shifting provision that's

4  in a separate part of the rule.  Our motion for sanctions is

5  under 45(d)(1).

6       There's a separate part on 45(d)(2)(B)(ii) that would

7  provide for in a case where if a party, a non-party objected to

8  a subpoena and the Court ruled that some parts were duly

9  complied with, the Court could still order the cost to be

10 shifted to -- the cost of compliance to be shifted to the

11 requesting party.

12      Well, that's not what we are here about.  And that's a

13 separate provision.  If that's what it means, then 45(d)(1)

14 essentially has no meaning, in terms of the sanction.  I don't

15 believe that's what the -- would be the proper interpretation

16 of that.

17      They suggested or implied that bad faith is the standard

18 for this.  That's simply not true.  The language of the rule is

19 the standard.  But I would say I do believe there's bad faith

20 here.

21      I am not attributing this to Mr. Cheek personally.  Do I

22 think he should have pushed back a little bit on whoever was

23 calling the shots here and pushing the subpoena?  Yes, I do.

24 But I have nothing personal at all with Mr. Cheek.

25      But whoever is responsible for this, I believe sanctions

1  are appropriate.  This is uncalled for.

2      This Department has become very political.  I think that's

3  clear from watching the news these days.  And there's just no

4  justification for this.  And I think sanctions are appropriate

5  in whatever form Your Honor deems appropriate.

6          THE COURT:  Thank you.

7          MR. GRAHAM:  Thank you.

8          THE COURT:  Mr. Cheek, are you going to argue this for

9  the government?

10          MR. CHEEK:  Your Honor, my colleague Praveen Krishna

11  will argue on behalf of the government.

12          THE COURT:  Okay.

13          MR. KRISHNA:  Thank you, Your Honor.  May it please

14  the Court.  Praveen Krishna for the United States.

15      In the last hearing, we -- this Court quashed our

16  subpoena, and that is a ruling we have absolutely taken to

17  heart.  We have followed this Court's ruling to the letter.

18  And we are not seeking to challenge or have this Court

19  reconsider its prior ruling in any way.

20      But today we're faced with a very different question,

21  because we are not just looking at the subpoena alone.  We are

22  looking at the overall conduct of the United States, and we're

23  asking whether we took reasonable steps to avoid imposing an

24  undue burden.

25      Now, there's been a little bit of discussion about what

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000134**

1  the appropriate standard is under Rule 45.  And we're happy to

2  use the standard set forth in Progressive Emu, the case that my

3  friend just cited, which is whether the conduct is sufficiently

4  egregious.

5      Conduct that is sanctionable under Rule 45 has to be

6  extreme conduct.  It has to be conduct that falls well outside

7  of the balance of normal civil advocacy.  And we simply don't

8  have that here.

9      The motion for sanctions should be denied for three basic

10 reasons.  The first is, we had a good faith reasonable basis to

11 believe that our subpoena would cover relevant information

12 because we were addressing open questions of law about the role

13 of legislative history and the role that private organizations

14 can play in providing that history.

15     For example, Chief Judge Pryor -- let me back up for a

16 second.

17     Legislative intent and legislative purpose are questions

18 that are central to our equal protection claim.  And Chief

19 Judge Pryor, in Stout vs. Jefferson County, he explained that

20 only a state actor can violate the Fourteenth Amendment, but

21 constituents' statements and conduct can be relevant in

22 determining the intent of public officials.

23     That was the rationale that we relied upon in issuing the

24 subpoenas to the Eagle Forum and SLI.  As constituents who

25 played a central role in advocating for and enacting VCAP, they

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000135**

1  were sources of relevant evidence about the legislative history

2  that could provide evidence about legislative purpose and

3  legislative intent.

4       Wal-Mart, the Alabama Educational Association, the Florida

5  State NAACP, all of these different organizations have issued

6  successfully similar subpoenas.  Now, our arguments relying on

7  those cases were not ultimately persuasive with this Court, but

8  they weren't frivolous arguments.  These were arguments that

9  fall within the bounds of normal civil advocacy.

10      Getting to the second reason why the motion should be

11 denied.  It was understandable that at the time that we were

12 drafting the subpoena, we couldn't have anticipated the burden

13 that it would impose.  And it should be noted here that it's

14 only ever been that the Eagle Forum that has said that this

15 subpoena is too difficult, in terms of the number of documents

16 it is asking for.  The SLI has never made that claim.  But at

17 the time we were drafting the subpoena, we had no basis to

18 distinguish between the two.

19      Now, the standard that we have to -- the rule asks us to

20 take reasonable steps.  And what is reasonable is based on what

21 we could reasonably know.

22      And so the idea that facts that we learn afterwards would

23 make our pre -- would make our conduct unreasonable, that just

24 doesn't make sense.  What matters instead is, once we learn

25 about the burden, what do we do about it?

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000136**

1      And here, we fulfilled our duties to the letter.  The
2  efforts that we made to narrow the scope of the subpoena and to
3  accommodate the interests of the Eagle Forum, those should not
4  be taken as a signal that we believe we weren't entitled to
5  this information in the first place.  Instead, what we were
6  doing is we're running a cost-benefit analysis, where, on the
7  one hand, we are weighing our interest in this information, but
8  we're also offsetting the difficulties that the Eagle Forum and
9  other institutions will have in producing it.  We are also
10  thinking about the likelihood of future litigation down the
11  line, and our interests in advancing and developing other parts
12  of our case.
13      And so the fact that we made these concessions, that
14  weighs very strongly in favor of denying the motion for
15  sanctions.  Because to take it the other way, to adopt the
16  interpretation that the Eagle Forum and SLI are advancing, that
17  would have some serious consequences.
18      It is the normal case that an issuer of a subpoena will
19  reach out to the recipient, there will be an informal dialogue,
20  and there will be compromise.  But if an issuer of a subpoena
21  thinks that, well, if I offer to drop these categories, the
22  recipient can come back and then move for sanctions because
23  that will be proof that I didn't need those categories in the
24  first place.
25      That means that instead of issuers and recipients

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000137**

1  resolving issues individually and informally, they will be

2  coming to the Court far more often because there is a strong

3  incentive for the issuer to remain intransigent.  And that's

4  why every court that has looked at this issue, they have

5  consistently held that when an issuer of a subpoena issues a

6  motion -- or issues a subpoena and that is overbroad and that

7  is quashed, if that issuer engages in good faith negotiations

8  to narrow the scope of that subpoena, then sanctions are

9  inappropriate.

10      The Eagle Forum and SLI haven't cited a single case where

11  anybody has made the kinds of concessions that we have made,

12  and still faced sanctions.  The closest case that they have is

13  Progressive Emu, which is, as my friend noted, is completely

14  distinguishable on the basis of timing.

15      The central fact in that case was that the subpoena that

16  was issued by Progressive Emu, that was described as an end run

17  around discovery.  The issuer had multiple opportunities to

18  seek the information they wanted in that case.  In Progressive

19  Emu, they had a discovery period.  They had a remand period.

20  But they waited almost a year until the eve of trial to ask for

21  a decade's worth of documents within less than one business

22  day.  There's nothing like that that we have done here.

23      Now, in terms of the scope of the subpoena and whether it

24  was overbroad, I'd also like to direct this Court's attention

25  to the case that I previously referred to, Florida State NAACP.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000138**

1    And the cite is 568 F.Supp.3d, 1301.  And that's an important

2    case because there the Florida State NAACP was challenging an

3    election law.  The law was drafted in part by The Heritage

4    Foundation.  The NAACP moved for the similar materials to what

5    we were seeking in this case.  And the Southern District of

6    Florida, in that case, it granted a motion to compel, requiring

7    The Heritage Foundation to provide substantially similar

8    information to what we were seeking.

9        And my point in citing that case isn't to get into a

10   question about whether that case was right or wrong.  It's

11   simply to note that the arguments that we were making and the

12   conduct that we engaged in are within the bounds of normal

13   civil advocacy.  It isn't egregious for us to rely on theories

14   and court decisions that favor the points that we take.  That's

15   the bread and butter of civil advocacy.

16       And, as for the questions about the First Amendment, this

17   Court did not resolve those issues.  And we maintained the

18   arguments that we have made before.

19       But I'd also note that Rule 45 distinguishes between

20   questions of privilege and questions of undue burden.  And Rule

21   45 says that you could quash a subpoena either because it seeks

22   privileged information or because it would impose an undue

23   burden.

24       In contrast, Rule 45(d)(1) speaks only about the undue

25   burden.  And that would be the only basis for sanctions.  So

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000139**

1   the strict First Amendment arguments that my friend has raised,

2   those are outside the scope of this hearing, I believe.

3        And, furthermore, in terms of the intent of the United

4   States in issuing the subpoena, there is no evidence that we

5   had any sort of untoward motives.  The correspondence between

6   the United States and Mr. Graham, that is in the record, and it

7   is perfectly civil and professional.  The only basis for

8   imputing any kind of an improper purpose to the United States

9   is the subpoena itself, but this subpoena is not unusual.

10       Now, it certainly may be controversial, and reasonable

11  minds can disagree about whether it was appropriate, but our

12  conduct here in issuing it was not sanctionable.

13       I'm happy to answer any questions this Court might have.

14  Otherwise, I ask that you deny the motion for sanctions.

15           THE COURT:  You mentioned earlier in your argument,

16  you said "when we were drafting the subpoena."  My question is

17  who is "we"?  What actors were involved in the drafting of this

18  particular subpoena?

19           MR. KRISHNA:  Your Honor, I don't fully know that.  I

20  mean, I think the conduct here --

21           THE COURT:  You can give me your best understanding.

22           MR. KRISHNA:  Sure.  Well, I mean, I first want to say

23  that the conduct --

24           THE COURT:  I really just want a direct answer.

25           MR. KRISHNA:  Sure.  It would -- I have to defer to my

1 colleagues because I don't know the individuals.

2          THE COURT:  All right.  Why don't I give you

3 15 seconds to talk?

4          MR. CHEEK:  Do you want me to answer?

5          THE COURT:  Sure.  Go ahead.

6          MR. CHEEK:  So, Your Honor, just for the record, this

7 is Jason Cheek.

8     It was a collaborative effort between assistant United

9 States attorneys in the Northern District of Alabama and

10 attorneys in the Civil Rights Division in Washington, D.C.

11          THE COURT:  And let me ask this question, Mr. Cheek.

12 Who would you say that the idea originated with?

13          MR. CHEEK:  I would say probably myself.

14          THE COURT:  All right.

15     All right.  I don't have any other questions for you other

16 than that.  So I think we have covered this subject.

17          MR. KRISHNA:  All right.  Well, could I make one

18 point, Your Honor?

19          THE COURT:  Yes.

20          MR. KRISHNA:  Thank you.

21     And I just want to emphasize that what's under review here

22 isn't the conduct of any individual attorney.  It's just the

23 Department as a whole.  And so we stand together as one team.

24 And it's that conduct that should be evaluated.

25          THE COURT:  I get that.  But I also think the answer

```
 1  that we've just gotten bears on this issue, as well.
 2            MR. KRISHNA:  All right.  Thank you, Your Honor.
 3            THE COURT:  All right.  Well, let's take up the
 4  judgment on the pleadings.
 5       Who is going to argue that for the State?
 6            MR. LACOUR:  I will, Your Honor.
 7            THE COURT:  How much time do we need on this?
 8            MR. LACOUR:  I think it will be very brief.
 9            THE COURT:  Excellent.
10            MR. LACOUR:  Thank you, Your Honor.  I think the
11  points here are few, and I think fairly simple.
12       When the private plaintiffs brought their claim, it was
13  really focused on the effects of SB 184, the effects on
14  transgender minors.
15       When the DOJ intervened, they said they were bringing a
16  similar equal protection claim that was not asking for more.
17            THE COURT:  Hold on one second, Mr. LaCour.  Is
18  anybody going to argue this on the other side?
19            MR. CHEEK:  Your Honor, the United States was not of
20  the impression that this motion was going to be heard today.
21  It's my understanding that we were to be heard on March 8th,
22  but I think clearly that's incorrect.
23            THE COURT:  Well, I'm just moving forward since we're
24  all here.  I actually thought that it was probably moot.  I'm
25  clearly wrong.  And so, you know, to the extent that somebody
```

 1  is prejudiced and wants to wait until March the 8th, I am fine

 2  with that.

 3          MS. TOYAMA:  Your Honor, this is Kaitlin Toyama for

 4  the United States, and we would agree.  I think March 8th would

 5  be great.

 6          THE COURT:  All right.  Then we will put that on hold

 7  until then.

 8          MS. TOYAMA:  Thank you, Your Honor.

 9          THE COURT:  Let's take up the motion to compel

10  production of plaintiffs' medical records.

11      Mr. LaCour, how long do we think this will take?

12          MR. LACOUR:  Probably somewhere in the range of 10,

13  15 minutes.

14          THE COURT:  10 minutes sounds good to me.

15          MR. LACOUR:  I will keep it 10 or less, Your Honor.

16      Your Honor, from the very beginning of this case, from the

17  very beginning of private plaintiffs' complaint, they have said

18  that this case concerns the right of the minor plaintiffs to

19  receive treatments that they have described alternatively as

20  medically necessary, appropriate, and essential.

21      They allege a constitutional right, not to these drugs in

22  general, or even to transitioning treatments in general, but to

23  medically necessary care.  That's paragraphs 99 and 105 of

24  their current complaint.  And it's found elsewhere in the

25  complaint and their pleadings.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000143**

1        But as we all agree, these interventions carry tremendous

2    risks.  That's why it's important that they be appropriate,

3    that they be essential.

4        Plaintiffs did not argue to Your Honor back here in May in

5    the P.I. hearing that there was some unfettered right to give

6    kids sex hormones or puberty blockers no matter the risk, only

7    for certain kids were the treatments appropriate.

8        Indeed, in the reply brief at the preliminary injunction

9    stage, they said, quote, to determine if and what medical care

10   is essential, medical providers utilize a multidisciplinary

11   approach for monitoring and assessment of transgender youth

12   patients that includes behavioral and physical health

13   specialists.

14       And Your Honor also heard from Drs. Ladinsky and Hawkins,

15   plaintiffs' experts, who said that there was a comprehensive

16   360-degree assessment that was recommended by WPATH and

17   performed at their clinics before anyone was subjected to these

18   treatments that might have lifetime effects.

19       And, indeed, the WPATH standards do state that healthcare

20   professionals should, quote, undertake a comprehensive

21   biopsychosocial assessment of adolescents who present with

22   gender identity related concerns, particularly because, quote,

23   there are no studies of the long-term outcomes of

24   gender-related medical treatments for youth who have not

25   undergone a comprehensive assessment, and that treatment in

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000144**

 1  this context, for example, with limited or no assessment has no

 2  empirical support.

 3       So, in other words, WPATH is saying that if you are

 4  providing these powerful drugs to children based on only a

 5  limited assessment or no assessment at all, then this is

 6  experimental.  There's no empirical support to back this up.

 7       And based on these guarantees that there's a careful

 8  assessment going on for these minor plaintiffs, the Court was

 9  at least preliminarily persuaded that they were going to likely

10  prevail on the merits.  The Court held that plaintiffs were

11  likely to establish a constitutional right to these

12  interventions, quote, subject to accepted medical standards.

13  That's page 1 of the preliminary injunction opinion.

14       The Court recounted the testimony from Drs. Ladinsky and

15  Hawkins, explaining that the benefits outweigh the risks in,

16  quote, certain cases, and that, quote, minors and their parents

17  undergo a thorough screening process.  That's page 10 of the

18  opinion.

19       The Court even recounted the testimony of Megan Poe, one

20  of the parent plaintiffs, who stated, in the words of the

21  Court's opinion, quote, medications have had no adverse effects

22  on Allison, that Allison is now happy and thriving.

23       The Court further held that nothing in the record shows

24  that medical providers are pushing transitioning medications on

25  minors, and that there was an imminent threat of harm to parent

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000145**

1  | plaintiffs -- plaintiffs and minor plaintiffs.

2  |       But now having secured their preliminary injunction on

3  | assertions that puberty blockers and cross-sex hormones are

4  | appropriate and essential care for these plaintiffs, the

5  | plaintiffs have performed an about-face.  They now claim that

6  | it is irrelevant whether the drugs are appropriate or

7  | inappropriate.  That it's irrelevant whether they are essential

8  | or whether they are doing unnecessary harm.  Irrelevant, as

9  | plaintiffs put it, whether, quote, plaintiffs were

10 | misdiagnosed.  That's on Document 215-1 at page 60.

11 |       And irrelevant, as they say at page 10 of their response

12 | to this motion, whether UAB actually follows the standards that

13 | their expert Dr. Ladinsky claims to follow.

14 |       I mean, these assertions are shocking both in their

15 | departure from what they told this Court at the preliminary

16 | injunction stage, and also in their implications for the

17 | plaintiffs' position.

18 |       Indeed, it appears now to be that their position is that

19 | the Constitution guarantees a right not just to give cross-sex

20 | hormones to kids when it's appropriate, but also to be able to

21 | harm kids and give them these treatments when it's

22 | inappropriate and not essential, as long as you are doing it

23 | for the purpose of a sex change.

24 |       And so unless that is plaintiffs' new theory of the

25 | case -- and I doubt that's the banner under which they want to

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x 000146**

1    travel -- basic principles of fairness, as well as judicial

2    estoppel, require that the motion to compel be granted.  The

3    documents are obviously relevant to the case, as presented by

4    the plaintiffs.  They allege these treatments are mental health

5    treatments that are appropriate and essential for them.  And

6    defendants have to be able to test those assertions.

7        They assert that because there is a blanket ban here, it's

8    irrelevant whether these treatments are actually helping or

9    undoubtedly harming the particular plaintiffs in this case.

10   That is not how as-applied challenges work.

11        I think if you imagine a scenario in a different

12   constitutional context, that becomes quite clear.  If there was

13   a Second Amendment implicated law that said anyone guilty of

14   any offense under state or local law is forever barred from

15   possessing a firearm, someone whose only offense was a parking

16   ticket would have a very strong as-applied Second Amendment

17   claim there.

18        But another plaintiff, whose offenses include multiple

19   counts of armed bank robbery would have a very weak as-applied

20   Second Amendment claim here.

21        Similarly, plaintiffs have to prove that they are

22   appropriate candidates for these treatments.  Merely signing a

23   declaration saying they are transgender simply won't do it.  I

24   mean, and plaintiffs' own experts admit that they're seeing a

25   greater number of kids showing up in their clinics claiming

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000147**

```
1   gender congruence, which is, quote, increasing our needs to do
2   very careful assessments about what type of care each child
3   gets.  It's at page 73 of the preliminary injunction
4   transcript.
5        So defendants also need to see these records from the
6   private plaintiffs to see if that careful assessment is going
7   on or not.
8        And Dr. Hawkins stated there's a difference between
9   someone who has gender dysphoria and is transgender, and
10  somebody who is merely exploring their gender identity.
11       And, indeed, at the close of the preliminary injunction
12  hearing, Mr. Doss told you don't worry about testimony from
13  de-transitioners like Ms. Wright because the care in Alabama is
14  better than the care in Georgia that she received.
15       At page 372 of the transcript, he lamented, quote, If only
16  Ms. Wright had had a doctor like Dr. Ladinsky who is committed
17  to a deep meaningful evaluation of the child.
18       Well, we need to see if that deep meaningful evaluation
19  actually happened.  It's the most basic principle of fairness
20  here.  These are clearly relevant.  The assertion that they're
21  irrelevant raises very serious questions about exactly what
22  their claim is in the first place.
23       And if it's anything like what they have pleaded, if it's
24  anything like what they told this Court it was at the
25  preliminary injunction stage, then the motion to compel has to
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000148**

 1  be granted.

 2          THE COURT:  Do you want to touch on the assertion of

 3  privilege?

 4          MR. LACOUR:  Yes, Your Honor.

 5      The psychotherapist privilege, obviously recognized by the

 6  Supreme Court, in the same opinion, in footnote 14, the Court

 7  says, like any testimonial privilege, this privilege can be

 8  waived.

 9      So if you are a criminal defendant bringing a *Strickland*

10  claim, and you say, my lawyer gave me really bad advice, you

11  are putting that attorney-client privilege matter at issue.

12  And, of course, the State is going to be able to talk to your

13  lawyer and say, Did you really say that?

14      The same is true of this testimonial privilege, where they

15  are putting their mental health at issue.  I mean, the

16  complaint has multiple allegations about depression, about

17  seeing therapists, about the thorough assessment that was

18  undergone; biopsychosocial, that means biological components

19  that might explain the gender dysphoria; social components,

20  like physical trauma, or family dynamics; other psychological

21  components; comorbidities like autism, ADHD.  And other factors

22  that might explain why you are seeing gender confusion, and

23  might be the real cause, and would make that person an

24  inappropriate candidate for a lifetime of medicalization on

25  puberty blockers, cross-sex hormones, and eventually surgeries.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000149**

1      So they have put these squarely -- they put mental health
2  squarely at issue.  They have put their medical records and
3  medical history squarely at issue because these are very
4  dangerous drugs.  And that's why Dr. Ladinsky and Dr. Hawkins
5  told you we're doing a very, very careful assessment.

6      I mean, Megan Poe told you they practically had to beg the
7  UAB doctors to get these drugs.  Well, we need to be able to
8  test that.

9      And, I mean, under the WPATH standards that plaintiffs
10 have been telling this Court are the gold standard for gender
11 dysphoria treatment, that's the sort of assessment that's
12 supposed to be happening.

13     And there haven't been any studies done, as WPATH has
14 said, on the effects of these drugs on kids who have only had
15 the limited assessment or have had no assessment.  So unless
16 their theory, again, is the radically broad theory that there
17 is an unfettered constitutional right to give even a
18 three-year-old testosterone for purposes of changing her sexual
19 appearance, we have to be able to assess whether these really
20 are appropriate and essential.

21     And there are also sorts of different, again, biological,
22 social, and psychological factors that could go into a child's
23 gender dysphoria, so we need to be able to assess those records
24 to see if these really are appropriate.

25     We had offered them a chance to just back off and only

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000150**

```
 1  press a facial challenge --

 2          THE COURT:  Well, and I was about to ask you about

 3  that.

 4      So in your motion, you have kind of outlined some of the

 5  back and forth, and the offers to compromise and maybe limit

 6  the scope that were exchanged.

 7      Is your position the same as it was when it was filed?

 8  Tell me, you know, specifically, what does the State think they

 9  absolutely have to have?

10          MR. LACOUR:  I think we need, as long as they're still

11  applying an as-applied challenge, where they are going to come

12  forward with testimony saying we are doing this carefully in

13  every instance, our doctors are doing this carefully in every

14  instance, the doctors did it very carefully and appropriately

15  in the instance of these five minor plaintiffs, and children

16  are thriving and are facing no side effects now, despite being

17  on these powerful drugs.  We're going to need to test that with

18  the five categories of documents that we have outlined in these

19  RFPs that are also set forth in our motion.

20          THE COURT:  So I realize this is all guesswork on your

21  part and my part at this point.  But give me some what-ifs.

22      Okay, Judge, if you let me have this record, you know, if

23  it showed scenario A, or scenario B, or scenario C, it's

24  absolutely relevant to the meat of this matter.  Give me some

25  fact scenarios, just what-ifs.  What you -- what you could find
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000151**

```
 1  that you think would be relevant.

 2          MR. LACOUR:  Well, Your Honor, at page 20 of your P.I.

 3  opinion, you said the records showed there was a thorough

 4  consideration that happens before these drugs are given to kids

 5  that could leave them sterilized for life.

 6      The records might show that a thorough assessment didn't

 7  happen.  And that, thus, there is a much greater increased risk

 8  and a much lesser chance that there's going to actually be a

 9  benefit for a particular child.  That would be one example.

10      You also said in your P.I. order that there wasn't

11  competent evidence or relevant evidence rather, that these

12  drugs were being pushed by medical providers in the state.

13      We think some of the declarations we submitted provided

14  such evidence, but evidence in the records that plaintiffs have

15  might be further evidence of that, that there are limited or no

16  assessments going on, that there are obvious comorbidities or

17  social factors, like trauma, that might explain why a

18  particular child or teen is feeling this gender discomfort that

19  are being overlooked either for reasons of ideology, or

20  financial interests, or just sloppy work.

21      I think that would be very relevant to determine whether

22  those legislative findings that were laid out in the Act have

23  some evidence to back them up.

24          THE COURT:  Has there been any discussion about a

25  protective order coupled with an in camera review by the Court
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000152**

```
 1  to solve this, or no?

 2          MR. LACOUR:  I think we already have a protective

 3  order in place and have had it in place for a while in

 4  anticipation of this.

 5      I mean, in the Arkansas case that you are well aware of, I

 6  mean --

 7          THE COURT:  Quite well aware.

 8          MR. LACOUR:  Quite well aware of.  The Arkansas

 9  plaintiffs turned over mental health records.  They turned over

10  medical records.  There wasn't any fight about this.  It was

11  all subject to a protective order, of course.  So, and we

12  absolutely will take that seriously and be sensitive to that.

13      But this happens in litigation, when a plaintiff comes

14  forward and puts a medical or mental health assertion at issue.

15  And we cite many of those cases in our brief to explain why

16  that privilege is waived by the assertions that they have made.

17      And, so, what typically happens in these cases, is if

18  there's --

19          THE COURT:  I probably didn't formulate that question

20  very well.  My question really wasn't about a protective order

21  as much as it was has anybody talked about just an in camera

22  review as a way to solve this?  Does the State have a position

23  on that?

24          MR. LACOUR:  I don't think we have discussed that,

25  Your Honor.
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000153**

```
 1            THE COURT:  Is that something that -- is that
 2   something that either side thinks would help here?  Or do you
 3   want me to rule on the merits of this?
 4            MR. LACOUR:  Could you explain a little more how you
 5   think that would work?  You would look at the records?  I
 6   mean --
 7            THE COURT:  I'm not saying we should or shouldn't.
 8   I'm just throwing it out there.
 9            MR. LACOUR:  I don't think that that would necessarily
10   help, Your Honor.  Part of the reason we want these records is
11   to provide them to our experts who are physicians, who are
12   mental health experts, who are going to be better equipped than
13   I certainly would be, to look at them and determine whether
14   that thorough assessment really happened or whether some things
15   were overlooked.
16            THE COURT:  Got it.  I was just asking the question.
17            MR. LACOUR:  Yes.
18            THE COURT:  All right.  Anything else you want to put
19   forth today?
20            MR. LACOUR:  If there are no further questions, then,
21   no, Your Honor.
22            THE COURT:  All right.
23            MR. LACOUR:  Thank you.
24            THE COURT:  Ms. Eagan, it seems like you are going to
25   be the person to argue this.
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000154**

```
 1              MS. EAGAN:  Yes, sir.  It's just me today.

 2              THE COURT:  All right.  So I guess my first question

 3  to you would be:  Are we full-throatedly standing on privilege

 4  today?  Or is it really just the scope and relevance?

 5              MS. EAGAN:  Judge, maybe I should first start off.  We

 6  have made an offer to the State for -- to produce records that

 7  would be the medical and mental health records that relate to

 8  the evaluation, diagnosis, and treatment of gender dysphoria

 9  for these minor plaintiffs.

10      That would include medical records that reflect the

11  evaluation and reflect the diagnosis of gender dysphoria for

12  each of these children.  That would be records that assess the

13  medical need for the treatment of the gender dysphoria that is

14  at issue in this case.  It also would be medical records that

15  reflect the provision of medical treatment and mental health

16  treatment for gender dysphoria, as well as the ongoing

17  monitoring and evaluation for the condition of each of these

18  minor plaintiffs.

19      Hearing Mr. LaCour and what he says why they need these

20  records, I did not hear anything that he said that would be

21  something outside of the scope of what we have already offered

22  to produce to them.  But when we made that offer to the

23  defendants, we were told, no, we think we need to get all

24  mental health records on these children.  And I said even back

25  to the age of three?  And they said, yes, we believe we're
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000155**

 1  entitled to that.

 2          THE COURT:  Are there mental health records on these

 3  children to the age of three?

 4          MS. EAGAN:  I don't know, Judge.  But my point is, is

 5  that they're saying we should be entitled to anything that

 6  relates to anything related with these children.

 7      And to be clear, in the Arkansas case, what the plaintiffs

 8  gave in that were records, my understanding is, relating to the

 9  diagnosis and treatment of gender dysphoria for the children.

10  I mean, we have really gone, I think, beyond with what we have

11  made the offer.  But to the extent there were other records,

12  those were redacted.

13      And so, you know, it is our position -- and I will say the

14  protocol that we offered to the defendants was so that they are

15  not going and subpoenaing records and getting them and then

16  getting records outside of what we have offered.

17      What we said is we will go, we will get them through

18  authorizations, we will then produce things that are within

19  those categories to you.  If you see something else that you

20  feel like you need to know, come back to us, we can go get

21  those, look at those records, and then provide to you if it

22  fits within these categories.

23      It is a more than generous offer that we have made to the

24  State.  But they have rejected it.  And so that's why we're

25  here today to argue this.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000156**

1      And to be very clear, Judge, our offer really goes beyond,

2  in my opinion and in our opinions, what they would even be

3  entitled to in this case.  Because the issue before this Court

4  is, is this categorical ban unconstitutional?

5      It is a categorical ban of transitioning medications for

6  transgender youth, which is what Your Honor specifically has

7  found already in your preliminary injunction.  You said this is

8  a categorical ban.

9      And it doesn't matter what the conditions are -- the

10  individual circumstances are of a particular child.

11      And, Judge, this is a case about the constitutionality of

12  this law on its face and what it says.  This isn't a medical

13  malpractice case to put into question whether this particular

14  doctor met the standard of care, or whether that particular

15  doctor met the standard of care.  Whether or not they met the

16  standard of care, the law still makes it a crime to provide

17  these transitioning medication to transgendered youth.

18      And so whether or not a transgender minor has or has not

19  been properly diagnosed with gender dysphoria, whether or not

20  the medical assessments met the requirements of WPATH is really

21  of no issue because it's still a crime under this law.

22      And because this is a categorical ban, Your Honor,

23  defendants presumably are taking the position that no

24  transgender minor -- not these plaintiffs, not any transgender

25  minor -- regardless of the circumstances, should receive these

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000157**

```
 1   transitioning medications.

 2           THE COURT:  I have one question.  So, as you know from

 3   my order, I made credibility determinations and gave certain

 4   testimony greater weight than others.

 5       You know, I don't think that I would find this in the

 6   medical records, but what if one of your experts did no

 7   evaluation and just wrote prescriptions for anybody that came

 8   in the door?  Wouldn't that directly bear on the outcome of the

 9   this case, depending on what I heard at the next hearing?

10           MS. EAGAN:  Your Honor, then, let's go back to what it

11   is that we have already offered.

12           THE COURT:  I understand that.  But my question is:

13   That would directly bear, right?

14           MS. EAGAN:  As far as the constitutionality of this

15   law?  I don't believe so.  Could it go to the credibility of

16   the witness?  Yes.

17           THE COURT:  Aren't they all kind of tied up together?

18           MS. EAGAN:  Not necessarily.  I mean, I guess the

19   question that I have --

20           THE COURT:  I mean, I don't think you would have put

21   those experts up there if you didn't think that they were

22   necessary to your case.

23           MS. EAGAN:  And I agree.  And it is our position that

24   these experts at UAB are following the standards of care.  And

25   counsel has issued a subpoena to UAB to get records related to
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000158**

```
 1   their protocols and what they are doing at UAB, and is doing
 2   discovery, or can do discovery about what is happening at UAB.
 3        THE COURT:  My question would be how do I separate out
 4   one mental health record from another in this?  How do I
 5   reasonably make that determination?  That they're not entitled
 6   to it?  Are they not related?
 7        MS. EAGAN:  Well, Judge, I guess -- they have asked
 8   for mental health records that could be, you know, a child --
 9   I'm struggling with going through it because these children --
10   because we're launching a constitutional challenge that somehow
11   that would entitle them to every medical record and mental
12   health record that a child has had since the age of zero.
13        THE COURT:  Correct me if I'm wrong, but I thought
14   experts on both sides of the hearing, you know, testified that,
15   you know, other mental health issues are often tied up in the
16   assessment of these issues.  Am I wrong about that?
17        MS. EAGAN:  And, Your Honor, what we have offered to
18   provide them is the records that all relate to the assessments.
19        THE COURT:  You are just arguing to me.  You are not
20   answering my question.
21        MS. EAGAN:  I'm sorry.  I thought I was, Judge.
22     What's your question again, Judge?  I'm sorry.
23        THE COURT:  I mean, my question was:  My
24   understanding, my memory of the trial was that all of the
25   experts basically said, hey, you know, other mental health
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000159**

```
 1   issues often and can be tied up with gender dysphoria.  You
 2   know, it's not always just limited to that.  And so am I
 3   correct about that testimony?
 4            MS. EAGAN:  They did say that there are other factors
 5   that could be weighing into children's mental health
 6   conditions, and that those are considered as part of the
 7   evaluation.
 8            THE COURT:  So if I limit it just to gender dysphoria
 9   without any of those other conditions, it seems like maybe I am
10   closing the window down from what both experts said they took
11   into consideration when they made a diagnosis.  Am I wrong
12   about that?
13            MS. EAGAN:  Can I step back a little bit and see if
14   this helps?
15            THE COURT:  Yes.  Certainly.
16            MS. EAGAN:  Here's the thing, is that -- and these
17   children and that they're diagnosed with gender dysphoria is
18   relevant.  I mean, and, again, this is an -- our challenge is
19   because these are trans children -- transgender youth who have
20   been deprived access to standard-of-care medications.
21       And in an equal protection challenge, it is not -- we do
22   not have to demonstrate that the child actually would take the
23   medicine if they do not have -- if they have the benefit.
24       It is well established in the cases such as in the United
25   States vs. Virginia case, those were women who wanted to get
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000160**

```
 1  into VMI.  They didn't have to demonstrate they actually would
 2  go to VMI, or would have gotten accepted into VMI in order to
 3  have standing to challenge the statute.
 4      But here's where I really am struggling, Judge, from a
 5  standpoint -- and I don't know -- I think I know what the
 6  State's position is on this.  The burden here is we show this
 7  is a sex-based classification.  And then the burden shifts on
 8  the State to show what was the justification when the law was
 9  passed?  And it ties to when the law was passed.
10      The United States vs. Virginia case is clear on that.  Not
11  some sort of post hoc information you gather through
12  litigation.  And then whether or not it was narrowly tailored
13  to that state interest.  How is a child's individual records
14  relevant to what the State's interest was at the time?
15      Now, is the State's position going to be that if these
16  plaintiffs were properly assessed, and if a gender dysphoria
17  diagnosis was appropriate, and a doctor has found these to be
18  medically -- these treatments to be medically necessary, is it
19  going to be their position that then, in that situation, that
20  this law is unconstitutional as applied to that child?
21      If that is their position, then maybe we reassess what
22  we're doing with the medical records.  But that's not their
23  position.
24      Their position is that this treatment -- these treatments
25  and this ban is constitutional and that no child should receive
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x 000161**

```
 1   these treatments, regardless of their individual circumstances.
 2        That is why these records really have no relevance to the
 3   issues that are here, which is, is this a sex-based
 4   classification?  And if so, what was the State's interest at
 5   the time that the law was passed?  And what they did, is that
 6   narrowly or appropriately tailored to the state interest?  An
 7   individual child's records are not relevant.
 8        Now, I do recognize that at the preliminary injunction
 9   hearing we did get into issues about how these particular
10   children benefitted from these medications and what the impact
11   would be on a particular child when -- if they were removed.
12        At the preliminary injunction hearing, we had to prove
13   imminent harm.  We had a different standard that we had to
14   prove than what we have at the permanent injunction stage.  At
15   the permanent injunction stage, the evidence plays out
16   differently.
17        And so the fact that we talked about and we put up Ms. --
18   I think it was Poe, but the mother that testified.  I mean,
19   that went to what we needed to prove at the time of the
20   preliminary injunction, as opposed to what would be important
21   at the permanent injunction stage.
22        So, Judge, a couple of other points, if I may, just to
23   address some of the arguments that have been raised by the
24   defendants as to why they believe that these records should be
25   discoverable.  Unless you have any other questions, or if we
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000162**

 1 | need to go back to your last question.  Okay.

 2 |     On the issue of the facial versus as-applied challenge,

 3 | the defendants try to say, oh, well, they were making an

 4 | as-applied challenge, so that somehow opens the door to these

 5 | records where you wouldn't be able to get them if this was a

 6 | facial challenge.

 7 |     To be clear, the plaintiffs challenged this Act on its

 8 | face because it targets transgender minors, and it deprives

 9 | them of transitioning medications regardless of the individual

10 | circumstances.

11 |     Your Honor recognized specifically in your opinion last

12 | year that the Act prohibits transgender minors and only

13 | transgender minors from taking transitioning medications due to

14 | their gender non-conformity.

15 |     And then as to our plaintiffs, they challenged the law

16 | because they are transgender minors who are deprived of these

17 | transitioning medications.

18 |     Now, the distinction here between whether it's facial or

19 | as-applied, it's murky.  And whether -- it really is their --

20 | what we have to prove is the same.

21 |     The United States Supreme Court has specifically

22 | recognized in the Bucklew vs. Precythe case, which is 139 S.

23 | Ct. 1112 from 2019, classifying a lawsuit as a facial or an

24 | as-applied challenge does not speak at all to the substantive

25 | rule of law necessary to establish a constitutional violation.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000163**

1        What we plan to show is that this violates the

2   constitutional rights of these children because they're

3   transgender or transgender children, in general, is really one

4   and the same, Judge.

5        And, again, when it comes to -- we can prove or we

6   demonstrate from the face of this that this is -- this

7   categorical ban is a sex-based classification, so then it

8   shifts to the State to show at the time the Act was enacted,

9   what was their justification.

10       And the State's justification as to when the Act was

11  enacted -- that it's experimental, or they're different, or

12  that it's being that the medical community is pushing these --

13  those do not turn on whether a particular doctor met the

14  standard of care as to a particular child.

15       On the holistic approach piece, where they say that the

16  standard of care requires a comprehensive holistic look, again,

17  that does not, for purposes of a constitutional challenge, make

18  an individual child's mental health and medical records

19  relevant.  The defendants do not need -- we do not need this to

20  prove that this law is constitutional -- is unconstitutional,

21  and defendants do not need an individual child's medical

22  records to prove the law is, or to defend the

23  constitutionality.

24       And the realities of this, Judge, is that what we believe

25  the State is trying to do is, they're trying to put the minor

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000164**

```
 1  plaintiffs' physicians on trial here and question their medical
 2  decisions, and to question whether they were stringent with
 3  their evaluations, or whether they met the standard of care.
 4  Essentially create a medical malpractice sideshow and to
 5  convert you into finding whether or not a doctor has or has not
 6  met the standard of care.  And that is not what is intended
 7  with this constitutional challenge.
 8      And, again, whether UAB did this -- as I wrote down the
 9  words of Mr. LaCour -- deep evaluation into these particular
10  children, again, that will be covered with what we have already
11  offered the defendants.
12      And then the last piece -- and then I will get to the
13  privilege -- is the standing question.  There has -- the
14  defendants did raise that we would need to use these records
15  for standing.  Again, these children have standing because they
16  are transgender minors who are harmed by the Act.
17      We will gladly produce the record that says this child has
18  been diagnosed with gender dysphoria.  We'll gladly produce
19  records that will demonstrate for those children who are taking
20  these medications that they are taking these medications.
21      That's enough for them to have standing.  But whether
22  doctors disagree about whether the gender diagnosis was correct
23  or not correct, doesn't weigh into whether these children have
24  standing to challenge the law.
25      On the mental health privilege, I will touch briefly on
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000165**

1  that, Judge.  Without question, the mental health records are

2  protected by the psychotherapist patient privilege.  There's no

3  question for that.

4      The State's position is that we have wholesale waived that

5  privilege by filing a constitutional challenge.  Or these

6  children have by filing a constitutional challenge against the

7  Act.

8      They do not cite to any case that supports their position

9  that filing this -- a transgender minor filing this Act, even

10  if they are asserted that they have gender dysphoria, has

11  wholesale waived the privilege.

12      These children are not seeking damages for emotional

13  distress like what were in some of those cases.  These children

14  are not putting their overall mental health at issue.

15      Again, to me, it is strange to say that when someone files

16  a constitutional challenge to an Act that protects -- because

17  they are saying that it targets transgender minors, would

18  somehow put their confidential communications with health

19  providers at issue.  And defendants have not demonstrated or

20  shown us one case that would indicate that.

21      Judge, I believe that's all that I have for now unless you

22  have any other questions.

23          THE COURT:  All right.  Let's take a five-minute break

24  and we will come back.

25          MS. EAGAN:  Thank you, Judge.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000166**

```
 1                (Recess.)

 2                THE COURT:  All right.  Who all wants to be heard on

 3    the motion to quash?

 4                MR. RAGSDALE:  We do, Your Honor.

 5                THE COURT:  All right.  Are we going to have

 6    one person handle it for everybody?  Or do we have multiple --

 7                MR. RAGSDALE:  No, Your Honor.  I brought a smart

 8    lawyer with me to take the argument.

 9                THE COURT:  Gotcha.

10          How long do we need on this?  The reason I'm asking is if

11    we are going to have lengthy arguments, and we think we're

12    going to run 45 minutes or an hour, we may just take a quick

13    lunch break and come back and do it after lunch.  If we think

14    it's relatively short, then we might just press ahead.

15          Do y'all have an opinion on that?

16                MR. RAGSDALE:  My opinion is that since I'm not

17    arguing it is, it will be relatively short.

18                MR. LANNIN:  I second that motion, Your Honor.

19                THE COURT:  Okay.  How short is relatively short?

20                MR. LANNIN:  I think I need no more than 10 minutes.

21                THE COURT:  10 minutes.

22                MR. LANNIN:  Yes, sir.

23                THE COURT:  Okay.  What about from the other side?

24          Do we want to hit this motion in limine at the same time?

25    Or separately?
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000167**

1           MR. LACOUR:  Yes, sir.  I would think the motion to

2   quash and motion in limine rise and fall together.

3       So we think it will be relatively short on our end, as

4   well.

5           THE COURT:  Okay.  Well, let's just press on.

6           MR. LANNIN:  Good morning, Your Honor.  My name is

7   Cortlin Lannin.  I'm here on behalf of the three non-parties

8   that brought that motion to quash.

9       And, thanks, Your Honor, for letting me appear before you

10  today.

11      Part of the reason I'm optimistic that this could be short

12  is because a lot of ground has been trod already.  And I don't

13  know if Your Honor had seen the notice we filed yesterday, but

14  I'm glad to report that the State and two of my clients have

15  now settled their dispute.  So there is no live issue as to the

16  subpoenas directed at AAP or the Endocrine Society.

17      We do have a dispute about WPATH.  And, unfortunately,

18  that's what brings us before you today.

19      If Your Honor will indulge me, I think a little bit of

20  table setting about how we got here might be instructive.

21      The state of Florida has instituted a similar rule that

22  the Medicaid agency in Florida has now adopted a rule that

23  would ban Medicaid reimbursement for certain gender-affirming

24  treatments.

25      And the State subpoenaed these three organizations, in

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000168**

1  addition to 18 others, seeking the same types of materials that

2  the State has sought in this case.  So, essentially, internal

3  documents reading on the development of the guidelines in the

4  case of Endocrine Society and WPATH are policy positions for

5  all of the other organizations.

6      And the rationale that Florida offered in that case was

7  similar to the rationale we have now seen from the State, that

8  they wanted to probe the medical consensus across the community

9  in support of these gender-affirming treatments.  And we moved

10 to quash those subpoenas, as well.

11     And that notice to quash was heard before Judge Nichols in

12 the District of Columbia, where the subpoenas had been noticed

13 for compliance.

14     And after a very robust hour and a half hearing just a few

15 weeks ago, Judge Nichols essentially rewrote the RFPs that the

16 state of Florida had served, and substantially narrowed the

17 scope of discovery.  He did order those 22 organizations to

18 produce some documents, but it was a very limited set, as

19 compared to what Florida had first sought.

20     So we went back to the State and said, in light of that

21 development, why don't we agree to reproduce the exact same

22 things that Judge Nichols has now ordered produced in Florida,

23 we'll give those to you and call it a day.  And the State

24 accepted that offer, with respect to AAP and Endocrine, as I

25 said, in addition to a handful of small documents from each

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000169**

 1  organization that they will provide.

 2       But the State has, as to WPATH, requested four different

 3  categories of documents that, at the end of the day, WPATH was

 4  not prepared to provide.  It just went far beyond any

 5  reasonable conception of relevance, in that organization's

 6  view.

 7       So that's why we're here today.  We came close to a deal

 8  on WPATH, but unfortunately couldn't quite bridge the gap.

 9       And I'm happy to provide context to Your Honor about the

10  additional documents that the State sought, if that would be

11  helpful.  But I do think they read directly on the relevance

12  issues presented here.

13       And on that point, Your Honor, you know, the State has now

14  said that, and they repeated again and again in their brief,

15  that this case, according to the plaintiffs, is about the

16  medical establishment's views of gender-affirming care, as

17  reflected in the guidelines that are published by WPATH in this

18  instance.  And they're looking to probe whether the medical

19  community in fact does support these guidelines, whether there

20  is the consensus that they attest to.  And so they thus served

21  these subpoenas.

22       But the problem from our view, Your Honor, is that there

23  is a very serious disconnect between that theory of relevancy

24  and what the State has actually sought here.

25       The 47 RFPs that were served on WPATH really seek to probe

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000170**

1  every nook and cranny inside the organization.  They seek

2  communications between members, among members, about the

3  guidelines, about the studies that were considered for the

4  guidelines, all their internal dialogue that went into the

5  making of the guidelines.  And none of that, in our view, has

6  anything to do with whether the medical community as a whole

7  supports these medical guidelines that are published by WPATH.

8       That is a knowable fact.  There are policy statements

9  available from many medical organizations that reflect their

10 view about gender-affirming care.

11      And in Florida, the State subpoenaed those types of policy

12 statements from 18 other organizations, which I note the State

13 hasn't done here -- not that I am inviting that discovery, but

14 it does seem to reflect some disconnect between what they've

15 told Your Honor about this discovery and what they have

16 actually sought.

17      I think what the State really wants here, Your Honor, is

18 quite clear from the face of the request.  It's the internal

19 documents.  And they're trying to show, it seems to me,

20 internal dissent within this organization in particular.

21      They want to show that members may have spoken up, and

22 that had critical -- critical of some surveys that were used,

23 or wanted to use other studies that weren't considered.  And in

24 our view, again, that is just not relevant here because the

25 guidelines speak for themselves.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000171**

1      They are available online.  They include a robust section
2   that describes the methodology that was used to create the
3   guidelines and the multi-step process that was used.  That
4   includes a description of the methodology for which evidence
5   was graded for use in the guidelines.  It includes a list of
6   all the authors of the guidelines.  And that includes every
7   study that was relied upon when creating the guidelines.
8      All of that is knowable.  Any of us could find it right
9   now on the Internet, including the State.
10      But they want more than that, as I said, Your Honor.  And
11   we think that there's no need for that discovery.
12      And even if we credited an argument that the State is
13   looking to show that the guidelines are flawed, that they
14   reflect bad science, that is, again, a challenge that the State
15   can mount without internal discovery among members.  Because
16   the State has said to Your Honor today that it has experts
17   lined up to attest to the science, that it can speak to the
18   studies that should have been considered or that were
19   considered and why they're wrong.  All of that the State can
20   do, and it doesn't need any of this internal discovery for that
21   type of challenge.
22      So at the end of the day, there's just a disconnect, I
23   think, between what they are seeking and the reason they're
24   seeking it, according to their papers.  But even if you look at
25   what the discovery does want, Your Honor, the internal

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x 000172**

1    materials, there's just no, in our view, plausible argument for

2    how that's relevant at all.

3        And I should add, Judge Nichols in the District of

4    Columbia agreed when he narrowed these requests and said you

5    should produce a document that shows how you establish

6    guidelines, or how you establish a policy position.  That's

7    fine.

8        But the judge was emphatic that the State was not entitled

9    to delve into the inner workings of these organizations.  And,

10   in fact, he lambasted the State for seeking document requests

11   that sought any and all documents reading on these issues.

12       That leads to the next -- and I will just add, Your Honor,

13   that we have heard about Arkansas today.  Your Honor's clearly

14   familiar with that case.

15       In Arkansas, the plaintiffs did not seek, the defendant,

16   the State, did not seek any internal discovery from these

17   organizations.  They didn't need it.

18       The findings of fact that both sides have now submitted

19   and which we included with our reply, evidenced that there was

20   a fairly robust discussion about the validity of the WPATH

21   guidelines.  But both sides felt perfectly prepared to make

22   those attacks and those argument without this type of invasive

23   internal discovery.

24           THE COURT:  Let's talk about the burden of this

25   discovery, if I allow it.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000173**

1          MR. LANNIN:  Yes, Your Honor.  Thank you.  I was

2    headed right there.

3          So, as I said, there are 47 requests.  I think the State

4    had withdrawn a few of them in the course of our negotiations,

5    although it's not clear to me that that offer stands now.

6          The majority, if not all of them, seek any and all

7    documents reading on, again, variety of the internal topics.

8    Read, I think, holistically they seek pretty much every

9    document the organization has that would touch on the

10   guidelines.

11         We submitted a declaration from a WPATH personnel who

12   attested to the burden that would be involved in responding to

13   these subpoenas as they're drafted.  Just anytime you see a

14   request for any and all documents, you are necessarily thinking

15   about some type of invasive ESI search of e-mail collections,

16   of custodial collections.

17         And the State in its opposition paper alludes to that when

18   it suggests that it would be willing to help with the

19   identification of custodians and search terms.

20         You know, I am sure Your Honor is aware that anytime you

21   start talking about collecting vast quantities of ESI, and

22   applying search terms, and then review, you're talking about a

23   non-trivial amount of money and time spent to review those

24   documents.

25         And Judge Nichols in D.C., as I said earlier, went out of

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000174**

 1   his way to say these any and all document requests are facially

 2   burdensome.  And when he redrafted them, which he said frankly,

 3   I am drafting these again, he purposely substituted the phrase

 4   documents sufficient to show several categories of documents,

 5   because he acknowledged that he did not want the organizations

 6   to have to indulge in that type of invasive ESI discovery.

 7        So, you know, the State, Your Honor, in its opposition,

 8   says again and again this discovery is narrow, it's tailored.

 9   You know, just saying that doesn't make it so.

10        And I think even reviewing the face of the 47 requests,

11   puts to lie to any suggestion that these document requests are

12   narrow.

13        Unless Your Honor has questions...

14        THE COURT:  I don't have any.  I probably will have

15   some after the State gives their argument.

16        MR. LANNIN:  Would Your Honor indulge me for a

17   60-second piece on the First Amendment issues, as well?

18        THE COURT:  Sure.

19        MR. LANNIN:  Which are quite acute here.  And we have

20   alluded to it in the context of the Eagle Forum dispute.

21        And I should say, you know, in our view, this situation is

22   very hard to distinguish from the Eagle Forum issue.  The

23   distinguishing factor is whether the organization supported or

24   opposed this Act.

25        In this case, the State doesn't like the views of our

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000175**

1  organization and seems to think it is appropriate to delve

2  inside it.  It was full of righteous fury when the shoe was

3  flipped on the other side.

4        In our view --

5            THE COURT:  I get that.  But, I mean, Eagle Forum was

6  not submitting a set of guidelines that this case rises or

7  falls on.  Tell me -- I see a big distinguishing factor there.

8  Tell me about that.

9            MR. LANNIN:  Yeah.  In our view, Your Honor, it's more

10  about the guidelines, like the Act itself, can be evaluated on

11  its face.  And the State said we intend to challenge the Act on

12  its face.  We don't -- that the plaintiffs don't need to know

13  what went into the making of the Act.

14      I recognize and appreciate, Your Honor, that there is a

15  distinction between an Act and the guidelines themselves.  But

16  in our view, the principles are the same, that if you are going

17  to test the validity of something on its face, which we think

18  is entirely appropriate here, that you can do that without kind

19  of looking into what the Court, or what the -- I'm sorry --

20  what the State called the hidden motives of the people who

21  wrote the, in this case, the guidelines.

22      As I said earlier, Your Honor, that all the evidence they

23  need to mount that attack on the guidelines is available to

24  them now.

25            And, in fact, WPATH offered to produce to them at an

```
 1  earlier stage of our discussions not only the guidelines
 2  themselves, but also every study that is cited therein, which
 3  in our view, is consistent with what this Court had ordered in
 4  the Eagle Forum dispute.  And that offer was also rejected.
 5       But the First Amendment issues, Your Honor, are similar,
 6  insofar as, you know, as Your Honor well knows, where compelled
 7  disclosure could implicate an organization's associational
 8  rights, that's where the First Amendment interest is most
 9  acute.  And, particularly, where it could chill kind of in a --
10  a robust internal dialogue of an organization.
11       For an advocacy organization that needs kind of an open,
12  uninhibited debate among its members to arrive at its
13  positions, the courts have repeatedly said we need to be very
14  concerned about intrusions into that zone that is protected by
15  the First Amendment.  And in this case, we have a declaration
16  from WPATH that attests to the mere fact that these subpoenas,
17  as issued, has served to chill the organization.
18       I have heard directly from the client that they have
19  members saying, I don't want anything to do with this.  I don't
20  know if I want to go to your conference.
21       I know for a fact that the organization has considered
22  whether they should have panels about some of these topics
23  right now, simply because of the extraordinarily charged
24  political atmosphere in which this case arises.  And nobody at
25  the organization is interested in having their name put out
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000177**

1 there, or even in having their internal communications

2 disclosed to what is one of the primary public policy

3 opponents.

4      And it's not enough, Your Honor, to say, as the State

5 does, that we have a protective order.  And so everything that

6 we submit would be protected.

7      That's fine for what it is, but it doesn't answer the

8 concerns of WPATH members who say why in the world would I make

9 my voice heard in this organization or raise a critical opinion

10 if I knew that a state that is opposed to what I'm trying do,

11 that is opposed to this organization and its efforts, will get

12 that material and be able to use it for its own litigation

13 purposes.

14      Your Honor, in that context, as I said, the First

15 Amendment issues are particularly acute.  And when you balance

16 that against what we would say is a very marginal, if not

17 non-existent need for this material, there just seems to us to

18 be no question about the right outcome here.

19      I will come back to the notion, Your Honor, that, you

20 know, if Your Honor is inclined to order any production, you

21 know, Judge Nichols didn't give everybody what they wanted.  He

22 didn't give Florida what they wanted.  He made us give stuff we

23 didn't want to give, either.

24      But, in our view, it's a sensible place to arrive if we

25 are looking for a compromise that could be workable not only in

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000178**

```
 1  this case, but in other cases, as well.

 2          THE COURT:  All right.  Who is going to argue for the

 3  State?

 4          MR. LACOUR:  Your Honor, the plaintiffs' complaints,

 5  their P.I. briefs, their expert declarations, the testimony

 6  that they provided at the preliminary injunction hearing, all

 7  invited this Court to rely on WPATH and the guidelines.

 8      Dr. Ladinsky, as you might recall, referred to the WPATH

 9  guidelines as, quote, excellent guardrails.

10      As Your Honor just alluded, at least under plaintiffs'

11  theory of the case, the case might rise or fall on these

12  guidelines.

13      So WPATH is featured heavily already in this case.  The

14  existence of their guidelines and the plaintiffs' position that

15  these are authoritative, appears to have been at least a heavy

16  consideration in this Court's decision to grant a preliminary

17  injunction back in May.

18      Pages 3 to 4 of the preliminary injunction order noted

19  that while these transitioning treatments come with risks,

20  including lost fertility and sexual function, quote,

21  nevertheless, WPATH recognizes transitioning medications as

22  established medical treatments, and publishes a set of

23  guidelines for treating gender dysphoria in minors with these

24  medications.

25      So this Court held that plaintiffs were likely to
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000179**

 1   establish a constitutional right to treat kids with

 2   transitioning treatments, quote, subject to accepted medical

 3   standards, closed quote.  It is the defendants' position that

 4   we quite evidently need to be able to test those standards.

 5        What WPATH and what the plaintiffs have said -- more

 6   importantly what the plaintiffs have said about WPATH and the

 7   guidelines is that these are the product of dispassionate

 8   science.  But there is ample evidence in the public record now

 9   to suggest that these are rather the product of impassioned

10   advocacy.

11        And I think that's one thing that sets our briefing apart

12   from that in Florida's case, where they had very little

13   evidence to suggest that there was some reason to think that

14   ideology was driving the train within WPATH and the production

15   of these guidelines, whereas on pages 10 through 18 of our

16   response to the motion to quash, we lay out in some detail some

17   of the reasons why we think these appeals to authority are

18   misplaced.

19        I mean, in 2017, at the USPATH conference -- USPATH is a

20   subsidiary of WPATH -- Dr. Zucker, who is from Toronto, he is a

21   leading researcher in gender dysphoria for kids, had practiced

22   for decades.  His work was cited by WPATH in their Version 7 of

23   their guidelines, which came out in 2012.  He was invited to

24   speak at the conference after his research had passed a blind

25   peer-review.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000180**

 1       Well, after he began speaking, a group of activists

 2  started shouting him down until he had to leave the stage.  And

 3  the reason why is because, in his decades of practice, he had

 4  found that many kids, if you did not start them on social

 5  transition or drugs, would later come out of their gender

 6  dysphoria and reidentify with their birth sex.  And he

 7  suggested maybe we should be cautious about social

 8  transitioning.  That was offensive to the activists, who

 9  decided he needed to be shouted down.

10       Later, USPATH offered an apology not to Dr. Zucker,

11  though, but to those activists -- sorry we did the -- the

12  violence of having someone come and present medical research.

13       You just heard from my friend on behalf of WPATH about the

14  importance of open dialogue.  There does not appear to have

15  been any of that at the 2017 conference.

16       Likewise, we see from the most recent version of the

17  guidelines, which were released in 2022, a version was posted

18  by WPATH online.  And there was a change in the age limits for

19  different types of care for children.  Previously, the

20  recommendation had been don't start kids on cross-sex hormones

21  until they're 16.  In this version, the age had been dropped to

22  14.  They also set age limits for mastectomies -- age 15.  For

23  bottom surgeries -- those are vaginoplasties, hysterectomies --

24  age 17 for kids.

25       Now, shortly after this was posted, the guidelines were

1  pulled offline.  A new set was posted later with no age limits

2  at all.  And no explanation as to why these age limits

3  disappeared.

4      We have a clip online from Dr. Tishelman.  She was the

5  lead author of the guidelines chapter on children.  And from

6  what we can tell from this video, it appears she is suggesting

7  that it's very important in the guidelines that they be

8  specific enough that you can get insurance coverage for these

9  treatments, but not so specific that they can be cited in a

10 later malpractice case brought by one of these children; for

11 example, a 12-year-old girl who was started on testosterone at

12 age 12 instead of 14; or maybe a 13-year-old girl who received

13 a mastectomy and later came to regret it.

14     And so by taking out the age limits, there is less of a

15 chance that the guidelines are going to be valuable for a

16 plaintiff who may have been harmed by one of these

17 practitioners.

18     As Marci Bowers stated to the -- I believe this is quoted

19 from the New York Times, the political climate right now is not

20 such that they would recommend definitive lower ages for some

21 of these treatments.  We find that deeply troubling, that if

22 it's politics that are driving this, or if it is self-interest,

23 or putting the interest of the doctors ahead of the potential

24 patients that are driving these recommendations, then we would

25 hope the Court would be very loathe to hold that these

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000182**

```
 1   guidelines set the constitutional floor for the entire country
 2   below which no state may regulate.
 3        We also heard that you can hear -- you can see the
 4   guidelines and judge them on the their face, like a piece of
 5   legislation.
 6        We've said who -- they claim that they've told us who the
 7   authors are.  Well, that's partially true.  We don't know the
 8   roles that everyone played in forming these guidelines.
 9        The guidelines themselves note that activists have a
10   role -- or they call them stakeholders.  These are people with
11   no medical training whatsoever, but are active in transgender
12   advocacy in some way, shape, or form, who have roles in shaping
13   even these medical guidelines.  Again, non-medically trained
14   people shaping medical guidelines.
15        And so we know that one thing we're not going to get if
16   this Court ultimately decides that we only get the documents
17   that the Court in D.C. ordered WPATH to provide to Florida, is,
18   like we know we will not get access to a list of who those
19   stakeholders are, and who played a role in the development of
20   the guidelines, and the role that they played.
21        That was one of the compromised positions we offered that
22   my friend just alluded to, along with three videos -- the video
23   from the 2017 conference that I just referenced, and videos
24   from their 2019 and 2022 conferences, which we know were
25   live-streamed.
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000183**

1      They have access to those videos presumably unless

2  somebody somewhere hit the delete button.  If that's the case,

3  that's mighty suspicious, too.  And that would be interesting

4  for us to know before we decide whether WPATH gets to set

5  constitutional standards for the country.

6      We can look at what they have cited in the guidelines, and

7  we can look at what is included.  But that doesn't give us much

8  information about what is not there and why it is not there.

9      If there are studies that are critical of the approach

10  that they ultimately adopted, were they missed because of an

11  honest mistake?  Were they not considered because of good

12  science?  Or were they set aside because, like the activists in

13  2017 concluded with regard to Dr. Zucker, they just don't

14  satisfy the party line?  I think that's very relevant to

15  determine whether these guidelines are something that should be

16  trusted or not.

17      And, again, there is more evidence about -- that I think

18  raises questions about how this process worked.  The most

19  recent version of the guidelines, again, that came out in 2022

20  after there had been much discussion in the medical community

21  about de-transitioners -- one of whom you heard from, Your

22  Honor -- does not include a chapter on de-transitioners, but it

23  does include a chapter on eunuchs.

24      There was a draft chapter on ethics.  That was dropped.

25  We didn't know why there is not an ethics chapter in the

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000184**

1  guidelines.

2      But the eunuchs explains -- and I'm quoting from

3  guidelines version 8 -- among the many people who benefit from

4  gender-affirming medical care, those who identify as eunuchs

5  are among the least individuals.  Eunuch individuals are those

6  assigned male at birth and wish to eliminate masculine physical

7  features, masculine genitals or genital functioning.  As with

8  other gender diverse individuals, eunuchs may also seek

9  castration to better align their bodies with their gender

10 identity.  As such, eunuch individuals are gender

11 non-conforming individuals who have needs requiring medically

12 necessary gender-affirming care.

13      So I just note here the as-such language that says eunuchs

14 may want castration.  As such, castration becomes medically

15 necessary gender-affirming care.

16      Is a simple desire to change one sexual's appearance when

17 present in a child enough to make that care medically

18 necessary?  Or is it not -- I mean, these are serious questions

19 raised.

20      And I think there's a just very different picture of WPATH

21 that could be presented at final judgment or at the final trial

22 than what was presented to this Court at the preliminary

23 injunction phase, which is why at the close of that preliminary

24 injunction I stood up here and told the Court that we did think

25 we were going to need discovery to explore the credibility of

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000185**

1  some of these organizations.

2      My friend noted that, well, the medical community as a

3  whole has endorsed these guidelines.  But tellingly in their

4  reply brief, they stated that the medical community, the AMA,

5  and the APA, and others, don't have access to the internal

6  documents of WPATH, yet they endorse these particular

7  guidelines.

8      Well, I think that just casts shade on all those other

9  organizations, that they are potentially accepting in some rote

10  fashion these particular guidelines, despite the fact that

11  there's increasing information in the public domain suggesting

12  that these are not to be trusted or relied on as excellent

13  guardrails, as Dr. Ladinsky would have it.

14      Now, it comes to undue burden, Your Honor.  We worked for

15  months having good faith back and forth with counsel for the

16  organizations.  We were ultimately able to reach an agreement

17  with two of the organizations.

18      I think we offered a very reasonable compromise recently

19  to WPATH that they rejected.  Again, all we asked for was a

20  list of these non-medical stakeholders who played a role in

21  developing the guidelines, and the role that they played, which

22  WPATH said they will not turn over to us even under protective

23  order, and then three videos, which, again, they decided not to

24  turn over, despite their professed interest and open dialogue

25  over matters of science.

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000186**

1    So, and, again, we were working with them.  We dropped 16

2    of our requests, which left 31 RFPs.  They note the large

3    number of RFPs.  But the nature of burdensome doesn't turn

4    solely on the number of requests.  You could have one

5    incredibly broad request -- give us all your documents.  That's

6    going to be far more burdensome than 31 targeted requests that

7    say give us all your documents about this specific document or

8    that specific issue.  So I don't think the total number is in

9    any way relevant to the burdensomeness requirement.

10    And, again, we offered to work with them, to identify

11    specific custodians and specific search terms, which is what

12    happens a lot of time in modern E-discovery now, to try to make

13    sure we were only pulling documents that were likely to be

14    relevant to this case.  And as discussed before, we think these

15    documents are highly relevant to this question of the validity

16    and credibility of WPATH and their guidelines.

17    Finally, when it comes to the First Amendment, yes, First

18    Amendment implications need to be taken into account, but it's

19    never a grounds for completely rejecting turning over highly

20    relevant, important information.  There are numerous cases we

21    cite where the First Amendment concern was raised and documents

22    were still produced at the end of the day.  So, and, again, we

23    think that the protective order will go a long way towards

24    addressing some of those concerns.

25    So for all those reasons, we think the motion to quash

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000187**

1  should be rejected, and this Court should order WPATH to

2  produce these documents.

3       THE COURT:  I probably will have a question for you,

4  but let me start with the other side first.

5    All right.  So certainly the plaintiffs in this case are

6  relying on your standards to prove their case.  In fact, I

7  think if they were standing up here right now they would say in

8  their opinion this case rises and falls on those to some

9  degree.

10    So don't you think that I have to factor that in this is

11  not just any ordinary discovery, this is discovery around the

12  very heart of what plaintiffs think is the core of their case?

13  So maybe you can address that for me just a little bit.

14       MR. LANNIN:  Absolutely, Your Honor.

15    I don't think there's any dispute whatsoever that the

16  WPATH guidelines are relevant to this case.  And I am not going

17  to characterize on behalf of the State or the plaintiffs

18  whether it's the heart of the matter.  That's their litigation.

19    But WPATH isn't claiming that the guidelines are

20  irrelevant to this case.  And that's exactly why from the get

21  we told the State we are happy to produce the guidelines, and

22  we're happy to produce every study on which they relied.

23    I think the issue, Your Honor, is that the expedition for

24  internal documentation about which member said what to who

25  about these guidelines, in our view, isn't relevant to the

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000188**

1  question of whether the guidelines are grounded in good

2  science, and are valid.  And the reason for that is because the

3  guidelines are capable of testing as they stand now.

4      And the State has now alluded to, for example, statements

5  by Dr. Zucker, where he was allegedly shouted down, or however

6  the State characterized it, because he had views that were not

7  allegedly incorporated into the guidelines, or nonetheless were

8  disfavored.

9      And that's fine.  We can credit that on its face.

10      But if that's right, then why can't the State talk to

11  Dr. Zucker, or look at the science that Dr. Zucker wanted to

12  talk about, and put that as part of its case in chief and say

13  to Your Honor, here's our expert who can tell you exactly why

14  the guidelines are flawed because they don't talk about this

15  study, they don't talk about this study, they do talk about

16  this study, which is flawed.

17      And by the way, there's a whole body of evidence in Europe

18  that countermands the guidelines.  I'm laying out their case

19  for them.  But the point is I've heard all these themes before,

20  and all that evidence is extrinsic to the guidelines

21  themselves.

22      What they are looking for -- and I think, Your Honor, that

23  the compromise that the State has now put in front of the

24  Judge, in front of Your Honor, the four categories of things

25  they have now said we wanted in addition to what Florida is

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000189**

1    getting, really crystallize exactly what's going on here.

2        The first is this list of stakeholders.  So that's it.

3    The list of stakeholders who were involved in the guidelines

4    and documents sufficient to show their role.

5        So my answer -- my question for that is why?  Why is it so

6    important to you to know the names of people of members of

7    WPATH who contributed or made their views known about the

8    guidelines?  What are you hoping to do with that list?  And how

9    does that not possibly implicate core First Amendment concerns,

10   when you're disclosing a list of members who may have

11   contributed, or may have not, in any meaningful way, to these

12   guidelines, what is the possible relevance of that argument?

13   And how do you avoid the First Amendment issue?

14       The other three items that were on the table, Your Honor,

15   are these videos.  So there's a video from 2017 that they're

16   seeking of Dr. Zucker, who is allegedly harassed at a

17   conference.  I don't know.  I wasn't there and I haven't seen a

18   video.

19       The second is a 2019 town hall, where allegedly

20   transgender women of color stood up at a town hall and

21   protested the inclusivity or not of WPATH.  I wasn't there, but

22   I believe that at least some of that is available online for

23   viewing.

24       And the third video is a 2022 video, the entire 2022 WPATH

25   conference.  And, again, to that, my question becomes to what

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000190**

1  end?  What are you hoping to achieve by looking at video of

2  members interacting in their day-to-day conference and standing

3  up and saying what they think of all manner of items, many of

4  which have nothing to do with the guidelines themselves?

5       If you look, I think, at those four items in particular,

6  you come to the same place, which is, if you were okay with

7  what Florida's getting, plus these four things, then what is

8  this about?  And how, again, does it not, at the end of the

9  day, implicate those very severe First Amendment issues?

10          THE COURT:  Understood.  Let me say this:  So,

11  obviously, I am going to go back to my office and take several

12  days to sort through all of this.

13       I would say on this issue, I am likely to be more generous

14  to the State in allowing them discovery.  So, to the extent you

15  gentlemen want to, you know, have another time to sit down and

16  work something out, I would certainly love to see your

17  compromise better than what I order, because you really know

18  what's at the heart of what you need.

19       But I would suggest that following this hearing you sit

20  down with the State and make another go at it, because I think

21  I'm likely to give them a lot of what they want.  But maybe not

22  all.  But, again, I will evaluate that.  But, you know, that

23  would be my encouragement.

24       All right.

25          MR. LANNIN:  May I ask a quick question, Your Honor?

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000191**

```
1              THE COURT:  Absolutely.
2              MR. LANNIN:  And I apologize if this risks seeming
3    like an advisory opinion, which I don't mean it to be.
4         Of course, we are happy to talk to the State.  If Your
5    Honor has any views about the appropriateness or not of types
6    of e-mail collections, and custodial searches, and search
7    terms, and the burdens involved in that, that might be helpful
8    as we think about what's -- what might be doable or not in
9    response to Your Honor's comments.  But, again, I appreciate if
10   you are not prepared to go there.
11             THE COURT:  You know, now, I'm absolutely spit
12   balling.  But, you know, I would think that you might be able
13   to use some search terms, maybe get some representative
14   e-mails, as opposed to every single one.  That might be a
15   starting point.
16        But, again, you know your cases better than I do.  That's
17   why I'm hopeful that with a little guidance you might be able
18   to achieve a compromise.
19        But, again, I do find some of these things the State is
20   asking for to be relevant ultimately to this, you know.  We're
21   just talking about discoverability, not admissibility.  So that
22   would be my general guidance to you.
23             MR. LANNIN:  Very good.  Thank you, Your Honor.
24             THE COURT:  Mr. LaCour, you look like you might have a
25   question yourself.
```

```
 1              MR. LACOUR:  Nothing more, Your Honor.

 2              THE COURT:  Okay.  All right.

 3       And, look, you know, to the extent everybody just wants to

 4   stand on their position, I get it, and we will sort it out.

 5   And that's why they direct deposit my check every month.  So,

 6   you know, no problem.

 7       Okay.  Anything else that we ought to take up today?

 8              MR. LACOUR:  Your Honor, if we are able to work out a

 9   compromise, we just file a notice with the Court?

10              THE COURT:  Absolutely.  That would be great.  That

11   would be excellent.

12       Anything else from any party?

13              MS. EAGAN:  Your Honor, may I approach Mr. LaCour and

14   confer with him on one thing?

15              THE COURT:  Absolutely.  Do you need me to hold on

16   here before --

17              MS. EAGAN:  Well, Your Honor, on the motion in limine,

18   we would be the ones that would be arguing against that motion

19   in limine.  It sounds like, in light of the Court's

20   representations, that motion is likely going to be rendered

21   moot.

22       Mr. LaCour and I have already agreed that it is moot, as

23   to the pediatric association and the medical association, where

24   they worked out their differences on the subpoenas.

25       What I would suggest, if it is all right with Your Honor,
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000193**

```
 1  is maybe we, depending on how Your Honor rules, that motion is
 2  likely going to be mooted.  And so perhaps we hold off on any
 3  sort of decision making or argument on that, if it needs to be
 4  taken up until the next hearing.
 5          THE COURT:  I think that's probably an excellent idea,
 6  so...
 7          MS. EAGAN:  Thank you, Judge.
 8          THE COURT:  Uh-huh.  All right.  We are adjourned.
 9      Thank you.
10
11          (Whereupon, the above proceedings were concluded at
12      12:14 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*Christina K. Decker, RMR, CRR*
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, Alabama 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

**Pet. App'x  000194**

<pre>
 1                        CERTIFICATE

 2

 3

 4        I certify that the foregoing is a correct

 5   transcript from the record of proceedings in the

 6   above-entitled matter.

 7

 8

 9

10

11   _____    02-10-2023

12   Christina K. Decker, RMR, CRR              Date

13   Federal Official Court Reporter

14   ACCR#:  255

15

16

17

18

19

20

21

22

23

24

25
</pre>

```
1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE MIDDLE DISTRICT OF ALABAMA
2                            NORTHERN DIVISION

3

4       REV. PAUL A. EKNES-TUCKER,   *
        et al.,                      *
5                                    *
                Plaintiffs,          *  2:22-cv-00184-LCB
6                                    *  March 21, 2023
        vs.                          *  Montgomery, Alabama
7                                    *  10:00 a.m.
        KAY IVEY, in her official    *
8       capacity as Governor of the  *
        State of Alabama, et al.,    *
9            Defendant.              *
        *****************************

10

11

12                    TRANSCRIPT OF MOTIONS HEARING
                    BEFORE THE HONORABLE LILES C. BURKE
13                     UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22      Proceedings recorded by OFFICIAL COURT REPORTER, Qualified
        pursuant to 28 U.S.C. 753(a) & Guide to Judiciary Policies
23        and Procedures Vol. VI, Chapter III, D.2.  Transcript
                    produced by computerized stenotype.
24

25
```

```
 1                         APPEARANCES

 2
            FOR THE PLAINTIFFS:
 3          Melody Hurdle Eagan, Esq.
            LIGHTFOOT, FRANKLIN & WHITE, LLC
 4          The Clark Building
            400 20th Street North
 5          Birmingham, Alabama 35203

 6          Coty Rae Montag, Esq.
            DOJ-Crt
 7          Civil Rights Division
            150 M Street NE
 8          4con
            Washington, DC 20002
 9          202-598-1580
            Email: Coty.montag@usdoj.gov
10
            Jason R. Cheek, Esq.
11          U S Atty Office - NDAL
            1801 Fourth Ave N
12          Birmingham, AL 35203
            205-244-2104
13          Email: Jason.cheek@usdoj.gov

14          Kaitlin N Toyama, Esq.
            United States Department of Justice
15          Civil Rights Division
            950 Pennsylvania Avenue, NW
16          Washington, DC 20530
            202-353-5311
17          Email: Kaitlin.toyama@usdoj.gov

18          Margaret Lester Marshall, Esq.
            DOJ-USAO
19          1801 Fourth Avenue North
            Birmingham, AL 35203
20          205-244-2121
            Email: Margaret.marshall@usdoj.gov
21
            Renee Michelle Williams, Esq.
22          United States Department of Justice
            Civil Rights Division
23          950 Pennsylvania Avenue, NW
            Washington, DC 20530
24          202-598-3210
            Email: Renee.williams3@usdoj.gov
25
```

```
 1        Stephen D Wadsworth, Esq.
          Audrey Willis, Esq.
 2        US Attorney's Office for the Middle District of Alabama
          131 Clayton Street
 3        Montgomery, AL 36104
          334-223-7280
 4        Fax: 334-223-7560
          Email: Stephen.wadsworth@usdoj.gov
 5
          Amie Murphy, Esq.
 6        DOJ-Crt
          950 Pennsylvania Avenue-- NW Building
 7        Washington, DC 20530
          202-353-1285
 8        Email: Amie.murphy2@usdoj.gov

 9
          FOR THE DEFENDANT:
10        James W. Davis, Esq.
          Edmund LaCour, Esq.
11        Bethany Lee, Esq.
          OFFICE OF THE ATTORNEY GENERAL
12        501 Washington Avenue
          P.O. Box 300152
13        Montgomery, Alabama 36130-0152
          (334) 242-7300
14

15        AMICI:
          Barry Alan Ragsdale, Esq.
16        Dominick Feld Hyde, P.C.
          Litigation
17        1130 22nd St S - Ste 4000
          Birmingham, AL 35205
18        205-536-8888
          Email: BRagsdale@dfhlaw.com
19
          Cortlin Hall Lannin, Esq.
20        COVINGTON & BURLING LLP
          Salesforce Tower
21        415 Mission Street
          Suite 5400
22        San Francisco, CA 94105
          415-591-7078
23        Email: Clannin@cov.com

24

25
          COURTROOM DEPUTY:  Chiquita Baxter
```

Pet. App'x  000198

1

2

3          COURT REPORTER:   Christina K. Decker, RMR, CRR

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       **P R O C E E D I N G S**

2                          (In open court.)

3           THE COURT:  Good morning.

4       All right.  Let's take up the WPATH motion first.

5   Mr. Ragsdale, are you going to argue on this one?

6           MR. RAGSDALE:  I am, although I suspect I will need

7   assistance from Mr. Lannin, but I was going to start, Your

8   Honor.

9           THE COURT:  Fair enough.  Proceed at your leisure.

10          MR. RAGSDALE:  Okay.

11      Good morning, Your Honor.  Barry Ragsdale for WPATH, along

12  with Mr. Lannin, as well.

13      We are here at the Court's direction, and anxious to

14  comply with whatever instructions the Court has for us.

15      I can give you a little background of what's happened

16  since the last time we were in front of you, if that would be

17  helpful.

18          THE COURT:  That would be great.  I'm certainly

19  interested in -- the two issues that I think I would want to

20  jump straight to is what, if any, effect does the fact that you

21  guys filed a brief early on in this -- I know that doesn't make

22  you a party, but you certainly put these guidelines, I would

23  say, to the heart of the case.  And then I want to hear about

24  this D.C. Circuit matter.

25          MR. RAGSDALE:  Sure.

1    I think our position, Your Honor, obviously is that an

2  amicus is not a party to the case, so that we would still be

3  judged and viewed as a nonparty for purposes of discovery.

4    Obviously, we offered those guidelines, along with the

5  other organizations that offered guidelines, in an effort to

6  help this Court as a friend of the Court.  And we did that

7  knowing, obviously, that they were going to be at issue.  They

8  would have been at issue, Your Honor, whether we filed an

9  amicus brief or not, right?  The plaintiffs would have relied

10  on them, and the State would have attacked them.

11    So we don't believe that the fact that we did file an

12  amicus brief changes the calculus that this Court uses in

13  determining whether or not third-party discovery is justified,

14  or burdensome, or any of those categorizations.

15    As I said, we knew, and I think all parties knew that the

16  guidelines themselves were going to be at issue.  Our issue,

17  obviously, is with delving into the background of how the

18  guidelines got done.

19    The science of the guidelines is going to be an issue in

20  your courtroom.  And the parties that are present are going to

21  argue the science of those guidelines.

22    Our objections, obviously, stem from the internal, I'd say

23  politics, the internal decision making that went into the

24  formulation of those guidelines -- not the science of it, but

25  the internal parts.  And that's where we have come to blows to

1   issue with the State is their intent to delve into that.

2        Last time we obviously argued the motion with this Court.

3   You gave us very wise instructions to go and try to reach a

4   compromise.  And we did.

5        We had two separate meet and confers with the State, in

6   which we attempted to try to find some middle ground that would

7   let us go forward, and, you know, eliminate the necessity for

8   you having to rule on that motion -- not that that's a burden,

9   but it's something that we could live with.  And we did that.

10       Now, intervening in that same time period during those

11  meet and confers, where we met in good faith with the lawyers

12  from the State to try to work it out, actions overtook us in

13  D.C.  Mr. Lannin is actually counsel in that, and he can talk

14  to you specifically about what happened.

15       But as we sit here today, we have an order that was

16  entered by Judge Nichols that has been stayed temporarily for

17  purposes of the D.C. Circuit to review it.  That obviously puts

18  us in a difficult position vis-a-vis those two cases, Your

19  Honor.

20       We certainly don't want to be in a position where we

21  voluntarily turn over documents that we are, at this point,

22  protected from having to turn over in D.C.  And that's why we

23  brought that to this Court's attention.

24       To the extent you have detailed questions about D.C.,

25  Mr. Lannin is probably the person to direct those to.

1        Thank you, Your Honor.

2             THE COURT:  Uh-huh.

3             MR. LANNIN:  Good morning, Your Honor.

4             THE COURT:  I suspect the State is going to say, hey,

5    this D.C. Circuit matter is totally different than ours, it

6    doesn't rise and fall on the issue of these guidelines.  So I'd

7    say jump straight to the heart of that.

8             MR. LANNIN:  Your Honor, I'm happy to.

9        And, in fact, I think at its core, both Florida and the

10   State of Alabama are seeking the exact same materials.  And

11   they've both represented that it goes to the heart of the

12   matter.

13       In fact, in Florida, the Court -- I'm sorry -- the State

14   vigorously argued to the district court there, Judge Nichols,

15   that there should be no stay of his order producing some of

16   these materials because, in fact, that's the language of the

17   standard.  It goes to the heart of the matter.

18       So with respect to the State, I just -- I don't see there

19   being a distinction.  I think the issue is whether or not the

20   internal deliberative process, those materials, is fair game.

21       And to amplify what Mr. Ragsdale said, coming off of Your

22   Honor's last hearing, we did attempt to reach a compromise.  In

23   the interim, Judge Nichols, in D.C., had clarified his original

24   order and ordered WPATH to produce certain internal materials.

25   And it wasn't a voluminous collection of e-mail searching, and

1   things like that, but it was a collection of materials that

2   evidenced the internal process.

3       And, Your Honor, WPATH went to work and started gathering

4   those materials.  And was preparing a deponent to testify about

5   them because Judge Nichols had so ordered.  And literally the

6   evening before we were set to produce the deponent, potentially

7   produce those materials, the D.C. Circuit stayed that order.

8       So, as it sits, WPATH has a collection of materials that

9   reflect internal deliberative process.  I suspect that's

10  exactly the sort of materials that the State of Alabama is

11  seeking.

12      Nonetheless, the D.C. Circuit has instructed WPATH not to

13  produce those materials to Florida.  And, so I think, as

14  Mr. Ragsdale rightly puts it, we are in kind of a box.

15      And I -- I think we and the State agree that Your Honor's

16  guidance on what to do here would be appropriate.  And I

17  apologize if our notice to the Court suggested otherwise.

18      I think, you know, frankly the parties had a meet and

19  confer shortly before we filed those notices and agreed that,

20  at the end of the day, we may just need an order from Your

21  Honor so that we know how to proceed.

22          THE COURT:  Understood.

23      Well, I think everybody agrees this case rises and falls,

24  to some degree, on these guidelines, right?

25      And I am pulling a few quotes here from the brief you

1    filed with this Court last year.  You know, "The guidelines are

2    characterized as established evidence-based clinical

3    guidelines," "the product of careful and robust deliberation,"

4    "subject to rigorous requirements," "the result of a drafting,

5    comment, and review process that took five years," et cetera,

6    et cetera.

7        So, you know, I, obviously, to some degree, think the

8    State ought to be able to look behind the curtain on that.  You

9    know, are there specific items here that you want to address,

10   as far as what you absolutely please don't make us turn this

11   over, as opposed to, well, really, you know, it won't kill us

12   if they get this?

13            MR. LANNIN:  Your Honor, I appreciate the question.

14       And it is a very difficult line to draw because, at its

15   base level, we're talking about First Amendment issues now, and

16   what's protected now and what's not.  And, obviously, now the

17   D.C. Circuit will take a close look at that issue and attempt

18   to divine a line in this case.

19       I think, in our view, you know, we had reached actual -- a

20   reasonable compromise with Florida that we would be able to,

21   for example, redact the names of any individuals that appeared

22   on internal documents, which goes some way to some mitigating

23   some First Amendment issues.  And we had, you know, with Judge

24   Nichols's guidance, I think reached a compromise where the

25   organization was not turning itself inside out to produce every

1    relevant e-mail or document that could ever exist, but rather,

2    you know, as Judge Nichols ordered, a set of documents that

3    were sufficient to show the internal process.

4        So, for example, drafts of earlier chapters, comments to

5    those drafts, comments that members made, comments they

6    received, how they were addressed, those types of materials

7    that the organization could get its hands on without having to

8    hire a vendor and doing, you know, very expensive e-discovery.

9    That was what we collected.

10       And to be honest with Your Honor, obviously, that's the

11   materials that are sitting on a hard drive now.  They're

12   just -- they haven't been produced pursuant to the D.C. stay.

13       I can't tell Your Honor that WPATH would be excited about

14   producing anything.  And, obviously, we now have a feeling the

15   D.C. Circuit at least sees there's an issue here and wants to

16   take a closer look.

17       But if Your Honor is inclined to disagree with that, and,

18   as is your right, order the organization to produce something,

19   I could only suggest that, you know, the guidance that Judge

20   Nichols gave in the first instance may be a nice elegant place

21   to start there.

22       THE COURT:  I tell you what.  Why don't we switch

23   sides, let the State take a turn.  And then I probably will

24   have questions for all of you.

25       MR. LANNIN:  Very good.  Thank you, Your Honor.

1          MR. LACOUR:  Thank you, Your Honor.  Edmund LaCour

2   here on behalf of the defendants.

3      I think there's a lot more for us to say that we didn't

4   say back at the hearing in February.  As you noted, Your Honor,

5   the WPATH did come to this Court selling itself not as an

6   advocacy group, but as a, quote, respected professional

7   organization who was putting forward dispassionate science, not

8   impassioned advocacy.

9      Plaintiffs invited you to rely on those WPATH guidelines.

10  The United States invited you to rely on those guidelines.  In

11  the preliminary injunction order, it appears that you, at least

12  as a preliminary matter, did place some reliance on those

13  guidelines.  And so as you were just stating before, we do

14  think it is fair.  And we think it is critical to a fair trial

15  that we are able to test those guidelines.

16      My friend suggested that our case is just like Florida's.

17  I dispute that for two fundamental reasons.

18      First, the Florida case, at least as a preliminary matter,

19  when the Court in Florida denied the motion for preliminary

20  injunction that the plaintiffs had brought there, applied a

21  much more state friendly legal standard.  Basically -- I'm

22  reading now.

23      This is docket entry 64 from that case, 4:22-cv-325, at

24  page 4.  And the standard there was if the State has reasonably

25  determined -- which is like a rational basis, a state

1  deferential standard.

2      If the State has reasonably determined these treatments

3  are experimental, the refusal to pay for them under the

4  Medicaid program is unconstitutional, or violates the ACA

5  non-discrimination provision, only if the State pays for other

6  equivalently experimental treatments, the plaintiffs will face

7  a difficult task to show that any other treatment is

8  equivalently experimental.

9      So a far more state friendly standard than what was

10 applied at the preliminary injunction stage, where the Court

11 recognized that these treatments carry very severe harms,

12 numerous harms, including loss of fertility, loss of sexual

13 function.  But then the Court wrote, Nevertheless, WPATH has

14 put forward these guidelines.  So very pro WPATH, very -- like

15 a higher burden for the State to satisfy, at least under

16 plaintiffs' approach to the case.

17     Second, we have a distinction, in terms of the evidence

18 that was presented by Alabama to Your Honor versus the evidence

19 that was presented by Florida and the D.C. case, which is -- I

20 think we presented significant evidence of bias, and

21 significant evidence to call into question the validity and the

22 soundness of the WPATH guidelines, evidence that was not

23 presented to the District Court in D.C. or to the D.C. Circuit.

24     And it's documented in our response to the motion to

25 quash, including the activists shouting down Dr. Zucker at the

1   2017 conference, the removal inexplicably of any age limits for

2   cross-sex hormones, mastectomies, and bottom surgeries on

3   children, and other issues that we find to be deeply troubling.

4       And including this -- and, yes, it does require us to look

5   beyond just the glossy pdf that WPATH has produced.  But their

6   decisions on what not to include and why not to include them --

7   why is there not a chapter on de-transitioners?  Why is there

8   not a chapter on ethics?  We know there is a draft chapter on

9   ethics, it's not in final version.  But they do have a chapter

10  on eunuchs, for example.

11      So for all those reasons, we think, both as a legal matter

12  and as a factual matter, our case is different from Florida's.

13  And for that reason, we think we are entitled to this

14  discovery.  It is obviously relevant under the plaintiffs'

15  standard of the case.

16          THE COURT:  Do you want to jump to the specific things

17  you're requesting and just quickly address those?

18          MR. LACOUR:  Yes, Your Honor.

19      I can say that we were in negotiations.  They were moving

20  along.  We identified, I think, ten potential custodians, I

21  think five of whom are WPATH executives who have WPATH e-mails,

22  which should make it a little bit easier to search them.  And

23  then five other very senior members of WPATH who don't work

24  directly for WPATH, but are on the board or on certain, like

25  guidelines drafting boards, and had senior positions in that

1  process.

2       We were working towards coming up with search terms.  And

3  then things started to break WPATH's way in the D.C. Circuit,

4  and they cut off discussions -- they didn't cut off

5  discussions.  They basically said that they were not going to

6  be able to keep moving forward with us.

7            THE COURT:  All right.  Why don't we give them another

8  bite at the apple, and then we'll see where we are.

9            MR. LACOUR:  Thank you.

10           MR. LANNIN:  Your Honor, we're not a party to the

11  Florida litigation, WPATH isn't.  We attempted to submit an

12  amicus brief, but the District Court did not.  So I am not

13  intimately familiar with the judge's decisions down there,

14  except to say that I know because Judge Nichols in D.C. asked,

15  that the judge in Florida has made it clear that he intends to

16  conduct a sweeping review of the evidence.

17       And it's not evidence limited to the time that Florida

18  enacted the ban that's challenged there.  It's an

19  evidence-based review up to the moment.  What does the

20  contemporary record show?  And that's why Florida sought

21  exactly the same types of materials that Alabama has sought

22  here.

23       As I said to Your Honor earlier, the standard, the heart

24  of the matter, that's exactly the standard that was at issue in

25  the D.C. Circuit.  That's the language that the D.C. Circuit

1  uses for evaluating relevance in this context.

2       And Florida urged the Court that this discovery did go to

3  the heart of the matter.  Judge Nichols agreed, obviously, in

4  ordering the discovery and refusing to stay it.

5       The D.C. Circuit may have a different view.  We don't

6  know.  We know they stayed that order.

7       So I candidly and respectfully disagree with the State

8  about the importance of the discovery.  I think it's the same.

9       You know, I think the -- the issue of, you know, when we

10 had our first meet and confer and the State proposed ten

11 custodians, I was frankly a little shocked because that's a lot

12 of folks.  That's more than I see in many, you know, ordinary

13 corporate cases.  And it's really a list that would -- of

14 everyone who could possibly be associated with the

15 organization.

16      And, so, you know, our view and what we suggested to the

17 State at that point was that it may make sense to take a more

18 targeted approach.  Let's start with, as Judge Nichols said,

19 documents sufficient to show, instead of e-mail searches, and

20 collections, and search terms, maybe we can ask these folks to

21 just put their hands on documents that are responsive to these

22 issues on central servers, or on their own files and send it to

23 us, and then we could from there produce the materials that

24 were responsive.

25      We were in the middle of that exercise, as I said to Your

1  Honor earlier, when the D.C. Circuit stayed their order.  So --

2          THE COURT:  So I guess here would be my thought.  You

3  know, after hearing both sides of this, certainly I have read

4  what you put before me.  And if I don't let the State look

5  behind the curtain, I'm really, you know, not giving them a

6  chance to get discovery that truly goes to the heart of this

7  case.  And I am making them try this with a hand behind their

8  back.

9      To the issue of whether some of this is burdensome, or

10  what the manner is, you know, I guess I would put it this way:

11  If you guys wanted to take some time this morning, or whatever,

12  to discuss method and manner, you know, I'm certainly open to

13  that.  If you want me to just rule, I can just rule.  But I'm

14  inclined to let them have the discovery.

15      Now, if there is a better way to do it between the two

16  sides that's less burdensome or makes more sense, you know,

17  then I would say let me let you go back and talk about that.

18  Or if you just want me to rule, I can do that.

19      But I think both of you know far more about the

20  particulars of what you're looking for and how to get it, and

21  to also protect both of your clients.  So I guess that would be

22  my question.  Do you want some time to talk?  Is that something

23  you could work out in 20 minutes, or not really?

24          MR. LANNIN:  Your Honor, I think 20 minutes may be

25  optimistic.

```
 1              THE COURT:  Right.  I understand.

 2              MR. LANNIN:  But let me say this, Your Honor.  I

 3  appreciate your guidance.

 4      I'm never adverse to talking further.  I think if you

 5  could give us a day or two to convene.  My concern for Your

 6  Honor, just so you know what I am thinking, you know, at the

 7  end of the day, if there's a compromise to be had or not, I

 8  think we, WPATH, would appreciate Your Honor memorializing it

 9  in an order, because the D.C. Circuit has now instructed us not

10  to produce some of these materials to the State of Florida.

11      And so, again, not to reveal too much of my thinking

12  litigation-wise, but if we voluntarily turn over materials that

13  we have vigorously urged the D.C. Circuit we shouldn't have

14  to --

15              THE COURT:  Understood.

16              MR. LANNIN:  -- I am concerned that Florida's going to

17  turn around and say, Your Honor -- or to the D.C. Circuit how

18  could they possibly mean this when they voluntarily turned it

19  over in Alabama.

20              THE COURT:  Got it.

21              MR. LANNIN:  Your Honor's imprimatur on an order,

22  whether by agreement, or simply because we just need Your Honor

23  to rule, I think is the aiding of that.

24              THE COURT:  All right.  So am I hearing you say, then,

25  that y'all will talk, if you work something out in a day or
```

Pet. App'x  000213

1   two, then for me to put it in an order?  Or do you want me to

2   put it in an order right now and ask you to talk and determine

3   the method?

4         MR. LANNIN:  I think an order -- I'm interested in the

5   State's views, but I think the latter might be helpful, Your

6   Honor.  An order instructing the parties -- are you

7   contemplating it would be an order to produce materials and

8   then to figure out exactly how to implement it?

9         THE COURT:  Yes.

10         MR. LANNIN:  That, in my view, would be helpful.  And

11   then if there are disputes as to the methodology or the means,

12   I suppose we could come back to Your Honor and seek guidance on

13   that.

14         THE COURT:  Mr. LaCour, do you have thoughts on this?

15         MR. LACOUR:  Your Honor, we served the subpoena

16   five months ago.  We had a hearing a month ago.

17     What I think I'm hearing from my friend here is they need

18   an order from you to move forward.  I think an order would be

19   helpful, as well, in that respect, too.  And if they do intend

20   to seek a mandamus from the Eleventh Circuit, then we can prove

21   that up.  But hopefully keep things moving forward, in terms of

22   discovery, because we do believe this is very important

23   discovery if the case is going to proceed under the plaintiffs'

24   legal theory.

25         THE COURT:  Got it.  So just so for our own schedule

```
 1   and timing, you know, would it be your intent to go to the
 2   Eleventh Circuit over this discovery order?  It doesn't hurt my
 3   feelings either way.  I'm just trying to figure out our own
 4   timetable here.
 5             MR. LANNIN:  Your Honor, I don't want to sound like I
 6   am punting.  I don't know.
 7             THE COURT:  Okay.
 8             MR. LANNIN:  I think it would depend on what agreement
 9   could be reached, to be honest.
10             THE COURT:  Okay.
11             MR. LANNIN:  If you would indulge me for one second,
12   Your Honor, I just -- I have a feeling what I'm saying today
13   will be quoted back to me in the D.C. Circuit at some point by
14   Florida.
15        And so I want to make it clear, you know, WPATH feels that
16   any discovery inside their organization is inappropriate and is
17   violative of its First Amendment issues.
18             THE COURT:  I hear you loud and clear on that.
19             MR. LANNIN:  I understand, Your Honor.  I'm just
20   putting it on the record for that day in the future.
21             THE COURT:  Understood.
22             MR. LANNIN:  But I do agree that an order from Your
23   Honor would be helpful in moving this forward.
24             THE COURT:  Okay.  All right.
25        Anything else we -- Mr. Ragsdale?
```

```
 1              MR. RAGSDALE:  Can I say one thing?
 2              MR. LANNIN:  Of course.
 3              MR. RAGSDALE:  Your Honor, I've heard you now say
 4   several times that the State's entitled to a peek behind the
 5   curtain.  And I think you -- I don't think we necessarily
 6   disagree with that.  I would just simply caution that there is
 7   a difference between a peek behind the curtain and rifling
 8   through our private papers and possessions.  And that's really
 9   kind of where we've ended up.
10       We have tried to work with the State to give them that
11   look behind -- here's how the guidelines were reached, here's
12   the studies we relied on, here's the science that we looked at,
13   which is really what this ought to be about.
14       The State, it seems to me, is really more intent on
15   attacking the organization.  And that's where the First
16   Amendment implications arise.
17       And so, in drafting your order, which we welcome, I would
18   just simply ask for the Court to recognize that there is a
19   difference between an opportunity to look behind the curtain
20   and an opportunity to go on a witch hunt against an
21   organization with which the State apparently disagrees.
22       And that's the only thing I would add to our final
23   comments.  And probably Mr. Lannin's going to tell me he wishes
24   I wouldn't have said that.  But that's my thoughts.
25              THE COURT:  Understood.
```

1      Does the State want the last word?

2          MR. LACOUR:  Your Honor, as we said before, we want to

3    be able to test whether this is dispassionate science or

4    impassioned advocacy that has produced these guidelines.  We

5    want the documents we need to be able to make that assessment.

6    And we have put forward evidence that we think shows there is

7    reason to be concerned that this is not simply dispassionate

8    science being done by this group.

9      And so we hope that we can get adequate evidence to be

10   able to present a full case without, as Your Honor alluded to,

11   having one hand tied behind our back.

12     So thank you very much for your attention to this matter.

13          THE COURT:  All right.

14          MR. RAGSDALE:  Thank you, Your Honor.

15          THE COURT:  Yes.  Thank you.

16          MR. LANNIN:  Thank you, Your Honor.

17          THE COURT:  Let's talk about the motion for judgment

18   on the pleadings.  Is that going to be you, Mr. Davis?

19          MR. DAVIS:  That's me.

20          THE COURT:  All right.  And just so I'm clear -- do we

21   have any -- as we sit here today, do we have any discovery that

22   has been propounded by the other side that would be the subject

23   of your motion?

24          MR. DAVIS:  Not that's currently an issue, Judge.

25   There was some served by the United States that would go

 1  towards legislative motive after -- and as part of our meet and

 2  confers, those are no longer in play.

 3          THE COURT:  Gotcha.

 4          MR. DAVIS:  We still think the issue's important and

 5  it would be helpful to simplify the case.

 6          THE COURT:  So a couple of questions I would have is,

 7  you know, your motion for judgment on the pleadings really

 8  seems to be sort of trying to build a wall on discovery.

 9      And so I guess I'm -- my question would be:  Wouldn't that

10  be better addressed by a motion to quash in the event that

11  somebody filed something that was objectionable?

12          MR. DAVIS:  We don't think so, Judge.

13      And I forgot I was cautioned that I need to introduce

14  myself for the record before I speak.  I'm Jim Davis arguing

15  for the defendants.

16      We think the Court -- it would be appropriate for the

17  Court to go ahead and address these issues.

18      The United States came in.  They promised you that they

19  weren't doing anything more than tagging along on the equal

20  protection claim that the plaintiffs were bringing.  But now

21  they're arguing for different types of equal protection claims,

22  in addition to that original one.  So we think it would be

23  helpful to simplify the case and hold the United States to its

24  promise.

25      We also think that under Rule 12 we're entitled to a

1  judgment on the pleadings because the United States has not --

2  its complaint does not contain the type of allegations that

3  would support these other varieties of equal protection claims.

4       Their Arlington Heights invidious discrimination claim

5  they say they want to bring needs to be supported by some

6  allegation somewhere that the Legislature was motivated, at

7  least in part, by invidious discrimination.  But their

8  complaint contains exactly zero allegations.

9       So we think under Rule 12 we are entitled to a judgment on

10  the pleadings at this time, and that it would be helpful to

11  simplify the case.  Because the United States is reserving the

12  right to go after this stuff in the future.

13       We're here.  We have got the motion in front of you.  We

14  would like a ruling now that we're entitled to this.  And to be

15  clear to the parties what kind of record we need to be

16  building.

17       And I can address the arguments on the rational basis

18  claim that they say they're also bringing and why -- in more

19  detail why we think we're entitled to it for each variety.  But

20  that's why we think it would be helpful to go ahead and get a

21  ruling now.

22            THE COURT:  All right.  Who's going to argue on the

23  other side?

24            MS. TOYAMA:  I am, Your Honor.

25            THE COURT:  All right.

1          MS. TOYAMA:  Good morning, Your Honor.  Kaitlin Toyama

2    for the United States.

3        So, I mean, just listening right now to what defendants

4    are talking about, I think there's been a lot of confusion on

5    what it means to plead an equal protection claim.  And there's

6    a difference between evidentiary standards versus theories of

7    liability --

8          THE COURT:  Can you stand a little closer to the

9    microphone?  Thank you.

10          MS. TOYAMA:  Oh, yes.  Sorry.

11        And so, Your Honor, there's really two reasons to deny

12    this motion.  The first goes to basic civil procedure and

13    whether it's appropriate to bring its 12(c) motion here.  But I

14    think maybe it would be helpful to go back to -- go to our

15    second reason, which is that the United States has properly

16    pleaded its equal protection claim.  And this is one claim.  I

17    do want to be clear on that.

18          THE COURT:  Can you turn her microphone up just a

19    little bit?

20          MS. TOYAMA:  I can lean forward.

21          THE COURT:  All right.

22          MS. TOYAMA:  And I'll try to speak louder, if that's

23    helpful.  I will lean forward.

24          THE COURT:  I can hear you well now.

25          MS. TOYAMA:  Okay.

1      So, Your Honor, the United States intervenes in this claim

2  under one claim, and that's violation of the Equal Protection

3  Clause.

4      The single claim, however, contains multiple layers of

5  analysis that can be approached in different ways.  And the

6  problem with defendants' motion is that they are confusing

7  these different analytical frameworks as separate and distinct

8  claims, which is wrong.

9      So our single claim does ask one question, and that is

10  does SB 184 violate the Equal Protection Clause?  And at the

11  end of this litigation, there will be one answer -- yes or no.

12      But to get to that answer, it's not a straight line.

13  There is -- the path to that answer is varied, it's complex,

14  and it requires different tests at different stages.

15      And so taking a step back and looking at equal protection

16  on a more fundamental level, the seminal cases like Washington

17  vs. Davis and Village of Arlington Heights establish that for

18  equal protection to come into play, there must be

19  discriminatory intent or purpose.  And that a law that does not

20  intend to discriminate does not violate the Equal Protection

21  Clause.  That is a requirement across the board.

22      And to be clear, when we're talking about intent to

23  discriminate, that does not necessarily mean intent to harm.

24  What we're talking about is does a law treat people

25  differently.  Does it create classifications.  And there are

1  different ways to identify that in a statute.

2       And so, for example, the Eleventh Circuit, in E&T Realty

3  vs. Strickland, broke these three different types of theories

4  for a statute into three categories.

5       The first are statutes that discriminate on their face;

6  the second are neutral statutes that purposefully discriminate;

7  and the third are facially mutual statutes administrated in a

8  discriminatory matter.  But, again, these are three different

9  ways to show that a single statute has a requisite

10 discriminatory intent or purpose to trigger the protections of

11 the Equal Protection Clause.

12      And, here, the United States has primarily advanced the

13 theory under the first argument or the first theory, which is

14 that the intent to discriminate is clear by looking at the

15 statute on its face.  But we have not foreclosed and have

16 offered evidence on a second theory, which is that the statute

17 is facially neutral, but it has the -- it still has the

18 requisite intent to discriminate.  And you can find that by

19 looking beyond the face of the statute.

20      For example, that it could include statements made by

21 legislators before a law was enacted, or it could also include

22 disparate impact.

23      But, again, both approaches take us to the same

24 conclusion, that the law is intended to discriminate.  We

25 cannot have an Equal Protection Clause without intent.  That is

1   across the board.

2       And then from there, after we show that a law

3   discriminates and again creates a classification, treats people

4   differently, that's when we get into the question of does that

5   discrimination violate the Constitution.  And so that's where

6   we have the different layers of analysis -- the different

7   frameworks for analysis.

8       So we have strict scrutiny, we have heightened scrutiny,

9   we have rational basis.  But, again, we don't get into that

10  analysis until we first demonstrate that the law intends to

11  treat people differently.

12      When we get to that level of analysis, of course, we are

13  arguing that heightened scrutiny applies.  And there the

14  standard turns on the State to show that SB 184 serves an

15  important government interest, and that the discriminatory

16  means are employed in a substantially related way to achieve

17  those objectives.

18      The proper justification must be genuine and sufficient.

19  It cannot differ from the law's actual purpose.  It cannot be

20  hypothesized, cannot be invented post hoc in response

21  litigation.

22      In defendants' brief, and as suggested now, they're asking

23  for a judgment on, I guess, the United States' rational basis

24  claim, its Arlington Heights claim, its facial discrimination

25  claim, to the extent that claim is based on pretextual purpose.

1   But, respectfully as this explains, that is not how equal

2   protection claims work.

3        In the preliminary injunction order, Your Honor wrote that

4   the -- that there is a substantial likelihood that the

5   plaintiffs will succeed on their equal protection claim, which

6   is correct that there is one claim.  You cannot break it up

7   into separate claims.

8        So given this full context, it's easy to see how the

9   United States' complaint and intervention satisfies the basic

10  pleading standard, the notice pleading standard required under

11  Rule 12.

12       For example, paragraphs 4 through 7, 24 through 39, 41

13  through 44, 46 through 54, and 57 of the complaint

14  intervention, those paragraphs allege and describe how the

15  intent or purpose of SB 184 is to discriminate.  And, again,

16  here we're talking about this threshold question does the law

17  treat people differently.

18       Paragraphs 9 and 57 through 58 allege that heightened

19  scrutiny applies.

20       Paragraphs 8 and 59 discuss how the law fails heightened

21  scrutiny.

22       And in the alternative, paragraphs 48 and 60 discuss how

23  the law fails rational basis review.

24       So that complaint is clearly sufficient to prove -- to

25  provide notice as to the United States' equal protection claim.

1    Though if the Court is inclined to find that more information

2    is needed, we would respectfully ask for leave to amend.  But

3    going --

4            THE COURT:  Well, I don't know that I heard you

5    specifically address the wording of your complaint.  I think

6    the State's position is pretty clear that that should have been

7    specifically alleged in the complaint.

8         And so I would ask you to address that.  But also I'd ask

9    you to address -- I know you were not here on that date, but,

10   you know, the Department of Justice did come in and say we

11   assert no claim outside of what is already before the Court, no

12   other theories.  We're just asking to join as a party to the

13   already existing claims.

14        So maybe you could address that a little bit.

15            MS. TOYAMA:  Right, Your Honor.

16        I think I could actually combine the answer into one --

17   the questions into one answer, which is that plaintiffs and

18   United States -- again, we are bringing one claim -- equal

19   protection claim.  And there are just different theories and

20   different tests that go into answering the question of whether

21   the equal protection clause is violated.

22        And so we're not required under the rules to plead every

23   single specific argument, every theory.  We just have to

24   establish that -- or we have to plead sufficient facts

25   demonstrate --

1          THE COURT:  Let me cut you off right there and let

2     Mr. Davis come back to the podium.  I will give you another

3     bite at the apple.

4          MS. TOYAMA:  Okay.

5          MR. DAVIS:  Judge, they're all calling it an equal

6     protection claim, but there are different varieties of equal

7     protection claim and a different way to get there.

8          Even if what my friend is saying is true, that this is all

9     just an equal protection claim, they're still doing something

10    different than what the private plaintiffs are doing.

11         The private plaintiffs are arguing that this statute

12    that's being challenged draws a line between transgender

13    children and other children, that it's not sufficiently tied to

14    a sufficiently important state interest.  The private

15    plaintiffs, in other words, put the statute itself on trial.

16         The United States says that they reserve the right at any

17    time to change the theory and put the Legislature on trial, to

18    start examining what was in their hearts and minds when they

19    passed this statute.  We want to know if that's going to be in

20    the case or not.

21         We think a ruling on our motion for judgment on the

22    pleading is a way for the Court to be clear that the United

23    States is going to be tied to the theory, the type of record,

24    the type of case that the private plaintiffs are bringing.

25         THE COURT:  So she says, hey, if you decide otherwise,

1   then let us amend.  Do you want to address that?

2          MR. DAVIS:  Well, amendment would fix the lack of

3   allegations in the complaint, but it would be, I think,

4   breaking their promise to tag along with what the private

5   plaintiffs are doing.  I think it would turn this into a very

6   different type of case.

7      It's not the case that you heard at the preliminary

8   injunction hearing.  It's not the case that we have been

9   litigating for these past several months.

10          MS. TOYAMA:  Thank you, Your Honor.  Again, Kaitlin

11   Toyama for the United States.

12      I guess I would answer that by -- in a couple of different

13   ways.  The first is that the United States is bringing the same

14   claim as plaintiffs.  And our primary theory is that the law

15   does discriminate on its face.  And so, again, that means just

16   by looking at the words on paper, it's clear that the law

17   discriminates.  But that --

18          THE COURT:  So depending on how I rule on this, is it

19   going to be your intent, then, to go subpoena legislators'

20   e-mails, and correspondence, and this sort of thing?

21          MS. TOYAMA:  Your Honor --

22          THE COURT:  Is that where you are going to head?

23          MS. TOYAMA:  I don't think I can really speak to what

24   our intention is for current -- for the next phase.

25          THE COURT:  Well, I need you to speak to it.  I need

1   you to answer my question.  I need to know that.  Is that where

2   you are headed?

3           MS. TOYAMA:  Well, Your Honor, we're currently --

4   well, there are current discovery requests to defendants asking

5   for information along those lines.

6           THE COURT:  Okay.  So I don't know what -- I'm not

7   being rude.  But I don't know what's a secret about that.  If

8   that's -- if this is your theory of the case, then I don't know

9   why you can't tell me what you're going to do.

10           MS. TOYAMA:  And I wish I could -- I wish I could

11  answer yes or no, but to be perfectly honest, I don't know what

12  our plan is going to be.

13           THE COURT:  Let's take a five-minute break, and you

14  can confer with your folks, and then you can let me know what

15  your intent is.

16           MS. TOYAMA:  Okay.  Thank you, Your Honor.

17           (Recess.)

18           THE COURT:  What did we decide?

19           MS. TOYAMA:  Thank you, Your Honor.  Again, Kaitlin

20  Toyama for the United States.

21      So I do want to confirm that we are not going to be -- we

22  are not going to be subpoenaing legislators.  But I do want to

23  just make a point that public statements from the legislators

24  have already been entered in this case, and we should be

25  allowed to present that information at trial.  Whether that --

1   so because it does go to our burden of proof.  And so whether

2   we can meet our burden of proof, it seems more appropriate to

3   be decided at the time of trial.

4       I did want to go back, if I may, to actually your first

5   question to defendants about whether this whole motion is moot.

6   And our position is that it is moot, it's untimely, and it's

7   also procedurally deficient under Rule 12(c).

8       And so as you mentioned, there are no current discovery

9   requests that are pending that this motion could apply to.

10  When defendants filed this motion, they filed it concurrently

11  with their brief in support of the motions to quash.  And when

12  Your Honor denied -- or when Your Honor granted that motion,

13  ostensibly all the arguments that went into whether the

14  subpoenas were appropriate, those were resolved.  And so

15  there's no current discovery that this motion could apply to.

16      Rule --

17      THE COURT:  All right.  So I have a quick question for

18  you, then, Mr. Davis.  Could you not accomplish what you want

19  with a 12(e) motion for a more definite statement?

20      MR. DAVIS:  That would bear some thought, Judge.  And

21  I would want to confer with colleagues about that.  Perhaps so.

22      The main thing we want to do is streamline the case, find

23  out what is in the case and what is not, and whether they're

24  going to be held to their promise that they were just -- not

25  going to do anything different from what the private plaintiffs

1 did.

2      If you would like, Judge, we could file something with the

3 Court in the next couple of days after we have had a chance to

4 discuss it as to whether we want to do this, whether we want a

5 ruling on our motion for judgment on the pleadings, or whether

6 we would be content to ask for a more definite statement from

7 the United States.  We don't want anything to drag the case

8 down.

9          THE COURT:  I understand.  And I don't necessarily see

10 this as a new claim as much as a new theory of the claim or an

11 additional theory of the claim.  At the same time, I certainly,

12 you know, want everybody to be on notice of, you know, the

13 clock is running and the sand is running through the hourglass

14 right now, so...

15          MR. DAVIS:  Exactly.  We want to be able to enforce

16 our law again.  We want the chance to convince you that this

17 law is constitutional so that we can protect these kids.

18      And, you know, if you want to just tell the parties now

19 whether you're going to let the plaintiffs or the United States

20 run down a different rabbit trail of legislative intent, or

21 whether you're going to hold them to the theories that we have

22 been litigating so far, that would be helpful, too.

23          THE COURT:  Right.  I think I'm going to have to think

24 on that --

25          MR. DAVIS:  Fair enough.

 1          THE COURT:  -- a day or two myself.  But, yes, we will

 2   have to move down that line.

 3       Anything else you want to say?

 4          MS. TOYAMA:  Sure, Your Honor.  Just very quickly.

 5       I do just want to also make clear that the United States

 6   and the plaintiffs both reserved our right to go through a

 7   different type of analysis for the equal protection claim, so

 8   the Arlington Heights claim.

 9       And on the first issue of whether the law is facially

10   discriminatory or facially neutral, that is a claim -- or

11   whether the law is facially neutral was something that was

12   raised by defendants on the Eleventh Circuit.

13       And so to the extent that we're going to be limiting

14   claims, it needs to be equal.  We need to be able to prove our

15   case on different theories that defendants are also going to be

16   raising.

17          THE COURT:  All right.  Anybody have anything else

18   they want the Court to hear on this?  Fair enough.

19       All right.  Thank you.

20       All right.  Let's talk about the HHS issue.

21          MR. DAVIS:  Jim Davis for the defendants again.

22       What I was just discussing with my friends representing

23   the United States was whether it made sense to talk about the

24   interrogatories and the requests for productions together

25   because of the overlap.

1    They're planning on arguing those separately.  I will
2    start with whichever one you want me to start with, but a lot
3    of it's going to apply to both.
4         THE COURT:  Right.  Right.  You know, to the extent we
5    could do them together, that would be great.  If you want to do
6    it in two separate tranches, that's fine, too.
7         MR. DAVIS:  I plan to address them both, and if my
8    friends wish to divide the argument up however they wish, of
9    course, that's their right.
10   Jim Davis again for the defendants, Judge.
11   The United States inserted itself into this litigation
12   arguing that puberty blockers and cross-sex hormones are safe,
13   effective, and medically necessary for children with gender
14   dysphoria.
15   And in this case, they have cited material from the United
16   States Department of Health and Human Services for the
17   proposition that if we don't give children with gender
18   dysphoria these treatments, those children would be harmed.
19   They have documents and information that will help you decide
20   whether those claims are true.
21   At HHS they have folks who look at these issues, who are
22   monitoring ongoing experiments on children, who are --
23        THE COURT:  So let me drill down right there.
24        MR. DAVIS:  Okay.
25        THE COURT:  I didn't see a case that I thought set the

1  woods on fire as the definitive, you know, the HHS 100 percent

2  can be treated as DOJ and the government for purposes of

3  discovery.

4          MR. DAVIS:  Okay.  Let me go to that point, then.

5          THE COURT:  All right.

6          MR. DAVIS:  Because their objection, they say HHS is

7  not part of the United States for purposes of discovery.

8          THE COURT:  Right.

9          MR. DAVIS:  I think that's crazy.  There is nothing in

10  the rules that says the United States has some kind of

11  exemption.

12      Now, I can see -- it would be one thing -- the United

13  States is a large entity, the federal government.  It would be

14  one thing if we were saying you need to go look at commerce,

15  and state, and the treasury, and defense, and every agency

16  you've got.  You need to go look there.

17      We have targeted HHS, which has folks who are looking at

18  this.  They are funding studies that experts for the plaintiffs

19  and the United States are saying is part of this so-called vast

20  body of evidence supporting the treatment.

21      So they are very much involved in these issues.  And one

22  of the cases we cited -- and you are right, Judge.  There is

23  nothing from the Supreme Court that says definitively one way

24  or another what you are supposed to do.  But one of the cases

25  we cited, United States vs. UBS Securities, says the definition

1   of United States also include agencies that inform the

2   policies, rules, and regulations that the executive branch

3   sets.

4        We also cited a case from the Eastern District of

5   Louisiana, Deane vs. Dynasplint Systems, Inc., where they said

6   you're not allowed to just limit yourself to the Department of

7   Justice, the lawyers.

8        DOJ doesn't have teams of scientists looking at this

9   stuff.  HHS does.  So they're all -- both agencies are subject

10  to directives from the same president.  HHS is part of the

11  United States.

12       And I'd say this, too.  The Department of Justice is not

13  the intervening party.  And Merrick Garland is not the

14  intervening party.  The intervening party is the United States.

15  They intervened under 42 U.S.C. 2000h-2.  That statute permits

16  intervention for or in the name of the United States.  That's

17  the party.

18       The case that they cite under U.S. vs. New York, the

19  language is -- says that -- in that case, the Attorney General

20  intervened under a different statute.  And that statute says

21  that the Attorney General may intervene -- for or in the name

22  of the United States may intervene in such an action.  But it's

23  the Attorney General who may bring the civil -- I messed up,

24  Judge, okay?  Let me go back.

25       In the case they cite for U.S. vs. New York, it's -- the

1   statute says the Attorney General may bring a civil action.

2   The statute they used here says the Attorney General for or in

3   the name of the United States may intervene.  So the United

4   States is the party for you here.  In the case they cite, the

5   statute says that the Attorney General may bring a civil

6   action.

7       So that's why we think it's perfectly fair game to say the

8   United States includes more than just the lawyers.  We have an

9   agency here who, as U.S. vs. UBS Securities, says, is informing

10  the policies, rules, and regulations that the executive branch

11  sets.

12          THE COURT:  Why don't we switch sides real quick, and

13  then I will bring you back up, Mr. Davis.

14          MS. MURPHY:  Good morning, Your Honor.  Amie Murphy on

15  behalf of the United States.

16          THE COURT:  Good morning.

17          MS. MURPHY:  Your Honor, I just want to begin by

18  addressing some of the points that defendants made about the

19  case law.

20      It's true that the cases that the United States cited are

21  a bit thin.  But they come to the right result, that the United

22  States -- when the Attorney General intervenes on behalf of the

23  United States, he doesn't do so on behalf of the entire federal

24  government.

25      And a point about the cases that defendants cited, when

1    read together, it makes clear that it's not simply that the

2    Attorney General has intervened in these particular

3    circumstances.  What's required is that party discovery is

4    allowed when these non-party agencies have been heavily

5    involved in the litigation, either through because there was a

6    joint investigation, or they were part of the investigation, or

7    part of the litigation of the case.  And that's simply not the

8    case here.

9        Your Honor, up until this point, HHS has not been involved

10    in the case.  We've simply relied on some of their research

11    that they funded in some of our pleadings.  And that's not

12    enough to make them subject to party discovery.

13        The issue, the threshold question here is whether or not

14    HHS -- whether or not the Attorney General has custody and

15    control of the documents.  And he simply does not.

16        Like I said, we have cited some of the research that they

17    funded, but the connection stops there.

18        This concept is not unique to the federal government.  If

19    you look at in the private sector, if someone was hurt at a

20    Walmart, they can sue Walmart, but it doesn't subject all the

21    Walmart subsidiaries to party discovery.  You can't get

22    discovery from jet.com, you can't get discovery from Sam's

23    Club, all because you sued Walmart.  It's the same with the

24    federal government.

25        If Your Honor would like, I can move on and talk a little

1   bit about relevance, because I think that's important here,
2   too.

3       So far, up to this point, the United States has produced
4   approximately 2.5 million pages of documents.  2.3 million of
5   those documents have been over the United States' own
6   objections, and they were on behalf of HHS.

7       Now, to be clear, those 2.3 million documents consisted of
8   an administrative record, which had already been compiled and
9   produced in another lawsuit where the rule-making process
10  itself was at issue.

11      So since it had already been produced, the burden to
12  produce it here was not very great.  And we did it, because as
13  we told defendants repeatedly throughout the meet and confer
14  process, if they could just narrow the scope of their requests
15  and tell us what it is that they actually wanted, we were open
16  to facilitating a production on behalf of HHS in order to keep
17  this case moving along, for efficiency, and in the interest of
18  cooperation.

19      But here's the problem, Your Honor.  What defendants say
20  they want with respect to the evidence, which is evidence
21  related to the safety and efficacy of the treatments at issue,
22  what -- their requests actually demand far more than that.

23      And I am not even talking about all 45.  I'm talking just
24  about the ones, the 14 that are the subject of this motion.

25      So I can give you some examples.  For instance, request

1  number 6 asks for every type of document or communication

2  regarding transitioning.  Not the safety and efficacy of the

3  treatments related to transitioning, but just the very notion

4  of transitioning itself.  That's far more than what defendants

5  have said that they want.

6       Other requests, such as request number 18, that refers to

7  a specific study.  But then, in addition to wanting every type

8  of communication and document, they also want a long list of

9  types of documents that the United States believes does not

10 bear on the outcome of this case.

11      For the first time in their reply brief, defendants

12 offered that what they want with respect to requests 18, 19,

13 and 20 is actually a little bit different.  And so what they

14 say is that they want to understand the process behind the

15 study's development and implementation, to ensure that the

16 studies fairly and accurately portray the information that is

17 in the possession, custody, and control of HHS.

18      So if I understand that correctly, on the one end,

19 defendants want -- defendants' justification for wanting these

20 documents is that so their experts can critique the studies.

21 And on the other end of the spectrum, they want these documents

22 so that they can show that HHS, a government agency, is

23 potentially hiding something.

24      But on that latter point, Your Honor, defendants have put

25 forth no evidence in this case that indicates that any of the

 1  research that's been funded by HHS misrepresents the real

 2  picture.  HHS is not on trial here, and there's no basis for

 3  that theory.

 4      On the other end, there is simply no need for them to have

 5  the underlying documents for their experts to critique any of

 6  the HHS-funded studies.  The studies speak for themselves.  And

 7  each study includes information within it that their experts

 8  can use to analyze it.

 9      It includes information on the methodology.  It includes

10  information on whether there were any conflicts.  It also

11  includes information on funding sources.

12      So my last --

13          THE COURT:  I'm assuming that not every single thing

14  in an underlying document would wind up in the published study.

15          MS. MURPHY:  I'm sorry, Your Honor.  Can you --

16          THE COURT:  So why would it not be helpful for the

17  State to be able to see the underlying documents to understand

18  what made it into the study results and what didn't?

19          MS. MURPHY:  Sure.  Your Honor --

20          THE COURT:  If they only have the study, then, you

21  know, they're just getting the headline.  So can you address

22  that for me a little bit?

23          MS. MURPHY:  Sure.

24      Your Honor, I mean, it's -- we are of the opinion that the

25  studies speak for themselves.  And some of the documents that

1   they've requested go far beyond what would ordinarily be used
2   to critique a study -- the funding sources, meeting minutes,
3   board meeting minutes.  All of those seem irrelevant to the
4   outcome of the study itself.
5          THE COURT:  So, I mean, is there anything that you
6   would concede behind the study should be discoverable?
7          MS. MURPHY:  Sure.
8      Your Honor, I think that there's definitely room for
9   compromise on a lot of these requests.  Specifically the ones
10  where they've specified studies and they've -- if -- we can
11  probably have a discussion about what documents we -- the HHS
12  could produce.
13         THE COURT:  Well, it just seems to me I can make a
14  study come out any way I want it to.  I'm not saying that's
15  what happened here.  But I've been around 53 years, and I've
16  certainly seen studies that came out that were one-sided on a
17  variety of issues.
18     So if you -- you know, I can tell you as we sit here today
19  I would think that it would be very relevant, you know, the
20  decision making that went into how these studies arrived at the
21  result.
22     So, you know, I know there can be some quibbling about,
23  you know, which exact items should be included in that, but
24  just to say you can only have the study, that seems to be --
25  that seems to be drawing the line too far to one side.

1           MS. MURPHY:  Sure.

2       And, Your Honor, I think one of the problems we have is

3   that a lot of the documents underlying the studies that

4   defendants have requested would most likely be protected by the

5   deliberative process privilege.  And so I think there is -- the

6   documents are going to fall on a spectrum.

7       There's going to be some that I think, as Your Honor

8   points out, are probably relevant to the outcome of the study

9   and may assist in them analyzing the study.  On the other end

10  of the spectrum, there's things like e-mails and internal

11  communications that the disclosure of which would violate

12  deliberative process.  And that's what we're most concerned

13  with.

14      And the reason why that's important, Your Honor, is

15  because what makes studies of high quality is the ability for

16  the employees and the researchers to have frank discussions, to

17  have the ability to speak up to say -- you know, to question

18  the evidence, to question the underlying data.  But if those

19  documents are subject to discovery, they're unable to have

20  those frank communications.

21          THE COURT:  So do I hear you saying today that

22  whatever the result of this, that DOJ will facilitate discovery

23  with HHS?

24          MS. MURPHY:  Yes, Your Honor.  I mean, we've told

25  defendants all along that we've been willing to facilitate a

1    production on behalf of HHS, despite the fact that we don't --

2    we are not legally obligated to do so.

3        THE COURT:  So based on what I have kind of given you

4    as my thoughts on this, what items would you now say, hey, yes,

5    we think this should be discoverable?  Tell me the items you

6    think, yes, I'll go to HHS and I will get these things for

7    them, but, Judge, these three things, or whatever, we don't

8    think we ought to discuss.

9        MS. MURPHY:  I think -- it's hard for me to name

10   specific documents, Your Honor, since I -- I can come up with

11   some examples, maybe, from the list.

12       THE COURT:  Would it help if we took another

13   five minutes and let you confer with your folks on that?  I'm

14   just trying to find a way to solve our issue today if we can.

15       MS. MURPHY:  Sure.

16     Your Honor, I think part of the issue is that simply

17   there's such a variety of documents that are out there.  You

18   know, if we could take e-mails, internal communications off the

19   table, I think that would -- that would really narrow down.

20   And it would also make our searches for documents much more

21   efficient.

22       THE COURT:  So, Mr. Davis, I will ask you that

23   question on the other side.  Are there certain documents that

24   you can live without?  Say, hey, we need these top eight items,

25   or --

1          MR. DAVIS:  I don't know what's there, Judge.  We do

2   think it important -- I don't know if you want to take the

3   break now, or if you want to hear my response to some of this

4   stuff.

5          THE COURT:  Yeah.  Go ahead and give me your response,

6   and then --

7          MR. DAVIS:  It sounds like the issue of whether HHS is

8   part of the United States is sort of moot.  If you order it --

9          THE COURT:  That's what I gathered.

10          MR. DAVIS:  All right.  Let me skip to the importance.

11    My friends said we haven't shown that there might be

12   something behind the study, but our response on the

13   interrogatory motion, Doc 267, page 7, talks about the Chen

14   study.

15      This is a study that the experts for the plaintiffs and

16   the United States rely on.  And this is where -- we think it

17   critically important that we get, just like with WPATH, we get

18   to peek behind the study of this.  The four corners doesn't

19   tell you everything.

20      This will take just a second, but I want to lay this out.

21   That study started when the some authors or people who wanted

22   to do the study in 2015, they issued a protocol.  They said

23   this is what we want to study, somebody please fund it.

24      And what they said they wanted to do was create a body of

25   evidence supporting gender-affirming care by measuring how

1    children performed over time.  They wanted to see how children

2    getting these treatments did in eight areas.  And that included

3    gender dysphoria, depression, anxiety, trauma symptoms,

4    self-injury, suicidality, body esteem, and quality of life.

5    That's what we're going to study.  HHS decided to fund the

6    study.

7         Two years after they started the study, the authors came

8    back and they published a paper.  And they said good news, the

9    treatments work.  The children who are getting these treatments

10   are improving in two areas.

11        They say nothing about the other six.  They say nothing

12   about why they chose not to disclose anything about how the

13   children were doing in those other six areas that they said

14   they were going to measure.  We don't know what happened.

15        But somebody at HHS has been getting data, reviewing

16   progress updates.  We need discovery to see what happened with

17   that study.  What are we not being told as a result of these

18   ongoing experiments on children?  I can't tell you exactly what

19   we need to show that, because I do not know what is there.

20        The deliberative process privilege does not protect facts.

21   We need facts.  I can't say if there are e-mails that are not

22   protected by the deliberative process privilege or not because

23   I don't know what's there.

24        If you want us -- well, I think that is what I wanted to

25   explain to the Court about that.  I don't know -- we think we

 1  need an order granting our motion to compel.

 2      If there are particular areas that they want to talk

 3  about, we'll talk about it.  If there are particular areas that

 4  they weren't aware of at this time that would be unduly

 5  burdensome in their view, and they want to say, hey, we just

 6  discovered that if we do this, that's going to be too much, we

 7  need to narrow this a little bit, we are open to those

 8  discussions.

 9      But we have got expert reports due next month.  We've been

10  litigating this case for a long time.

11      We ask for an order granting the motion to compel.  If

12  there are issues they want to talk about, wrinkles we need to

13  iron out, we will work on that.  But we need them to start

14  giving us some of this stuff quickly so our experts can start

15  reviewing it.

16          MS. MURPHY:  Your Honor, the point that I wanted to

17  make is simply that right now, as the requests are written,

18  they're way to overly broad for us to have a meaningful

19  discussion with HHS about what documents are relevant.

20      If defendants -- if we can have a productive discussion

21  with defendants where they can identify particular documents

22  that they want, and we can find them, but so far we haven't

23  been able to do that.  So far what defendants have said is that

24  they simply want to use search terms to alleviate the

25  burdensomeness.  But we are not there yet.

1    Search terms are a good tool to use once the requests

2   themselves have been narrowed to the scope of permissible

3   discovery.  We're simply not there.  We're still unable to

4   figure out what some of these requests are really asking for,

5   and what documents they want.

6    We can have a discussion about what documents might be

7   useful for each of these studies.  But I also wanted to point

8   out that these are studies that are funded by HHS.  So some of

9   the documents they may have control over, and some of the

10  documents they may not.

11   Funding documents, probably yes.  But some of the other

12  documents, like meeting minutes, notes from meetings, they may

13  not have custody and control over.

14   So once we're able to narrow the requests and understand

15  what it is that we're looking for, then we can have more

16  productive discussions about what we can offer to respond to

17  the requests.

18       THE COURT:  So, you know, I would say this:  At least

19  from what I'm hearing today, DOJ's position on facilitating and

20  meeting and confer seems to be vastly different than what the

21  State said in its pleadings.  You know, what I gathered from

22  what the State said in its pleadings was they tried to talk to

23  you guys, but hit a dead end.  Can you help me reconcile that?

24       MS. MURPHY:  Your Honor, we've produced 2.5 million

25  pages of documents.  As I said before, 2.3 of those were an

```
 1  administrative record.  So it's -- it was something that was
 2  not burdensome to produce.
 3          THE COURT:  You're talking about things from HHS?
 4          MS. MURPHY:  Pardon me?
 5          THE COURT:  Have you produced anything from HHS?
 6          MS. MURPHY:  The administrative record -- so the
 7  2.3 million documents were on behalf of HHS.  It was an
 8  administrative record that had already been compiled for the
 9  purposes of another lawsuit.  It was compiled and produced.
10      So -- and specifically, what the administrative record
11  includes are documents that the agency considered when, in its
12  rule-making process for the 2020 regulation, related to the
13  Section 1557 of the Affordable Care Act.
14      So these are all documents that the agency considered.
15  But notably, Your Honor, when compiling an administrative
16  record, HHS doesn't include internal memos, e-mails, stuff that
17  is otherwise privileged, because, in their view, it's something
18  that's not considered.
19          THE COURT:  All right.  I think I have probably heard
20  what I need to on this.
21          MS. MURPHY:  Okay.  Thank you, Your Honor.
22          THE COURT:  Uh-huh.
23      Was there anything else anybody wanted to say regarding
24  the interrogatories?
25          MR. DAVIS:  No, Judge.  I think the same argument
```

```
 1   applies on the interrogatories.  What we've lined up -- we have
 2   narrowed it down significantly.  And those -- the ones that are
 3   still an issue you'll find at Doc 259 at pages 2 and 3.
 4        The information at HHS is as available to the Department
 5   of Justice as HHS documents are.  And if it's in their hands,
 6   it's reasonably available, and they need to use that
 7   information from HHS to respond to our interrogatories.
 8             THE COURT:  Well, and as I understand it, you know, I
 9   hear DOJ saying regardless of whether -- I mean, do I even need
10   to determine whether or not HHS is the same thing as the United
11   States for the purposes of discovery?  Or are you just telling
12   me, hey, that's moot, Judge, we're going to get it for them?
13             MS. MURPHY:  Your Honor, I don't think that you have
14   to decide that issue since we have agreed to produce documents
15   on their behalf.
16             THE COURT:  And I appreciate your willingness to do
17   that.  I do.
18        Okay.  Anything else the government wants to say about
19   this?
20             MS. WILLIAMS:  Your Honor, Renee Williams for the
21   United States.
22        We had -- excuse me.  Good morning, Your Honor.
23             THE COURT:  Good morning.
24             MS. WILLIAMS:  Renee Williams for the United States.
25        We had -- my colleague and I had decided to split up the
```

 1  argument related to the interrogatories and the requests for

 2  production.  Just one quick point, Your Honor, because I think,

 3  as you have mentioned, you know, we have covered a lot of

 4  ground.

 5      With respect to what -- I believe Mr. Davis was talking

 6  about the Chen study that he referred to, and how, you know, in

 7  defendants' view there was some deficiencies there as they've

 8  characterized it.

 9      We would just submit, Your Honor, that the defendants were

10  able to do that analysis with the study itself.  They were able

11  to review the study, review the -- I believe it was the

12  protocol, and, you know, compare the two and see, oh, okay,

13  well, there are some things in the final study that were not

14  there that were promised.

15      And so we would just submit, Your Honor, that that's

16  exactly why we think that the studies stand for themselves.

17  And so our experts, the defendants' experts would be able to

18  make those assessments.  And if, you know, if the studies are,

19  you know, in any way deficient, then, you know, the four

20  corners of the study wouldn't allow the parties to make those

21  determinations and arguments to Your Honor.

22      So that's just -- I just wanted to make that note, with

23  respect to those particular -- that study that was referenced.

24      Thank you, Your Honor.

25          MR. DAVIS:  I can look at the study and know

1    something's missing, but I don't know why.  And I don't know

2    what the missing part says.  I don't know if the kids were

3    doing worse in those other six areas.  I don't know.

4         Just like with WPATH, we need to peek behind the curtain

5    at some of these studies so you can see at trial whether the

6    evidence -- whether what you heard at the preliminary

7    injunction hearing was correct, whether you were told the full

8    story at the hearing.

9         We think there's a whole lot more if we get the chance to

10   look behind the curtain of some of these things.  So we ask

11   that you grant both motions to compel.

12            THE COURT:  All right.  We've covered a lot of ground

13   today.  I appreciate the arguments of all the parties.  And we

14   will get an order out.

15        Anything else we need to cover today?

16        All right.  Nobody sees any -- do we see any discovery

17   issues that are about to break through the surface of the

18   water, or no?

19            MR. DAVIS:  Jim Davis for the defendants.

20        I'm not aware of anything.  We are just anxious to get

21   some productions going so that we can get our experts some

22   material.  I don't -- but at this time, I don't know of

23   anything else.

24            THE COURT:  All right.

25            MS. MURPHY:  Nothing on behalf of the United States,

```
 1   Your Honor.
 2             THE COURT:  Okay.
 3             MR. LACOUR:  Your Honor, the only other thing I would
 4   note is the motion that was argued back in February on the
 5   plaintiffs' medical records, we are still hoping to get those
 6   medical records so we can review them, have our experts review
 7   them.  Our expert reports are due April 10th, I believe it is.
 8   And then set up depositions of the plaintiffs.
 9             THE COURT:  Roger.
10        Okay.  We're adjourned.  Thank you.
11
12             (Whereupon, the above proceedings were concluded at
13        11:32 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                        CERTIFICATE

 2

 3

 4         I certify that the foregoing is a correct

 5    transcript from the record of proceedings in the

 6    above-entitled matter.

 7

 8

 9

10

11    _____    03-23-2023

12    Christina K. Decker, RMR, CRR                Date

13    Federal Official Court Reporter

14    ACCR#:  255

15

16

17

18

19

20

21

22

23

24

25
```

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s Cortlin H. Lannin*
Cortlin H. Lannin