No. 23-11753

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

*In re World Professional Association for Transgender Health,*
Petitioner

On Petition from the U.S. District Court for the Middle District of Alabama
No. 2:22-cv-00184
(Hon. Liles C. Burke)

## PETITIONER'S TIME-SENSITIVE MOTION TO STAY ORDER REQUIRING PRODUCTION OF PRIVILEGED MATERIALS PENDING RESOLUTION OF PETITION FOR WRIT OF MANDAMUS

## ACTION REQUIRED BY JULY 10, 2023

Barry A. Ragsdale (ASB 2958A23B)
Robert S. Vance III (ASB 9916B11Q)
DOMINICK FELD HYDE, P.C.
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL 35205
Phone: (205) 536-8888

D. Jean Veta (D.C. Bar No. 358980)
Cortlin H. Lannin (CA Bar No. 266488)
William Isasi (D.C. Bar No. 470878)
Michael J. Lanosa (CA Bar No. 301241)
José Girón (MD Bar No. 2211280185)
Emile J. Katz (D.C. Bar No. 90006190)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone: (202) 662-6000

*Counsel for Petitioner*

No. 23-11753, *In re: World Professional Association for Transgender Health*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned counsel for the World Professional Association for Transgender Health ("WPATH") certifies that WPATH has no parent corporation, and no corporations hold any stock in WPATH.

The undersigned counsel certifies that the following persons and parties, in addition to WPATH, may have an interest in the outcome of this case:

1.    Abdul-Latif, Hussein – Amicus Curiae;

2.    Academic Pediatric Association – Amicus Curiae;

3.    Aderholt, Caroline M. – Amicus Curiae;

4.    Aderholt, Robert B. – Amicus Curiae;

5.    Advancing American Freedom, Inc. – Amicus Curiae;

6.    Advancing LGBTQ Equality – Amicus Curiae;

7.    Agricola, Algert Swanson (Jr.) – Counsel for Amicus Curiae;

8.    Alabama Center for Law and Liberty – Amicus Curiae;

9.    Alabama Ch. of the American Academy of Pediatrics – Amicus Curiae;

10.    Alaska, State of – Amicus Curiae;

11.    Alstott, Anne – Amicus Curiae;

12.    Am. Academy of Child and Adolescent Psychiatry – Amicus Curiae;

13.    Am. Academy of Family Physicians – Amicus Curiae;

No. 23-11753, *In re: World Professional Association for Transgender Health*

14.    Am. Academy of Pediatrics – Amicus Curiae;

15.    Am. Academy of Nursing – Amicus Curiae;

16.    Am. Ass'n of Physicians for Human Rights, Inc. – Amicus Curiae;

17.    Am. Coll. of Obstetricians & Gynecologists – Amicus Curiae;

18.    Am. Coll. of Osteopathic Pediatricians – Amicus Curiae;

19.    Am. College of Physicians – Amicus Curiae;

20.    Am. Family Ass'n, Inc. – Amicus Curiae;

21.    Am. First Legal Foundation – Amicus Curiae;

22.    Am. Med. Ass'n – Amicus Curiae;

23.    Am. Pediatric Soc'y – Amicus Curiae;

24.    Am. Psychiatric Ass'n – Amicus Curiae;

25.    Ams. United for Life – Amicus Curiae;

26.    Andersen, Alison L. – Counsel for Amici Curiae;

27.    Anderson, Tom – Defendant;

28.    Arizona, State of – Amicus Curiae;

29.    Arkansas, State of – Amicus Curiae;

30.    Arnold, Stephanie York – Amicus Curiae;

31.    Ass'n of Am. Med. Colls. – Amicus Curiae;

32.    Ass'n of Med. School Pediatrics Dep't Chairs – Amicus Curiae;

33.    Austin, Heather – Plaintiff;

34.    Australian Professional Association for Trans Health (The) – Amicus Curiae;

35.    Baia, Elizabeth – Counsel for Medical Amici;

36.    Bailey, Daryl D. – Defendant;

37.    Barday, Shireen A. – Counsel for Amici Curiae;

38.    Barham, Richard – Amicus Curiae;

39.    Barnes, Brian W. – Counsel for Defendants;

40.    Barnhart, Dr. David L. (Jr.) – Amicus Curiae;

41.    Baylock, C. Wilson – Defendant;

42.    Becker, Laura – Amicus Curiae;

43.    Beninati, Nancy – Counsel for Amici Curiae;

44.    Berg, Rachel H. – Counsel for Plaintiffs;

45.    Blakemore, Robin – Amicus Curiae;

46.    Boccuzzi, Carmine D, (Jr.) – Counsel for Amici Curiae;

47.    Boe, Brianna (pseudonym) – Plaintiff;

48.    Boergers, Kathleen – Counsel for Amici Curiae;

49.    Bonta, Rob – Counsel for Amici Curiae;

50.    Boulware, Susan D. – Amicus Curiae;

51.    Bowdre, Alexander Barrett – Counsel for the Defendants;

52.    Bridges, Dr. Rebecca L. – Amicus Curiae;

53.    Brooks, Mo  – Amicus Curiae;

54.    Brooks, Roger – Counsel for Defendants;

55.    Brown, Chip  – Amicus Curiae;

56.    Broyles, Vernadette R. – Counsel for Amici Curiae;

57.    Bryan, Chad W. – U.S. Magistrate Judge;

58.    Buckeye Institute – Amicus Curiae;

59.    Bundesverband Trans* e.V. – Amicus Curiae;

60.    Burleigh, Billy  – Amicus Curiae;

61.    Burke, Liles C. – U.S. District Court Judge;

62.    California, State of – Amicus Curiae

63.    Cantrell, Michael A. – Counsel for Amici States

64.    Cardinal Institute for West Virginia  Policy – Amicus Curiae;

65.    Carl, Jerry L. – Amicus Curiae;

66.    Carr, Danny – Defendant;

67.    Center for Arizona Policy  – Amicus Curiae;

68.    Center for Family and Human Rights – Amicus Curiae;

69.    Central Conference of American Rabbis – Amicus Curiae;

70.    Cheek, Jason R. – Counsel for Intervenor – Plaintiff;

71.    Child & Parental Rights Campaign, Inc. –Amicus Curiae;

72.    Citizens United – Amicus Curiae;

73.    Citizens United Foundation – Amicus Curiae;

74.    Clark, Matthew J. – Counsel for Amici Curiae;

75.    Clarke, Kristen – Counsel for Intervenor-Plaintiff

76.    Coe, Brian – Amicus Curiae (pseudonym);

77.    Coe, Laura – Amicus Curiae (pseudonym);

78.    Colavecchio, J.D. – Counsel for Amici Curiae;

79.    Colorado, State of – Amicus Curiae;

80.    Commonwealth Foundation for Public Policy Alternative – Amicus Curiae;

81.    Concerned Women for America – Amicus Curiae;

82.    Connecticut, State of – Amicus Curiae;

83.    Conrady, Julie – Amicus Curiae;

84.    Cooper, Erica – Amicus Curiae;

85.    Davies, Andrew Rhys – Counsel for Amici Curiae;

86.    Davis, James William – Counsel for Defendants;

87.    Delaware, State of – Amicus Curiae;

88.    Dermody, Eliza – Counsel for Intervenor-Plaintiff;

89.    Dingus, Jaimie – Amicus Curiae;

90.    District of Columbia – Amicus Curiae;

91.    Doss, Jeffrey P. – Counsel for Plaintiffs;

92.    Dunbar, John Mark – Counsel for Amicus Curiae;

No. 23-11753, *In re: World Professional Association for Transgender Health*

93.   Eagan, Melody Hurdle – Counsel for Plaintiffs;

94.   Eagle Forum of Alabama  – Amicus Curiae;

95.   Eknes-Tucker, Paul A. – Plaintiff;

96.   Elgart, Allison – Counsel for Amici Curiae;

97.   Elias, Nimrod Pitsker – Counsel for Amici Curiae;

98.   Elliot, T. Christopher – Amicus Curiae;

99.   Endocrine Society – Amicus Curiae;

100.  Escalona, Elizabeth Prim Formby – Counsel for Intervenor – Plaintiff;

101.  Ethics and Public Policy Center – Amicus Curiae;

102.  Faith & Freedom Coalition – Amicus Curiae;

103.  Family Action Council of Tennessee, Inc., – Amicus Curiae;

104.  Federación Colectivo Hombres XX, AC – Amicus Curiae;

105.  Finney, Johnny R. (II) – Amicus Curiae;

106.  Foster, Carolyn – Amicus Curiae;

107.  Foundation for Government Accountability – Amicus Curiae;

108.  Foundation for Moral Law – Amicus Curiae;

109.  Foundation for Government Accountability (The) – Amicus Curiae;

110.  Frampton, Henry W. IV – Counsel for Defendants;

111.  Free Speech Coalition – Amicus Curiae;

112.  Frontline Policy Council –  Amicus Curiae;

113.    Fuller, David – Amicus Curiae;

114.    G. C. – Amicus Curiae (pseudonym);

115.    Gardner, Christopher J. – Counsel for Amici Curiae;

116.    Genau, Joseph – Amicus Curiae;

117.    Georgia, State of – Amicus Curiae;

118.    George, Renu R. – Counsel for Amici Curiae;

119.    Gibson, Henry N. – Amicus Curiae;

120.    Girón, José F. – Counsel for WPATH and Medical Amici Curiae;

121.    Global Justice Institute – Amicus Curiae;

122.    Goldberg, Noah S. – Counsel for Amici Curiae;

123.    Graham, John Mark – Counsel for Amici Curiae;

124.    Gray, C. Boyden – Counsel for Amicus Curiae;

125.    Hamilton, Gene – Counsel for Amici Curiae;

126.    Hamilton-Poore, Dr. Samuel F. – Amicus Curiae;

127.    Hasson, Mary Rice – Amicus Curiae;

128.    Hawaii, State of – Amicus Curiae;

129.    Health Professionals Advancing LGBTQ Equality – Amicus Curiae;

130.    Hecker, Elizabeth P. – Appellate Counsel for Intervenor-Plaintiff;

131.    Henkin, Steven – Amicus Curiae;

132.    Hilbert, Kurt R. – Counsel for Amici Curiae;

133.   Hopkins, C. Lynn – Amicus Curiae;

134.   Hutchinson, Laura – Amicus Curiae;

135.   Illinois, State of – Amicus Curiae;

136.   Independent Women's Forum – Amicus Curiae;

137.   Indiana, State of – Amicus Curiae;

138.   Isaacson, Eric Alan – Counsel for Amici Curiae;

139.   Isasi, William  – Counsel for WPATH and Medical Amici Curiae;

140.   Isner, Shane – Amicus Curiae;

141.   Ivey, Kay – Defendant;

142.   Jacobs, Dylan L. – Counsel for Amici Curiae;

143.   Jauregui, Phillip Leo – Counsel for Amicus Curiae;

144.   Jimmerson, Dr. Ellin – Amicus Curiae;

145.   John Locke Foundation – Amicus Curiae;

146.   Jordan, Albert Linch– Counsel for Amicus Curiae; Judicial Watch, Inc. –

Amicus Curiae;

147.   Judicial Watch (The) – Amicus Curiae;

148.   Kamody, Rebecca – Amicus Curiae;

149.   Katz, Emile J. – Counsel for WPATH and Medical Amici Curiae;

150.   Kerschner, Helena – Amicus Curiae;

151.   Koe, Rachel (pseudonym) – Plaintiff;

152.   Krishna, Praveen S. – Appellate Counsel for Intervenor-Plaintiff;

153.   Kuper, Laura – Amicus Curiae;

154.   LGBT+Denmark – Amicus Curiae;

155.   LaCour, Edmund G. (Jr.) – Counsel for Defendants;

156.   Lamar-Hart, Cynthia – Amicus Curiae;

157.   Lannin, Cortlin H. – Counsel for WPATH and Medical Amici Curiae;

158.   Lanosa, Michael – Counsel for WPATH and Medical Amici Curiae;

159.   Lareau Alyssa C. – Counsel for Intervenor – Plaintiff;

160.   Lee, Bethany C. – Counsel for Defendants;

161.   Levi, Jennifer L. – Counsel for Plaintiffs;

162.   Liberty Justice Center – Amicus Curiae;

163.   Loe, Brian – Amicus Curiae (pseudonym);

164.   Loe, Sarah– Amicus Curiae (pseudonym);

165.   Loper, Dr. Helene – Amicus Curiae;

166.   Louisiana Family Forum  – Amicus Curiae;

167.   Louisiana, State of – Amicus Curiae;

168.   Madden, Wendy Ann – Counsel for Amici Curiae;

169.   Maine, State of – Amicus Curiae;

170.   Manhattan Institute – Amicus Curiae;

171.   Marshall, Margaret L. – Counsel for Intervenor-Plaintiff;

No. 23-11753, *In re: World Professional Association for Transgender Health*

172.  Marshall, Steve – Defendant;

173.  Martinez, Gabriel – Counsel for Amici Curiae;

174.  Martinez, Michael Rodriguez – Counsel for Amici Curiae;

175.  Maryland, State of – Amicus Curiae;

176.  Massachusetts, State of – Amicus Curiae;

177.  Mattern, David P. – Counsel for Plaintiffs;

178.  McAlister, Mary E. – Counsel for Amici Curiae;

179.  McCotter, R. Trent – Counsel for Amicus Curiae;

180.  McCoy, Scott D. – Counsel for Plaintiffs;

181.  McKay, Charles Arthur – Counsel for Defendants;

182.  McNamara, Meredithe – Amicus Curiae;

183.  Medical Ass'n of Pediatric Nurse Practitioners – Amicus Curiae;

184.  Men of Reform Judaism – Amicus Curiae;

185.  Mendenhall, Allen  – Amicus Curiae;

186.  Michigan Family Forum  – Amicus Curiae;

187.  Mills, Christopher E. – Counsel for Defendants;

188.  Minnesota, State of – Amicus Curiae;

189.  Mitchell, Jonathan F. – Counsel for Amici Curiae;

190.  Mississippi, State of – Amicus Curiae;

191.  Missouri, State of – Amicus Curiae;

No. 23-11753, *In re: World Professional Association for Transgender Health*

192.  Moe, Jane – Plaintiff (pseudonym);

193.  Moe, Robert – Plaintiff (pseudonym);

194.  Montag, Coty Rae – Counsel for Intervenor – Plaintiff;

195.  Montana, State of – Amicus Curiae;

196.  Mooney, Arnold – Amicus Curiae;

197.  Moore, Barry – Amicus Curiae;

198.  Mor, Yuval – Counsel for Amici Curiae;

199.  Morrison, Rachel N. – Counsel for Amici Curiae;

200.  Mountain States Legal Foundation – Amicus Curiae;

201.  Murphy, Amie – Counsel for Intervenor-Plaintiff;

202.  Nebraska, State of – Amicus Curiae;

203.  Nat'l Ass'n of Pediatric Nurse Practitioners – Amicus Curiae;

204.  Nat'l Republican Redistricting Trust  – Amicus Curiae;

205.  Nat'l Right to Work Committee – Amicus Curiae;

206.  Nebraska, State of – Amicus Curiae;

207.  Nevada, State of – Amicus Curiae;

208.  New Jersey, State of – Amicus Curiae;

209.  New Mexico, State of – Amicus Curiae;

210.  New York, State of – Amicus Curiae;

211.  Newton, Nicole – Amicus Curiae;

212.   Noe, Kathy (pseudonym) – Plaintiff;

213.   North Carolina, State of – Amicus Curiae;

214.   Norwegian Organization for Sexual and Gender Diversity (The) – Amicus Curiae;

215.   Oklahoma Council of Public Affairs – Amicus Curiae;

216.   Oklahoma, State of – Amicus Curiae;

217.   Oladeinbo, Gilbert – Counsel for Plaintiffs;

218.   Olezeski, Christy – Amicus Curiae;

219.   Olson, William J. – Counsel for Amicus Curiae;

220.   Oregon, State of – Amicus Curiae;

221.   Ormand, Justin L. – Counsel for Amici Curiae;

222.   Orr, Asaf – Counsel for Plaintiffs;

223.   Palmer, Gary  – Amicus Curiae;

224.   Parental Rights Foundation – Amicus Curiae;

225.   Patterson, Peter A. – Counsel for Defendants;

226.   Pediatric Endocrine Soc'y – Amicus Curiae;

227.   Pennsylvania Family Council – Amicus Curiae;

228.   Pennsylvania, State of – Amicus Curiae;

229.   Perigoe, Kelly – Counsel for Plaintiffs;

230.   Peterson, Misty L. – Counsel for Plaintiffs;

231.   Pickren, Robert C. – Counsel for Intervenor-Plaintiff;

232.   Poe, Megan (pseudonym) – Plaintiff;

233.   Powers, John Michael – Counsel for Intervenor – Plaintiff;

234.   Pratt, James Andrew – Counsel for Plaintiffs;

235.   Private Citizen – Amicus Curiae;

236.   Professional Association for Transgender Health Aotearoa New Zealand

(The) – Amicus Curiae;

237.   Protect Our Kids – Amicus Curiae;

238.   Public Interest Legal Foundation – Amicus Curiae;

239.   Ragsdale, Barry Alan – Counsel for Medical Amici;

240.   Ramer, John D. – Counsel for Defendants;

241.   Ray, Brent P. – Counsel for Plaintiffs;

242.   Reinke, Adam – Counsel for Plaintiffs;

243.   The Religious RoundTable, Inc. – Amicus Curiae;

244.   Renner, Steven S. – Amicus Curiae;

245.   Reynolds, Laura – Amicus Curiae;

246.   Rhode Island, State of – Amicus Curiae;

247.   Riehl, Christina – Counsel for Amici Curiae;

248.   Robin-Vergeer, Bonnie – Appellate Counsel for Intervenor-Plaintiff;

249.   Roe, Rebecca  – Plaintiff;

No. 23-11753, *In re: World Professional Association for Transgender Health*

250.  Rogers, Mike  – Amicus Curiae;

251.  Rothbauer, Chris – Amicus Curiae;

252.  Rutledge, Leslie – Counsel for Amici Curiae;

253.  Saei, Yusuf – Counsel for Plaintiffs;

254.  Sanders, Jennifer – Amicus Curiae;

255.  Schwabauer, Barbara – Appellate Counsel for Intervenor-Plaintiff;

256.  Seiss, Benjamin Matthew – Counsel for Defendants;

257.  Seta ry / Seta rf / Seta Lgbtiq Rights in Finland – Amicus Curiae;

258.  Shortnacy, Michael B. – Counsel for Plaintiffs;

259.  Silva, Dylan M. – Counsel for Amici Curiae;

260.  Simpson, Matt – Amicus Curiae;

261.  Smalts, Laura Perry – Amicus Curiae;

262.  Smith, John – Amicus Curiae;

263.  Societies for Pediatric Urology – Amicus Curiae;

264.  Soc'y of Adolescent Health & Medicine – Amicus Curiae;

265.  Soc'y for Pediatric Research – Amicus Curiae;

266.  Soc'y of Pediatric Nurses – Amicus Curiae;

267.  Soe, Melissa – Amicus Curiae (pseudonym);

268.  Soto, Diego Armando – Counsel for Plaintiffs;

269.  Southeast Conference of the United Church of Christ – Amicus Curiae;

No. 23-11753, *In re: World Professional Association for Transgender Health*

270.  Southeast Law Institute – Amicus Curiae;

271.  South Carolina, State of – Amicus Curiae;

272.  Spakovsky, Hans von – Amicus Curiae;

273.  Stewart, Sandra Jean – Counsel for Intervenor – Plaintiffs;

274.  Stoll, Christopher F. – Counsel for Amici Curiae;

275.  Stone, Jessica L. – Counsel for Plaintiffs;

276.  Stonewall UK – Amicus Curiae;

277.  Strickland, Kevin L. – Amicus Curiae;

278.  Susan B. Anthony Pro-Life America – Amicus Curiae;

279.  Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights (The) – Amicus Curiae;

280.  Szilagyi, Nathalie – Amicus Curiae;

281.  Tea Party Patriots Action, Inc. – Amicus Curiae;

282.  Tea Party Patriots Foundation, Inc. – Amicus Curiae;

283.  Tennessee Eagle Forum – Amicus Curiae;

284.  Terry, Abigail Hoverman – Counsel for Plaintiffs;

285.  Texas Public Policy Foundation – Amicus Curiae;

286.  Texas, State of – Amicus Curiae;

287.  Thomason, Beth – Amicus Curiae;

288.  Thompson, David H. – Counsel for Defendants;

289.   Thornton, Joel H. – Counsel for Detransitioner Amici Curiae;

290.   Toyama, Kaitlin – Counsel for Intervenor – Plaintiff;

291.   Trevor Project, Inc. – Amicus Curiae;

292.   Union for Reform Judaism – Amicus Curiae;

293.   Unitarian Universalist Association – Amicus Curiae;

294.   United States of America – Intervenor – Plaintiff;

295.   Universal Fellowship of Metropolitan Community Churches – Amicus
Curiae;

296.   Utah, State of – Amicus Curiae;

297.   Vermont, State of – Amicus Curiae;

298.   Vague, Amie A. – Counsel for Plaintiffs;

299.   Vance, Robert S. – Counsel for Medical Amici;

300.   Ventiere, Jessica – Defendant;

301.   Veta, D. Jean – Counsel for Medical Amici;

302.   Voe, Robert – Plaintiff (pseudonym);

303.   Voights, Anne M. – Counsel for Plaintiffs;

304.   Wadsworth, Stephen D. – Counsel for Intervenor – Plaintiff;

305.   Wadsworth, Tim R. – Amicus Curiae;

306.   Wagoner, J.T. – Amicus Curiae;

307.   Walker, Susan Russ – U.S. Magistrate Judge;

308.  Warbelow, Sarah – Counsel for Plaintiffs;

309.  Washington, State of – Amicus Curiae;

310.  Weaver, Cynthia Cheng-Wun – Counsel for Plaintiffs;

311.  Weaver, Lily – Counsel for Amici Curiae;

312.  Weaver, Susan Kay – Counsel for Amici Curiae;

313.  West Virginia, State of – Amicus Curiae;

314.  Wenck, Julia H. – Counsel for Amici Curiae;

315.  Wilkerson, Mark Douglas – Counsel for Amici States;

316.  Williams, Renee – Counsel for Intervenor – Plaintiff;

317.  Wilson, Thomas Alexander – Former Counsel for Defendants;

318.  Women of Reform Judaism – Amicus Curiae;

319.  Wood, Kimberly – Amicus Curiae;

320.  Woodke, Lane Hines – Counsel for Intervenor – Plaintiff;

321.  Zelbo, Howard S. – Counsel for Amici Curiae;

322.  Zoe, James – Plaintiff (pseudonym)

WPATH is not aware of any publicly traded company or corporation with an interest in the outcome of this case.

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................1

BACKGROUND.......................................................................4

    A.    The Underlying Litigation.............................................4

    B.    The State of Alabama's Subpoena................................5

    C.    Petitioner's Motion to Quash.......................................6

    D.    Petitioner's Appeal ....................................................8

    E.    The District Court's June 26, 2023 Production Order......................9

ARGUMENT...........................................................................9

I.    Petitioner Is Likely to Prevail on the Merits..........................................10

    A.    Petitioner Established a *Prima Facie* Case That Enforcement of the State's Subpoena Would Infringe Its First Amendment Rights......................................................................12

    B.    The State Does Not Have a Compelling Need for the Requested Discovery Sufficient to Justify Infringement of Petitioner's First Amendment Rights. ...........................................15

II.    Petitioner Will Suffer Irreparable Harm Absent a Stay Because the Imminent Harm to Its First Amendment Rights Cannot Be Remedied.......17

III.    The Issuance of a Stay Will Not Harm the State....................................19

IV.    The Public Interest in Protecting First Amendment Values and Encouraging Robust Scientific Debate Favors a Stay.............................20

CONCLUSION.........................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adolph Coors Co. v. Movement Against Racism & the Klan*,
   777 F.2d 1538 (11th Cir. 1985) .................................................................. 11

*AFL-CIO v. FEC*,
   333 F.3d 168 (D.C. Cir. 2003) .............................................................. 3, 13

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ......................................................................................... 13

*Cate v. Oldham*,
   707 F.2d 1176 (11th Cir. 1983) .......................................................... 17, 20

*In re Fink*,
   876 F.2d 84 (11th Cir. 1989) ..................................................................... 18

*In re Fosamax Prods. Liab. Litig.*,
   2009 WL 2395899 (S.D.N.Y. Aug. 4, 2009) ............................................. 21

*Garcia-Mir v. Meese*,
   781 F.2d 1450 (11th Cir. 1986) ................................................................. 10

*In re Itron, Inc.*,
   883 F.3d 553 (5th Cir. 2018) ..................................................................... 18

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................... 9, 10

*Perry v. Schwarzenegger*,
   591 F.3d 1126 (9th Cir. 2009) ................................................ 11, 14, 15, 16

*Plough Inc. v. Nat'l Acad. of Scis.*,
   530 A.2d 1152 (D.C. 1987) ........................................................................ 21

*In re Secretary, Fla. Dep't of Corr.*,
   2020 WL 1933170 (11th Cir. Mar. 30, 2020) ............................................ 18

*Simms v. District of Columbia*,
   872 F. Supp. 2d 90 (D.D.C. 2012) ............................................................ 20

*In re Sims*,
    534 F.3d 117 (2d Cir. 2008)........................................................................ 18

*In re Subpoenas Served On Am. Acad. of Pediatrics*,
    2023 WL 2442223 (D.C. Cir. Mar. 8, 2023).................................................3

*In re The City of New York*,
    607 F.3d 923 (2d Cir. 2010)....................................................................... 19

*United States v. West*,
    672 F.2d 796 (10th Cir. 1982).................................................................... 18

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018)................................................................14, 18

**Statutes and Other Authorities**

28 U.S.C. § 1292(b)...........................................................................................8

Alabama Vulnerable Child Compassion and Protection Act.............................4

First Amendment................................................................................ *passim*

Eleventh Circuit Rules 8-1 and 27-1........................................................ 1, 10

Federal Rule of Civil Procedure 26(b)(1) ..................................................... 15

Federal Rules of Appellate Procedure 8 and 27.............................................. 1

## **INTRODUCTION**

On June 26, 2023, the District Court in the underlying action ordered Petitioner World Professional Association for Transgender Health ("WPATH") to produce materials over which it claims a First Amendment privilege, and which are the subject of Petitioner's pending Petition for a Writ of Mandamus, by July 10, 2023. Pursuant to Federal Rules of Appellate Procedure 8 and 27 and Eleventh Circuit Rules 8-1 and 27-1, Petitioner is accordingly filing this time-sensitive motion to stay the District Court's order pending this Court's resolution of its petition.

Petitioner is a non-profit organization that promotes evidence-based care and related public policies for transgender individuals. Consistent with its mission, Petitioner develops and publishes a set of clinical guidelines for the treatment of individuals diagnosed with the clinical condition known as gender dysphoria (the "Guidelines"). Last year, the State of Alabama banned certain medical treatments for adolescents with gender dysphoria that are indicated in the Guidelines. After several individuals filed a lawsuit challenging that ban, the State served a third-party subpoena on Petitioner seeking a variety of materials that would reveal, among other things, the substance of the internal deliberative process that Petitioner used to develop the Guidelines and other aspects of its internal procedures and deliberations.

1

After meet-and-confer efforts failed to resolve Petitioner's objections to this third-party discovery, including its objections that the discovery would infringe its First Amendment rights, Petitioner sought to quash the subpoena in the District Court. The District Court denied Petitioner's motion to quash, *see* Doc. 263 (Ex. 1) (the "March 27 Order"), and also denied Petitioner's subsequent petition to certify the order for interlocutory appeal and motion to stay the compelled discovery pending appeal, *see* Doc. 281 (Ex. 2) (the "1292(b) Order"). These orders did not set a deadline for Petitioner to produce the contested materials.

On May 26, 2023, Petitioner filed a Petition for Writ of Mandamus with this Court, seeking to reverse the District Court's erroneous interpretation and application of the First Amendment privilege. The petition is currently pending in this Court. At a status conference on June 26, 2023, the State asked the District Court to order Petitioner to begin producing the disputed materials immediately. In response, Petitioner urged the District Court to stay its hand and not to compel production until this Court resolved the pending petition. The District Court denied that request and instead ordered Petitioner to begin producing the contested materials by **July 10, 2023**. That deadline was memorialized in a written order issued two days later. *See* Doc. 297 (Ex. 3). To avoid harm that is both irreparable and now imminent, Petitioner respectfully moves for a stay of the District Court's

2

order compelling production of the disputed material while it seeks relief through its pending Petition for Writ of Mandamus.

This is not an ordinary discovery dispute. It arises in a case that has attracted national attention, is being closely watched by other States in this Circuit that are also defending bans on gender-affirming care, and implicates issues of constitutional scope. The District Court's order contravenes the well-settled principle that "disclosure of an association['s] confidential internal materials"—as is imminent here—"intrudes on the 'privacy of association and belief guaranteed by the First Amendment,' as well as seriously interferes with internal group operations and effectiveness." *AFL-CIO v. FEC*, 333 F.3d 168, 177–78 (D.C. Cir. 2003) (citation omitted). Indeed, after the State of Florida subpoenaed Petitioner for the same privileged materials that are at issue here, the D.C. Circuit granted emergency relief staying enforcement of that subpoena. *See In re Subpoenas Served On Am. Acad. of Pediatrics*, 2023 WL 2442223, at *1 (D.C. Cir. Mar. 8, 2023). Here, too, this Court should stay enforcement of Alabama's subpoena while it gives the District Court's order the careful review it deserves.

There is no exigency that requires the imminent infringement of Petitioner's First Amendment rights. Under the operative scheduling order, nearly three months remain for Petitioner "[to] produce complete discovery in response to Defendants' Rule 45 subpoena by October 1," and the final discovery cutoff is not

3

until February 2, 2024. Doc. 292 (Ex. 4) at 1. That schedule permits sufficient time for this Court to resolve the pending petition and for Petitioner to produce the disputed materials if this Court ultimately denies the petition. However, this time-sensitive motion was necessitated by the District Court's denial on two occasions of Petitioner's request to stay its order compelling production, and its order on June 26, 2023 requiring production to start in two weeks. Petitioner filed this motion as soon as practicable after the District Court's June 26 order, and requests that this Court act on this motion on or before the production deadline of **July 10, 2023**.

## BACKGROUND

### A.  The Underlying Litigation

On April 8, 2022, the Governor of Alabama signed into law the "Alabama Vulnerable Child Compassion and Protection Act," which prohibits any person from obtaining or providing certain medical treatments for transgender adolescents with gender dysphoria. Subsequently, plaintiffs in the underlying action filed a complaint against the State for declaratory and injunctive relief, Doc. 1 (Ex. 5), followed by a motion for a preliminary injunction, Doc. 7 (Ex. 6).

Petitioner is not, and never has been, a party to the underlying litigation. Founded in 1979, Petitioner is a 501(c)(3) non-profit interdisciplinary professional and educational organization whose mission is to promote evidence-based care,

education, research, and public policy with regards to transgender health.  *See* Doc. 208-4 (Ex. 7), ¶ 4.  Petitioner is one of 23 professional medical and mental health organizations that submitted an *amicus* brief in support of plaintiffs' motion for a preliminary injunction.  Doc. 91-1 (Ex. 8).  The *amicus* brief explained that gender-affirming care is the widely-accepted standard of care for gender dysphoria. *See id.* at 6-19.  Gender-affirming care is indicated in WPATH's Guidelines, which are primarily intended for health professionals and set forth clinical guidance for the treatment of gender dysphoria.

## B.    The State of Alabama's Subpoena

On October 13, 2022, a few months after the District Court granted the plaintiffs' motion for a preliminary injunction, the State issued a third-party subpoena to Petitioner that contained 47 document requests.  Doc. 208-2 (Ex. 9) (WPATH subpoena).  The State withdrew several of those requests during the course of meet-and-confer efforts, but the 29 requests that remain seek two broad categories of materials: (i) materials reflecting the internal deliberative process through which Petitioner developed the Guidelines; and (ii) materials reflecting other internal aspects of Petitioner's work.[1]

---

[1]    A list of the document requests that the District Court has enforced as written is attached to this Motion as Ex. 10.

5

As to the first category, the State seeks, for example, "all Communications and Documents" related to "the applications and selection process for WPATH Guideline Steering Committee," "the decision regarding what chapters to include and not include in [WPATH's Guidelines]," and "the development and approval" of various chapters of the Guidelines. Ex. 10 at RFP Nos. 1-3. As the District Court summarized, these types of requests collectively seek materials evidencing the "process WPATH used to create, review, and adopt their position statements, treatment guidelines, and standards of care regarding transitioning treatments." Ex. 1 at 2 (cleaned up).

As to the second category, the State seeks materials that probe other aspects of Petitioner's work but have little or nothing to do with the Guidelines. For example, the State seeks "all Communications and Documents" related to position statements and other published materials regarding gender affirming care that Petitioner has released, signed on to, or endorsed. Ex. 10 at RFP Nos. 16, 19, 31-32, 47.

## C. Petitioner's Motion to Quash

On December 27, 2022, after Petitioner and the State reached an impasse, Petitioner moved to quash the State's subpoena on the grounds that the requested discovery was irrelevant to the litigation, complying with the subpoena would impose an undue burden on Petitioner, and producing the requested material would

infringe on Petitioner's First Amendment rights by chilling members' participation in the organization and ultimately the effectiveness of the organization. Doc. 208 (Ex. 11).[2] The State opposed the motion. Doc. 219 (Ex. 12).

On March 27, 2023, the District Court denied Petitioner's motion. Ex. 1. The Court concluded that the Guidelines were relevant to plaintiffs' case and that complying with the subpoena would not impose an undue burden on Petitioner. *See id.* at 8. The Court also stated that Petitioner had failed to make a *prima facie* showing that compliance with the subpoena would infringe its First Amendment rights, because it had not "set forth a 'reasonable probability' that disclosure will result in 'threats, harassment, or reprisals from either Government officials or private parties.'" *Id.* at 8 (citation omitted). The Court observed that the subpoena did not seek to reveal the identities of Petitioner's members or donors, *see id.* at 9, and the Court provided that Petitioner could redact personal identifying information in any responsive materials it produced, *see id.* at 10. The Court did not at that time set a deadline for Petitioner to begin producing the disputed materials.

---

[2] The motion to quash also refers to subpoenas the State served on the American Academy of Pediatrics and the Endocrine Society, two other non-party organizations. Those parties subsequently resolved their dispute with the State regarding those two subpoenas, and they are not at issue here.

### D.    Petitioner's Appeal

On April 7, 2023, Petitioner filed a motion requesting that the District Court certify the March 27 Order for immediate appeal pursuant to 28 U.S.C. § 1292(b), Doc. 271 (Ex. 13), and a motion to stay that order pending appeal, Doc. 272 (Ex. 14).  The State opposed both motions.  Doc. 276 (Ex. 15).  On May 15, 2023, the District Court denied both motions.  Ex. 2.  In that order, the Court stated that its earlier conclusion that Petitioner had not made out a *prima facie* case of First Amendment infringement did not present a "pure question of law" suitable for interlocutory appeal.  *Id.* at 5–7.  In addition, the Court stated that an interlocutory appeal would not materially advance the litigation because "[h]owever an appeals court might resolve the *prima facie* issue, WPATH's motion to quash would be denied once again on remand."  *Id.* at 8.  On this point, the Court stated that the State had "unquestionably proffered a compelling governmental interest, and that interest is substantially related to the requested documents," and as such the State was "entitled to the documents—even assuming WPATH made a *prima facie* showing of First Amendment infringement."  *Id.*  The District Court also denied Petitioner's motion to stay its production order pending appeal as "moot."  *Id.*

On May 26, 2023, Petitioner filed a Petition for Writ of Mandamus in this Court, which remains pending.  (Doc. 1-1.)

8

### E.    The District Court's June 26, 2023 Production Order

On June 21, 2023, the State filed a "Notice Regarding Discovery Schedule" in the District Court, in which it asked that Court to order Petitioners to begin producing the contested documents "immediately." Doc. 293 (Ex. 16) at 2. Two days later, Petitioner responded that the operative scheduling order did not require it to complete its production until October 1, 2023, and it asked the District Court to stay its hand and refrain from ordering any production until Petitioners could move this Court to act on its petition by August 15, 2023. Doc. 295 (Ex. 17) at 1. During a status conference on June 26, 2023, the District Court rejected Petitioner's request to defer ordering production and ordered Petitioner to "start producing 14 days from today," *i.e.*, July 10, 2023. Ex. 18 at 30. The District Court stated "[t]hat would give [Petitioner] adequate time to notify the Eleventh Circuit" that it is "under a very, very hard deadline." *Id.* Finally, the District Court suggested the State could file a motion for sanctions if Petitioner failed to comply. *See id.* The District Court issued a written order memorializing the July 10, 2023 production deadline two days later. Ex. 3.

### ARGUMENT

This Court has the inherent power to hold a district court's order in abeyance while it assesses the legality of the order. *See Nken v. Holder*, 556 U.S. 418, 426 (2009). Motions for stays under such circumstances are governed by "the

traditional stay factors." *Id.* Thus, this Court considers: (1) the likelihood the moving party will prevail on the merits; (2) the prospect the moving party will be irreparably injured absent a stay; (3) the possibility of harm to adverse parties if a stay is granted; and (4) the public interest. *See, e.g.*, *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *accord Nken*, 556 U.S. at 444; *see generally* 11th Cir. R. 27-1(b)(2) (listing same factors).

"Ordinarily the first factor is the most important." *Garcia-Mir*, 781 F.2d at 1453. "But the movant may also have [its] motion granted upon a lesser showing of a 'substantial case on the merits' when 'the balance of the equities [identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay.'" *Id.* (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). Here, Petitioner is likely to prevail on the merits of its appeal; Petitioner will suffer irreparable injury if a stay is not issued; the State will not be harmed by a stay; and the public interest concerns weigh heavily in favor of a stay.

## I.  Petitioner Is Likely to Prevail on the Merits.

Petitioner is likely to prevail on the merits of its mandamus petition. At a minimum, Petitioner has a substantial case on the merits warranting a stay.

As an initial matter, for the reasons set out in Petitioner's Petition for Writ of Mandamus filed on May 26, 2023, the conditions for issuing the writ are satisfied

here:  Petitioner has no other adequate means to attain relief, and its right to the writ is clear and indisputable.

Regarding the merits, the District Court abused its discretion in denying Petitioner's motion to quash.  A party invoking the First Amendment privilege must make a *prima facie* showing of "arguable First Amendment infringement"— in other words, that compelled disclosure would result in a "chilling" of a protected right.  *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2009) (cleaned up).  Once the burden is met, the requesting party must demonstrate that "the [discovery] is rationally related to a compelling governmental interest … [and] the 'least restrictive means' of obtaining the desired information."  *Perry*, 591 F.3d at 1140 (citation omitted).

In denying Petitioner's motion to quash, the District Court concluded that Petitioner failed to make a *prima facie* showing of First Amendment infringement.  However, the Court adopted an improperly narrow view of the First Amendment privilege and therefore applied an incorrect legal standard by requiring Petitioner to show disclosure might result in "threats, harassment, or reprisals."  Ex. 1 at 8.

11

### A.    Petitioner Established a *Prima Facie* Case That Enforcement of the State's Subpoena Would Infringe Its First Amendment Rights.

Petitioner's motion to quash established that enforcement of the State's subpoena would impede Petitioner's First Amendment associational and speech rights and ultimately the organization's effectiveness.  A WPATH representative described, for example, how "staff and members will communicate less if the State's subpoena is enforced," and observed that Petitioner's staff is "already more cautious about sending written communications for fear that they will be produced and taken out-of-context in an attempt to misuse and harm the persons [WPATH is] trying help."  Doc. 208-4 (Ex. 7) at 6.  The same representative also attested that many medical professionals whose volunteer efforts are "essential to the accuracy of [WPATH's] work" will "think twice before volunteering their expertise if their confidential feedback could be shared with the world."  *Id.* at 8–9.  In sum, Petitioner showed disclosing the substance of its internal deliberative process will chill participation in the organization, impede members' willingness to voice critical views, and thus damage the organization's ability to do its work and operate effectively.

Notwithstanding this evidence, the District Court concluded that Petitioner "failed to make a *prima facie* showing that compliance with [the State's] subpoena infringes its First Amendment rights."  Ex. 1 at 9.  The Court stated that Petitioner

was required to "set forth a 'reasonable probability' that disclosure will result in 'threats, harassment, or reprisals from either Government officials or private parties,'" *id.* (citing *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)), and concluded Petitioner failed to carry that burden because the State was not seeking the names of Petitioner's members, and because any such information could be redacted or produced subject to a protective order. *See id.* at 9-10.

The District Court's analysis was incorrect as a matter of law. The Supreme Court has never held that a party invoking the First Amendment *must* establish that "threats, harassment, or reprisals" will result from disclosure of the requested material.[3] To the contrary, multiple courts recognize the First Amendment also protects against disclosures revealing an organization's internal deliberations and communications. For example, the D.C. Circuit recognized "public disclosure of an association's confidential internal materials . . . intrudes on the privacy of association and belief guaranteed by the First Amendment, as well as seriously interferes with internal group operations and effectiveness." *AFL-CIO v. FEC*, 333 F.3d 168, 177-78 (D.C. Cir. 2003) (quoting *Buckley v. Valeo*, 424 U.S. at 656).

---

[3]     The District Court relied on language from *Buckley v. Valeo*, but in that case, the Supreme Court was specifically addressing arguments that compelled disclosure of the names of contributors to political parties could harm the parties by exposing contributors to threats, harassment, and reprisals. *See Buckley v. Valeo*, 424 U.S. at 69–74.

The Fifth Circuit also recognized compelled disclosure of an organization's internal policy deliberations raises serious First Amendment concerns, regardless of whether members might be exposed to harassment as a result of the disclosure. In *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), the Fifth Circuit reversed a district court compelling production of the internal communications of the Texas Conference of Catholic Bishops ("TCCB"). The Fifth Circuit concluded that the district court "failed to afford sufficient scope to rights that should protect the inner workings of TCCB when it engages in activity in the public square." *Id.* at 372. The court criticized the district court for "limit[ing] the associational rights to the 'chilling' of membership and tangible harassment," and observed that First Amendment associational rights also protected broader interests. *Id.* at 372.

Similarly, the Ninth Circuit held that a district court erred by limiting the First Amendment privilege to the disclosure of the identify of an organization's members. In *Perry v. Schwarzenegger*, the Ninth Circuit explained that "[t]he first Amendment privilege . . . has never been limited to the disclosure of the identities of rank-and-file members." 591 F.3d at 1141. The court explained that the scope of the privilege "turns not on the type of information sought, but on whether the disclosure of the information will have a deterrent effect on the exercise of protected activities." *Id.*

14

In sum, the District Court erred in holding that a *prima facie* case of infringement requires evidence that disclosure of the challenged materials will result in "threats, harassment, or reprisals." Ex. 1 at 8. In its subsequent 1292(b) Order, the Court asserted that it made no such holding. *See* Ex. 2 at 6. The Court said it "simply found that WPATH presented insufficient evidence of threats, harassment, reprisals, or any other sort of chill." *Id.* The Court's after-the-fact characterization is not consistent with the March 27 Order's plain text or the Court's analysis in denying Petitioner's motion to quash.

**B.    The State Does Not Have a Compelling Need for the Requested Discovery Sufficient to Justify Infringement of Petitioner's First Amendment Rights.**

After concluding that Petitioner failed to establish a *prima facie* case of infringement, the District Court did not analyze whether the State had a sufficient need for the requested information to justify infringing Petitioner's constitutional rights. *See Perry*, 591 F.3d at 1140. "[T]he second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for discovery...." *Id.* It requires courts to engage in a balancing of interests that imposes on the party seeking discovery "a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Id.* at 1141 (emphasis added). Under that more demanding standard, discovery is not permitted unless the requests are "carefully tailored to

15

avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

In its 1292(b) Order, the District Court stated that even if Petitioner had made out a *prima facie* case, it would *still* have denied the motion to quash because "Defendants have unquestionably proffered a compelling governmental interest, and that interest is substantially related to the requested documents." Ex. 2 at 8. The Court did not elaborate on this reasoning, but it does not appear to have considered whether the State's discovery satisfies the heightened standard required to justify infringing on First Amendment rights. It does not.

Petitioner does not dispute that the WPATH Guidelines are relevant to the underlying case or that the State may challenge their scientific validity. However, the State could challenge the Guidelines' validity without infringing Petitioner's First Amendment rights. The Guidelines cite every study on which they rely, so the State could attack those studies. The State could present contrary studies, if such studies exist. Instead of litigating the science, however, the State is attempting to litigate the internal process and alleged "ideology, self-interest, organizational politicking, [and] other considerations" of Petitioner. Ex. 12 at 3. This attempt to put Petitioner on trial is not relevant—much less "highly relevant" and "carefully tailored," as it must be to justify infringing Petitioner's First Amendment rights. *Perry*, 591 F.3d at 1141.

16

In sum, Petitioner is likely to succeed in showing the District Court abused its discretion in denying the motion to quash.

## II. Petitioner Will Suffer Irreparable Harm Absent a Stay Because the Imminent Harm to Its First Amendment Rights Cannot Be Remedied.

"It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983) (quotations and citation omitted). In this case, Petitioner will suffer irreparable harm unless a stay is granted, as Petitioner will be compelled to produce in just a few days' time privileged material reflecting its internal deliberative process. After Petitioner produces the material, the harm to its First Amendment interests will be done: Petitioner's confidential internal material will be revealed, and Petitioner's staff and members will know that their future communications could be revealed to those who would use them against the organization. *See* Ex. 7, ¶¶ 12-15. A later ruling by this Court in Petitioner's favor would not undo the actual, immediate chilling of protected associational and speech activity that would follow disclosure.

Petitioner will also suffer a second form of irreparable harm unless a stay is granted: if Petitioner is required to produce its confidential internal material, the damage from disclosure cannot be undone, because the proverbial cat will be out of the bag. Courts widely recognize the irreparable nature of harm arising from

17

wrongfully compelled disclosure of confidential or privileged information.  *See, e.g.*, *In re Itron, Inc.*, 883 F.3d 553, 567 (5th Cir. 2018) ("[A]ppeal after final judgment will come too late because the privileged communications will already have been disclosed ….") (quotations and citation omitted); *In re Sims*, 534 F.3d 117, 129 (2d Cir. 2008) ("[A] remedy after final judgment cannot unsay the confidential information that has been revealed") (quotations and citation omitted); *United States v. West*, 672 F.2d 796, 799 (10th Cir. 1982) ("Any subsequent review … would be for naught, because the damage would already be accomplished.").  The harm to nonparties is especially irreparable: parties at least may be able to obtain a partial remedy for erroneously ordered discovery through a remand for a new trial.  *See Whole Woman's Health v. Smith*, 896 F.3d 362, 367–68 (5th Cir. 2018).

This Court has also recognized the irreparable harm that arises in "cat out of the bag" cases involving compelled production of privileged material.  Prevention of such harm is why "[m]andamus is often an appropriate method of review of orders compelling discovery." *In re Fink*, 876 F.2d 84, 84 (11th Cir. 1989).  In the context of orders that will compromise privilege claims or invade privacy rights "mandamus has been found appropriate due to … the difficulty of obtaining effective review once the privileged information has been made public." *Id.*; *see also In re Secretary, Fla. Dep't of Corr.*, 2020 WL 1933170, at *1 (11th Cir. Mar.

18

30, 2020) ("If we do not grant the petition, the information at issue will be disclosed and the harm … will have been done."). Here, a stay is needed to allow mandamus to play its established role in preventing irreparable harm. *See, e.g.*, *In re The City of New York*, 607 F.3d 923, 932 (2d Cir. 2010) (Second Circuit stayed order granting motion to compel pending consideration of mandamus petition).

The risk of irreparable harm weighs heavily in favor of granting a stay.

**III.  The Issuance of a Stay Will Not Harm the State.**

The issuance of a temporary stay will not substantially harm the State or other interested parties. Under the operative scheduling order, Petitioner's production in response to the State's subpoena is not required to be completed until October 1, 2023, the final discovery cutoff is not until February 2, 2024, and trial is not scheduled to begin until April 2, 2024. *See* Ex. 4 at 1, 2. There is still ample time for this Court to complete its review of Petitioner's petition within that timeframe, and for Petitioner to produce responsive materials if this Court ultimately denies the Petition for Writ of Mandamus.

In addition, as discussed above, the State does not need the disputed discovery to continue developing its case. It does not need the discovery at issue to identify and review the studies that formed the basis for the Guidelines, to identify any studies that may contradict the Guidelines, or to develop expert testimony to challenge the science behind the Guidelines. The State can proceed

19

with all that activity—and any other party or additional nonparty discovery it considers appropriate—even if the disputed discovery is stayed while this Court considers the merits of the petition.

The lack of harm to the State weighs heavily in favor of a stay.

## IV.    The Public Interest in Protecting First Amendment Values and Encouraging Robust Scientific Debate Favors a Stay.

The public interest will be served by granting the stay.  "It is always in the public interest to prevent the violation of a party's constitutional rights." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012) (quotations and citation omitted); *see also Cate v. Oldham*, 707 F.2d at 1190 (noting the "strong public interest in protecting First Amendment values").

The public interest also strongly favors granting a stay in this case because the prospect of compelled disclosure is already chilling Petitioner's educational and scientific efforts, which ultimately benefit the public at large.  As a WPATH representative explained, the organization works with dozens of volunteer medical experts every year to "understand the latest science, and to review and edit our publications, educational materials, curriculum, and public statements."  Ex. 7, ¶ 16.  These experts would "think twice before volunteering their expertise if their confidential feedback could be shared with the world," which would also undermine "confidence that peer reviews and communications within WPATH will not be publicly disclosed." *Id.*  As a result, enforcing the subpoenas would

20

"greatly hinder the quality and accuracy of [WPATH's] work product, which in turn will worsen the care that our members provide to their patients across all health domains." *Id.* This is a quintessential injury to the public interest.

In similar contexts, courts have recognized the public interest in protecting third-party experts from discovery. "Compelling testimony from a third party researcher risks chilling participation in beneficial public research." *In re Fosamax Prods. Liab. Litig.*, 2009 WL 2395899, at *4 (S.D.N.Y. Aug. 4, 2009). Permitting such discovery "'inevitably tend[s] to check the ardor and fearlessness of scholars, qualities at once so fragile and so indispensable for fruitful academic labor.'" *Id.* (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957) (Frankfurter, J., concurring)); *see also Plough Inc. v. Nat'l Acad. of Scis.*, 530 A.2d 1152, 1156–57 (D.C. 1987) (crediting organization's claim that its "ability to convince volunteers to serve on its committees would be impaired [if the court allowed discovery], since individuals would be reluctant to serve if they knew their comments were subject to disclosure").

In short, the public interest in protecting Petitioner's First Amendment rights and the interest in promoting rather than chilling protected activity that facilitates educational and scientific efforts that ultimately benefit the public weigh strongly in favor of a stay.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Petitioner respectfully requests that the Court stay the District Court's order compelling production of privileged material pending resolution of the Petition for Writ of Mandamus.

Dated: June 30, 2023

D. Jean Veta
William Isasi
José Girón
Emile J. Katz
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone: (202) 662-6000
jveta@cov.com
wisasi@cov.com

Barry A. Ragsdale
Robert S. Vance, III
DOMINICK FELD HYDE, P.C.
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL 35205
Phone: (205) 536-8888
BRagsdale@dfhlaw.com
RVance@dfhlaw.com

Respectfully submitted,

/s/ Cortlin H. Lannin
Cortlin H. Lannin
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
Phone: (415) 591-6000
clannin@cov.com

Michael J. Lanosa
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Phone: (424) 332-4800
mlanosa@cov.com

23

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 27(d).  This brief contains 4,871 words, including all headings, footnotes, and quotations, and excluding the parts of the response exempted under Fed. R. App. P. 32(f) and 27(a)(2)(B).

2.      In addition, this response complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


*/s Cortlin H. Lannin*
Cortlin H. Lannin

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s Cortlin H. Lannin*
Cortlin H. Lannin