# EXHIBIT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **BRIANNA BOE**, *et al.*,  )<br>  )<br>  Plaintiffs,  )<br>  )<br>v.  )<br>  )<br>**STEVE MARSHALL**, *et al.*,  )<br>  )<br>  Defendants.  )  | Case No. 2:22-cv-184-LCB |

### **OPINION & ORDER**

Before the Court is WPATH's[1] motion (Doc. 208) to quash Defendants' Rule 45 subpoena. Also before the Court is Defendants' motion *in limine* (Doc. 220), through which Defendants seek exclusion of all WPATH-related evidence in the event the Court were to grant WPATH's motion to quash.

For the forthcoming reasons, WPATH's motion to quash is due to be denied on its merits, and Defendants' motion *in limine* is accordingly due to be denied as moot.

### I.  BACKGROUND

In November 2022, Defendants issued a subpoena to WPATH in search of various documents related to WPATH's guidelines for treating gender-dysphoric

---

[1] WPATH (World Professional Association for Transgender Health), filed the motion jointly with fellow nonparty *amici curiae* American Academy of Pediatrics (AAP) and Endocrine Society. The dispute was resolved with respect to requests aimed at AAP and Endocrine Society. (Doc. 240.)

minors. (*See* Doc. 208-2 at 56–70.) WPATH and Defendants met and conferred regarding the subpoena, and when WPATH expressed concerns that the requests were unduly burdensome, Defendants withdrew several of those requests. (*Compare id.*, *with* Doc. 219 at 26; *see also* Doc. 219 at 11, 25; Doc. 208 at 9–10.) The following requests remain outstanding:

- The process WPATH "used to create, review, and adopt their position statements, treatment guidelines, and standards of care regarding transitioning treatments";

- WPATH's "consideration, if any, of the UK's NICE literature reviews, the Swedish and French statements regarding transitioning care for minors, and certain other literature related to transitioning minors";

- WPATH's "reaction to members' concerns about pediatric transitioning care in America";

- WPATH's "involvement, if any, in the creation of standards of care or diagnostic standards for other organizations related to pediatric transitioning";

- WPATH's "cancellation of Dr. Zucker's talk";

- WPATH's "review of the literature related to transitioning treatments for minors"; and

- WPATH's "knowledge of pediatric transitioning treatments in Alabama."

(Doc. 219 at 26; *see also* Doc. 208-2 at 55–70.) WPATH moved to quash the subpoena, arguing that the information sought lacks requisite relevance, is unduly burdensome to produce, and raises First Amendment concerns. (Doc. 208 at 3.)

2

After the issue was briefed in full (*See* Docs. 208, 219, 236), the Court held a hearing on February 8, 2023, during which it fielded oral argument on several then-pending motions, including WPATH's motion to quash. (*Minute Entry*, Doc. 242; *Feb. 8 Hr'g Tr.*, Doc. 246.) During that hearing, the Court offered WPATH and Defendants an opportunity to reach a compromise regarding Defendants' subpoena without the Court's intervention. (*Feb. 8 Hr'g Tr.*, Doc. 246 at 67.)

By mid-March, however, no such compromise had been reached; to the contrary, WPATH filed "notice" (Doc. 255) regarding post-hearing developments that WPATH deemed relevant to its motion to quash. Defendants responded (Doc. 257), and the Court heard further argument on the motion at an already scheduled hearing on March 21. The issue is now ripe for review.[2]

---

[2] Despite argument presented by WPATH, those so-called developments had no material bearing on the merits of its motion. More specifically, WPATH pointed to federal court proceedings in Washington, D.C., to further support its position. *See In re Subpoenas Served on American Academy of Pediatrics et al.*, No. 1:23-mc-00004-CJN (D.D.C. filed Jan. 13, 2023), *appeal docketed*, 23-7025 (D.C. Cir. Mar. 6., 2023). There, WPATH moved the district court to quash a subpoena in underlying litigation, *Dekker v. Weida*, No. 4:22-cv-325-RH-MAF (N.D. Fla. filed Sept. 7, 2022), regarding a Florida regulation that bars Medicaid coverage for certain treatments, including gender-dysphoria treatments. (*WPATH's Notice*, Doc. 255 at 1–2.) The district court denied WPATH's motion, WPATH filed an emergency appeal, and the court of appeals temporarily stayed the district court's order. (*Id.* at 2–3.) As articulated more thoroughly in Defendants' response (Doc. 257), the Florida-law litigation in no way turns upon WPATH's guidelines—in fact, WPATH argued as much in obtaining emergency relief from the D.C. Circuit. *See WPATH's App. Br.*, Doc. 988853 at 20–21, *In re Subpoenas Served on American Academy of Pediatrics et al.*, No. 23-7025 (D.C. Cir. Mar. 6, 2023) (quoting *Black Panther Party v. Smith*, 661 F.3d 1243, 1268 (D.C. Cir. 1981)).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 26 sets forth the general scope of discovery. Rule 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The relevance requirement is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978).

Rule 26's relevance requirement also applies to the scope of discovery permissible under Rule 45, which provides for the subpoenaing of information from nonparties. *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). In addition, the party issuing a Rule 45 subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and a district court must quash or modify a subpoena that imposes an "undue burden" or demands privileged information. FED. R. CIV. P. 45(d)(1), (d)(3)(iii)–(iv). The district court "has wide discretion" in determining whether information is

4

discoverable. *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (citing *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)).

Finally, the opponent of production "bears the burden of establishing lack of relevancy or undue burden in supplying the requested information." *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 680 (N.D. Ala. 2015). Because the Rules "strongly favor full discovery whenever possible," *Moore*, 927 F.2d at 1197, that burden is "heavy," *Goodman-Gable-Gould Co. v. Tiara Condominium Ass'n*, 2007 WL 9701863, at *3 (S.D. Fla. Mar. 30, 2007) (citing *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995)).

### III. DISCUSSION

WPATH has failed to meet its burden of opposing Defendants' Rule 45 subpoena; the information Defendants seek is unquestionably relevant, the requests impose upon WPATH no undue burden, and WPATH's First Amendment rights are uninfringed by production here.

#### A. The subpoenaed information is unquestionably relevant.

As the Court has explained on several occasions, WPATH's standards for treating gender dysphoria in minors go to "the very heart" of this case. (Doc. 246 at 64; *accord* Doc. 112-1 at 3–4 (relying on WPATH's guidelines in preliminarily enjoining the Act).) Neither WPATH nor the private plaintiffs dispute that contention; nor could they, as doing so would belie the positions they each have

taken from the beginning of this dispute. (*See, e.g.*, *Brief of Amici Curiae,* Doc. 91-1 at 12 (stating that "[t]he Court should consider *amici's* brief because it provides important expertise . . . about the treatment of transgender adolescents").)

For example, the private plaintiffs describe WPATH as the initial developer of the "[t]he standards of care for treatment of transgender people, including transgender youth" and, in light of WPATH's standards, allege that the Act unconstitutionally denies transgender youths access to "well-established medically necessary care." (*Pls.' Second Am. Compl.*, Doc. 159 at 10 ¶ 29, 13 ¶ 38, 29 ¶ 105.) WPATH, for its part, leans into that characterization: In the *amicus* brief to which WPATH is a signatory, WPATH's standards are referred to as "widely accepted" and "established, evidence-based clinical guidelines," which were "[d]eveloped [t]hrough a [r]obust and [t]ransparent [p]rocess, [e]mploying the [s]ame [s]cientific [r]igor [t]hat [u]nderpins [o]ther [m]edical [g]uidelines." (Doc. 91-1 at 16–17, 22; *see also id.* at 16 ("The widely accepted view of the professional medical community is that gender-affirming care is the appropriate treatment for gender dysphoria and that, for some adolescents, gender-affirming medical interventions are necessary").) To that end, *amici curiae* cite WPATH's standards as authority no less than fifteen times. (Doc. 91-1 at 17–20, 23–24.)

6

In sum, WPATH's guidelines are part and parcel of Plaintiffs' proposed constitutional standard in this case.[3] The Court therefore finds that Defendants' subpoena is directed at the discovery of relevant information.[4]

### B. The burden of production is not disproportionate to the needs of this case.

WPATH has presented no argument sufficient to convince this Court that the burden of production is disproportionate to the case's needs, particularly in light of the requested information's crucial import in this litigation. *See* FED. R. CIV. P. 26(b)(1) (balancing, *inter alia*, the burden of production with the information's likely benefit); *see also* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 (3d ed.) (noting that "a subpoena need not necessarily be quashed because the documents themselves are voluminous and cumbersome and significant difficulty and expense will be involved in producing them" because "[s]ubpoenas of this kind are inevitable in the type of highly complex cases that are now common in the federal courts."). In addition, by withdrawing several requests after meeting and conferring with WPATH's counsel,[5] Defendants

---

[3] To be clear, the requested information's relevance is not dependent upon WPATH having signed the brief of amici curiae (Doc. 91-1). Its relevance is spawned from Plaintiffs' theory of the case.

[4] For one illustrative example, Defendants request documents related to the process WPATH "used to create, review, and adopt their position statements, treatment guidelines, and standards of care regarding transitioning treatments" (Doc. 219 at 26)—a process that WPATH says was "[d]eveloped [t]hrough a [r]obust and [t]ransparent [p]rocess, [e]mploying the [s]ame [s]cientific [r]igor [t]hat [u]nderpins [o]ther [m]edical [g]uidelines" (Doc. 91-1 at 22).

[5] *Compare* Doc. 208-2 at 56–70, *with* Doc. 219 at 26; *see also* Doc. 208 at 9–10; Doc. 219 at 11.

have taken reasonable measures to further ensure that its subpoena imposes upon WPATH no *undue* burden—that is, no burden disproportionate to the needs of the case. *See* FED. R. CIV. P. 45(d)(1), 26(b)(1).

The "importance of the issues at stake in [this] action" cannot be overstated. FED. R. CIV. P. 26(b)(1). And at the risk of repetitiveness, the information WPATH seeks to withhold will likely have an immensely important effect on resolution of those central issues, whichever side ultimately profits from this discovery notwithstanding. The Court therefore concludes that the requested information falls within the scope of permissible discovery under Rule 26.

C. **The First Amendment does not justify quashing the subpoena.**

To successfully oppose discovery on First Amendment grounds, the movant must make a *prima facie* showing that compliance would infringe a First Amendment right. *Fla. Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021). More specifically, the movant must set forth a "reasonable probability" that disclosure will result in "threats, harassment, or reprisals from either Government officials or private parties." *Id.* (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)). WPATH has failed to do so and, thus, is unable to support its motion to quash on First Amendment grounds.

The associational privilege protects against compelled disclosure discovery that would adversely affect an organization by "induc[ing] members to withdraw . . .

8

and dissuading others from joining because of fear of exposure." *Id.* (quoting *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 463 (1958)). WPATH argues as much, stating that compliance with Defendants' subpoena "would discourage members from joining or participating in the organization[], and chill the robust and uninhibited internal exchange of ideas that these organizations" necessary to its work. (Doc. 208 at 17.)

However, Defendants' subpoena does "not seek to reveal the identities of any [WPATH] members or donors"; thus, the information WPATH seeks to withhold is not of the sort "typically covered by the associational privilege." *Id.* (noting, in addition, that concerns about specific documents could be quelled by way of a protective order); *see also United States v. Duke Energy Corp.*, 218 F.R.D. 468, 473 (M.D.N.C. 2003) ("[T]he First Amendment does not prohibit discovery into legitimate, relevant matters, even when such discovery may produce a chilling effect on a party's First Amendment rights.").

In sum, WPATH has failed to make a *prima facie* showing that compliance with Defendants' subpoena infringes its First Amendment rights.

9

## IV. CONCLUSION

Proscription of the discovery Defendants seek would, in essence, amount to acceptance of WPATH's standards as "established, evidence-based clinical guidelines"[6] on WPATH's word alone, and without further inquiry.

WPATH's motion to quash (Doc. 208) is accordingly **DENIED** on its merits, and Defendants' motion *in limine* (Doc. 220) is **DENIED** as moot.

WPATH may redact[7] any personal, identifying information in compliance with Defendants' subpoena—subject, of course, to a future showing of good cause to the contrary from Defendants. Additionally, if any documents produced concern the same person, WPATH shall provide an alias for that person, so that it is clear when documents reference the same person. Finally, the parties are reminded that discovery in this case is subject to a protective order.

**DONE** and **ORDERED** March 27, 2023.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

---

[6] (Doc. 91-1 at 17.)

[7] At the March 21 Hearing, WPATH indicated that "redact[ing] the names of any individuals that appeared on internal documents" would "go[] some way to . . . mitigating some First Amendment issues." (*Mar. 21 Hr'g Tr.*, at 10:21–23) (discussing in context of Florida-law litigation, *see supra* note [2]).