# EXHIBIT 15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| United States of America, | ) |
| | ) |
| *Intervenor Plaintiff*, | ) |
| | ) |
| v. | ) Civil Action No. 2:22-cv-184-LCB |
| | ) |
| Hon. Steve Marshall, in his official | ) |
| capacity as Attorney General, | ) |
| of the State of Alabama, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**DEFENDANTS' COMBINED OPPOSITION TO WPATH'S
MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
(DOC. 271) AND MOTION FOR LIMITED STAY (DOC. 272)**

# TABLE OF CONTENTS

Table of Contents ................................................................................... i

Table of Authorities ............................................................................. ii

Introduction ...........................................................................................1

Background ............................................................................................4

Stay Standard ........................................................................................7

Argument................................................................................................8

    I.   WPATH Has Not Shown A Strong Likelihood Of Success.......................8

        A.   WPATH Is Not Entitled to Interlocutory Certification. ..................11

            1.   WPATH's Question Is Not a Controlling Question of Law. ......11

            2.   WPATH's Question Involves No Substantial Ground for Difference of Opinion.................................................................20

            3.   Resolving WPATH's Question Would Delay This Litigation....28

        B.   WPATH Is Unlikely to Succeed Even if it Obtains Certification. .................................................................................31

    II.  WPATH Cannot Satisfy The Remaining Stay Factors.............................33

    III. The Equities Disentitle WPATH From A Stay.........................................36

Conclusion ...........................................................................................38

Certificate of Service ...........................................................................39

# TABLE OF AUTHORITIES

## Cases

*AFL-CIO v. FEC*,
    333 F.3d 168 (D.C. Cir. 2003).................................................................. 25, 26

*Alabama Aircraft Indus., Inc. v. Boeing Co.*,
    No. 2:11-cv-03577-RDP, 2019 WL 13172407
    (N.D. Ala. Mar. 18, 2019)............................................. 1, 9, 20, 27, 28

*Application of Furstenberg Fin. SAS v. Litai Assets LLC*,
    877 F.3d 1031 (11th Cir. 2017) ...........................................................8

*Black Panther Party v. Smith*,
    661 F.2d 1243 (D.C. Cir. 1981)...........................................................25

*Bright Response, LLC v. Google Inc.*,
    No. 2:07-cv-371, 2009 WL 10741629 (E.D. Tex. Sept. 29, 2009)...................27

*Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*,
    860 F.2d 346 (9th Cir. 1988) ..............................................................24

*Buckley v. Valeo*,
    424 U.S. 1 (1976)........................................................................ passim

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*,
    954 F. Supp. 2d 127 (E.D.N.Y. 2013), *aff'd*,
    868 F.3d 104 (2d Cir. 2017) ...............................................................27

*Charleston Waterkeeper v. Frontier Logistics, L.P.*,
    No. 2:20-CV-1089-DCN, 2020 WL 7335408 (D.S.C. Dec. 14, 2020).............33

*Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*,
    542 U.S. 367 (2004)........................................................................ 8

*Christ Covenant Church v. Town of Sw. Ranches*,
    No. 07-60516-cv, 2008 WL 2686860 (S.D. Fla. June 29, 2008) ......................20

*Citizens United v. FEC*,
    558 U.S. 310 (2010) ................................................................... 13, 21

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978) ........................................................................9

*Coquina Invs. v. TD Bank, N.A.*,
    760 F.3d 1300 (11th Cir. 2014) ......................................................30

*Democratic Exec. Comm. of Fla. v. Lee*,
    915 F.3d 1312 (11th Cir. 2019) ........................................................7

*Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*,
    816 F.3d 1319 (11th Cir. 2016) ................................... 8, 30, 31, 33

*Drummond Co. v. Conrad & Scherer, LLP*,
    885 F.3d 1324 (11th Cir. 2018) ................................................ 15, 32

*E.A. Renfroe & Co. v. Rigsby*,
    No. cv-06-AR-1752-S, 2008 WL 11375424 (N.D. Ala. Jan. 17, 2008) ..... 14, 20

*Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*,
    568 F. Supp. 3d 1301 (S.D. Fla. 2021) ................................. 22, 24, 27

*Fort Wayne Books, Inc. v. Indiana*,
    489 U.S. 46 (1989) ........................................................................21

*Garcia-Mir v. Meese*,
    781 F.2d 1450 (11th Cir. 1986) ......................................................32

*Harris v. Chapman*,
    97 F.3d 499 (11th Cir. 1996) ..................................................... 10, 31

*Herbert v. Lando*,
    442 U.S. 153 (1979) ......................................................................35

*Hill v. McDonough*,
    547 U.S. 573 (2006) ......................................................................36

*Hohe v. Casey*,
   868 F.2d 69 (3d Cir. 1989) .................................................................34

*Hope For Fams. & Cmty. Serv., Inc. v. Warren*,
   No. 3:06-CV-1113-WKW, 2009 WL 1066524
   (M.D. Ala. Apr. 21, 2009) ...........................................................7, 34

*Hyde Constr. Co. v. Koehring Co.*,
   455 F.2d 337 (5th Cir. 1972) ............................................................10

*In re Grand Jury Proc.*,
   776 F.2d 1099 (2d Cir. 1985) ...........................................................27

*In re Grand Jury Proc.*,
   842 F.2d 1229 (11th Cir. 1988) ..........................................22, 23, 24

*In re Grand Jury Subpoena*,
   831 F.2d 225 (11th Cir. 1987) ..........................................................17

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
   641 F.3d 470 (10th Cir. 2011) .........................................................27

*In re Wellcare Health Plans, Inc.*,
   754 F.3d 1234 (11th Cir. 2014) ..........................................................8

*Klay v. All Defendants*,
   425 F.3d 977 (11th Cir. 2005) ....................................................15, 35

*Laird v. Tatum*,
   408 U.S. 1 (1972)........................................................................13, 21

*Ledford v. Comm'r, Ga Dep't of Corr.*,
   856 F.3d 1312 (11th Cir. 2017) ....................................................7, 36

*Maryland v. King*,
   567 U.S. 1301 (2012).........................................................................35

*McFarlin v. Conseco Servs., LLC*,
   381 F.3d 1251 (11th Cir. 2004) ...................................9, 11, 14, 28, 32

*Miller v. Transamerican Press, Inc.*,
   621 F.2d 721 (5th Cir. 1980) ...............................................................19

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009)................................................................. 18, 29

*NAACP v. Ala. ex rel. Patterson*,
   357 U.S. 449 (1958)................................................................. 12, 22

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*,
   896 F.2d 1283 (11th Cir. 1990) .........................................................33

*NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*,
   No. 2:17-MC-00038-GCS, 2017 WL 3484101
   (S.D. Ohio Aug. 15, 2017).................................................................27

*OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*,
   549 F.3d 1344 (11th Cir. 2008) ....................................................9, 31

*Otto v. City of Boca Raton*,
   81 F.3d 854 (11th Cir. 2020) .............................................................19

*Perry v. Schwarzenegger*,
   91 F.3d 1126 (9th Cir. 2009) ........................................... 20, 24, 25

*Pittman v. Cole*,
   67 F.3d 1269 (11th Cir. 2001) ...................................................... 13, 21

*Prado-Steiman ex rel. Prado v. Bush*,
   21 F.3d 1266 (11th Cir. 2000) ......................................................1, 9

*Price v. Time, Inc.*,
   16 F.3d 1327 (11th Cir. 2005) ...........................................................19

*Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*,
   No. 1:16-cv-607, 2018 WL 11449629 (M.D.N.C. May 25, 2018) ...................27

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984).............................................................................19

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) .................................................. 33, 34

*State of Fla. ex rel. Butterworth v. Indus. Chemicals, Inc.*,
    145 F.R.D. 585 (N.D. Fla. 1991) ............................................... 10, 29

*Taylor v. Illinois*,
    484 U.S. 400 (1988) ..................................................................... 35

*United States v. Duke Energy Corp.*,
    218 F.R.D. 468 (M.D.N.C. 2003) .............................................. 18, 19

*United States v. Nixon*,
    418 U.S. 683 (1974) ..................................................................... 19

*United States v. Ryan*,
    402 U.S. 530 (1971) ................................................................... 8, 30

*Valle v. Singer*,
    655 F.3d 1223 (11th Cir. 2011) ................................................... 33

*White v. Nix*,
    43 F.3d 374 (8th Cir. 1994) ........................................................ 10

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ...................................................... 27

*Wilson v. O'Brien*,
    621 F.3d 641 (7th Cir. 2010) ...................................................... 31

## Statutes

28 U.S.C. § 1292(b) ............................................................. 11, 20, 28, 30

28 U.S.C. § 1291 ......................................................................... 8

**Rules**

Fed. R. Civ. P. 52(a)(6)..............................................................................32

**Other Authorities**

8 Wright & Miller, Federal Practice & Procedure § 2006 (3d ed.) ........... 10, 29, 30

15B Wright & Miller, Federal Practice & Procedure § 3914.23 (2d ed.) ..............29

Frank C. Woodside & Michael J. Gray, *Researchers' Privilege: Full Disclosure*,
    32 W. Mich. U.T.M. Cooley L. Rev. 1 (2015)..................................................36

USPATH & WPATH, *USPATH and WPATH Confirm Gender-Affirming Health
    Care is Not Experimental*
    (Mar. 22, 2023), https://tinyurl.com/sjbkxeu5;

WPATH, *Statement of Opposition to Legislation Banning Access
    to Gender-Affirming Health Care in the US* (Mar. 8, 2023),
    https://tinyurl.com/4mncaw4n ...........................................................................17

# INTRODUCTION

According to this Court, "the information WPATH seeks to withhold will likely have an immensely important effect on resolution of th[e] central issues" in this case. Doc. 263 at 8. Plaintiffs and the United States have made WPATH's guidelines the centerpiece of their constitutional claims. The Court recognized that fact in denying WPATH's motion to quash Defendants' tailored requests for information about the development of those guidelines. The Court found as a matter of fact that WPATH had not made a *prima facie* showing of First Amendment harm, emphasizing that WPATH need not reveal personal information—and that all information is subject to a protective order limiting disclosure.

Seeking to relitigate its failed motion to quash, WPATH now demands that this Court give it the extraordinary remedy of a stay pending its equally extraordinary effort to obtain certification under § 1292(b) to file an interlocutory appeal of a routine, fact-bound discovery order. But interlocutory appeals—especially of discovery orders broadly left to the district court's discretion—"are inherently disruptive, time-consuming, and expensive, and consequently are generally disfavored." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000) (cleaned up). The default finality rules confine such disruptive interlocutory appeals to "truly exceptional cases." *Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 2:11-cv-03577-RDP, 2019 WL 13172407, at *4 (N.D. Ala. Mar. 18, 2019).

WPATH is not entitled to exceptional certification under § 1292(b). Its desired appeal involves an application of law to fact—whether WPATH showed an objectively reasonable First Amendment harm—not a pure legal question. Nor would WPATH's putative legal question be controlling even if presented. WPATH argues that its claimed First Amendment burden should be "balanced against [Defendants'] need for the information sought." Doc. 272 at 8-9. This Court found *that* need to be "crucial" (Doc. 263 at 7), a finding that WPATH does not raise for appeal and that rests with the Court's discretion. So WPATH would lose no matter how any court answered its imagined question presented. That question is not "controlling."

What's more, none of WPATH's cases from other circuits reaches a different answer about the supposed legal question, and certifying an appeal would significantly delay resolution of this lawsuit. Even were this Court to certify under § 1292(b), the Eleventh Circuit is highly unlikely to hear a run-of-the-mill discovery dispute, much less second-guess this Court's factual finding that WPATH had failed to make a *prima facie* showing of First Amendment harm. And even if the Court of Appeals *did*, it would likely affirm the order anyway because the requested information (1) does not pertain to WPATH's members or donors, (2) would be subject to protective orders, and most importantly, (3) is crucially relevant to this litigation. WPATH is unlikely to succeed in its effort to appeal.

Meanwhile, granting a stay would irreparably harm Defendants by depriving them of information that this Court said has "crucial import in this litigation." Doc. 263 at 7. Indeed, a stay (or granting permission to file an appeal) would functionally reverse this Court's prior order, given the short schedule remaining before trial. Even though Defendants sought these documents from WPATH six months ago, WPATH has interminably delayed at each step, even refusing to follow this Court's direction to work with Defendants, thereby necessitating a second hearing just days before Defendants' expert reports were due. Though WPATH claims it already compiled some responsive evidence on a hard drive and is willing to turn over other evidence, it has produced *nothing*. And though WPATH now claims to be willing to continue meeting and conferring with Defendants, that is exactly what WPATH has refused to meaningfully do *for months*. Defendants' expert reports are now due in just weeks, and discovery closes on June 30, with trial scheduled for August. Granting a stay or permission to appeal would allow WPATH's delay tactics to derail this Court's schedule or deprive this case of critical evidence. Such deprivation would not only harm Defendants, it would also harm this Court's and the public's search for truth through the judicial process via the consideration of crucial information. The Court should deny both permission to appeal and a stay.

## BACKGROUND

Most of the relevant background is set forth in Defendants' response to WPATH's motion to quash. *See* Doc. 219 at 12-27. In short, everyone other than Defendants—Plaintiffs, the United States, their expert witnesses, WPATH itself, and this Court at the preliminary injunction stage—has put WPATH's guidelines at the center of this case. *E.g.*, Pls' Compl., Doc. 159 ¶29 ("The standards of care for treatment of transgender people, including transgender youth, were initially developed by the World Professional Association for Transgender Health…."); U.S. Compl., Doc. 92 ¶28 ("According to clinical guidelines from the World Professional Association for Transgender Health…."); WPATH Amicus Br., Doc. 91-1 at 16-17, 22 (referring to its own guidelines as "widely accepted" and "established, evidence-based clinical guidelines" "developed through a robust and transparent process"); Preliminary Injunction Opinion, Doc. 112-1 at 3-4 ("WPATH recognizes transitioning medications as established medical treatments and publishes a set of guidelines for treating gender dysphoria in minors," and those guidelines are "endorse[d]" by various "major medical associations" "as evidence-based.").

Before the Eleventh Circuit on appeal of the preliminary injunction, Plaintiffs doubled down on their reliance on WPATH. Plaintiffs said that "[t]he limiting principle" "in this case" is that "we have the standard of care," "the most widely

recognized standard of care" "in the medical community," being "banned" by the State. Oral Arg. 21:48-22:40, No. 22-11707 (11th Cir. Nov. 18, 2022).

Given the centrality of WPATH's guidelines to the claims alleged and evidence offered—as well as public information casting doubt on how those guidelines were created, *see* Doc. 219 at 19-24—about six months ago Defendants served a tailored subpoena on WPATH seeking information about the guidelines' development. Doc. 208-2 at 56-70. During extensive meet-and-confers, Defendants further narrowed their requests to address WPATH's concerns, Doc. 263 at 7-8, but WPATH refused to respond and instead moved to quash two months after service of the subpoena, Doc. 208.

At the first hearing on WPATH's motion, this Court explained that the State's subpoena was directed at information "around the very heart of what plaintiffs think is the core of their case," and WPATH conceded that there was no "dispute whatsoever that the WPATH guidelines are relevant to this case." Doc. 246 at 64. The Court accordingly suggested that WPATH again try to reach an agreement with the State to disclose relevant information. *See id.* at 68 (referring to "search terms" and "representative e-mails" as "a starting point").

Then, after initially tying itself to unrelated D.C. litigation about a subpoena in another case involving different issues, *see id.* at 45-46, 49-51, WPATH evidently soured on the D.C. district court's approach and refused to engage in meaningful

discussions with Defendants once the D.C. Circuit stayed a discovery order that implicated 18 medical organizations, only one of which was WPATH. Doc. 266 at 12-15. This Court was forced to convene a second hearing six weeks later—with Defendants' expert reports due in less than three weeks—and promptly issued an order denying WPATH's motion to quash. Doc. 263.

The Court found that "the information WPATH seeks to withhold will likely have an immensely important effect on resolution of th[e] central issues" in this case. *Id.* at 8. The Court also found that any "burden of production is not disproportionate to the needs of this case," given both "the requested information's crucial import" and Defendants' "reasonable measures to … ensure that its subpoena imposes upon WPATH no *undue* burden." *Id.* at 7-8. Finally, the Court found as a matter of fact that WPATH had "failed to make a *prima facie* showing that compliance with Defendants' subpoena infringes its First Amendment rights." *Id.* at 9. The Court emphasized that "Defendants' subpoena does not seek to reveal the identities of any WPATH members or donors," that "concerns about specific documents could be quelled by way of a protective order," that discovery here is already "subject to a protective order," and that "WPATH may redact any personal, identifying information." *Id.* at 8-10. Given these limitations, the Court found, WPATH did not "set forth a 'reasonable probability' that disclosure will result in 'threats, harassment, or reprisals from either Government officials or private parties.'" *Id.* at 8.

Continuing its pattern of delay, WPATH now demands permission to file an interlocutory appeal of this routine discovery order involving case-specific factual findings, and moves the Court to stay its discovery order pending that desired appeal.

## STAY STANDARD

"A stay pending appeal is an extraordinary remedy for which the movant bears the burden of proof." *Hope For Fams. & Cmty. Serv., Inc. v. Warren*, No. 3:06-CV-1113-WKW, 2009 WL 1066524, at *4 (M.D. Ala. Apr. 21, 2009) (cleaned up). Courts consider four factors: "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019). The party seeking a stay must satisfy all four factors, *Ledford v. Comm'r, Ga. Dep't of Corr.*, 856 F.3d 1312, 1315 (11th Cir. 2017), and "[t]he first two factors are the most critical," *Lee*, 915 F.3d at 1317. "To satisfy its burden as to those factors, the party seeking the stay must show more than the mere possibility of success on the merits or of irreparable injury." *Id.* Instead, the party must "demonstrate[] a strong likelihood of success on the merits of appeal." *Id.* at 1318.

## ARGUMENT

## I.    WPATH Has Not Shown A Strong Likelihood Of Success.

WPATH is not entitled to a permissive appeal of this Court's discovery order, and WPATH is equally unlikely to persuade the Eleventh Circuit to hear the appeal, much less obtain reversal. Appellate review is generally unavailable here under 28 U.S.C. §§ 1291 or 1292. That is because "the denial of a motion to quash a subpoena is not appealable as to the party subpoenaed unless that party defies the order, risking contempt sanctions." *Application of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1033 (11th Cir. 2017); *see United States v. Ryan*, 402 U.S. 530, 532 (1971) ("[O]ne to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena."). And the Eleventh Circuit has squarely rejected the possibility of "review[ing] discovery orders directed at nonparties before final judgment under the collateral order doctrine." *Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1326 (11th Cir. 2016).

That leaves only interlocutory certification under 28 U.S.C. § 1292(b).[1] "Certification of an issue for interlocutory appeal is reserved for truly exceptional cases."

---

[1] WPATH suggests that it could seek a writ of mandamus, Doc. 272 at 5 n.1, but that effort is even more far-fetched, for all the reasons explained here and because the mandamus standard is extremely high. *See In re Wellcare Health Plans, Inc.*, 754 F.3d 1234, 1238 (11th Cir. 2014) ("Because a writ of mandamus is an action against the district court judge, it 'is a drastic and extraordinary remedy reserved for really extraordinary causes' amounting to 'a judicial usurpation of power' or a 'clear abuse of discretion.'" (quoting *Cheney v. U.S. Dist. Ct. for the District of Columbia*, 542 U.S. 367, 380 (2004))). In any event, WPATH has not yet sought such a writ so is currently unlikely to succeed in that theoretical endeavor.

*Alabama Aircraft*, 2019 WL 13172407, at \*4. Such exceptional cases involve situations "where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004) (cleaned up). "The party seeking certification shoulders the burden of persuading the court 'that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Alabama Aircraft*, 2019 WL 13172407, at \*5 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). "[I]nterlocutory appeals are inherently disruptive, time-consuming, and expensive, and consequently are generally disfavored." *Prado-Steiman*, 221 F.3d at 1276 (cleaned up).

Section 1292(b) "sets a high threshold for certification to prevent piecemeal appeals." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008). "[T]o obtain § 1292(b) certification, the litigant must show not only that an immediate appeal will advance the termination of the litigation but also that the appeal involves 'a controlling question of law as to which there is substantial ground for difference of opinion.'" *Id.* "Most interlocutory orders do not meet this test." *Id.* That is especially true of *discovery* orders, which generally "do not present 'controlling questions of law' capable of significantly advancing litigation so as to

9

justify interlocutory appeal." *State of Fla. ex rel. Butterworth v. Indus. Chemicals, Inc.*, 145 F.R.D. 585, 589 (N.D. Fla. 1991); *see Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996) ("District judges are accorded wide discretion in ruling upon discovery motions."); *Hyde Constr. Co. v. Koehring Co.*, 455 F.2d 337, 338-39 (5th Cir. 1972) ("It is indeed that rare case where the issue presented in the context of discovery … involves a controlling question of law and where an immediate appeal may materially advance the ultimate termination of the litigation."); *see also White v. Nix*, 43 F.3d 374, 377-78 (8th Cir. 1994) ("the discretionary resolution of discovery issues precludes the requisite controlling question of law"); 8 Wright & Miller, Federal Practice & Procedure § 2006 (3d ed.) ("Ordinarily it is difficult to believe that a discovery order will present a controlling question of law or that an immediate appeal will materially advance the termination of the litigation.").

WPATH cannot meet *any* of the three required elements for interlocutory certification. And even if it could, it has scant likelihood of convincing the Eleventh Circuit to accept this appeal of a routine, fact-focused discovery order, much less obtaining reversal of the order that—as WPATH admits—ultimately rests on a balancing test of factual considerations.

**A.     WPATH Is Not Entitled to Interlocutory Certification.**

**1.     WPATH's Question Is Not a Controlling Question of Law.**

*First*, WPATH cannot show that its desired appeal involves "a controlling question of law." 28 U.S.C. § 1292(b). In this context, "[t]he term 'question of law' does not mean the application of settled law to fact." *McFarlin*, 381 F.3d at 1258. Nor does it "mean any question the decision of which requires rooting through the record in search of the facts." *Id.* Instead, what is required "is more of an abstract legal issue or what might be called one of 'pure' law, matters the court of appeals can decide quickly and cleanly without having to study the record." *Id.* (cleaned up).

It is hard to imagine how the Court of Appeals could possibly resolve WPATH's proposed appeal "without having to study the record." To try and craft such a question, WPATH misconstrues the Court's order and otherwise contests the application of undisputed First Amendment law to the specific facts. WPATH claims that its "question of pure law" is "the Court's holding that discovery cannot infringe First Amendment rights unless the compelled disclosure would result in 'threats, harassment, or reprisals.'" Doc. 271 at 3. But WPATH never *quotes* such a holding, presumably because none exists. Even if it did, WPATH then admits that the proper approach is to *balance* its claimed First Amendment harm of self-censorship with the Defendants' need for the information (Doc. 272 at 8-9)—a fact-bound question if there ever was one. Yet WPATH does not seek certification of the Court's factual

11

finding that Defendants' need for the information was "immensely important." Doc. 263 at 8. That decision is understandable given the factual nature of the Court's finding, but it simply underscores that WPATH would lose its appeal no matter the answer to the partial question it has crafted. That means that question cannot be "controlling."

This Court's First Amendment discussion began by explaining that "the movant must make a *prima facie* showing that compliance would infringe a First Amendment right." Doc. 263 at 8. WPATH's motion to quash also stated this legal standard: "an organization must first make a prima facie showing … that compelled disclosure would result in a 'chilling' of associational rights." Doc. 208 at 17.

This Court also explained that "[t]he associational privilege protects against compelled disclosure discovery that would adversely affect an organization by 'induc[ing] members to withdraw … and dissuading others from joining because of fear of exposure.'" Doc. 263 at 8-9 (quoting *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 463 (1958)). WPATH, also quoting *NAACP*, said the same: "Under the First Amendment's associational privilege, organizations are protected from compelled disclosure that would 'induce members to withdraw … and dissuade others from joining because of fear of exposure.'" Doc. 208 at 17. The Court correctly understood WPATH to be making this type of argument. Doc. 263 at 9 ("WPATH argues as much").

This Court explained that a party asserting such a First Amendment discovery privilege generally must "set forth a 'reasonable probability' that disclosure will result in 'threats, harassment, or reprisals from either Government officials or private parties.'" *Id.* at 8. That is no more than a restatement of the broader First Amendment rule that "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Pittman v. Cole*, 267 F.3d 1269, 1284 (11th Cir. 2001) (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)). If there is no chance of threats, harassment, or reprisals from *anyone*, then any assertion of a chill appears purely subjective.

Indeed, this uncontroversial proposition of First Amendment law dates to *Buckley v. Valeo*, 424 U.S. 1, 74 (1976), and has been repeatedly applied by the Supreme Court in the context of disclosure requirements—likely the closest statutory analogue to similar discovery orders. As the Supreme Court explained in *Citizens United v. FEC*, an organization can show a "chill" from "disclosure requirements" "if there were a reasonable probability that the group's members would face threats, harassment, or reprisals if their names were disclosed." 558 U.S. 310, 370 (2010). Otherwise, no objectively reasonable chill is apparent.

Ultimately, this Court held that "WPATH has failed to make a *prima facie* showing that compliance with Defendants' subpoena infringes its First Amendment rights." Doc. 263 at 9. The Court considered but rejected WPATH's assertion—

repeated here *ad nauseam*—that "compliance with Defendants' subpoena" would "chill the robust and uninhibited internal exchange of ideas." *Id.* The Court did not predicate its factual finding on WPATH's out-of-context quote regarding "threats, harassment, or reprisals."

Thus, the first problem with WPATH's assertion of a "controlling question of law" is that the Court did not focus—or need to focus—on that question. Its fact-based holding does not depend on the answer to that question. *See E.A. Renfroe & Co., Inc. v. Rigsby*, No. cv-06-AR-1752-S, 2008 WL 11375424, at *2 (N.D. Ala. Jan. 17, 2008) ("a 'controlling question of law'" is one that "is outcome determinative"). Instead, what ultimately upsets WPATH is this Court's *factual* determination that it failed to make a *prima facie* showing. But this question—"whether the district court properly applied settled law to the facts or evidence of a particular case"—is "[t]he antithesis of a proper § 1292(b) appeal." *McFarlin*, 381 F.3d at 1259. Section "1292(b) appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *Id.* Because WPATH's certification would require the Court of Appeals to focus on the sufficiency of WPATH's proffered facts, WPATH falters on the first requirement under § 1292(b). *See Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1337

(11th Cir. 2018) ("The purpose of § 1292(b) is not to provide interlocutory appellate review of such fact-driven issues.").

The second, related problem with WPATH's "controlling question" is that no matter the answer, WPATH's motion to quash was properly denied because it "failed to meet its burden of opposing" the subpoena. Doc. 263 at 5 (collecting cases). WPATH does not ask to appeal (or meaningfully contest) this Court's finding that the information sought by the subpoena is of "crucial import in this litigation" and "will likely have an immensely important effect on resolution of th[e] central issues." *Id.* at 7-8. Indeed, WPATH makes arguments *premised* on the fact "that the State's subpoena seeks 'discovery that truly goes to the heart of th[e] case.'" Doc. 271 at 9 (quoting Doc. 266 at 17); *id.* (conceding "[t]he critical role" that "material of the type at issue here often plays"). Circuit precedent establishes that such information must be disclosed. *E.g.*, *Klay v. All Defendants*, 425 F.3d 977, 986 (11th Cir. 2005) (explaining that because the plaintiffs "relied upon [the American Medical Association's] data in the prosecution of their claims for relief," the court properly compelled AMA to provide the data "vital to" the defendants' case).[2]

---

[2] Taking the opposite tack, WPATH's stay motion claims that "the State has never explained why it needs access to WPATH's internal deliberations to attack the Standards of Care." Doc. 272 at 12. That explanation has been provided several times, Doc. 219 at 28-33; Doc. 246 at 55-64; Doc. 266 at 12-14, 22, and this Court correctly found that such issues as "the process WPATH used to create, review, and adopt" its standards are highly relevant, Doc. 263 at 7 & n.4; *see* Doc. 266 at 17 ("[I]f I don't let the State look behind the curtain, I'm really, you know, not giving them a chance to get discovery that truly goes to the heart of this case.").

WPATH also does not meaningfully contest this Court's conclusion that any burden of production is not undue, given the great relevance of the requested information and Defendants' "reasonable measures to further ensure that its subpoena imposes upon WPATH no *undue* burden." Doc. 263 at 7-8.[3]

Given these factual findings—which are not and could not be contested as part of any "controlling legal question"—that Defendants' subpoena seeks information of "crucial import in this litigation" and does not impose an undue burden, *id.*, a court assessing WPATH's proposed question for appeal would not be able to resolve the question that was before this Court. Even under WPATH's articulation of the proper test—"balanc[ing]" its "First Amendment interests" against Defendants' "need for the information sought" (Doc. 272 at 8-9)—disclosure of this critically important information is required, as shown next. Thus, WPATH's proposed legal question is not controlling; it is all but irrelevant.

To begin, if WPATH is asserting a purely subjective chill based on self-censorship disconnected from any risk of any action from any other entity, public or private, its First Amendment interests are marginal at the outset. Every litigant facing a subpoena could assert the same generic "chill" on its "internal exchange of ideas."

---

[3] With respect to any burden, WPATH asserted at the last hearing that it had recently compiled for other litigation "a collection of materials that reflect internal deliberative process," which WPATH said was "exactly the sort of materials that the State of Alabama is seeking." Doc. 266 at 9; *id.* at 11 (stating that these materials "are sitting on a hard drive now"). This preexisting compilation of some of the discovery Defendants are entitled to further reduces the burden of production.

Doc. 263 at 9; *see* Doc. 246 at 53 (WPATH arguing that "the mere fact that these subpoenas" were "issued" "chill[s] the organization"); Doc. 272 at 15 (same); *id.* at 9 ("compelled disclosures … threaten to undermine [the] organization's effective-ness, *regardless* of the specific materials"); *contra In re Grand Jury Subpoena*, 831 F.2d 225, 228 (11th Cir. 1987) ("[A] party cannot meet its burden of proof with a blanket assertion of privilege."). As the Court explained, "Defendants' subpoena does not seek to reveal the identities of any WPATH members or donors," and "thus, the information WPATH seeks to withhold is not of the sort typically covered by the associational privilege." Doc. 263 at 9 (cleaned up).

Moreover, according to WPATH itself, many of its purported concerns arise not from complying with the subpoena but from "the extraordinarily charged politi-cal atmosphere" around these issues. (Doc. 246 at 54). But that atmosphere would exist regardless of the subpoena. And given WPATH's argument, it bears mention that since it first asserted claims of a chill from the issuance of a subpoena, WPATH has continued its advocacy in the "charged political atmosphere," releasing multiple public statements decrying regulations protecting children, like Alabama's law. *See USPATH and WPATH Confirm Gender-Affirming Health Care is Not Experimental* (Mar. 22, 2023), https://tinyurl.com/sjbkxeu5; *Statement of Opposition to Legisla-tion Banning Access to Gender-Affirming Health Care in the US* (Mar. 8, 2023), https://tinyurl.com/4mncaw4n.

Further, as this Court emphasized, any "concerns about specific documents could be quelled by way of a protective order." Doc. 263 at 9; *accord Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 112 (2009) ("[P]rotective orders are available to limit the spillover effects of disclosing sensitive information."); *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 473 (M.D.N.C. 2003) (explaining that "the answer" to First Amendment privilege claims "is not to suppress [all] evidence, but rather to exercise judicial discretion by providing protection short of suppression"). Materials in this case are already subject to a rigorous protective order, Doc. 263 at 10; *see* Docs. 137, 138, and WPATH cannot explain why that order or some other order would not alleviate any remaining First Amendment concerns as to specific documents. More, this Court permitted WPATH to "redact any personal, identifying information in compliance with Defendants' subpoena," which WPATH conceded would "mitigat[e]" "First Amendment issues." Doc. 263 at 10 & n.7. In sum, even if a party can somehow assert a First Amendment interest in materials stripped of all identifying information that must remain private and will give rise to no actions by others, it is a marginal interest.

Whatever the First Amendment interests here, Defendants would be entitled to this highly relevant material that cannot be obtained elsewhere. Under circuit precedent, even clearcut First Amendment claims—a reporter's protection of a confidential source, for instance—must give way when "necessary to proper preparation

and presentation of the case." *Price v. Time, Inc.*, 416 F.3d 1327, 1343 (11th Cir. 2005); *see Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 (5th Cir. 1980) ("[E]ven those [evidentiary privileges] rooted in the Constitution must give way in proper circumstances.").

"[T]he First Amendment does not prohibit discovery into legitimate, relevant matters, even when such discovery may produce a chilling effect on a party's First Amendment rights." *Duke Energy*, 218 F.R.D. at 473. After all, the discovery rules "further[] a substantial governmental interest unrelated to the suppression of expression": "enabl[ing] parties to litigation to obtain information relevant to the subject matter involved that they believe will be helpful in the preparation and trial of the case." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (cleaned up). "The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *United States v. Nixon*, 418 U.S. 683, 709 (1974). And in this specific case, Defendants seek to uphold the democratic will of the people, who acted through their elected representatives to protect children. *See Otto v. City of Boca Raton*, 981 F.3d 854, 868 (11th Cir. 2020) ("[A] State's interest in safeguarding the physical and psychological wellbeing of a minor is compelling." (cleaned up)). Because Defendants seek highly relevant information that cannot be obtained elsewhere and is necessary to a full adjudication of Plaintiffs' and the United States' attack on a presumptively valid

state statute, Defendants are entitled to the requested discovery regardless of alleged (but unproven) "deterrent effect[s]." *Perry v. Schwarzenegger*, 591 F.3d 1126, 1161 (9th Cir. 2009).

In sum, because the answer to WPATH's proposed question would not affect this balancing or the proper determination of its motion to quash, that question is not "controlling." *See E.A. Renfroe*, 2008 WL 11375424, at *2.

### 2.   WPATH's Question Involves No Substantial Ground for Difference of Opinion.

*Second*, WPATH cannot identify any "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). "Substantial ground for difference of opinion exists when a legal issue is (1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the issue." *Alabama Aircraft*, 2019 WL 13172407, at *6. No such legal issue is involved here. To the contrary, WPATH *agreed* that it had to "make a prima facie showing." Doc. 208 at 17. And WPATH relied on cases applying the same legal standard— nearly word-for-word—that this Court applied. *See* Doc. 208 at 18 (citing *Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516-cv, 2008 WL 2686860, at *6 (S.D. Fla. June 29, 2008), which states that the movant "bears the burden of mak-ing a prima facie showing of … a reasonable probability that the discovery at issue would subject the [movant's] members to threats, harassment, or reprisals from ei-ther Government officials or private parties" (cleaned up)); Doc. 263 at 8 (this

Court's order: "the movant must set forth a reasonable probability that disclosure will result in threats, harassment, or reprisals from either Government officials or private parties" (cleaned up)).

As discussed, this proposition dates to *Buckley* and continues to be the rule for challenges to disclosure applications—the most analogous statutory situation to a subpoena for a party's internal information. *See Citizens United*, 558 U.S. at 370 (requiring a showing of "a reasonable probability that the group's members would face threats, harassment, or reprisals if their names were disclosed"). Contra WPATH, the point is not that "First Amendment protections are *limited* to situations involving … retaliation" (Doc. 271 at 11), but that a party must show an objectively reasonable chill on its speech. A party with nothing to fear from *anyone* would be hard-pressed to show such an objective chill. This legal proposition is well-settled. *See, e.g.*, *Pittman*, 267 F.3d at 1284 ("if no credible threat of prosecution looms, the chill is insufficient"; "[a] party's subjective fear … will not be held to constitute an injury … unless that fear is objectively reasonable"); *see also Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 60 (1989) ("[t]he mere assertion of some possible self-censorship … is not enough"); *Laird*, 408 U.S. at 11 (explaining that it is insufficient if the claimed "chilling effect arise[s] merely from the individual's knowledge that a governmental agency was engaged in certain activities" and "might in the future take some other and additional action detrimental").

Thus, in the foundational case that both WPATH and the case cited by this Court relied on, *NAACP v. Alabama ex rel. Patterson*, the Supreme Court emphasized that disclosure had exposed "members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." 357 U.S. at 462.[4] "Under these circumstances," the Court said, "we think it apparent that compelled disclosure of petitioner's Alabama membership is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate." *Id.* at 462-63. The Court focused on "the consequences of this exposure." *Id.* at 463. The objectively reasonable chill stemmed from these consequences.

Though WPATH claims that "the Eleventh Circuit has never addressed whether the First Amendment privilege applies only when compelled disclosure threatens to result in threats, harassment, or reprisals," Doc. 271 at 10-11, it has. In *In re Grand Jury Proceeding*—quoted in the Defendants' opposition to the motion to quash (Doc. 219 at 36-37)—the Eleventh Circuit considered "precisely what factual showing, if any, [a party] must make to establish that its freedom of association would be impinged by enforcement of the subpoena." 842 F.2d 1229, 1235 (11th Cir. 1988). Surveying precedent, the Court explained that under *Buckley*, "a merely

---

[4] *See Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021); Doc. 208 at 17.

subjective fear of future reprisal is insufficient to establish a restraint on freedom of association" in most cases, so generally parties must "show a reasonable probability that the compelled disclosure will subject them to threats, harassment, or reprisals from either Government officials or private parties." *Id.* at 1235-36 (cleaned up). The Court flagged dicta in *Buckley* suggesting that a standard "more lenient than the *Buckley* standard" *might* apply to a subpoena stemming from a government investigation "focused on a particular political group" that demands donor identities. *Id.* at 1236. That is because "the government investigation itself may indicate the possibility of harassment." *Id.* Though the Court did not need to choose which standard applied because the government's justification was sufficient—which is true here too, as explained above—the Court's discussion confirms that *Buckley*'s standard is the default.

The potential alternative standard identified in *In re Grand Jury* would not apply here, and WPATH does not argue that it would. This subpoena does not stem from a government investigation into WPATH. Though WPATH has suggested that disclosure would be "to a prominent public policy opponent," Doc. 236 at 17; *see* Doc. 272 at 11 (similar), Defendants did not bring this litigation, and in their view, WPATH's guidelines should be "all but irrelevant to the constitutional inquiry." Doc. 219 at 29. Defendants are here only because Plaintiffs and the United States (and WPATH) treat WPATH as the "arbiter[] of what medical procedures the State

may regulate." *Id.* at 33. And this subpoena does not seek "the disclosure of the identities of contributors" or members. *In re Grand Jury*, 842 F.2d at 1236 (cleaned up). Indeed, this Court's order expressly permits redaction of all personally identifying information, and a protective order already governs this case. Thus, Eleventh Circuit precedent confirms that WPATH's "merely subjective fear of future reprisal is insufficient." *Id.* at 1235. As WPATH does not contest, district court decisions in this circuit agree with the standard this Court applied. *E.g.*, *Fla. Branches & Youth Units of NAACP*, 568 F. Supp. 3d at 1307. WPATH's legal question involves no substantial difference of opinion.

The out-of-circuit cases WPATH cites do not involve a different rule, either. They all require a *prima facie* showing of First Amendment harm. Though they articulate that showing in slightly different ways, the difference is semantic, not substantive. Thus, the Ninth Circuit requires a "*prima facie* showing … that enforcement of the discovery requests will result in … harassment, membership withdrawal, or discouragement of new members" or "other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry*, 591 F.3d at 1140; *accord Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 n.1 (9th Cir. 1988) (emphasizing "the need for objective and articulable facts, which go beyond broad allegations or subjective fears" and quoting *Buckley*'s language). WPATH ignores *Perry*'s relevant language, instead misleadingly

24

noting that the decision rejected the value of a "protective order limiting dissemination." Doc. 271 at 13. Not only is the protective order angle distinct from WPATH's putative "controlling question of law," but *Perry* actually said that "[a] protective order limiting the dissemination of disclosed associational information may mitigate the chilling effect and could weigh against a showing of infringement." 591 F.3d at 1140 n.6.

WPATH also relies on the D.C. Circuit, but the foundational case there requires the movant to "show that there is some probability that disclosure will lead to reprisal or harassment." *Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C. Cir. 1981) (cited by WPATH at Doc. 271 at 9, 11); *id.* at 1268 n.148 (quoting *Buckley*'s exact standard). WPATH discusses *AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir. 2003), but that case does not state a different rule. To start, that case involved a *Chevron* challenge, and the court was considering whether an agency's rule was a permissible statutory construction, so the case involves no First Amendment holding. *See id.* at 175. Moreover, as WPATH's own quotation reflects, that case concerned "*public disclosure*" of "the names of hundreds of volunteers, members, and employees." *Id.* at 176-77; *see* Doc. 271 at 11; *but see* Doc. 272 at 9-10 (omitting this context from the stay motion). Such public disclosure inherently involves a potential for consequences that does not exist here, where materials are subject to a protective order and WPATH may presumptively redact all personal identifying

information. Doc. 263 at 10. Indeed, the D.C. Circuit in *AFL-CIO* emphasized this difference, explaining that "even where requiring disclosure of political or speech activities to a government agency may be necessary to facilitate law enforcement functions, we have held that compelled public disclosure presents a separate first amendment issue that requires a separate justification." 333 F.3d at 176 (cleaned up). WPATH mentions none of this. Again, it does not point to a difference of opinion about the question purportedly presented here.

WPATH also mentions (again) a recent two-sentence stay order by the D.C. Circuit that contains no legal reasoning and was issued in a different procedural posture over a different subpoena involving a different legal issue related to a different State's law. Doc. 271 at 12. This Court already and properly rejected the relevance of that unreasoned order: "the Florida-law litigation in no way turns upon WPATH's guidelines—in fact, WPATH argued as much in obtaining emergency relief from the D.C. Circuit." Doc. 263 at 3 n.2. WPATH does not contest that conclusion. Instead, WPATH reaches even farther, noting that the unreasoned stay order protecting 17 other organizations was issued after one party made an argument about a protective order. Doc. 271 at 12. For good measure, WPATH attaches an entire brief from this irrelevant litigation. How any of this relates to a "substantial difference of opinion" about WPATH's putative "controlling question of law" is left unexplained. The D.C. Circuit's order said nothing about any protective order, much less took any position

on WPATH's question about the objective reasonableness of a claimed chill. *See* Doc. 255-3 at 2.

The only other case cited by WPATH is *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), but that case did not involve any First Amendment holding and instead was decided on Rule 45(d) grounds. *See id.* at 374. Nor did *Smith* purport to disagree even in dicta about the answer to WPATH's supposed question of law. To the contrary, *Smith* emphasized the First Amendment chill from opposition "interest groups [being able] *to harass*" religious organizations. *Id.* at 373 (emphasis added).

In sum, WPATH cites no case adopting a contrary legal standard either from another circuit or even another district court. Many cases agree and apply the same statement of law.[5] Thus, WPATH cannot show that its putative question is one of "first impression" or subject to a split in authority among "the district courts of the controlling circuit" or "the circuits." *Alabama Aircraft*, 2019 WL 13172407, at *6.

---

[5] *E.g.*, *In re Grand Jury Proc.*, 776 F.2d 1099, 1103 (2d Cir. 1985) ("[T]he party asserting a privilege in such circumstances must show a reasonable probability that compelled disclosure would subject an organization's members to threats, harassment, or reprisals from either government officials or private parties."); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 489 (10th Cir. 2011) (affirming ruling that applied same standard); *Fla. Branches & Youth Units of NAACP*, 568 F. Supp. 3d at 1307; *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, No. 1:16-cv-607, 2018 WL 11449629, at *2 (M.D.N.C. May 25, 2018); *NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, No. 2:17-MC-00038-GCS, 2017 WL 3484101, at *4 (S.D. Ohio Aug. 15, 2017); *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 140 (E.D.N.Y. 2013), *aff'd*, 868 F.3d 104 (2d Cir. 2017); *Bright Response, LLC v. Google Inc.*, No. 2:07-cv-371, 2009 WL 10741629, at *2 (E.D. Tex. Sept. 29, 2009).

"There is no real disagreement about a pure law premise here," but instead "only an issue of applying the law to this particular factual scenario." *McFarlin*, 381 F.3d at 1260, 1262. "That is not enough to upset the usual course of proceedings and permit an interlocutory appeal." *Id.* at 1262.

### 3. Resolving WPATH's Question Would Delay This Litigation.

*Third*, WPATH's desired appeal would not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Certifying [WPATH's] question[] now would actually work to unnecessarily delay the termination of this litigation." *Alabama Aircraft*, 2019 WL 13172407, at *7. The Eleventh Circuit recognizes that district judges "will not be disposed to countenance dilatory tactics" under the guise of § 1292(b) demands. *McFarlin*, 381 F.3d at 1256. Yet that is exactly what WPATH's demand is. Again, WPATH was served with this subpoena nearly six months ago, and by endless delays and stalling tactics, it still has not produced a single document—even responsive documents that it already has sitting on a hard drive. *See supra* note 3. Already, its delays gravely threaten this Court's scheduling order, which calls for discovery to close in June and for trial in August. An interlocutory appeal would completely upend that schedule, likely delaying the ultimate resolution of this case for *years*. Certification would not "avoid a trial or otherwise substantially shorten the litigation," but exponentially delay it. *McFarlin*, 381 F.3d at 1259; *see id.* (emphasizing precedent that a "§ 1292(b) appeal [is] inappropriate

where the same parties and issues would remain in district court regardless of resolution of issues on appeal").

WPATH—which conflates the "material advance" factor with the "controlling question of law" factor, Doc. 271 at 7-9—suggests that "[i]f WPATH were required to produce the requested discovery now, but later prevails on a post-judgment appeal, the appellate court might be required to 'vacate an adverse judgment and remand for a new trial in which the protected material and its fruits are excluded from evidence.'" Doc. 271 at 9 (cleaned up) (quoting *Mohawk*, 558 U.S. at 109). As an initial matter, this logic would mean that *every* discovery order satisfies § 1292(b)'s "materially advance" requirement—and, given WPATH's conflation of the factors, the "controlling question of law" requirement too. WPATH cites no precedent supporting this rewriting of § 1292(b). To the contrary, the Supreme Court in *Mohawk* said that "[r]outine appeal from disputed discovery orders would disrupt the orderly progress of the litigation, swamp the courts of appeals, and substantially reduce the district court's ability to control the discovery process." 558 U.S. at 112-13 (quoting 15B Wright & Miller, Federal Practice & Procedure § 3914.23 (2d ed.)); *see, e.g.*, *Butterworth*, 145 F.R.D. at 589 (noting that allowing a party to appeal from a discovery order compelling production "would add a substantial amount of time" and "prolong the resolution of the underlying" litigation); 8 Wright & Miller, *supra*, § 2006 (3d ed.) ("Ordinarily it is difficult to believe that a discovery order will

present a controlling question of law or that an immediate appeal will materially advance the termination of the litigation.").

Putting that problem aside, WPATH's suggestion that it might "prevail[] on a post-judgment appeal" thereby requiring "a new trial" is deeply confused. "[A] non-party" like WPATH "cannot appeal from final judgment." *Drummond*, 816 F.3d at 1325. Such a nonparty also "may not appeal the denial of a motion to quash [a] subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if [it] is subsequently cited for contempt on account of [its] failure to obey." *Id.* (quoting *United States v. Ryan*, 402 U.S. 530, 532 (1971)). Even improper discovery from *a party* rarely occasions remand for a new trial. 8 Wright & Miller, *supra*, § 2006 ("[M]oot[ness]" and "the harmless-error doctrine, together with the broad discretion the discovery rules vest in the trial court, will bar reversal save under very unusual circumstances."). And new trials based on third party discovery orders appear even rarer. *E.g.*, *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1314 (11th Cir. 2014) (rejecting such a demand).

WPATH also claims that certification would "accelerate disposition of the litigation as to WPATH." Doc. 271 at 8 (cleaned up). But WPATH cites nothing for the proposition that the relevant "litigation" under § 1292(b) is a collateral discovery proceeding. To the contrary, the textual referent of "litigation" is the underlying "civil action" overseen by the district court. 28 U.S.C. § 1292(b). In any event,

certification would not expedite the timing of any WPATH appeal, given that WPATH's other option is contempt and an immediate appeal. *See Drummond*, 816 F.3d at 1326. "That approach puts the objecting person's sincerity to the test by attaching a price to the demand for immediate review. Only serious and substantial disputes will interrupt the proceedings in the district court." *Wilson v. O'Brien*, 621 F.3d 641, 643 (7th Cir. 2010) (Easterbrook, C.J.). Because this normal appellate route is *faster* than § 1292(b) certification—which would entail preliminary consideration by the Court of Appeals, *then* a potential appeal on the merits—WPATH cannot even show that certification would accelerate the disposition of its dispute.

Because WPATH does not propose any controlling question of law subject to a substantial difference of opinion and whose resolution would materially advance this case, the Court should deny certification.

### B.   WPATH Is Unlikely to Succeed Even if it Obtains Certification.

Assuming WPATH obtained certification from this Court, the Eleventh Circuit would be unlikely to accept an interlocutory appeal of this fact-focused discovery order. Even when a discovery order is "case-dispositive," "the chances of § 1292(b) review are slim"—and the order here is in nowise "case-dispositive." *OFS*, 549 F.3d at 1359. "District judges are accorded wide discretion in ruling upon discovery motions," and even final "appellate review is accordingly deferential." *Harris*, 97 F.3d at 506; *see Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.

1986) ("We must always be diffident in interposing the power of an appellate court into the province of the trial court and its orders"). Further, as explained above, "[n]o pure or abstract legal question of any significant import beyond this case is at stake," so WPATH would "simply want [the Court of Appeals] to review the district court's take on the facts that reasonably could be inferred from the evidence. That is not the purpose of § 1292(b) appeals." *McFarlin*, 381 F.3d at 1262.

Of note, even the sole case relied on by WPATH for "authority for staying a discovery pending interlocutory appeal" (Doc. 272 at 7 n.2) ended with the Eleventh Circuit *rejecting* much of the appeal because it did not present an "abstract, purely legal issue" but would have "require[d] the court to apply law to the particular facts of the case." *Drummond*, 885 F.3d at 1336-37. So too here.

Finally, even if this Court certified its order, and the Court of Appeals heard the appeal, WPATH would be unlikely to succeed on the merits, for all the reasons explained above. Even if WPATH had shown that its First Amendment interests were implicated, the Court of Appeals would have no warrant to second-guess this Court's factual finding that the information sought is of "crucial import" (Doc. 263 at 7), making the Court's quashal order wholly proper. *See* Fed. R. Civ. P. 52(a)(6).

For all these reasons, WPATH is unlikely to succeed on the merits.

## II.     WPATH Cannot Satisfy The Remaining Stay Factors.

Though WPATH's failure to show a likelihood of success on the merits dooms

its stay motion, *see Valle v. Singer*, 655 F.3d 1223, 1225 (11th Cir. 2011), none of

the other factors would support a stay either. First, "[t]he possibility that adequate

compensatory or other corrective relief will be available at a later date, in the ordi-

nary course of litigation, weighs heavily against a claim of irreparable harm." *Ne.*

*Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d

1283, 1285 (11th Cir. 1990). As discussed above, the ordinary course for a nonparty

resisting a subpoena is contempt and immediate appeal, *Drummond*, 816 F.3d at

1326, and monetary contempt sanctions can be remedied on such an appeal. *See,*

*e.g.*, *Charleston Waterkeeper v. Frontier Logistics, L.P.*, No. 2:20-CV-1089-DCN,

2020 WL 7335408, at *5 (D.S.C. Dec. 14, 2020) ("facing contempt" is not an irrep-

arable harm).

WPATH's assertion of irreparable injury ignores this and merely restates its

First Amendment argument. Doc. 272 at 13. As shown above, that argument lacks

merit. Further, the Eleventh Circuit has rejected the proposition that "a violation of

constitutional rights always constitutes irreparable harm." *Siegel v. LePore*, 234 F.3d

1163, 1177 (11th Cir. 2000) (en banc). Though a "direct penalization" "of First

Amendment rights" may constitute irreparable injury, WPATH does not assert such

penalization here, instead alleging an "incidental inhibition," which "does not

automatically require a finding of irreparable injury." *Id.* at 1178 (quoting *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989)). And this Court found as a matter of fact that WPATH has shown no cognizable chill on its speech at all. Doc. 263 at 8-9.

Second, issuance of the stay would substantially harm Defendants. Again, as this Court noted, "the information WPATH seeks to withhold will likely have an immensely important effect on resolution of th[e] central issues" placed before the Court by Plaintiffs and the United States. *Id.* at 8. Defendants' expert reports are due in just weeks—May 19—and discovery closes on June 30. Doc. 270. Given the timelines associated with appeals, a stay pending appeal would operate as a *de facto* reversal of this Court's prior order. And this Court has already explained the core problem with foreclosing review of the requested information: "Proscription of the discovery Defendants seek would, in essence, amount to acceptance of WPATH's standards as 'established, evidence-based clinical guidelines' on WPATH's word alone, and without further inquiry." Doc. 263 at 10. The prejudicial effect on Defendants' ability to mount a defense is hard to overstate.

Even if this Court were to delay discovery and trial pending appeal—as WPATH appears to implicitly demand (Doc. 272 at 14)—such delay itself "would result in substantial harm to" Defendants, especially since Alabama's law has been preliminarily enjoined pending the trial. *Warren*, 2009 WL 1066524, at *4 (noting harm where "the dispositive motion deadline would have to be stayed indefinitely,

discovery could not be completed, and the trial surely would be delayed"); *see Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (cleaned up)).

Third, just as a stay would harm Defendants, it would also harm the "public interest in a full and truthful disclosure of critical facts." *Taylor v. Illinois*, 484 U.S. 400, 412 (1988). The Federal Rules' "demand for every man's evidence" promotes the judicial "search for truth." *Herbert v. Lando*, 441 U.S. 153, 175 (1979). Necessarily, denying Defendants and the Court access to highly relevant information increases "the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony." *Taylor*, 484 U.S. at 411-12; *see Klay*, 425 F.3d at 986 (requiring AMA to disclose internal information). Further, delaying this litigation further with a preliminary injunction in place would harm the children of Alabama.

Finally, WPATH's suggestion that the public would be served by secrecy contradicts the premise of the First Amendment—an open marketplace of ideas—and is ironic considering the substantial evidence that WPATH is in fact silencing dissenting voices and thereby actively misleading the public. "The best atmosphere for academic research is transparency," and "prevent[ing] research data from ever seeing the light of day does not foster quality research, scientific progress, or public health."

Frank C. Woodside & Michael J. Gray, *Researchers' Privilege: Full Disclosure*, 32 W. Mich. U.T.M. Cooley L. Rev. 1, 33 (2015). If WPATH is concerned about activities that "inevitably tend[] to check the ardor and fearlessness of scholars" (Doc. 272 at 16), it should consider its own hounding of dissenting voices out of research presentations with chants of "Trans Power!" Doc. 219 at 19-21; *see id.* at 22 (current WPATH President: "There are definitely people [in WPATH] who are trying to keep out anyone who doesn't absolutely buy the party line that everything should be affirming, and that there's no room for dissent."). In all events, even if WPATH's "candid feedback" "depends" in any way on "confidence that" it "will not be publicly disclosed," this case involves a protective order, Doc. 272 at 15, again rendering WPATH's putative concern baseless.

WPATH satisfies none of the factors required for it to obtain a stay pending appeal.

### III.    The Equities Disentitle WPATH From A Stay.

Finally, the equities disfavor WPATH's demand for a stay. "A stay is an equitable remedy not available as a matter of right," *Ledford*, 856 F.3d at 1319, and "[a] court considering a stay must … apply a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (cleaned up). Defendants served their subpoena on

WPATH almost six months ago, on October 13, 2022, with a return date of November 12. Well over a month after that return date, WPATH finally moved to quash. Doc. 208. Then, at the first motion hearing, WPATH stated it would be willing to "look[] for a compromise" at the "sensible place" reached by Judge Nichols in the unrelated Florida litigation discussed above. Doc. 246 at 54. Defendants and this Court took WPATH at its word, with the Court advising the parties that it was likely to allow Defendants discovery and that WPATH should try again to reach a compromise—with "search terms" and "representative emails" as a "starting point." *Id.* at 67-68. WPATH responded: "Very good." *Id.* at 68. Defendants had narrowed the RFPs and offered several compromises. *Id.* at 62-63. But WPATH dragged its feet, refused to engage in meaningful discussions with Defendants, and decided to abandon Judge Nichols's approach in the Florida Medicaid litigation. Doc. 266 at 15. This delay forced the Court to convene a second hearing with WPATH six weeks later, on the eve of Defendants' expert reports being due. This Court denied WPATH's motion to quash, yet even though WPATH told the Court that it had responsive materials already compiled on a hard drive, *supra* note 3, it has made no production. And even though WPATH knew that Defendants' expert reports were then due on April 10, it took nearly two weeks—until April 7—to seek a stay. This dilatory conduct alone disentitles WPATH from the equitable remedy of a stay.

## CONCLUSION

The Court should deny WPATH's motions for § 1292(b) certification and a stay pending appeal.

Respectfully submitted,

Steve Marshall
  *Attorney General*

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*
A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorney General*

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Roger G. Brooks (*pro hac vice*)
Henry W. Frampton, IV (*pro hac vice*)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0200
rbrooks@adflegal.org
hframpton@adflegal.org

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

38

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF

system on April 11, 2023, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
*Counsel for Defendants*