# EXHIBIT 16

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| Brianna Boe, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| United States of America, ) | |
| ) | |
| *Intervenor Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 2:22-cv-184-LCB |
| ) | |
| Hon. Steve Marshall, in his official ) | |
| capacity as Attorney General, ) | |
| of the State of Alabama, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## DEFENDANTS' NOTICE REGARDING DISCOVERY SCHEDULE

Defendants submit this notice to update the Court on the progress that has been made since the scheduling hearing on May 22 and to alert the Court to issues that may need to be resolved at Monday's hearing. As Defendants see it, there are two primary issues to discuss at that hearing.

First, though discovery with the United States has been proceeding well overall, the parties have reached an impasse over Defendants' request to make Admiral Rachel Levine, the Assistant Secretary for Health at the Department of Health and Human Services, a "custodian" for purposes of searching for responsive documents. Admiral Levine is the face of HHS on issues of transgender healthcare. Levine

routinely speaks to physicians—including at a WPATH conference—about the purported safety and efficacy of transitioning treatments for minors. And the Admiral has repeatedly spoken publicly about making "affirming" transgender healthcare a priority for HHS. Yet the United States refuses to make Levine a custodian, claiming that the Admiral would likely not have relevant information. Given Levine's public statements, Defendants do not understand how that could possibly be the case.

Second, WPATH filed a mandamus petition with the Eleventh Circuit on May 26 and asked that Court to rule on the petition by June 16. That date has come and gone without a decision or an order directing Defendants to answer. This Court's March 27 order requiring WPATH to produce responsive documents is thus still in full effect—just as it has been for the last three months. WPATH should not be allowed to delay any longer. This Court should order it to begin production immediately.

## I. Admiral Rachel Levine, the Assistant Secretary of Health, Should Be Made a Custodian.

Defendants and the United States have generally made good progress on discovery issues since the last hearing. As Defendants understand it, the United States has run a set of 20 agreed-upon test search terms across 11 email accounts in four

2

divisions[1] and has started collecting documents for review. To expedite this process, Defendants have made significant concessions, even agreeing to eschew search terms for certain divisions. *Cf.* Doc. 285 at 5. And when HHS flagged that certain search terms were returning too many documents in certain divisions and thus suggested narrowing the search terms, Defendants agreed. These compromises were made in good faith and in the hope that HHS would likewise be willing to compromise when needed.

Unfortunately, HHS has not been willing to compromise when it comes to custodians—the individuals whose email accounts will be searched with search terms to locate responsive documents. Defendants have repeatedly requested that Admiral Levine, the Assistant Secretary for Health, be made a custodian. The United States has repeatedly refused.

Defendants believe that Admiral Levine should be made a custodian for the simple reason that Levine acts as both an expert and the public face of HHS when it comes to transgender healthcare for children and adolescents. Levine is a medical doctor, a four-star admiral in the Public Health Service Commissioned Corps, a former professor of pediatrics and psychiatry at Penn State College of Medicine, and the former Physician General and Secretary of Health for Pennsylvania. According

---

[1] The four divisions are the National Institutes of Health (NIH), the Office of Civil Rights (OCR), the Office of the Assistant Secretary for Health (OASH), and the Substance Abuse and Mental Health Services Administration (SAMHSA).

to HHS, "Levine is an accomplished speaker and author of numerous publications on the opioid crisis, adolescent medicine, eating disorders, *and LGBT medicine*."[2] Since becoming the Assistant Secretary for Health, Levine has made LGBT issues—including pediatric transitioning treatments—a priority.[3]

As the Assistant Secretary for Health, Levine routinely advises physicians on how to treat children and adolescents suffering from gender dysphoria. In May of last year, for instance, Levine told the Federation of State Medical Boards that "[t]here is substantial misinformation about gender-affirming care for transgender and gender diverse individuals."[4] Levine highlighted specific research on the topic, claiming that "[a] paper just published two months ago in the journal of the American Medical Association found that receiving gender-affirming care, including what are called puberty blockers (gonadotrophin releasing hormone agonists) and gender-affirming hormones, was associated with 60% lower odds of moderate or severe depression and 73% lower odds of suicidality over a 12-month follow up."[5] Levine

---

[2] Admiral Rachel L. Levine, MD, U.S. Dep't of Health and Human Servs., https://www.hhs.gov/about/leadership/rachel-levine.html (last accessed June 20, 2023) (emphasis added).

[3] *See, e.g.*, Julianne McShane, *Transgender federal official Rachel Levine tells LGBTQ youths: 'I have your back'*, NBC News (June 1, 2021), https://www.nbcnews.com/feature/nbc-out/transgender-federal-official-rachel-levine-tells-lgbtq-youths-i-have-n1268795.

[4] Address by Admiral Rachel L. Levine to Federation of State Medical boards, at 8:18-10:01, May 27, 2022, https://www.youtube.com/watch?v=97lAi5VmkAA.

[5] *Id.*

concluded: "The positive value of gender-affirming care for youth and adults is not in scientific or medical dispute."[6]

Likewise, in February of this year, Levine presented at a Pediatric Grand Rounds session at Connecticut Children's Hospital.[7] Levine encouraged the doctors to use transitioning treatments on minors, asserting that "Gender-affirming care is medical care. Gender-affirming care is mental health care. And literally, gender-affirming care is suicide prevention care."[8] Levine again highlighted specific medical literature, including "[a] recent NIH-funded study" that "conclusively demonstrated that gender-affirming care and hormone therapy improves the lives of non-binary and transgender adolescents."[9] "Thus," said Levine, "gender-affirming care is medically necessary, safe and effective for transgender and non-binary children and adolescents."[10]

Just a week ago, Levine again emphasized the purported safety and efficacy of pediatric gender transitioning treatments: "Gender-affirming care … improves the quality of life, and it saves lives, and is based upon decades of study. It is a well-

---

[6] *Id.*
[7] *See* Advancing Kids: Connecticut Children's, *Admiral Rachel Levine, MD, Urges Physicians to Expand Focus* (Feb. 14, 2023), https://advancingkids.org/2023/02/14/admiral-rachel-levine-md-urges-physicians-to-expand-focus/.
[8] Connecticut Children's Grand Rounds, *2.7.23, Pediatric Grand Rounds, "Social Roles in Medicine: Improving Public Health Through Engagement Beyond the Clinical Setting," ADM Rachel Levine, MD*, at 12:46-14:32, https://podcasts.apple.com/us/podcast/2-7-23-pediatric-grand-rounds-social-roles-in-medicine/id1478948224?i=1000598494670.
[9] *Id.*
[10] *Id.*

5

established medical practice.... Gender-affirming care is medically necessary, safe, and effective for transgender and non-binary youth and adults."[11]

Levine has also commented on the quality of the WPATH Standards of Care. At a speech given in April 2022, before the updated Standards of Care 8 were released, Levine commented:

> The World Professional Association for Transgender Health published evidence-based standards of care more than a decade ago, in 2011, and is planning to release a full update this year. Rather than relying on a few cherry-picked reports to make a political argument, WPATH assesses the full state of the science and provides substantive, rigorously analyzed, peer-reviewed recommendations to the medical community on how best to care for patients who are transgender or gender non-binary. There is nothing one-sided about their approach. It is founded on a vast body of medical literature. It is free of any agenda other than to ensure that medical decisions are informed by science. This is the way medicine is supposed to be practiced, and it is the way doctors are supposed to care for their patients.[12]

Levine was even the keynote speaker at the WPATH conference last September in Canada.[13] There again, Levine extolled the purported safety and efficacy of transitioning treatments for youth.[14]

---

[11] Admiral Rachel Levine, https://twitter.com/HHS_ASH/status/1668264004492328961 (June 12, 2023).

[12] *Remarks by HHS Assistant Secretary for Health ADM Rachel Levine for the 2022 Out For Health Conference* (Apr. 30, 2022), https://www.hhs.gov/about/news/2022/04/30/remarks-by-hhs-assistant-secretary-for-health-adm-rachel-levine-for-the-2022-out-for-health-conference.html.

[13] *See* WPATH, *Schedule for 2022 WPATH conference*, https://perma.cc/3H4M-U5X5.

[14] *Dr. Rachel Levine speaking at the WPATH symposium in Montreal, Quebec*, https://rumble.com/v1kostf-september-19-2022.html.

In the face of reports of doctors failing to treat mental health comorbidities before prescribing transitioning treatments, Levine has also opined on the informed-consent process used at American pediatric gender clinics. According to *Reuters*, "Levine, the U.S. assistant secretary for health, said that clinics are proceeding carefully and that no American children are receiving drugs or hormones for gender dysphoria who shouldn't. 'It's not like anyone who arrives automatically gets medical treatment,' she said."[15]

These are just a few examples of Admiral Levine's public statements that, *along with their inputs*, would be responsive to Defendants' RFPs seeking (for instance) communications "concerning the effects of Transitioning or the treatment of Minors for Gender Dysphoria or a Related Condition on the well-being or health of Minors" (RFP 7) and "concerning the informed consent process for treating Minors for Gender Dysphoria or a Related Condition" (RFP 8).

Levine also oversees two offices within OASH that relate directly to research protections: the Office of Human Research Protections and the Office of Research Integrity. Defendants have specifically asked for information regarding the ongoing TransYouth study funded by the National Institutes for Health (RFP 18)—the same study Levine referenced as "conclusively" demonstrating the safety and efficacy of

---

[15] Chad Terhune et al., *As More Transgender Children Seek Medical Care, Families Confront Many Unknowns*, REUTERS (Oct. 6, 2022), https://www.reuters.com/investigates/special-report/usa-transyouth-care/.

7

transitioning treatments for "non-binary and transgender adolescents."[16] According to the latest publication from the study, 315 youth who identified as transgender or non-binary were given cross-sex hormones and followed for two years. Two of the participants committed suicide after beginning cross-sex hormones.[17] Given these tragic outcomes, it is likely that the investigative offices under Levine's control—and thus Levine—will have responsive information regarding the study (RFP 18), the reporting of adverse events (RFP 25), and the informed consent process (RFP 8).

Last, as Assistant Secretary for Health, Levine oversaw the publication of a document entitled "Gender-Affirming Care and Young People," which was published last year by the Office of Population Affairs within the Office of the Assistant Secretary for Health.[18] This document is the subject of RFP 30.

The United States nevertheless refuses to designate Admiral Levine as a custodian. According to the United States, "[a]s the Assistant Secretary, [Levine's] work is too broad and high level for searches of her email account or documents to

---

[16] Connecticut Children's Grand Rounds, *2.7.23, Pediatric Grand Rounds, "Social Roles in Medicine: Improving Public Health Through Engagement Beyond the Clinical Setting," ADM Rachel Levine, MD*, at 12:46-14:32 https://podcasts.apple.com/us/podcast/2-7-23-pediatric-grand-rounds-social-roles-in-medicine/id1478948224?i=1000598494670.

[17] *See* Diane Chen et al., *Psychosocial Functioning in Transgender Youth after 2 Years of Hormones*, NEW ENGLAND J. OF MEDICINE (Jan. 19, 2023), https://www.nejm.org/doi/full/10.1056/NEJMoa2206297; *see also* Letter from Sen. Cassidy and Sen. Tuberville to Hon. Lawrence Tabak, Acting Director, National Institutes of Health (June 6, 2023), https://www.help.senate.gov/imo/media/doc/nih_trans_letter.pdf.

[18] Office of Assistant Secretary for Health, Office of Population Affairs, *Gender-Affirming Care and Young People* (Mar. 2022), https://opa.hhs.gov/sites/default/files/2022-03/gender-affirming-care-young-people-march-2022.pdf.

result in relevant information pertaining to this lawsuit." Ex. A, Email to counsel, May 23, 2023. This is an astounding claim to make about someone who is the face of HHS on matters of pediatric transgender healthcare, regularly discusses specific studies when speaking to physicians (and WPATH) about the safety and efficacy of transitioning treatments for minors, oversees an office that has created and published information regarding transitioning treatments, and supervises two other offices that would have a role in investigating suicides and other adverse events in an NIH-funded study that Levine has specifically referenced in a speech. Moreover, as the United States noted in the same email, "information flows up the chain of command within the division," so senior personnel like Levine "are the personnel that are most likely to have relevant emails/documents regarding the work within their sphere." *Id.* It is hard to imagine how Levine would *not* have sufficient responsive documents to overcome the burden of searching for them.

The United States also argues that "giving speeches isn't relevant to the underlying subject matter of the litigation" and that the studies Levine "may have relied on to inform the content of those speeches" is not relevant, either. Ex. A, Email to counsel, June 21, 2023. These assertions miss the mark as well. It is not the mere act of giving speeches that makes Levine a relevant custodian, as though Levine were simply a mouthpiece for the Office of the Assistant Secretary for Health. Levine *is* the Assistant Secretary for Health. And Levine's speeches are filled with specific

9

content about the purported safety and efficacy of transitioning treatments for youth and the WPATH standards of care. This content and their inputs are obviously responsive to Defendants' RFPs, and they are indicative of the work being conducted and reviewed by OASH.

Instead of designating Levine as a custodian, HHS has offered to produce to Defendants materials that it will produce to a third party in response to a FOIA request concerning Admiral Levine's communications. Ex. A, Email to counsel, June 21, 2023. This is not the "compromise" HHS purports it to be. For one, the search terms would not be tailored to Defendants' RFPs, nor would they be same terms HHS is using for the other custodians. They would be someone else's search terms tailored for someone else's search. For another, the "compromise" would apparently force Defendants to forfeit their right to come to this Court to resolve any discovery disputes arising from the production. Rather than being able to challenge HHS's withholding of documents pursuant to a claim of deliberative-process privilege, for instance, Defendants would be forced to depend on the third party to litigate disputes *that party has* in separate administrative and legal proceedings governed by different legal standards and timeframes. *Cf. Stonehill v. IRS*, 558 F.3d 534, 539 (D.C. Cir. 2009) ("[N]ot all documents available in discovery are also available pursuant to FOIA."); *FTC v. Grolier Inc.*, 462 U.S. 19, 28 (1983) ("It is not difficult to imagine litigation in which one party's need for otherwise privileged documents would be

10

sufficient to override [a] privilege but that does not remove the documents from the category of the *normally* privileged [under FOIA]."). Needless to say (or perhaps not), when confronted with discovery obligations imposed by being a party to litigation, it is no answer for the government to simply produce materials it happens to be gathering for someone else under a different law and for different purposes unless those materials are sure to be the same. That is unlikely to be the case here. Admiral Levine should be made a custodian in this litigation.

## II.   WPATH Should Begin Document Production Now.

It has now been three months since this Court denied WPATH's motion to quash and ordered WPATH to comply with Defendants' Rule 45 subpoena. *See* Doc. 263. WPATH has pursued every appellate option, first by seeking certification and a stay from this Court (which the Court denied, Doc. 281), then by seeking a writ of mandamus from the Eleventh Circuit, Doc. 289. In its mandamus petition, WPATH asked the Eleventh Circuit to rule by June 16. Doc. 289-1 at 18. That date has come and gone, and the Eleventh Circuit has not even called for an Answer, which it would have to do before granting WPATH's petition. *See* Fed. R. App. P. 21(b)(1).

As the Court noted at last month's hearing, WPATH is bound by this Court's order even as it waits for the Eleventh Circuit to act. WPATH agreed. *See* 5/22 Tr. 14 ("THE COURT: Well, I hope you are prepared to produce [discovery] now awaiting a hopeful decision from the Eleventh Circuit, because I think my order is good

until you get something different. MR. LANNIN: We are, Your Honor. Absolutely."). WPATH also explained that, "since the moment [the Court] denied [WPATH's] motion to quash, WPATH has been working to gather" responsive documents. *Id.* at 15. According to WPATH, "[m]any hundreds of attorney hours have been spent gathering and then redacting the documents in accord with [the Court's] order." *Id.*

Despite these assurances, WPATH has yet to begin producing documents. And Defendants understand from a meet-and-confer phone call on June 21 that WPATH does not plan to produce documents unless and until the Eleventh Circuit denies its petition. That is untenable. Not only is this Court's existing order "good" until WPATH "get[s] something different," but WPATH *already has* documents that are ready to be produced. As counsel for WPATH told the Court in March, WPATH has gathered "drafts of earlier chapters, comments to those drafts, comments that members made, comments they received, how they were addressed," and other materials "that are sitting on a hard drive now." 3/21 Tr. 11. That was three months ago. WPATH has continued to gather responsive materials since then. There is no reason WPATH should be allowed to wait any longer before producing the materials it has already gathered and reviewed.

Indeed, for discovery to remain on track under the current discovery schedule (which was modified in part because of WPATH's delay), WPATH needs to begin

12

a rolling production *now*. That is because the documents WPATH produces will inform future discovery needs and could lead to additional disputes. For instance, Defendants noted at the last hearing that WPATH has refused to use custodians or search terms to meet its discovery obligations. 5/22 Tr. 7-9. Defendants understand that WPATH's position has shifted and that WPATH now agrees to produce discovery—if ordered to do so (again)—by, among other things, running designated search terms through a single custodian's email account. Defendants agree this is a step in the right direction, but remain concerned that third-party subpoenas may be necessary for other potential custodians Defendants have suggested. That decision, though, will depend on whether the documents produced by WPATH are sufficient. That obviously cannot be determined until WPATH produces the documents, so it should begin doing so now.

## CONCLUSION

The Court should (1) order HHS to designate Admiral Levine as a custodian for search terms, and (2) order WPATH to begin production immediately.

Date: June 21, 2023

Christopher Mills (*pro hac vice*)
SPERO LAW LLC
557 East Bay Street, #22251
Charleston, South Carolina 29413
(843) 606-0640
CMills@Spero.law

David H. Thompson (*pro hac vice*)
Peter A. Patterson (*pro hac vice*)
Brian W. Barnes (*pro hac vice*)
John D. Ramer (*pro hac vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Respectfully submitted,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

s/ A. Barrett Bowdre
A. Barrett Bowdre (ASB-2087-K29V)
  *Principal Deputy Solicitor General*

Bethany C. Lee (ASB-9480-R46Z)
  *Assistant Solicitor General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Bethany.Lee@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on June 21, 2023, which will serve all counsel of record.

s/ A. Barrett Bowdre
*Counsel for Defendants*
